1   BRADLEY S. PHILLIPS (State Bar No. 085263)
    SETH J. FORTIN (State Bar No. 302790)
2   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue, 35th Floor
3   Los Angeles, CA 90071-1560
    Telephone:    (213) 683-9100
4   Facsimile:    (213) 687-3702

5   ADELE M. EL-KHOURI (*Pro hac vice* pending)
    MUNGER, TOLLES & OLSON LLP
6   1155 F Street, NW, 7th Floor
    Washington, D.C. 20004
7   Telephone:    (202) 220-1100
    Facsimile:    (202) 220-2300

8

9   Attorneys for Defendants
    BOARD OF TRUSTEES OF THE CALIFORNIA
    STATE UNIVERSITY, SAN FRANCISCO STATE
10  UNIVERSITY; LESLIE WONG; MARY ANN
    BEGLEY; LUOLUO HONG; LAWRENCE
11  BIRELLO; REGINALD PARSON; OSVALDO
    DEL VALLE; KENNETH MONTEIRO; BRIAN
12  STUART; ROBERT NAVA; MARK JARAMILLA;
    VERNON PICCINOTTI; AND SHIMINA HARRIS

13
                    UNITED STATES DISTRICT COURT
14
                    NORTHERN DISTRICT OF CALIFORNIA
15

16  JACOB MANDEL, et al.                    CASE NO. 3:17-cv-03511-WHO

17              Plaintiffs,                 **NOTICE OF MOTION AND MOTION TO
                                            DISMISS OF DEFENDANTS BOARD OF
18       vs.                                TRUSTEES OF THE CALIFORNIA
                                            STATE UNIVERSITY; LESLIE WONG;
19  BOARD OF TRUSTEES OF THE                MARY ANN BEGLEY; LUOLUO HONG;
    CALIFORNIA STATE UNIVERSITY,            LAWRENCE BIRELLO; REGINALD
20  SAN FRANCISCO STATE                     PARSON; OSVALDO DEL VALLE;
    UNIVERSITY, et al.,                     KENNETH MONTEIRO; BRIAN
21                                          STUART; ROBERT NAVA; MARK
              Defendants.                   JARAMILLA; VERNON PICCINOTTI;
22                                          AND SHIMINA HARRIS**

23                                          Judge:    Hon. William Orrick III
                                            Dept:     Courtroom 2, 17th Floor
24                                          Date:     November 8, 2017
                                            Time:     2:00 p.m.
25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.     INTRODUCTION ................................................................................................................ 1

II.    ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ......................................... 3

    A.    Plaintiffs allege that SFSU moved a Hillel event to the outskirts of campus and failed to prohibit or respond appropriately to protests of the event. ............... 3

    B.    Plaintiffs allege that SFSU excluded Hillel from a student-group fair. ................. 4

    C.    Plaintiffs allege conduct that either occurred prior to their attendance at SFSU or did not involve them. .............................................................................. 5

    D.    Plaintiffs allege violations of the federal constitution and Title VI of the Civil Rights Act of 1964 ..................................................................................... 6

III.   LEGAL STANDARD ......................................................................................................... 6

IV.    ARGUMENT ...................................................................................................................... 7

    A.    Plaintiffs' federal constitutional claims against the University are barred by the Eleventh Amendment. ................................................................................... 7

    B.    Plaintiffs federal constitutional claims for damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment. .......................................................................................................... 8

    C.    Plaintiffs' First Amendment claims fail as a matter of law. ................................. 8

        1.    Plaintiffs' freedom of assembly claim fails because they have not alleged any burden on their ability peaceably to assemble. ........................ 9

        2.    Plaintiffs' freedom of association claim fails because they have not alleged any burden on their right to intimate expression or their right to associate with others in protected activities. ............................... 10

        3.    Any free exercise claim fails because Plaintiffs have not alleged any burden on their practice of religion. .................................................. 11

        4.    Failure to protect an individual's First Amendment rights from infringement by third parties is not a basis for constitutional liability. ...................................................................................................... 12

    D.    Plaintiffs' equal protection claim fails as a matter of law..................................... 13

        1.    Plaintiffs' equal protection claim fails because they have not alleged that they were treated differently from others in materially similar circumstances. ................................................................................ 14

        2.    Defendants Piccinotti and Harris are not liable under section 1983 because neither is alleged to have personally participated in the conduct challenged in the Complaint. ...................................................... 15

    E.    Plaintiffs fail to allege facts sufficient to state a Title VI claim............................ 15

        1.    Title VI prohibits only intentional discrimination. ................................... 16

        2.    A Title VI claim cannot be based on the theory that SFSU should have prohibited students from engaging in protected First Amendment activities. ............................................................................. 16

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

3.     Plaintiffs' Title VI claim also fails because they have not alleged
       facts sufficient to state a claim for intentional discrimination on a

4

       theory of peer-on-peer harassment............................................................ 18

5

       a.     Most incidents alleged in the Complaint were not witnessed
              by Plaintiffs, occurred long ago, or are not similar to acts

6

              that Plaintiffs personally experienced. ........................................... 19

7

       b.     Plaintiffs have not alleged that they suffered discrimination
              that was severe, pervasive, or objectively offensive. .................... 20

8

       c.     Plaintiffs have not alleged that SFSU was deliberately
              indifferent to the discrimination. ................................................... 22

9

       d.     Plaintiffs have not alleged that they were deprived of
              educational benefits ....................................................................... 23

10

F.     Plaintiffs' claims for declaratory and injunctive relief fail for the reasons
       set forth above. .................................................................................................... 25

11

V.     CONCLUSION AND REQUEST FOR RELIEF ............................................................ 25

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Alexander v. Sandoval*,
 532 U.S. 275 (2001) ................................................................................16

5

6

*Almond Hill School v. U.S. Dep't of Agric.*,
 768 F.2d 1030 (9th Cir. 1985) ..................................................................8

7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .............................................................................7, 15

8

9

*Bair v. Shippensburg Univ.*,
 280 F. Supp. 2d 357 (M.D. Pa. 2003) ....................................................17

10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..............................................................7, 10, 11, 12

11

12

*Benham v. City of Charlotte, N.C.*,
 635 F.3d 129 (4th Cir. 2011) ...................................................................9

13

*Boy Scouts of Am. v. Dale*,
 530 U.S. 640 (2000) ...............................................................................10

14

15

*Chandler v. McMinnville Sch. Dist.*,
 978 F.2d 524 (9th Cir. 1992) .................................................................17

16

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
 508 U.S. 520 (1993) ...............................................................................11

17

18

*Citizens for Health v. Leavitt*,
 428 F.3d 167 (3d Cir. 2005) ..................................................................12

19

20

*Civil Liberties for Urban Believers v. City of Chicago*,
 342 F.3d 752 (7th Cir. 2003) .................................................................10

21

*Cole v. Oroville Union High Sch. Dist.*,
 228 F.3d 1092 (9th Cir. 2000) ...............................................................25

22

23

*Coll. Republicans at San Francisco State Univ. v. Reed*,
 523 F. Supp. 2d 1005 (N.D. Cal. 2007) ................................................17

24

25

*Dambrot v. Cent. Mich. Univ.*,
 839 F. Supp. 477 (E.D. Mich. 1993), *aff'd*, 55 F.3d 1177 (6th Cir. 1995) ..............................17

26

27

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
 526 U.S. 629 (1999) ....................................................................... passim

28

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989)...................................................................................................13

5

*Dible v. City of Chandler*,
   515 F.3d 918 (9th Cir. 2008).....................................................................................10

6

7

*Doe v. Willits Unified Sch. Dist.*,
   473 F. App'x 775 (9th Cir. 2012) .............................................................................22

8

*Dunn v. Wash. Cnty. Hosp.*,
   429 F.3d 689 (7th Cir. 2005)......................................................................................12

9

10

*Edelman v. Jordan*,
   415 U.S. 651 (1974) .....................................................................................................8

11

12

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) ............................................................ passim

13

14

*Fennell v. Marion Indep. Sch. Dist.*,
   804 F.3d 398 (5th Cir. 2015).....................................................................................24

15

*Finkelshteyn v. Staten Island University Hospital*,
   687 F. Supp. 2d 66 (E.D.N.Y. 2009)........................................................................22

16

17

*Fitzgerald v. Barnstable Sch. Comm.*,
   555 U.S. 246 (2009)...................................................................................................16

18

19

*Fogel v. Collins*,
   531 F.3d 824 (9th Cir. 2008).....................................................................................18

20

*Franceschi v. Schwartz*,
   57 F.3d 828 (9th Cir. 1995).........................................................................................7

21

22

*Gabrielle M. v. Park Forest-Chicago Heights, IL Sch. Dist.163*,
   315 F.3d 817 (7th Cir. 2003 ) ....................................................................................24

23

24

*Grace United Methodist Church v. City of Cheyenne*,
   451 F.3d 643 (10th Cir. 2006)...................................................................................10

25

*Graham v. C.I.R.*,
   822 F.2d 844 (9th Cir. 1987), *aff'd sub nom.*, *Hernandez v. C.I.R.*, 490 U.S.
   680 (1989) ..................................................................................................................11

26

27

*Grove v. Mead Sch. Dist. No. 354*,
   753 F.2d 1528 (9th Cir. 1985)...................................................................................12

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Haitian Refugee Ctr., Inc. v. Baker*,
   953 F.2d 1498 (11th Cir. 1992)............................................................12

*Harris v. Forklift Sys. Inc.*,
   510 U.S. 17 (1993)............................................................21

*Hawkins v. Anheuser-Busch, Inc.*,
   517 F.3d 321 (6th Cir. 2008)............................................................19

*Hawkins v. Sarasota Cnty. Sch. Bd.*,
   322 F.3d 1279 (11th Cir. 2003)............................................................24

*Hayut v. State Univ. of N.Y.*,
   352 F.3d 733 (2d Cir. 2003)............................................................24

*Hazelwood Sch. Dist. v. Kuhlmeier*,
   484 U.S. 260 (1988)............................................................13, 17

*Healy v. James*,
   408 U.S. 169 (1972)............................................................17

*Hendrichsen v. Ball State Univ.*,
   107 F. App'x 680 (7th Cir. 2004)............................................................20

*Jackson v. Hayakawa*,
   682 F.2d 1344 (9th Cir. 1982)............................................................7

*Jones v. Williams*,
   297 F.3d 930 (9th Cir. 2002)............................................................15

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.*,
   385 U.S. 589 (1967)............................................................17

*King v. McMillan*,
   594 F.3d 301 (4th Cir. 2010)............................................................19

*Morgan v. Town of Lexington, MA*,
   823 F.3d 737 (1st Cir. 2016)............................................................20

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009)............................................................7

*Oden v. N. Marianas Coll.*,
   440 F.3d 1085 (9th Cir. 2006)............................................................22, 23

*Oklevueha Native Am. Church of Hawaii, Inc. v. Lynch*,
   828 F.3d 1012 (9th Cir. 2016)............................................................11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998)........................................................................................21

*Papelino v. Albany Coll. of Pharm. of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011)............................................................................19

*Peralta v. Cal. Franchise Tax Bd.*,
  124 F. Supp. 3d 993 (N.D. Cal. 2015) ...........................................................8

*Pinard v. Clatskanie Sch. Dist. 6J*,
  467 F.3d 755 (9th Cir. 2006)....................................................................13, 17

*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
  290 F.3d 1058 (9th Cir. 2002) (en banc).......................................................18

*Roberts v. Haragan*,
  346 F. Supp. 2d 853 (N.D. Tex. 2004)...........................................................17

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984).......................................................................................10

*San Jose Christian Coll. v. City of Morgan Hill*,
  360 F.3d 1024 (9th Cir. 2004)..........................................................................9

*Santopietro v. Howell*,
  857 F.3d 980 (9th Cir. 2017)..........................................................................10

*Savage v. Glendale Union High Sch. Dist., No. 205, Maricopa Cnty.*,
  343 F.3d 1036 (9th Cir. 2003)..........................................................................7

*Saxe v. State Coll. Area Sch. Dist.*,
  240 F.3d 200 (3d Cir. 2001)......................................................................19, 21

*Schwapp v. Town of Avon*,
  118 F.3d 106 (2d Cir. 1997)...........................................................................19

*Scott v. Cal. State Lotto*,
  19 F.3d 1441 (9th Cir. 1994)............................................................................8

*Serrano v. Francis*,
  345 F.3d 1071 (9th Cir. 2003).........................................................................15

*Snyder v. Phelps*,
  562 U.S. 443 (2011).......................................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Stanley v. Trustees of Cal. State Univ.*,
　433 F.3d 1129 (9th Cir. 2006)............................................................................7, 19

*Steshenko v. Albee*,
　42 F. Supp. 3d 1281 (N.D. Cal. 2014) ......................................................................7

*Sweezy v. State of N.H.*,
　354 U.S. 234 (1957)................................................................................................17

*Thornton v. City of St. Helens*,
　425 F.3d 1158 (9th Cir. 2005)................................................................................14

*UWM Post, Inc. v. Bd. of Regents of the Univ. of Wisc. Sys.*,
　774 F. Supp. 1163 (E.D. Wisc. 1991) .....................................................................17

*Will v. Mich. Dep't of State Police*,
　491 U.S. 58 (1989)...............................................................................................7, 8

*Wolfe v. Fayetville, Ark. Sch. Dist.*,
　648 F.3d 860 (8th Cir. 2011)..................................................................................20

*Ex Parte Young*,
　209 U.S. 123 (1908)..............................................................................................2, 8

**FEDERAL STATUTES**

42 U.S.C. § 1983 ............................................................................................... passim

42 U.S.C. § 2000(d) ........................................................................................... passim

28 U.S.C. § 2201 .....................................................................................................25

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 6, 7, 12

Fed. R. Civ. P. 12(b)(1)...................................................................................... 1, 7

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that on November 8, 2017 at 2:00 p.m., before the Honorable

3  Williams Orrick III in Courtroom 2 on the 17th Floor of the above-entitled Court, Defendants

4  Board of Trustees of the California State University ("the University" or "SFSU"),[1] Leslie Wong,

5  Mary Ann Begley, Luoluo Hong, Lawrence Birello, Reginald Parson, Osvaldo Del Valle,

6  Kenneth Monteiro, Brian Stuart, Robert Nava, Mark Jaramilla, Vernon Piccinotti, and Shimina

7  Harris (collectively, "Defendants") will and hereby do move pursuant to Rules 12(b)(1) and

8  12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims brought against them in

9  Plaintiffs' Complaint ("Complaint" or "Compl."), filed June 19, 2017.  This motion is based on

10  this Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and

11  papers on file, and such other matters as may be presented to this Court.

12

## MEMORANDUM OF POINTS AND AUTHORITIES

13  **I.      INTRODUCTION**

14      Plaintiffs allege in their Complaint that SFSU and the other defendants violated their First

15  Amendment rights to assembly, association, and free exercise of their Jewish religion and

16  discriminated against them on the basis of their religion in violation of their Fourteenth

17  Amendment right to equal protection and Title VI of the Civil Rights Act of 1964.  This lawsuit is

18  an attempt by Plaintiffs to compel SFSU to restrict the speech and assembly of its other students,

19  in violation of those students' First Amendment rights.  Plaintiffs' principal complaint is that

20  SFSU has permitted its students to engage in political demonstrations and protests against Israel

21  and in support of Palestinian causes.  The majority of the events alleged in the Complaint either

22  occurred before Plaintiffs attended SFSU or did not involve Plaintiffs at all.  Notwithstanding the

23  Complaint's lengthy recitation of irrelevant allegations, Plaintiffs' claims are at bottom based on

24  just two alleged incidents, both of which Plaintiffs describe with mere conclusory statements that

25  are insufficient to state a claim for relief.  All of Plaintiffs' claims fail as a matter of law.

26

27

---

[1] Plaintiffs purport to name as a defendant "San Francisco State University," but that is not a legal
entity separate from the Board of Trustees of California State University.

28

1     *First*, Plaintiffs' federal constitutional claims against the University must be dismissed

2 because they are barred by the Eleventh Amendment.  The Board is an arm of the state and

3 therefore not a "person" subject to suit under section 1983.

4     *Second*, Plaintiffs' federal constitutional claims for damages against the individual

5 Defendants in their official capacities must be dismissed because they are likewise barred by the

6 Eleventh Amendment.  Section 1983 does not permit recovery of damages against state officials

7 acting in their official capacities, because such officials, like the state itself, are not "persons"

8 within the meaning of section 1983.  Although *Ex Parte Young*, 209 U.S. 123 (1908), allows for

9 prospective claims for injunctive relief against state officials acting in their official capacities, it

10 does not allow claims for damages.

11     *Third*, claims 1 and 3—which allege that Plaintiffs were deprived of "their First

12 Amendment rights, including but not limited to the right to assemble, the right to listen or the

13 right to hear"—fail to state a claim because Plaintiffs have not alleged a substantial burden on

14 their ability to exercise their religion, any infringement of their ability to assemble to express their

15 views, or any burden on their right to intimate expression or their right to associate with others in

16 protected activities.  In addition, state officials cannot be liable for failing to protect students from

17 actions of other private individuals, even when those actions may affect the exercise of

18 constitutional rights.  Moreover, Defendants Piccinotti and Harris cannot be liable under § 1983

19 because Plaintiffs have not alleged that either Defendant personally participated in or even had

20 knowledge of the incidents alleged in the Complaint.

21     *Fourth*, claims 2 and 4—which allege that Plaintiffs were deprived of "equal protection of

22 the laws, as secured by the Fourteenth Amendment to the United States Constitution"—fail to

23 state a claim because Plaintiffs have not alleged that they were treated differently from others in

24 materially similar circumstances.  Moreover, Defendants Piccinotti and Harris cannot be liable

25 under § 1983 because Plaintiffs have not alleged that either Defendant personally participated in

26 or even had knowledge of the incidents alleged in the Complaint.

27     *Fifth*, claim 5—which alleges a violation of Title VI of the Civil Rights Act of 1964, 42

28 U.S.C. § 2000(d)—fails to state a claim because (a) it is premised on the allegation that the

1  Defendants should have prohibited other students from engaging in First Amendment protected

2  speech; and (b) Plaintiffs have not alleged that SFSU was deliberately indifferent to

3  discrimination of which the school had actual knowledge and that was so severe, pervasive, and

4  objectively offensive that it deprived Plaintiffs of access to educational benefits or opportunities.

5       *Sixth*, claim 6—which seeks declaratory and injunctive relief for these alleged

6  violations—fails to state a claim for the reasons set forth above.  Moreover, Plaintiff Mandel

7  lacks standing to seek declaratory and injunctive relief because he has graduated from SFSU.

8  **II.      ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

9       Plaintiffs Jacob Mandel, a former SFSU student; Charles Volk and Liam Kern, current

10 SFSU students; and Masha Merkulova, Aaron Parker, and Stephanie Rosekind, members of the

11 Jewish community who attended one Hillel event on campus, claim that Defendants violated

12 Plaintiffs' rights to assemble, associate, and freely exercise their Jewish religion and

13 discriminated against them on the basis of their religion.  But the Complaint contains no

14 allegations about Plaintiffs' religious beliefs or practices, let alone any allegation that Defendants

15 prevented them from exercising their religion; no allegation that Plaintiffs were ever prevented or

16 substantially restrained from assembling or associating to express their views or religious beliefs;

17 and no allegation that Defendants treated Plaintiffs differently than other students, let alone on the

18 basis of their religion.   Instead, the Complaint describes various protests, demonstrations, and

19 protected (albeit in some instances offensive) speech against Israel, most of which occurred

20 before Plaintiffs attended SFSU or did not involve Plaintiffs at all.  Plaintiffs describe only two

21 incidents that could conceivably form a basis for their claims: one that involved other students'

22 engaging in protected speech and that the University responded to with an investigation, and

23 another that involved a student-group fair that Plaintiffs would have been able to attend had they

24 not missed the registration deadline.

25       **A.      Plaintiffs allege that SFSU moved a Hillel event to the outskirts of campus
             and failed to prohibit or respond appropriately to protests of the event.**

26       As to the first incident that forms the basis for Plaintiffs' claims—hereinafter the "Mayor

27 Barkat event"—Plaintiffs allege that Jewish student group Hillel arranged for Nir Barkat, the

28 Mayor of Jerusalem, to speak at the University, and Plaintiffs claim that SFSU "consigned" the

1    event to "the outskirts of campus" and failed to prohibit or respond appropriately to other

2    students' protests of the event.  (Compl. ¶ 60.)  Plaintiffs spend 22 pages setting forth allegations

3    related to the Mayor Barkat event, but the substance of their allegations can be reduced to a few

4    propositions.

5         Plaintiffs allege that they attempted to reserve a room in the student center in "the heart of

6    campus" and that Defendants initially assigned them to such a room but then informed them that

7    the room was unavailable.  (*Id.* ¶ 63.)  Defendants assigned the event to a room in a building

8    "comparatively far from the center of campus" that charged a fee for use, (*id.* ¶ 64) and expressed

9    concerns about holding the event in the main student center because they expected protests and

10   did not want classes to be disrupted, (*id.* ¶ 65).  Defendants made preparations in conjunction

11   with campus police to manage the expected protests.  (*Id.* ¶¶ 67–69.)

12        Plaintiffs allege that, after Mayor Barkat began his speech, approximately 30 individuals

13   began "loud shouting of antagonizing and threatening phrases such as 'Get the fuck off our

14   campus.'"  (*Id.* ¶¶ 70–72.)  The Mayor stopped speaking because the protestors were drowning

15   out his voice, Plaintiffs and others who were there to hear the speech huddled around the Mayor

16   so as to be able to hear him and felt "threatened and intimidated by the [protesting] group's

17   encroaching physical presence."  (*Id.* ¶¶ 73–77.)  Generally, Plaintiffs allege that Defendants

18   failed sufficiently to contain the protest to allow the event to continue, despite the fact that the

19   protesting individuals were in violation of certain provisions of SFSU's Code of Student Conduct.

20   (*Id.* ¶¶ 73–80.)  They also allege that the police asked the protestors to leave but did no more than

21   that because "the University" had instructed them to "stand down" rather than forcing the

22   protestors into the designated protest area.  (*Id.* ¶¶ 81–90.)  Finally, Plaintiffs allege that

23   Defendants conducted an investigation of the incident, held meetings to discuss it, and generated

24   a report that, Plaintiffs allege, wrongly concluded that the protesting students would not be

25   punished.  (*Id.* ¶¶ 91–118.)

26        **B.    Plaintiffs allege that SFSU excluded Hillel from a student-group fair.**

27        As to the second incident that forms the basis for Plaintiffs' claims—hereinafter the

28   "Know Your Rights fair"—Plaintiffs allege that SFSU intentionally excluded Hillel from a

1    school-sponsored, student-group fair designed to "inform . . . students, faculty, staff and public

2    about potential threats to their rights given the new political reality."  (*Id.* ¶¶ 142–144.)  Setting

3    aside several pages of irrelevant text (*id.* ¶¶ 137–150), Plaintiffs' allegations about the Know

4    Your Rights fair consist of a few conclusory statements.  Plaintiffs allege that, "on information

5    and belief, other groups—namely, GUPS, threatened to pull out of the fair if Hillel were

6    included." (*Id.* ¶ 143).  They continue that, "[o]n information and belief, Hillel was invited to the

7    fair by accident, and once the invitation had been extended, the event's organizers . . . worked to

8    find a way to rescind it."  (*Id.* ¶ 144).  Finally, Plaintiffs allege that they were "subjected to a

9    viewpoint-based test before being initially invited to participate," that SFSU then invited them to

10   participate, and that "after receiving [sic] this confirmation, on information and belief, SFSU

11   consciously and intentionally decided to excluded Hillel from the event, and did so by

12   surreptitiously changing the cut-off date for registration with the goal of excluding Hillel and

13   Jewish students from the event . . . excluding other groups in the process in an effort to cover up

14   this active discrimination."  (*Id.*)

15        **C.    Plaintiffs allege conduct that either occurred prior to their attendance at SFSU or did not involve them.**

16

17        In the remainder of the Complaint, Plaintiffs set forth pages and pages of irrelevant and

18   conclusory allegations, including generalized grievances about the "ubiquitous" nature of

19   antisemitism at SFSU (*id.* ¶ 60) and descriptions of events that occurred prior to Plaintiffs' time at

20   SFSU or that seemingly did not involve Plaintiffs at all (*id.* ¶¶ 119–136).  The substance of most

21   of these allegations involves other students and faculty, particularly members of the Arab and

22   Muslim Ethnicities and Diasporas Initiative ("AMED") and the General Union of Palestinian

23   Students ("GUPS"), engaging in core First Amendment protected activities.  In particular,

24   Plaintiffs describe prior speeches, meetings, and protests on campus (*id.* ¶¶ 119–22) and in-person

25   and online political speech by other students (*id.* ¶¶ 123–29).  To cite just a few examples:

26   Plaintiffs allege that "[i]n 2002, on Holocaust Memorial Day . . . Malik Ali, the first Muslim

27   student body president at SFSU reportedly known for supporting Hamas and Hezbollah and

28   equating Jews and Nazis, praised suicide bombings against Israeli targets and said that Israelis

should return to Germany, Poland and Russia." (*Id.* ¶ 119.)  They allege that, "[w]hen Omar Barghouti, BDS movement founder and outrageous anti-Semite who frequently calls for the genocidal annihilation of the Jewish state . . . was invited to speak at SFSU, Defendant Kenneth Monteiro defended the discussion, citing academic freedom."  (*Id.* ¶ 122.)  They allege that in 2013 the President of GUPS posted online that "Israelis ARE colonizers, there is literally no way around it . . . and my only regret is that not all colonizers were killed." (*Id.* ¶ 124.)  These allegations are both unrelated to Plaintiffs' claims and describe speech and other forms of expression that, though hateful, are protected by the First Amendment.

### D.   Plaintiffs allege violations of the federal constitution and Title VI of the Civil Rights Act of 1964

Plaintiffs allege that "Defendants' conduct intentionally encouraged and benefited the disruptive individuals who were threatening the Jewish individuals with violence . . . [and] intimidated Plaintiffs through Defendants' complicity in the violent threats and the deliberate indifference to the clear violations of Plaintiffs' civil rights." (*Id.* ¶ 98.)  Specifically, they claim that Defendants' conduct in the course of the Mayor Barkat event and the Know Your Rights fair "deprived and continue[s] to deprive Plaintiffs of their First Amendment rights, including but not limited to the right to assemble, the right to listen or the right to hear" (*id.* ¶¶ 161, 190) and "deprived and continue[s] to deprive Plaintiffs of equal protection of the laws, as secured by the Fourteenth Amendment" (*id.* ¶¶ 174, 205).  Plaintiffs further claim that Defendants discriminated against them in violation of Title VI of the Civil Rights Act of 1964.  (*Id.* ¶¶ 215–30.)[2]  Plaintiffs request damages, declaratory and injunctive relief, and attorneys' fees and costs.  (*Id.* pp. 71–72.)

## III.   LEGAL STANDARD

The Supreme Court has emphasized that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft*

---

[2] All of the Plaintiffs assert the constitutional claims based on the Mayor Barkat event.  By contrast, only the student Plaintiffs assert the constitutional claims based on the Know Your Rights fair and the Title VI claim.  For ease of reference, however, they are referred to throughout collectively as "Plaintiffs."

1   *v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that *Twombly* standards apply in all cases).

2   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

3   statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Thus, to survive a motion to dismiss, a

4   complaint must plead "enough facts to state a claim to relief that is plausible on its face."

5   *Twombly*, 550 U.S. at 570; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)

6   ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and

7   reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

8   plaintiff to relief.").

9        A motion to dismiss on the basis of Eleventh Amendment immunity is one for lack of

10  subject-matter jurisdiction under Rule 12(b)(1).  *Savage v. Glendale Union High Sch. Dist., No.*

11  *205, Maricopa Cnty.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003).

12  **IV.    ARGUMENT**

13      **A.    Plaintiffs' federal constitutional claims against the University are barred by
                the Eleventh Amendment.**

14

15      Plaintiffs purport to sue the University under section 1983 for alleged violations of the

    First Amendment and equal protection.  "The Eleventh Amendment bars suits which seek either
16
    damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its
17
    agencies."  *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995).  It is firmly settled that the
18
    University is an arm of the state and therefore has sovereign immunity from all claims brought by
19
    individuals in federal court, unless the claim is brought pursuant to a federal statute that expressly
20
    abrogates states' sovereign immunity.  *Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1287–88 (N.D.
21
    Cal. 2014) (citing *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006);
22
    *Jackson v. Hayakawa*, 682 F.2d 1344, 1350–51 (9th Cir. 1982)).  42 U.S.C. § 1983, which creates
23
    a right of action against "[e]very person" who, under color of state law, violates a party's federal
24
    rights, does not abrogate states' sovereign immunity, and so states and state entities are not
25
    "person[s]" subject to suit under section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58,
26
    69-70 (1989).  Plaintiffs' federal constitutional claims for relief against the University must be
27
    dismissed with prejudice in their entirety.
28

**B.**     <u>**Plaintiffs federal constitutional claims for damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment.**</u>

Plaintiffs purport to sue the individual Defendants, in both their official and personal capacities, for damages under section 1983.  The personal-capacity claims plainly for lack of any supporting factual allegations. [3]  The official-capacity claims are barred by the Eleventh Amendment; section 1983 does not allow recovery of damages against state officials acting in their official capacities, because such officials, like the state itself, are not "persons" within the meaning of section 1983.  *Will*, 491 U.S. at 71.  Although *Ex parte Young*, 209 U.S. 123 (1908), permits prospective claims for injunctive relief against state officials acting in their official capacities, it does not authorize claims for damages.  *Almond Hill School v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1034 (9th Cir. 1985) ("The doctrine of *Ex parte Young* . . . has been limited to actions for prospective relief.") (citing *Edelman v. Jordan*, 415 U.S. 651, 676–77 (1974)).  Plaintiffs' federal constitutional claims for relief against all of the individual Defendants in their official capacities, to the extent those claims seek damages, must be dismissed with prejudice.

**C.**     <u>**Plaintiffs' First Amendment claims fail as a matter of law.**</u>

Plaintiffs' first and third claims for relief allege that Defendants "deprived and continue to deprive Plaintiffs of their First Amendment rights, including but not limited to the right to assemble, the right to listen or the right to hear."  (Compl. ¶¶ 161, 190.)  Plaintiffs base these claims on two events only—the Mayor Barkat event and the Know Your Rights fair.  (*Id.*)  Assuming, though the phrasing of their claims is not entirely clear, that Plaintiffs intend to allege violations of their rights to free exercise of religion, freedom of assembly, and freedom of

---

[3] "[T]o state a claim against state officials in their personal capacities, the complaint must set forth allegations from which the court can infer that the individuals acted in their individual capacities."  *Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1001 (N.D. Cal. 2015) (citing *Scott v. Cal. State Lotto*, 19 F.3d 1441 (9th Cir. 1994)).  To determine whether a defendant is properly sued in her personal capacity, "the court must examine the specifics of the conduct involved and not merely look at the caption of the complaint."  *Peralta*, 124 F. Supp. 3d at 1001 (internal quotation marks omitted).  Plaintiffs have failed to allege any facts supporting the inference that any of the individual Defendants were acting in other than their official capacities.  (Compl. ¶¶ 30–41.)  Every allegation in the Complaint that refers to an individual Defendant by name has to do with the individual Defendant's official actions as an officer of SFSU.  Plaintiffs' claims against the individual Defendants in their personal capacities must therefore be dismissed.

association, Plaintiffs' claims fail as a matter of law for the reasons set forth below.  Another

court in this district previously rejected the same First Amendment claims against the University

of California, Berkeley, based on facts substantially similar to those alleged here.  *See Felber v.*

*Yudof*, 851 F. Supp. 2d 1182, 1186–87 (N.D. Cal. 2011).

### 1.   Plaintiffs' freedom of assembly claim fails because they have not alleged any burden on their ability peaceably to assemble.

Plaintiffs' freedom of assembly claim fails as a matter of law because they have not

alleged that Defendants imposed a serious burden upon or substantially restrained Plaintiffs'

ability to engage in any form of assembly.  Governmental action abridges an individual's right to

assemble when it "imposes a serious burden upon, affects in any significant way, or substantially

restrains" an individual's exercise of that right.  *San Jose Christian Coll. v. City of Morgan Hill*,

360 F.3d 1024, 1033 (9th Cir. 2004).

Plaintiffs have not alleged facts suggesting that Defendants took actions that affected in

any significant way Plaintiffs' right to assemble.  (Compl. ¶¶ 61–118; 137–56.)  By Plaintiffs'

own account of the Mayor Barkat event, the University directed them to an off-campus location

based on concerns about student safety and class disruption, not to prevent or burden the

assembly itself.  (Compl. ¶ 65.)  The fact that Plaintiffs had to use another space alone is

insufficient to constitute a serious burden on their right to assemble.  *See Morgan Hill*, 360 F.3d

at 1033 ("[T]he fact that the church's congregants cannot assemble at that precise location does

not equate to denial of assembly altogether.").  Plaintiffs have not alleged, for example, that the

move "reduce[d] the size of [their] audience[,] . . . denied [them] a particular opportunity to

express [their] views[,] . . . interfered with their need[ ] to plan the substance or, at least,

placement of their message, . . . or . . . caused sufficient self-censorship."  *Benham v. City of*

*Charlotte, N.C.*, 635 F.3d 129, 138 (4th Cir. 2011) (internal quotation marks and citations

omitted).  Even assuming the decision to move the Mayor Barkat event to a less-central campus

location incidentally burdened Plaintiffs' right to assembly, Plaintiffs have not alleged that the

incidental burden was motivated by anything other than Defendants' neutral policy to minimize

class disruption.  *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 765

1   (7th Cir. 2003) (concluding that ordinance was content neutral and did not burden the right to

2   assembly,  reasoning that "to the extent that the [ordinance] incidentally regulates speech or

3   assembly within churches, such regulation is motivated not by any disagreement . . . with the

4   message conveyed by church speech or assembly, but rather by such legitimate, practical

5   considerations as the promotion of harmonious and efficient land use"); *see also Grace United*

6   *Methodist Church v. City of Cheyenne*, 451 F.3d 643, 656–57 (10th Cir. 2006) (same).  The

7   conclusory assertion that Defendants "deprived and continue to deprive Plaintiffs of their First

8   Amendment rights, including but not limited to the right to assemble, the right to listen or the

9   right to hear," is insufficient to defeat a motion to dismiss.  *See Twombly*, 550 U.S. at 555.

10        **2.    Plaintiffs' freedom of association claim fails because they have not**
          **alleged any burden on their right to intimate expression or their right**
11        **to associate with others in protected activities.**

12        Plaintiffs' freedom of association claim similarly fails as a matter of law because they

13   have not alleged that Defendants took any actions to burden their ability to associate with others

14   in order to engage in protected activities.  The First Amendment "encompasses a freedom of

15   association right, which includes the freedom of intimate expression and the right to associate

16   with others in activities otherwise protected by the First Amendment."  *Dible v. City of Chandler*,

17   515 F.3d 918,  929 (9th Cir. 2008).  "'Government actions that may unconstitutionally burden

18   this [expressive association] freedom may take many forms,'" *Santopietro v. Howell*, 857 F.3d

19   980, 989 (9th Cir. 2017) (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000)), such as

20   "seek[ing] to impose penalties or withhold benefits from individuals because of their membership

21   in a disfavored group . . . attempt[ing] to require disclosure of the fact of membership in a group

22   seeking anonymity . . . [and] try[ing] to interfere with the internal organization or affairs of the

23   group," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-623 (1984).

24        Plaintiffs have not alleged facts showing that Defendants took actions that in any way

25   burdened Plaintiffs' freedom to engage with others in protected activities.  They have not alleged

26   that Defendants punished them for their membership in Hillel, interfered with Hillel's internal

27   affairs, or withheld benefits from Hillel members to dissuade them from participating in group

28   activities.  (Compl. ¶¶ 61–118; 137–56.)  They have not alleged facts to support their conclusory

1  claims that GUPS threatened to pull out of the Know Your Rights fair if Hillel were in attendance

2  or that Defendants intentionally excluded Hillel from the fair.  (*Id.* ¶ 137–56.)  Plaintiffs'

3  allegations on this point are conclusory and contradictory.  Plaintiffs allege that "[o]n information

4  and belief, Hillel was invited to the fair by accident."  (*Id.* ¶ 144.)  They subsequently allege

5  instead that the University "subjected [Hillel] to a viewpoint-based test" and then concede that the

6  University invited Hillel to participate.  (*Id.*)  Finally, Plaintiffs allege that "SFSU  consciously

7  and intentionally decided to excluded Hillel from the event, and did so by surreptitiously

8  changing the cut-off date for registration with the goal of excluding Hillel and Jewish students

9  from the event . . . excluding other groups in the process in an effort to cover up this active

10  discrimination."  (*Id.*)  Plaintiffs' own allegations show that Defendants took a neutral action that

11  applied to all student groups, and Plaintiffs' unsupported assertions attempting to characterize it

12  as intentional targeting must fail.  *See Twombly*, 550 U.S. at 555.

13            **3.**      <u>**Any free exercise claim fails because Plaintiffs have not alleged any**</u>
<u>**burden on their practice of religion.**</u>

14

15        Any free exercise claim asserted by Plaintiffs fails as a matter of law because they have

16  not alleged that Defendants placed any burden on Plaintiffs' exercise of their religion, let alone

17  the sort of substantial burden that would be required to state a free exercise claim.  As the

18  Supreme Court has explained, "the free exercise inquiry asks whether government has placed a

19  substantial burden on the observation of a central religious belief or practice and, if so, whether a

20  compelling governmental interest justifies the burden."  *Church of the Lukumi Babalu Aye, Inc. v.*

21  *City of Hialeah*, 508 U.S. 520, 565 (1993) (internal quotation marks omitted).  To prevail on a

22  free exercise claim, a plaintiff must prove that the governmental act "burdens the adherent's

23  practice of his or her religion by pressuring him or her to commit an act forbidden by the religion

24  or by preventing him or her from engaging in conduct or having a religious experience which the

25  faith mandates."  *Graham v. C.I.R.*, 822 F.2d 844, 850–51 (9th Cir. 1987), *aff'd sub nom.*,

26  *Hernandez v. C.I.R.*, 490 U.S. 680 (1989).  *Cf. Oklevueha Native Am. Church of Hawaii, Inc. v.*

27  *Lynch*, 828 F.3d 1012, 1015 (9th Cir. 2016) (explaining that the first element of a claim under the

28

1  Religious Freedom Restoration Act is that "the activities the plaintiff claims are burdened by the

2  government action must be an exercise of religion") (internal quotation marks omitted).

3       Plaintiffs have not set forth a single allegation relating to a religious belief or practice.

4  The facts they allege about the Mayor Barkat event and the Know Your Rights fair involve Hillel

5  members' campus activities but not any activities that they allege are necessary to observe a tenet

6  or belief central to their religious faith.  (Compl. ¶¶ 61–118; 137–56.)  Even assuming Plaintiffs

7  had alleged that Defendants' actions offended their religious beliefs, "governmental actions that

8  merely offend or cast doubt on religious beliefs do not on that account violate free exercise.  An

9  actual burden on the profession or exercise of religion is required. . . .  [D]istinctions must be

10  drawn between those governmental actions that actually interfere with the exercise of religion,

11  and those that merely require or result in exposure to attitudes and outlooks at odds with

12  perspectives prompted by religion."  *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1543 (9th

13  Cir. 1985).  Plaintiffs' free exercise claim must be dismissed.  *See Twombly*, 550 U.S. at 555

14  ("[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

15  factual allegations," a plaintiff must provide "more than labels and conclusions" ).

16  **4.    Failure to protect an individual's First Amendment rights from infringement by third parties is not a basis for constitutional liability.**

17  
18       Even assuming Plaintiffs had alleged some burden on their exercise of religion or ability

19  to assemble or associate, the alleged source of that burden would be the actions of other students

20  and groups at the university.  Courts have consistently held that a First Amendment claim must be

21  premised on a governmental action and not on the government's failure to prevent independent

22  actions by private parties.  *See, e.g.*, *Citizens for Health v. Leavitt*, 428 F.3d 167, 185 (3d Cir.

23  2005) ("[Plaintiffs'] First Amendment claim fails . . . [because] the potential 'chilling' of patients'

24  rights to free speech derives not from any action of the government, but from the independent

25  decisions of private parties.");  *Dunn v. Wash. Cnty. Hosp.*, 429 F.3d 689, 692 (7th Cir. 2005)

26  ("The Constitution by and large establishes negative liberties; it does not require the state to

27  prevent or redress the misconduct of private actors.");  *Haitian Refugee Ctr., Inc. v. Baker*, 953

28  F.2d 1498, 1513 (11th Cir. 1992).  These cases follow the reasoning of the Supreme Court's

1   decision in *DeShaney v. Winnebago County Department of Social Services*, in which the Court

2   held that "nothing in the language of the Due Process Clause itself requires the State to protect the

3   life, liberty, and property of its citizens against invasion by private actors."  489 U.S. 189, 195

4   (1989).

5          Moreover, in the educational context, a school must balance the First Amendment rights

6   of students and preservation of the educational process, and the First Amendment protects all

7   student speech unless it will "'substantially interfere with the work of the school or impinge upon

8   the rights of other students.'"  *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 766 (9th Cir.

9   2006) (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)).

10         Even if Plaintiffs had alleged a burden on their exercise of First Amendment rights, it is

11   apparent from the Complaint that the source of that burden would be the actions of other students

12   and groups at the University, who were also exercising core First Amendment rights that the

13   University could not curtail.  (Compl. ¶¶ 67–74) (describing student protestors' protected actions

14   at Mayor Barkat event and stating in conclusory fashion that "[t]he disruptive individuals were

15   emboldened by the decisions of the administration to allow the disruption to continue and

16   escalate").  This theory fails to state a constitutional claim.  *See Felber*, 851 F. Supp. 2d at 1186

17   ("[E]ven assuming that plaintiffs have alleged, or could amend to allege, sufficient acts of

18   harassment and intimidation directed against them based on their religion to be deemed as an

19   interference with their free exercise of that religion, they simply have no basis for pursuing such

20   constitutional claims against defendants.  With exceptions not implicated here, state actors have

21   no constitutional obligation to prevent private actors from interfering with the constitutional

22   rights of others.").

23         **D.**    **Plaintiffs' equal protection claim fails as a matter of law.**

24         Plaintiffs' second and fourth claims for relief allege that Defendants deprived Plaintiffs of

25   "equal protection of the laws, as secured by the Fourteenth Amendment to the United States

26   Constitution" by discriminating against them on the basis of their Jewish identity.  (Compl. ¶¶

27   174–75, 205–06.)  Plaintiffs base this claim on two incidents only—the Mayor Barkat event and

28

the Know Your Rights fair.  (*Id.*) Plaintiffs' claim fails as a matter of law for the reasons set forth below.

### 1. **Plaintiffs' equal protection claim fails because they have not alleged that they were treated differently from others in materially similar circumstances.**

Plaintiffs' claim that Defendants violated Plaintiffs' right to equal protection under the Fourteenth Amendment fails because Plaintiffs have not alleged any facts suggesting that Defendants treated Plaintiffs differently than they treated other individuals in materially similar circumstances.  "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (internal quotation marks omitted).  "The first step in equal protection analysis is to identify the [defendants' asserted] classification of groups. . . .  The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. . . .  An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff."  *Id.* at 1166–67 (internal quotation marks and citations omitted).

Plaintiffs have not alleged facts sufficient to show either that Defendants acted with an intent or purpose to discriminate based on Plaintiffs' religion or that Defendants treated Plaintiffs differently from other groups in materially similar circumstances.  (Compl. ¶¶ 61–118; 137–56.) For example, they have not alleged in their accounts of the Know Your Rights fair or the Mayor Barkat event that any other groups expressed interest and were granted participation in the former or that any other groups asked for and received space in a campus classroom.  (*Id.* ¶¶ 61–118; 137–56.)  Nor have they alleged that any of Defendants' actions in connection with the events were based on Plaintiffs' religion.  Indeed, by Plaintiffs' own account of the Mayor Barkat event, the University directed them to an off-campus location based on concerns about student safety and class disruption, not the organization's religious affiliation.  (*Id.* ¶ 65.)  And, by Plaintiffs' own account of the Know Your Rights fair, Defendants changed the registration deadline for everyone.  (*Id.* ¶ 144.)  The Complaint's failure to allege disparate treatment is fatal to Plaintiffs'

1   equal protection claim. *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("To state a

2   claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted

3   with an intent or purpose to discriminate against him based upon his membership in a protected

4   class.").

5              **2.**        **Defendants Piccinotti and Harris are not liable under section 1983**
    **because neither is alleged to have personally participated in the**
6                    **conduct challenged in the Complaint.**

7         Plaintiffs' First Amendment and equal protection claims under section 1983 against

8   Defendants Piccinotti and Harris should be dismissed for the additional reason that the Complaint

9   does not allege that either Defendant personally deprived Plaintiffs of their rights to free exercise,

10  assembly, or association. The Supreme Court has held that "vicarious liability is inapplicable to .

11  . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the

12  official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also*

13  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[I]n order for a person acting under color

14  of state law to be liable under section 1983 there must be a showing of personal participation in

15  the alleged rights deprivation."). Outside of the headings, the Complaint does not contain a single

16  reference to Defendant Harris. The Complaint contains only one reference to Defendant

17  Piccinotti—noting that he, along with several other individuals, received an email stating that

18  Hillel had reserved a classroom for the Mayor Barkat event. (Compl. ¶ 63.) The claims against

19  these two Defendants must therefore be dismissed.

20        **E.**      **Plaintiffs fail to allege facts sufficient to state a Title VI claim.**

21        Plaintiffs' Title VI claim fails because: (1) it is based primarily on Plaintiffs' objections to

22  student protests against Israel, and SFSU cannot be liable for allowing speech that SFSU could

23  not have prohibited without violating the First Amendment; (2) Plaintiffs have not alleged facts

24  sufficient to support an inference that SFSU was deliberately indifferent to discrimination of

25  which the school had actual knowledge and that was so severe, pervasive, and objectively

26  offensive that it deprived Plaintiffs of access to educational benefits or opportunities. The same

27  district court that previously rejected First Amendment claims against UC Berkeley based on

28  facts substantially similar to those alleged here also rejected the Title VI claim in that case. *See*

*Felber*, 851 F. Supp. 2d at 1187–88.

### 1.   Title VI prohibits only intentional discrimination.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), prohibits discrimination in connection with any federally funded program or activity based on race, color, religion, sex, or national origin.  The Supreme Court has held that Title VI prohibits only intentional discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  In certain limited circumstances, a school's failure to respond to student-to-student discrimination can constitute intentional discrimination.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999) (setting forth standard under Title IX); *see also Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009) ("Congress modeled Title IX after Title VI . . . and passed Title IX with the explicit understanding that it would be interpreted as Title VI was.").

To state a Title IV claim against a school under this theory, a plaintiff must show that the school was "deliberately indifferent to [discrimination], of which [the school] ha[d] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."  *Davis*, 526 U.S. at 650.

### 2.   A Title VI claim cannot be based on the theory that SFSU should have prohibited students from engaging in protected First Amendment activities.

As a threshold matter, Plaintiffs' Title VI claim fails because the majority of the alleged actions Plaintiffs claim Defendants should have prevented were those of other students engaging in activities protected  by the First Amendment—namely, political speech that SFSU could not prohibit or punish.  As the Supreme Court has emphasized, an entity that receives federal funds may be liable for acts committed by third parties "only where the funding recipient has some control over the alleged harassment.  A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action."  *Davis*, 526 U.S. at 644.  Accordingly, "it would be entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims."  *Id.* at at 649.  This is precisely the situation here:

1    the University lacked any authority to discipline other students for exercising their right to engage

2    in protected speech.

3        It is a well-established principle that freedom of speech is particularly important in a

4    university setting.  *See, e.g.*, *Healy v. James*, 408 U.S. 169, 180 (1972); *Keyishian v. Bd. of*

5    *Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967); *Sweezy v. State of N.H.*, 354 U.S.

6    234, 250 (1957).  A school therefore may not impinge students' First Amendment activities

7    unless they will "'substantially interfere with the work of the school or impinge upon the rights of

8    other students.'"  *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 766 (9th Cir. 2006) (quoting

9    *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)).  Indeed, "core principles of the

10   First Amendment acquire a special significance in the university setting, where the free and

11   unfettered interplay of competing views is essential to the institution's educational mission."

12   *Coll. Republicans at San Francisco State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1016 (N.D. Cal.

13   2007) (internal quotation marks omitted).  The First Amendment thus "protects all student speech

14   that is neither school-sponsored, a true threat nor vulgar, lewd, obscene or plainly offensive

15   unless school officials show "facts which might reasonably have led [them] to forecast substantial

16   disruption of or material interference with school activities."  *Pinard*, 467 F.3d at 767 (quoting

17   *Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524, 529 (9th Cir. 1992)).  It is for this reason that

18   courts have often struck down university speech codes as unconstitutional. [4]

19       Plaintiffs' allegations demonstrate that the students protesting the Mayor Barkat event

20   were engaged in political speech and expressive conduct—core First Amendment-protected

21   activities.  (Compl. ¶¶ 71 (alleging that protestors chanted [g]et the fuck off our campus,"

22   "Palestine will be free," and "we don't want your racist war"); 78 (alleging that protestors wore

23   keffiyehs)).  Plaintiffs' allegations about the Palestinian student group's other actions similarly all

24   involve core First Amendment activities.  (*Id.* ¶¶ 119 (op-ed in student newspaper; pro-Israel

25   student rally; speech on campus); 123 (organized rally); 124, 125, 129 (social media posts)).  The

26   ─────────────

     [4] *See, e.g.*, *Reed*, 523 F. Supp. 2d at 1016; *see also Roberts v. Haragan*, 346 F. Supp. 2d 853
27   (N.D. Tex. 2004); *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357 (M.D. Pa. 2003); *Dambrot v.*
     *Cent. Mich. Univ.*, 839 F. Supp. 477 (E.D. Mich. 1993), *aff'd*, 55 F.3d 1177 (6th Cir. 1995);
28   *UWM Post, Inc. v. Bd. of Regents of the Univ. of Wisc. Sys.*, 774 F. Supp. 1163 (E.D. Wisc.
     1991).

1  fact that the speech may have been hateful and offensive does not remove it from the ambit of

2  First Amendment protection.  *See Snyder v. Phelps*, 562 U.S. 443, 454 (2011).  A Title VI claim

3  premised on the theory that a school should prohibit such speech fails.  *See Felber*, 851 F. Supp.

4  2d at 1188 (reasoning, in rejecting Title VI claim, that "a very substantial portion of the conduct

5  to which plaintiffs object represents pure political speech and expressive conduct, in a public

6  setting, regarding matters of public concern, which is entitled to special protection under the First

7  Amendment").

8         As indicated in the descriptions above, Plaintiffs have not alleged any speech or

9  expressive conduct that would constitute a true threat.  "A true threat is 'an expression of an

10  intention to inflict evil, injury, or damage on another' and such speech receives no First

11  Amendment protection.  *Fogel v. Collins*, 531 F.3d 824, 830 (9th Cir. 2008) (quoting *Planned*

12  *Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075

13  (9th Cir. 2002) (en banc)).  "By contrast, speech that can reasonably be characterized as political

14  rhetoric or hyperbole, particularly such speech not directed at specific individuals, is protected."

15  *Id.*  And speech that merely advocates violence is protected.  *See Willamette*, 290 F.3d at 1071.

16  Plaintiffs' allegations show, at most, that other students at the University were engaged in

17  political speech that advocated violence; nowhere do Plaintiffs allege that those students engaged

18  in speech that targeted specific individuals or threatened violence directly.

19              **3.    Plaintiffs' Title VI claim also fails because they have not alleged facts
               sufficient to state a claim for intentional discrimination on a theory of
20             peer-on-peer harassment.**

21         Plaintiffs' Title VI claim, which is based on the theory that SFSU failed to respond to

22  student-on-student discrimination, also fails for the reason that Plaintiffs have not sufficiently

23  alleged that SFSU was deliberately indifferent to discrimination of which the school had actual

24  knowledge and that was so severe, pervasive, and objectively offensive that it deprived Plaintiffs

25  of access to educational benefits or opportunities.

26

27

28

1

2

           a.      **Most incidents alleged in the Complaint were not witnessed by Plaintiffs, occurred long ago, or are not similar to acts that Plaintiffs personally experienced.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

        As a threshold matter, Plaintiffs cannot base a Title VI claim on events of which they were not aware when they were SFSU students and which are not proximate in time or similar to incidents they personally experienced.  To the extent Plaintiffs allege facts that occurred prior to the time period during which they were students at the University, those acts cannot form the basis for Plaintiffs' Title VI claim.  *See Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006) ("Stanley, however, has not alleged that the University caused her to undergo, or be vulnerable to, any harassment during the limitations period, a time when she was not present at the University.").  Title VI borrows the "hostile environment" standard from Title VII cases involving hostile environments in the workplace.  *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 214–216 (3d Cir. 2001); *see also Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).  In the Title VII context, courts may consider "harassing acts [that] were directed at others or occurred outside of the plaintiff's presence," but only if the "plaintiff bec[ame] aware during the course of his or her employment" of that harassment.  *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336 (6th Cir. 2008); *see also, e.g., King v. McMillan*, 594 F.3d 301, 310 (4th Cir. 2010); *Schwapp v. Town of Avon*, 118 F.3d 106, 111-12 (2d Cir. 1997).

19

20

21

22

23

24

25

        Accordingly, alleged acts of harassment that happened outside of Plaintiffs' presence are potentially relevant to their Title VI claim only if they were aware of them while they were students at SFSU; past acts of harassment directed at other individuals are potentially relevant only if they occurred close in time to incidents that Plaintiffs personally experienced; and incidents of harassment directed at others are potentially relevant, regardless of timing, only if they are "similar" to acts of harassment that have been experienced directly by the plaintiff.  *See Hawkins*, 517 F.3d at 337; *King*, 594 F.3d at 306–08.

26

27

        The Complaint does not allege incidents other than the Mayor Barkat event and Know Your Rights fair that were directed at, or involved, Plaintiffs.  There is no allegation in the

28

description of the other events that Plaintiffs were aware of such events, that they occurred close in time to the Mayor Barkat event or the Know Your Rights fair, or that they were similar to the latter two events.  Indeed, most of the other events occurred years and even decades prior to Plaintiffs' enrollment at SFSU.  (Compl. ¶¶ 119–32.)  And Plaintiffs' allegations about a professor's meetings with terrorists abroad are not at all related to or similar to the two events underlying Plaintiffs' claims.  (*Id.* ¶¶ 133–36.)  These other events are therefore irrelevant to Plaintiffs' Title VI claim.  *See Felber*, 851 F. Supp. 2d at 1188 ("While such conduct may, to the extent plaintiffs were actually aware of it, have some extremely marginal relevance to plaintiffs' contention that they perceived a hostile environment, acts occurring years before plaintiffs ever enrolled at UC Berkeley, and/or on different campuses entirely, does little to demonstrate that plaintiffs suffered severe and pervasive harassment.").  For the reasons described below, the alleged conduct surrounding the Mayor Barkat event and Know Your Rights fair is not severe or pervasive enough to provide a basis for a deliberate-indifference claim.

        **b.**      <u>**Plaintiffs have not alleged that they suffered discrimination that was severe, pervasive, or objectively offensive.**</u>

To prevail on their Title VI claim, Plaintiffs must show first that the alleged discrimination was severe, pervasive, and objectively offensive.  A few incidents involving even pointed singling out are insufficient to rise to the requisite level of severity and pervasiveness.  *See, e.g.*, *Morgan v. Town of Lexington, MA*, 823 F.3d 737, 745 (1st Cir. 2016) (finding one incident of harassment insufficient); *Wolfe v. Fayetville, Ark. Sch. Dist.*, 648 F.3d 860, 866–67 (8th Cir. 2011) (explaining that insults, teasing, shoving, pushing, and other such actions in school setting are insufficient); *Hendrichsen v. Ball State Univ.*, 107 F. App'x 680, 685 (7th Cir. 2004) (concluding that conduct was not severe or pervasive where it was inappropriate but not physically threatening or humiliating).

The Complaint fails to meet the requisite standard.  As to the Know Your Rights fair, Plaintiffs' conclusory allegation that "other groups—namely GUPS—threatened to pull out of the fair if Hillel were included" is insufficient to sustain an inference that they suffered from discrimination, let alone discrimination that was severe, pervasive, and objectively  offensive.

(Compl. ¶ 143.)  As to the Mayor Barkat event, for the reasons described above, the other

students were engaged in core political speech that was at times severe and offensive but did not

rise to the level of discrimination that was severe, pervasive, and objectively offensive for

purposes of Title VI.  *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 214–217 (3d Cir.

2001) (holding that school district's policy banning verbal or physical conduct that had purpose

or effect of either substantially interfering with a student's educational performance or creating an

intimidating hostile or offensive environment was unconstitutionally overbroad under the First

Amendment).  And it is not obvious how events occurring at the speech would deny Plaintiffs

access to educational opportunities.  *See Felber*, 851 F. Supp. 2d at 1188 ("Despite the fact the

Sproul Plaza likely serves as an important campus thoroughfare and gathering place, it is not even

clear that activities on Sproul Plaza or at Sather Gate necessarily would significantly impede any

student's access to the educational services offered by the University, regardless of the nature of

those activities.").  Even interpreting these incidents as harassment toward Plaintiffs, they would

not constitute harassment sufficiently pervasive to violate Title VI.  *See Davis*, 526 U.S. at 652-53

("Although in theory, a single instance of sufficiently severe one-on-one peer harassment could

be said to have [the systemic effect of denying the victim equal access to an educational program

or activity] we think it unlikely that Congress would have thought such behavior sufficient to rise

to this level in light of the inevitability of student misconduct and the amount of litigation that

would be invited by entertaining claims of official indifference to a single instance of one-on-one

peer harassment.").

        Moreover, even assuming the other incidents alleged throughout the Complaint could

form the basis for Plaintiffs' Title VI claim (they cannot), the Supreme Court has held in the Title

VII context that, in order to constitute harassment under a hostile-environment theory, conduct

must be objectively severe and pervasive such that a reasonable person would agree that it is

harassment.  *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21-22 (1993); *see also Oncale v.*

*Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("[T]he objective severity of harassment

should be judged from the perspective of a reasonable person in the plaintiff's position,

considering all the circumstances.") (internal quotation marks omitted).  A reasonable person

1    would not believe that criticism of Israel is harassment at all, let alone harassment of Jewish

2    students for being Jewish.  In *Finkelshteyn v. Staten Island University Hospital*, 687 F. Supp. 2d

3    66 (E.D.N.Y. 2009), the court rejected a Jewish plaintiff's claim that a co-worker's comments

4    that Israelis "needed to leave the country they were fighting in" created a hostile work

5    environment, finding that the comment instead represented a "disagree[ment] with [plaintiff's]

6    position on volatile geo-political issues." *Id.* at 71, 78; *see also id.* at 82 (holding that a comment

7    that "Israelis should leave Gaza" was not a sign of anti-Semitism).  The other incidents that

8    Plaintiffs allege were harassment include political speeches, demonstrations, online postings, and

9    other similar activities critical of Israel and supportive of Palestinians.  (Compl. ¶¶ 119–136.)

10   These incidents, while perhaps disruptive, are not alleged to have been directed at Plaintiffs or

11   any other Jewish student on the basis of their Jewish background.  These alleged events cannot

12   reasonably be characterized as religiously motivated harassment and therefore cannot support a

13   Title VI student-on-student harassment claim.

14          c.      **Plaintiffs have not alleged that SFSU was deliberately**
                    **indifferent to the discrimination.**

15

16          To prevail on their Title VI claim, Plaintiffs must show second that Defendants acted with

17   deliberate indifference to the alleged discrimination.  "The test for deliberate indifference is

18   'whether a reasonable fact-finder could conclude that the [school]'s response was clearly

19   unreasonable in light of the known circumstances.'" *Doe v. Willits Unified Sch. Dist.*, 473 F.

20   App'x 775, 775–76 (9th Cir. 2012) (quoting *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th

21   Cir. 2006)).  "To meet this high standard there must, in essence, be an official decision not to

22   remedy the violation and this decision must be clearly unreasonable."  *Id.* (citing *Davis v.*

23   *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999)).  A showing of heightened negligence is

24   insufficient.  *Id.*

25          Plaintiffs have not alleged facts sufficient to support an inference that the school's

26   response to the other students' alleged discrimination was objectively unreasonable.  As described

27   above, the school was constitutionally required to balance the students' First Amendment rights

28   with the preservation of the educational process, a balance it properly struck when, for example, it

1   moved the Mayor Barkat event to a larger space off-campus to minimize disruption but allowed

2   both the event and the protests to proceed.  (Compl. ¶¶ 62–66.)  As to the Know Your Rights fair,

3   Plaintiffs make only the conclusory allegations that other students threatened to pull out of the

4   fair and the University then changed the registration deadline, which affected not only Hillel but

5   also other groups.  (*Id.* ¶ 143–44.)  Additionally, by Plaintiffs' own admission, SFSU *did* respond

6   to Plaintiffs' complaints about the Mayor Barkat event by conducting a thorough investigation

7   and issuing a report that explained the University's actions.  (*Id.* ¶¶ 72, 75, 80, 91–92, 107–109.)

8   That it took the University more time than Plaintiffs would have liked to conduct the investigation

9   and that the result was not the one that Plaintiffs wanted does not demonstrate that SFSU was

10  deliberately indifferent or that its conduct in the investigation was clearly unreasonable.

11          First, "[a]n aggrieved party is not entitled to the precise remedy that he or she would

12  prefer."  *Oden*, 440 F.3d at 1089.  Second, the Ninth Circuit has held that even a nine-month

13  delay in conducting disciplinary proceedings, in contravention of an institution's policy, did not

14  support a finding of deliberate indifference.  *See id.* (nine-month delay was insufficient to "permit

15  an inference that the delay was a deliberate attempt to sabotage Plaintiff's complaint or its orderly

16  resolution").  Here, the University did not delay in beginning the investigation and took the time

17  necessary to conduct it thoroughly and effectively.  Even if delay alone could ever constitute

18  deliberate indifference, the delay here was neither "more than negligent, lazy, or careless" nor "a

19  deliberate attempt to sabotage Plaintiff's complaint or its orderly resolution," as would be

20  required to show deliberate indifference.  *Id.*  This approach conforms with the Supreme Court's

21  instruction that "courts should refrain from second-guessing the disciplinary decisions made by

22  school administrators."  *Davis*, 526 U.S. at 648; *see also Felber*, 851 F. Supp. 2d at 1188 ("That

23  the University may not have acted as plaintiffs would prefer does not rise to deliberate

24  indifference." (internal quotation marks omitted)).

                    **d.      Plaintiffs have not alleged that they were deprived of**
25                  **educational benefits.**

26          Finally, to prevail on their Title VI claim Plaintiffs must show that SFSU's deliberate

27  indifference to severe, pervasive, and objectively offensive discrimination deprived Plaintiffs of

28

1    educational benefits and opportunities.  The alleged conduct must have a "concrete, negative

2    effect on [the plaintiff's] ability to receive an education."  *Davis*, 526 U.S. at 654.  To rise to the

3    level of such deprivation, the discrimination "must have a concrete, negative effect on the

4    victims' education . . . such as creating disparately hostile educational environment relative to

5    [the victim's] peer, forcing the student to change his or her study habits or to move to another

6    district, or lowering the student's grades."  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410

7    (5th Cir. 2015) (collecting cases).

8          Plaintiffs have not alleged facts sufficient to support an inference that they faced a hostile

9    environment compared to their peers, that their grades fell, that they had to change their study

10   habits, or that the alleged discrimination in any way affected their access to education.  The

11   Complaint makes two allegations to this effect, stating that the day after the Mayor Barkat event

12   Plaintiff Volk felt sufficiently threatened by a member of GUPS in one of his classes that he was

13   unable to concentrate and had to leave midway through class.  (Compl. ¶ 96.)  Plaintiffs Mandel

14   and Volk allege that they "routinely experienced a similar inability to focus, concentrate, and

15   fully participate in class when anti-Jewish events and sentiment, and the support from SFSU of

16   these events and this sentiment, became overwhelming" (*id.*), and Plaintiff Mandel alleges that he

17   "has missed class due to concerns about his physical safety" (*id.* ¶ 116).  Yet these conclusory

18   statements fail to allege how often this occurred, in response to which events, or how it affected

19   academic performance.  (*Id.*)  Plaintiff Mandel has already graduated, and none of the other

20   Plaintiffs has alleged that she is in danger of not graduating.  Courts have made clear that

21   "[f]inding the harassment pervasive means that the challenged incidents are more than episodic;

22   they must be sufficiently continuous and concerted."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733,

23   745 (2d Cir. 2003) (internal quotation marks omitted); *see also Gabrielle M. v. Park Forest-*

24   *Chicago Heights, IL Sch. Dist.163*, 315 F.3d 817, 823 (7th Cir. 2003 ) (finding no evidence that

25   plaintiff was denied access to education because "[a]lthough [she] was diagnosed with some

26   psychological problems, the record show[ed] that her grades remained steady and her absenteeism

27   from school did not increase"); *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th

28   Cir. 2003) (holding that facts "[fell] short of demonstrating a systemic effect of denying equal

access to an educational program or activity" where students' grades did not suffer and their teachers did not observe any change in their classroom demeanor). Plaintiffs' single allegation fails to meet this standard.

**F.     Plaintiffs' claims for declaratory and injunctive relief fail for the reasons set forth above.**

Plaintiffs have requested relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and injunctive relief based on all of their claims. (Compl. ¶¶ 166, 181, 196, 212, 223, 231–35.) Plaintiffs are not entitled to these remedies, as their claims fail as a matter of law for the reasons stated above.

Additionally, Plaintiff Mandel lacks standing to seek declaratory and injunctive relief. "It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000). Because Plaintiff Mandel has graduated from SFSU, he does not have standing to seek declaratory or injunctive relief with respect to the school's actions or policies.

**V.     CONCLUSION AND REQUEST FOR RELIEF**

For the foregoing reasons, Defendants respectfully request that the Court dismiss all of Plaintiffs' claims against Defendants.

DATED: August 21, 2017

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP
BRADLEY S. PHILLIPS
ADELE M. EL-KHOURI
SETH J. FORTIN

By:＿＿＿/s/ *Bradley S. Phillips*＿＿＿
BRADLEY S. PHILLIPS

Attorneys for Defendants
BOARD OF TRUSTEES OF THE
CALIFORNIA STATE UNIVERSITY, SAN
FRANCISCO STATE UNIVERSITY;
LESLIE WONG; MARY ANN BEGLEY;
LUOLUO HONG; LAWRENCE BIRELLO;
REGINALD PARSON; OSVALDO DEL
VALLE; KENNETH MONTEIRO; BRIAN
STUART; ROBERT NAVA; MARK
JARAMILLA; VERNON PICCINOTTI; AND
SHIMINA HARRIS