BRADLEY S. PHILLIPS (State Bar No. 085263)
SETH J. FORTIN (State Bar No. 302790)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

ADELE M. EL-KHOURI (*Pro hac vice* pending)
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, D.C. 20004
Telephone:     (202) 220-1100
Facsimile:     (202) 220-2300

Attorneys for Defendants
BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY; LESLIE WONG; MARY ANN BEGLEY; LUOLUO HONG; LAWRENCE BIRELLO; REGINALD PARSON; OSVALDO DEL VALLE; KENNETH MONTEIRO; BRIAN STUART; ROBERT NAVA; MARK JARAMILLA; VERNON PICCINOTTI; AND SHIMINA HARRIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MANDEL, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, et al.,<br><br>Defendants. | CASE NO. CV 3:17-cv-03511-WHO<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE COMPLAINT**<br><br>Judge:   Hon. William H. Orrick III<br>Dept:    Courtroom 2, 17th Floor<br>Date:    November 8, 2017<br>Time:    2:00 p.m. |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION TO STRIKE ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD: THE COURT'S POWER TO STRIKE .......................................... 2

III. THE COMPLAINT IS CONFUSING, OPAQUE, AND POORLY ORGANIZED, AND SHOULD BE STRICKEN IN ITS ENTIRETY ........................................................... 3

IV. LARGE QUANTITIES OF REDUNDANT, IMMATERIAL, IMPERTINENT, AND SCANDALOUS MATERIAL SHOULD BE STRICKEN FROM THE COMPLAINT ........................................................................................................................ 4

    A. The Complaint is disorganized and full of redundancies. ........................................ 4

    B. Large sections of the Complaint are legal conclusions or irrelevant legal argumentation. .......................................................................................................... 6

    C. Incidents of anti-Semitism on other campuses are irrelevant. ................................ 6

    D. Historical incidents from decades ago are irrelevant and a scandalous attempt to invoke guilt by association. ...................................................................... 7

    E. The State Department definition of anti-Semitism is irrelevant. ............................. 7

    F. Allegations about anti-Semitic campus speech are irrelevant. ................................ 8

    G. Allegations of threats against Israeli soldiers are irrelevant. .................................... 9

    H. The characterization of Defendant Wong's statement as invoking anti-Semitic stereotypes is unsupported on its face and deliberately scandalous. ............. 9

    I. Allegations regarding Defendant Abdulhadi ............................................................ 11

    J. Mr. Stuart, Mr. Piccinotti, and Ms. Harris as Defendants ...................................... 13

    K. In the alternative, Defendants move for a more definite statement as to Defendants Abdulhadi, Stuart, Piccinotti, and Harris ............................................ 14

V. CONCLUSION AND REQUEST FOR RELIEF .......................................................... 14

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Alvarado-Morales v. Digital Equip. Corp.*,
  843 F.2d 613 (1st Cir. 1988) ............................................................................................. 11

*Alward v. Burrelle's Info. Servs.*,
  No. CV-00-365-PHX-ROS, 2001 WL 1708779 (D. Ariz. Dec. 5, 2001) ................................. 3

*In re Campora*,
  No. 14-CV-5066 JFB, 2015 WL 5178823 (E.D.N.Y. Sept. 3, 2015) ...................................... 3

*Conklin v. Anthou*,
  No. 1:10-CV-02501, 2011 WL 1303299 (M.D. Pa. Apr. 5, 2011) ..................................... 3, 14

*Doe v. W. Am. Province of Capuchin Franciscan Friars*,
  No. 2:14-CV-01428-HZ, 2015 WL 5522016 (D. Or. Sept. 17, 2015) ........................ 3, 10, 11

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) .................. 2, 7

*Fennell v. Marion Indep. Sch. Dist.*,
  804 F.3d 398 (5th Cir. 2015) ................................................................................................. 9

*Garrett v. Selby Connor Maddux & Janer*,
  425 F.3d 836 (10th Cir. 2005) ............................................................................................. 10

*Grayson v. Schriro*,
  No. CIV-05-1749 PHX RCB, 2007 WL 91611 (D. Ariz. Jan. 11, 2007) ................................. 3

*Hatch v. Reliance Ins. Co.*,
  758 F.2d 409 (9th Cir. 1985) ................................................................................................. 4

*Hearns v. San Bernardino Police Dep't*,
  530 F.3d 1124 (9th Cir. 2008) ............................................................................................... 3

*In re Johnson*,
  236 B.R. 510 (D.D.C. 1999) ................................................................................................ 11

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir. 1996) ........................................................................................ 2, 3, 4

*Micromed Tech., Inc. v. Birdsall*,
  No. CIV 13-586-TUC-CKJ, 2014 WL 129049 (D. Ariz. Jan. 3, 2014) ............................. 3, 10

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ............................................................................................................ 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Pigford v. Veneman*,
　215 F.R.D. 2 (D.D.C. 2003) ...........................................................................................10, 11

*Quatela v. Stryker Corp.*,
　820 F. Supp. 2d 1045 (N.D. Cal. 2010) ..........................................................................2, 11

*Sidney-Vinstein v. A.H. Robins Co.*,
　697 F.2d 880 (9th Cir. 1983) ................................................................................................2

*Talbot v. Robert Matthews Distrib. Co.*,
　961 F.2d 654 (7th Cir. 1992) ..............................................................................................11

**FEDERAL STATUTES**

42 U.S.C. § 2000(d) ...................................................................................................... 7, 8, 9, 12

**FEDERAL RULES**

Fed. R. Civ. P. 8 .................................................................................................................. 2, 3, 4

Fed. R. Civ. P. 12(e) ...................................................................................................................14

Fed. R. Civ. P. 12(f) ..................................................................................................... 1, 2, 3, 11

**LEGISLATIVE MATERIALS**

H.R.6421, Anti-Semitism Awareness Act of 2016 .......................................................................8

**OTHER AUTHORITIES**

CNN.com, *Fact Check: Is Obama 'palling around with terrorists'?* (Oct. 5, 2008). .....................13

Cohen, Debra Nussbaum, *Anti-Zionist Hasidic Jews Shake the Room at Brooklyn's
　Barclays Center*, Haaretz (Jun 12, 2017), http://www.haaretz.com/us-
　news/.premium-1.795270 ..................................................................................................12

Ross, Janell, *Why aren't we calling the Oregon occupiers 'terrorists'?*, Washington
　Post (Jan. 3, 2016). .............................................................................................................13

Stern, Kenneth, Letter to Members of Congress (Dec. 6, 2016), *available at*
　http://jkrfoundation.org/wp-content/uploads/2016/12/Letter-to-members-of-
　congress.pdf..........................................................................................................................8

Terkel, Amanda, *Donald Trump Floats Conspiracy Theory That Huma Abedin Has
　Terrorist Ties*, Huffington Post (Aug. 29, 2016),
　http://www.huffingtonpost.com/entry/donald-trump-huma-
　abedin_us_57c4aaafe4b09cd22d92273c. ..........................................................................13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Terry, Josh, *Let's laugh at this blogger who called Beyoncé an 'urban terrorist'*, Chicago Tribune (Apr. 25, 2016), http://www.chicagotribune.com/redeye/redeye-beyonce-lemonade-drudge-role-model-urban-terrorist-20160425-story.html ..........................................................................13

**NOTICE OF MOTION AND MOTION TO STRIKE**

PLEASE TAKE NOTICE THAT on November 8, 2017 at 2:00 p.m., in the Courtroom of the Honorable William H. Orrick III, 450 Golden Gate Avenue, San Francisco, California, defendants Board of Trustees of the California State University, Leslie Wong, Mary Ann Begley, Luoluo Hong, Lawrence Birello, Reginald Parson, Osvaldo Del Valle, Kenneth Monteiro, Brian Stuart, Robert Nava, Mark Jaramilla, Vernon Piccinotti, and Shimina Harris (collectively, "Defendants") will and hereby do move pursuant to Federal Rule of Civil Procedure 12(f) to strike redundant, immaterial, impertinent, and scandalous portions of the Complaint. The motion is based on this notice, the memorandum of points and authorities that follows, all pleadings and papers filed herein, oral argument of counsel, and any other matter which may be submitted at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs' Complaint, weighing in at a gravitationally significant 72 pages and comprising over 235 paragraphs, is bloated with irrelevancies, redundancies, groundless personal attacks, and legal conclusions—to the point that the legal claims themselves are obscure and hard to understand. Defendants are entitled to a "short and plain statement of the claim[s]," Fed. R. Civ. P. 8(a)(2), so that they may formulate an answer and so that all parties (including the Court) "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Plaintiffs' allegations are neither short nor plain and, "[r]ather than set out the basis for a lawsuit, the pleading seems designed to provide quotations for newspaper stories." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). To the extent that the Court declines to dismiss the Complaint altogether (*see* Motion to Dismiss filed herewith), Defendants respectfully request that the Court strike certain portions of the Complaint, so that Defendants and the Court may get down to the business of addressing the merits of Plaintiffs' actual claims.

## II. LEGAL STANDARD: THE COURT'S POWER TO STRIKE

Rule 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question. Superfluous historical allegations are a proper subject of a motion to strike." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citations and internal quotation marks omitted), *rev'd on other grounds,* 510 U.S. 517 (1994).

"Scandalous matters are allegations that unnecessarily reflect on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Quatela v. Stryker Corp.*, 820 F. Supp. 2d 1045, 1050 (N.D. Cal. 2010) (citations and internal quotation marks omitted). A court may strike as scandalous "defamatory material," *Alward v. Burrelle's Info. Servs.*, No. CV-00-365-PHX-ROS, 2001 WL 1708779, at *9 (D. Ariz. Dec. 5, 2001); "statements that amount to name-calling and are argumentative or disrespectful," *Micromed Tech., Inc. v. Birdsall*, No. CIV 13-586-TUC-CKJ, 2014 WL 129049, at *3 (D. Ariz. Jan. 3, 2014); and derogatory allegations with "no apparent basis," *In re Campora*, No. 14-CV-5066 JFB, 2015 WL 5178823, at *8 (E.D.N.Y. Sept. 3, 2015), whose "only effect" is to "embarrass Defendants." *Doe v. W. Am. Province of Capuchin Franciscan Friars*, No. 2:14-CV-01428-HZ, 2015 WL 5522016, at *6 (D. Or. Sept. 17, 2015). "Rule 12(f) protects parties from the improper use of judicial filings to broadcast scandalous or defamatory material." *Id.*

A district court has "ample remedial authority to relieve a defendant of the burden of responding to a complaint with excessive factual detail." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008). This includes the authority to strike large portions of the complaint if they are mere "surplusage." *Id.* (stating that the district court could strike *38 pages* of surplus allegations from the complaint).

### III. THE COMPLAINT IS CONFUSING, OPAQUE, AND POORLY ORGANIZED, AND SHOULD BE STRICKEN IN ITS ENTIRETY

Rule 8(a)(2) requires a pleading party to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." "When a complaint fails to comply with the requirements of Rule 8(a), the district court has the power, on motion or sua sponte, to dismiss the complaint or to strike those parts of the complaint that are redundant or immaterial." *Grayson v. Schriro*, No. CIV-05-1749 PHX RCB, 2007 WL 91611, at *3 (D. Ariz. Jan. 11, 2007). While it may be possible in some cases to strike just portions of the complaint, in other cases the pleading may be "so saturated with redundant, immaterial, impertinent, and scandalous matter so as to make precise surgery to excise the offending portions virtually impossible." *Conklin v. Anthou*, No. 1:10-CV-02501, 2011 WL 1303299, at *2 (M.D. Pa. Apr. 5, 2011). In such cases, the Court may strike or dismiss the entire complaint and require a pleading that conforms to Rule 8. *Id.* (striking complaint); *McHenry v. Renne*, 84 F.3d 1172, 1176–78 (9th Cir. 1996) (affirming dismissal).

As will be explained further below, and as in *McHenry*, the Complaint is "argumentative, prolix, replete with redundancy, and largely irrelevant. It consists largely of immaterial background information . . . ." *Id.* at 1177. As in *Hatch v. Reliance Ins. Co.*, the Complaint "exceed[s] 70 pages in length" and is "confusing and conclusory." 758 F.2d 409, 415 (9th Cir. 1985). The large quantities of material unmoored from any claim, the sections spent recapitulating irrelevant history and/or other parts of the Complaint, legal argument disguised as allegations of fact, and unsupportable attempts to smear several defendants all add up to a Complaint that is nearly impossible to answer. It should be stricken in its entirety, and the Court should require Plaintiffs to comply with Rule 8 by filing a short, plain statement of their alleged claims, shorn of the immaterial, repetitive, and confusing airing of grievances that bloats the current Complaint.

IV. **LARGE QUANTITIES OF REDUNDANT, IMMATERIAL, IMPERTINENT, AND SCANDALOUS MATERIAL SHOULD BE STRICKEN FROM THE COMPLAINT**

The Complaint is redundant and confusing, needlessly treading the same ground over again. It is also packed with immaterial and impertinent allegations. This places an extraordinary and unwarranted burden on Defendants in responding to the claims and on the Court in refereeing them. Additionally, several of the allegations are inflammatory and needlessly cast aspersions on the character of certain defendants and should be stricken as scandalous as well as immaterial and impertinent.

    A. **The Complaint is disorganized and full of redundancies.**

Rather than making a plain, short statement of their case, Plaintiffs fill pages with either repeated boilerplate or multiple sets of allegations that appear to be duplicative.

For example, Defendants take four pages to identify the parties, because each Plaintiff is described in needlessly repetitive boilerplate. (*Compare* Compl. ¶ 22 ("due to the intentional exclusion of Hillel from the 'Know Your Rights' Fair, Mr. Mandel was denied the opportunity to equally participate in and benefit from that event . . . . Mr. Mandel has been verbally and physically threatened and targeted on SFSU's campus based on his Jewish identity, and has personally experienced the University's intentional discrimination and deliberate indifference to SFSU's pervasively hostile anti-Jewish environment. These experiences have caused Mr. Mandel to miss class at SFSU and have deprived Mr. Mandel of equal access to the educational opportunities or benefits provided by SFSU and CSU to similarly situated students who are non-Jewish or who choose to not be open about their Jewish identity"), *with* ¶¶ 23-24 (virtually identical language); *compare* ¶ 25 ("Plaintiff Masha Merkulova is a Jewish member of the community who came to SFSU with her son on April 6, 2016 to hear Mayor Barkat's speech. Like the other attendees, she was deprived of the right to hear Mayor Barkat's speech or otherwise meaningfully participate in the event and express her views. She was among the group of attendees verbally and physically threatened by the disruptive individuals at the event."), *with* ¶¶ 26-27 (identical language).)

1        Plaintiffs also needlessly spend over five pages on a "Summary of the Action" that—to the extent that it is not argumentative or irrelevant, *see* Parts IV.B-G, *infra*—is largely redundant with later sections of the Complaint. (*Compare, e.g., id.* at ¶¶ 5-9 (describing the Mayor Barkat speech), *with* ¶¶ 61-78 (same).)

At the same time, these redundancies are not simply grouped together in a way that would make them easy to respond to. Rather, they are sprinkled throughout the Complaint in a way that makes it unclear how Defendants should respond, or what causes of action certain allegations are pertinent to. For example, allegations of a supposedly anti-Semitic environment at SFSU are spread across at least six sections of the complaint and mixed in with irrelevancies, such as conditions on other college campuses or historical events from decades ago. (*Compare id.* at 1 (section titled "Exponential Rise in Anti-Semitism"), *with id.* at 1-2 ("San Francisco State University"), *id.* at 4-6 ("SFSU's Environment of Pervasive Racial Discrimination"), *id.* at 11-16 ("SFSU's Egregious History of Virulent Anti-Semitism and Civil Rights Violations"), *id.* at 40 ("Defendants' Selective Protection of Free Speech Discriminates Against Jews"), *and id.* at 59-61 ("Despite Repeated Promises and Declarations, SFSU Has Failed to Cure these Systemic Problems").)

These sections tell and re-tell the same narratives with slightly different details. (*See, e.g.*, Compl. ¶¶ 119, 122 (telling different parts of the Omar Barghouti story); *id.* at ¶¶ 80, 122 (telling different parts of the hunger strike story); *id.* at ¶¶ 47, 119 (giving different details about a speech by "Khalid Abdul Muhammad" and "Khalid Muhammad"—apparently, though not certainly, the same person).) To answer the Complaint, Defendants would be forced to unravel these varying strands and attempt to re-weave them into a coherent narrative.

Moreover, despite the surfeit of historical detail, the Complaint is extremely vague about which details constitute the factual grounding for each of its claims. For example, which of the six or more sections detailing alleged anti-Semitism map to the claim that "Plaintiffs Mandel, Volk and Kern have been subjected to discrimination by SFSU and CSU based on their Jewish ancestry and religion"? (*Id.* at ¶ 220.) It is impossible to say from this Complaint.

B. **Large sections of the Complaint are legal conclusions or irrelevant legal argumentation.**

Much of the Complaint cannot, by any stretch of the imagination, be considered factual allegation. Rather, it contains page after page of conclusory legal argument—or simple grandstanding. The Complaint features, for example, unnecessary references to a non-specific "dangerous assault on First Amendment rights on college campuses by administrators and officials who support the suppression of free speech"; the opinions of an attorney unconnected to this case about campus speech generally; generic descriptions of what "[u]niversities should be," and unsourced summaries of what "courts have ruled." And that is just in the "Summary of the Action." (Compl. ¶¶ 10-11.)

Plaintiffs also spend numerous pages conclusorily asserting violations of various campus codes and state criminal laws, notwithstanding that this Court is neither a school honor board nor a state criminal court, and the protestors are not defendants here. (*Id.* at ¶¶ 79-80, including subparagraphs.) Such legal assertions are at best tangential to the claims at issue, and, more importantly, Defendants have no way of answering them without themselves engaging in substantial legal argumentation in the responsive pleading.

The Complaint also thinly disguises legal argumentation and conclusions as the thoughts of a Plaintiff: "He felt overcome by the devastating realization that the administration would continue to deny the basic civil rights of the audience, just as they had always refused to treat Jews equally on campus." (*Id.* at ¶ 82.) "Mr. Volk . . . sens[ed] that the disruptors wished to conceal their identities to avoid the consequences of their unlawful activity." (*Id.* at ¶ 83.)

C. **Incidents of anti-Semitism on other campuses are irrelevant.**

Plaintiffs devote a third of a page to alleging an "exponential rise" in anti-Semitic incidents on campuses nationwide. (Compl. ¶ 1.) Whether true or not, these allegations cannot have any effect on the claims or defenses in this case and should be stricken. *Fantasy, Inc.*, 984 F.2d at 1527.

1   **D.    Historical incidents from decades ago are irrelevant and a scandalous attempt to invoke guilt by association.**

Plaintiffs, in an attempt to tar present administrators (and, for that matter, students) with alleged anti-Semitism of the past, devote *pages* to allegations of discrimination (or simply free speech activities they find offensive) in the 1990s and early 2000s. (Compl. ¶¶ 4, 46-48, 50-53, 55-59, 119, 121-22.) These alleged incidents are paraded before the Court as horribles *in se*, but without any attempt to tie them to present-day administrators, present conditions on campus, or *any actual harm to these Plaintiffs*.

Similarly, the academic politics of a debate over the funding and status of the Jewish Studies Department or a donation to the university (*id.* at ¶¶ 54, 114-15) has *no connection to the Plaintiffs*. There are no allegations that Plaintiffs attempted to take Jewish Studies classes and were denied the opportunity, and the Complaint suggests that the department is in fact thriving. *Id.* Whatever faculty members may have felt about being asked to attend a meeting with a donor, none of those faculty members is a plaintiff here.

"Superfluous historical allegations are a proper subject of a motion to strike." *Fantasy, Inc*, 984 F.2d at 1527. Plaintiffs' superfluous history and faculty lounge gossip should be stricken.

**E.    The State Department definition of anti-Semitism is irrelevant.**

Plaintiffs devote nearly a full page to a "working definition of anti-Semitism" "adopted" by the U.S. State Department. (Compl. ¶42.) The State Department, of course, is not charged with enforcing Title VI of the Civil Rights Act, 42 U.S.C. § 2000(d), on university campuses, and naturally any definition of anti-Semitism it creates will not be tailored to that end. The State Department definition does *not* apply to college campuses under Title VI, as evidenced by the fact that Congress recently debated (but has not passed) a bill that would incorporate the State Department definition into Title VI. *See* H.R.6421, Anti-Semitism Awareness Act of 2016, *available at* https://www.congress.gov/bill/114th-congress/house-bill/6421/text. Kenneth Stern, the lead author of the definition and a longtime crusader against anti-Semitism, has explicitly stated in a letter to Congress that "[t]he definition was never intended to be used to limit speech on

a college campus; it was written for European data collectors to have a guideline for what to include and what to exclude in reports." Kenneth Stern, Letter to Members of Congress (Dec. 6, 2016), *available at* http://jkrfoundation.org/wp-content/uploads/2016/12/Letter-to-members-of-congress.pdf.  The State Department definition is irrelevant, confuses the issues as to the standard under Title VI, and should be stricken.

### F. Allegations about anti-Semitic campus speech are irrelevant.

Plaintiffs devote numerous pages to detailing alleged anti-Semitic statements made on the SFSU campus.  (*E.g.*, Compl. ¶ 119 and subparagraphs.)  They suggest that these "examples are noteworthy to demonstrate the rabidly anti-Semitic speech and conduct that is supported on campus, as compared with the assault on the free speech rights of Plaintiffs and other Jews."  (*Id.*)  But that comparison is logically inapposite, in terms of either free speech, equal protection or Title VI doctrine.  As to free speech, the question is whether *Plaintiffs' speech* was unduly restricted, regardless of their Jewishness, and under circumstances similar to those in which others were allowed to speak freely.  Plaintiffs' examples do not address this question. They do not allege, for example, that Khalid Muhammad, Malik Ali, Omar Barghouti or Bassem Tamimi were better-protected against disruptive protesters than Mayor Barkat.

As to equal protection or Title VI, it does not matter what other *viewpoints* are expressed on campus; the question is whether members of other *ethnicities and religions* are afforded greater speech opportunities than Jewish students.  A comparison between the expression of allegedly anti-Semitic *viewpoints* on the one hand and the speech of "Plaintiffs and other Jews" on the other mixes apples and oranges.

Finally, these allegations are immaterial and impertinent to any sort of hostile environment claim under Title VI.  As noted above, most of these incidents occurred years ago. (*See* Part IV.D., *supra*.)  They are therefore irrelevant to whether there is *currently* a hostile environment on campus.  And Omar Barghouti and Bassem Tamimi—alleged to have spoken on campus in 2009 and 2015, respectively—are not actually alleged to have made any anti-Semitic remarks during their talks or in any other capacity on campus.  (Compl. ¶ 119.)  Rather, the sole allegations about them concern their *off-campus* activities (and, in the case of Tamimi, acts by his

family members).  All of this is utterly irrelevant to the question whether Defendants have created or tolerated a pervasively hostile environment on campus.[1]

Because allegations of supposedly anti-Semitic speech by campus speakers are analytically irrelevant to Plaintiffs' claims, they should be stricken from the complaint as immaterial and impertinent.

### G.  Allegations of threats against Israeli soldiers are irrelevant.

The Complaint devotes four full pages to one student's alleged statements regarding wanting to hurt or kill Israeli soldiers.  (Compl. ¶¶ 97, 129-32.)  But Plaintiffs are not Israeli soldiers and do not live in Israel.  The Complaint does not allege that Plaintiffs were personally harmed, or even frightened, by these threats.  These allegations can therefore have no relationship to Plaintiffs' claims—including the Title VI claim, which, as discussed in more detail in the Motion to Dismiss, requires Plaintiffs to allege that the complained-of acts "deprived Plaintiffs of access to the educational opportunities or benefits provided by the school."  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (brackets omitted).  These allegations are therefore not related to any claim and should be stricken from the Complaint.

### H.  The characterization of Defendant Wong's statement as invoking anti-Semitic stereotypes is unsupported on its face and deliberately scandalous.

Plaintiffs allege that Defendant Wong stated that Jewish students, like other students, should go through normal institutional channels (i.e., address initial complaints to lower level officials), and that he believed that the students were taking up too much of his time and had too much access to his office.  (Compl. ¶ 112.)  Even if true, such statements are, on their face, the innocuous complaints of an overburdened school official.  Yet Plaintiffs characterize this normal and reasonable request as "invoking an anti-Semitic trope of Jewish power," a "reference to Jews' disproportional power," and "a well-established anti-Semitic stereotype, attributable directly to the . . . 'Protocols of the Elders of Zion,'" an infamous anti-Semitic tract.  (*Id.*; *and see* Compl. ¶ 48

---

[1] Additionally, for the reasons discussed in more depth in the Motion to Dismiss filed herewith, these factual allegations cannot support a hostile environment claim under Title VI because the university lacked the authority to restrict these speakers' political speech, which is protected by the First Amendment, on the grounds that it is allegedly anti-Semitic.  (*See* MTD, Parts IV.E.2-3.)

-9- CASE NO. 3:17-CV-03511-WHO
DEFENDANTS' NOTICE OF MOT. AND MOT. TO STRIKE

1  (noting the use of the 'Protocols' as Nazi propaganda).)  These assertions are so far from plausible
2  that they serve no legitimate purpose and bear no relationship to any claim; their sole purpose here
3  is to embarrass, harass, and silence President Wong and to provide fodder for press clippings.
4     "[C]ourts have refused to permit their files to serve as reservoirs of libelous
5  statements for press consumption."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).
6  "The federal courts do not provide a forum for mudslinging, name calling and 'privileged'
7  defamation."  *Micromed Tech., Inc. v. Birdsall*, No. CIV 13-586-TUC-CKJ, 2014 WL 129049, at
8  *3 (D. Ariz. Jan. 3, 2014).  To this end, "Rule 12(f) protects parties from the improper use of
9  judicial filings to broadcast scandalous or defamatory material."  *Doe v. W. Am. Province of*
10 *Capuchin Franciscan Friars*, No. 2:14-CV-01428-HZ, 2015 WL 5522016, at *6 (D. Or. Sept. 17,
11 2015).  "[I]f the complaint or other pleadings are abusive or contain offensive language, they may
12 be stricken . . . under the inherent powers of the court."  *Garrett v. Selby Connor Maddux & Janer*,
13 425 F.3d 836, 841 (10th Cir. 2005).
14    Numerous cases have stricken obviously groundless accusations in pleadings and
15 other filings.  In *Pigford v. Veneman*, 215 F.R.D. 2 (D.D.C. 2003), the plaintiffs' counsel, with "no
16 factual basis," accused defense counsel of "contempt for 'lawyers of color'" as well as of
17 "exhibit[ing] . . . [a] racist attitude."  *Id.* at 3-4.  The court held that

> Chestnut, Sanders' charges of racism are plainly scandalous within the meaning of the Rule, in that they "improperly cast[ ] a derogatory light" on a dedicated government attorney . . . .  The accusations are indefensible and wholly inappropriate and have no place in filings in this court.
> Because **the accusations of racism in the Chestnut, Sanders filings are unsupported by facts or evidence, constitute a form of harassment, and are scandalous**, the Court will grant defendant's motion to strike Chestnut, Sanders' Response.

23 *Id.* at *4-5 (emphasis added).
24    As in *Pigford*, the accusation against President Wong is unsupported and
25 unsupportable on its face.  The allegation that President Wong "nodded" when someone else
26 stated that "'Zionist power' and 'Jewish power' allusions were categorically anti-Semitic" does
27 not support the "anti-Semitic" allegation about him, since there is no allegation that President
28 Wong made any similar allusion to "Zionist power" or "Jewish power."  His complaint, *as alleged*

*by Plaintiffs themselves*, was directed toward specific students who had circumvented the university's established channels, not "Jews" or "Jewish power" or anything else like it. The accusation is hollow.

Similarly, in *Alvarado-Morales v. Digital Equip. Corp.*, the use of such terms as "concentration camp," "brainwash" and "torture"—"repugnant words replete with tragic historical connotations"—to describe a voluntary retirement program was held to have "no place in pleadings before the court." 843 F.2d 613, 618 (1st Cir. 1988). Here, too, Plaintiffs grotesquely invoke the historical horrors of the Holocaust to describe an official's asking them to direct their inquiries to someone else.[2]

Plaintiffs unnecessarily couch this portion of their Complaint in "repulsive language that detracts from the dignity of the court" in order to "cast a cruelly derogatory light on a[nother] party." *Quatela*, 820 F. Supp. 2d at 1050. The entire passage should be stricken from the Complaint.

### I.     Allegations regarding Defendant Abdulhadi

Plaintiffs devote nearly two pages to complaining about Defendant Abdulhadi's[3] allegedly meeting with, in their words, "terrorists," and an alleged "political litmus test" in her classes. (Compl. ¶¶ 133-36.) Plaintiffs also allege that Professor Abdulhadi "effectively conscripted Ethnic Studies students . . . to demand increased funding for [the Ethnic Studies department] by staging a hunger strike." (*Id.* at ¶ 122.) None of these events or practices is tied to any of the claims Plaintiffs asserts.

Even assuming Plaintiffs' allegations are true, not one of them supports a First Amendment, Fourteenth Amendment, or Title VI claim against Professor Abdulhadi. Her

---

[2] Other courts have stricken such plainly meritless, distracting, and harassing accusations as "scandalous matter" under Rule 12(f). *See, e.g.*, *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992) (court struck allegations of intentional food poisoning and fraud that were "devoid of any factual basis"); *In re Johnson*, 236 B.R. 510, 523 (D.D.C. 1999) ("[T]he allegations of the Trustee being a 'liar' are so devoid of the necessary evidence to sustain them that they amount to little more than name-calling.").

[3] Moving Defendants' counsel do not represent Professor Abdulhadi, but Defendants move to strike these allegations because Plaintiffs' apparently purport to sue her in her official capacity as an employee of the University.

1   meetings and any hunger strike she may have engaged in are protected speech and associational

2   activities and in any event are not alleged to have caused Plaintiffs any harm.  The allegation that

3   she organized a hunger strike to raise money for her department does not suggest a diminishment

4   of Plaintiffs' speech, assembly, or association rights.  Nor would such an act create an

5   environment of racial or religious hostility that could support a Title VI claim.  Even if it were true

6   that Professor Abdulhadi requires a *political* litmus test regarding Israel or Zionism in her class,

7   this would also not support a claim of discrimination under Title VI, since Zionism is not a

8   defining trait of either racial Jewishness or religious Judaism, and many Jews do not subscribe to

9   Zionism.[4]  There is also no allegation that any Plaintiff took a class from Professor Abdulhadi or

10  even wanted to do so.  Plaintiffs simply do not allege that Professor Abdulhadi harmed them in

11  any way.  These allegations are therefore immaterial and impertinent.

12         The allegations are immaterial for the further reason that Plaintiffs do not even

13  purport to assert any actual cause of action against Professor Abdulhadi.  She is not named as a

14  defendant for any cause of action except a request for declaratory judgment (which sweeps in "all

15  Defendants"), the substance of which merely echoes the five other causes of action in which she is

16  *not* named.  In effect, there is simply no claim against her to which any of the above-mentioned

17  allegations could bear any material relationship.

18         Because they are not relevant to any cause of action, the allegations regarding

19  Professor Abdulhadi's "meeting with terrorists" should also be stricken as scandalous.  As with

20  the assertions about President Wong noted above, they are an obvious attempt to draw headlines

21  and smear Professor Abdulhadi's name, without any utility in resolving the claims in this action.

22  The inflammatory term "terrorist" is routinely applied in a highly political and racially charged

23  manner to demonize brown, black, and Muslim people.[5]  The attempt to associate Professor

---

[4] *See, e.g.*, Debra Nussbaum Cohen, *Anti-Zionist Hasidic Jews Shake the Room at Brooklyn's Barclays Center*, Haaretz (Jun 12, 2017), http://www.haaretz.com/us-news/.premium-1.795270 (last accessed Aug. 18, 2017) (quoting a Hasidic Jew: "We feel very strongly that there should not be and could not be a State of Israel before the Messiah comes . . . .").

[5] *See*, *e.g.*, Josh Terry, *Let's laugh at this blogger who called Beyoncé an 'urban terrorist'*, Chicago Tribune (Apr. 25, 2016), http://www.chicagotribune.com/redeye/redeye-beyonce-

Abdulhadi with violence by alleging that she met with Leila Khaled is analogous to scurrilous attempts to paint Barack Obama as "pallin' around with terrorists" because of his association with 1960s radical William Ayers.[6] These allegations should be stricken as scandalous.

### J. Mr. Stuart, Mr. Piccinotti, and Ms. Harris as Defendants

Plaintiffs do purport to name Defendants Brian Stuart, Vernon Piccinotti, and Shimina Harris as defendants in their substantive claims. Stuart and Harris are named as defendants in the First, Second, and Third Causes of Action, while Piccinotti is named as to the Third Cause of Action. (Compl. at 61:12-13, 63:7-8, 65:4-6.) The problem is that there are no factual allegations that could conceivably support any claim for relief against any of them.

The allegations regarding Mr. Stuart (apart from his employment status) are as follows: he *received* an email on March 30, 2016 regarding Hillel reserving a room (Compl. ¶ 63); he *received* an email notifying him that there was a potentially controversial speaker at a student event (Compl. ¶ 65); in an investigative narrative, he noted several possible student code violations by students (Compl. ¶ 80); and he wrote an email to a student protestor offering security support. (Compl. ¶ 122.)

The sole factual allegation as to Mr. Piccinotti (apart from his employment status) is that he *received* an email on March 30, 2016 regarding Hillel reserving a room. (Compl. ¶ 63.)

There are no factual allegations at all as to Harris.

There are literally no allegations that any of these Defendants took any action of any kind that harmed Plaintiffs. References to them as defendants in the individual causes of action should be stricken as immaterial to those causes of action.

---

lemonade-drudge-role-model-urban-terrorist-20160425-story.html; Amanda Terkel, *Donald Trump Floats Conspiracy Theory That Huma Abedin Has Terrorist Ties*, Huffington Post (Aug. 29, 2016), http://www.huffingtonpost.com/entry/donald-trump-huma-abedin_us_57c4aaafe4b09cd22d92273c. *Cf.* Janell Ross, *Why aren't we calling the Oregon occupiers 'terrorists'?*, Washington Post (Jan. 3, 2016), https://www.washingtonpost.com/news/the-fix/wp/2016/01/03/why-arent-we-calling-the-oregon-militia-terrorists/?utm_term=.3a6c94bcbf7f. (All links last accessed Aug. 18, 2017.)

[6] *See Fact Check: Is Obama 'palling around with terrorists'?*, CNN.com (Oct. 5, 2008), http://politicalticker.blogs.cnn.com/2008/10/05/fact-check-is-obama-palling-around-with-terrorists/. (Last accessed Aug. 18, 2017.)

1  **K.    In the alternative, Defendants move for a more definite statement as to Defendants Abdulhadi, Stuart, Piccinotti, and Harris**

3    In the alternative, Defendants respectfully request that the Court order Plaintiffs to make a more definite statement as to exactly how any unlawful conduct by Defendants Abdulhadi, Stuart, Piccinotti, or Harris has harmed them.  "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  As the Complaint stands, these four Defendants cannot determine what, if any, actions they are alleged to have taken that form the basis of Plaintiffs' claims and so cannot reasonably answer those claims.

If Plaintiffs do not or cannot provide a more definite statement, the Court has the authority to strike the allegations and the claims against these Defendants.  *Id.*

**V.    CONCLUSION AND REQUEST FOR RELIEF**

Because the Complaint is "saturated with redundant, immaterial, impertinent, and scandalous matter," striking just portions of it may prove "virtually impossible." *Conklin*, 2011 WL 1303299, at *2.  Defendants therefore respectfully request that the Court strike the Complaint in its entirety.

In the alternative, and at a minimum, Defendants respectfully request that the Court strike the following portions of the Complaint:

- The redundant "Summary of the Action" section (Compl. ¶¶ 1-16.)
- Immaterial and impertinent references to events from the 1990s and 2000s—especially the mere recounting of irrelevant protected speech under circumstances not comparable to the complained-of events.  (Compl. ¶¶ 46-48, 50-53, 55-59, 119, 121-22.)
- Immaterial, impertinent, and conclusory assertions of violations of student codes and state criminal laws.  (Compl. ¶¶ 79-80.)
- Immaterial and impertinent allegations regarding the funding or status of the Jewish Studies department.  (Compl. ¶¶ 54, 114-15.)

- Immaterial and impertinent State Department definition of anti-Semitism.  (Compl. ¶ 42.)
- Immaterial and impertinent references to alleged threats against Israeli soldiers. (Compl. ¶¶ 97, 129-32.)
- Immaterial, impertinent, and scandalous references to Defendant Wong's statement that Jewish students should go through proper university channels.  (Compl. ¶¶ 112-13.)
- Immaterial, irrelevant, and scandalous references to Defendant Abdulhadi's "meeting with terrorists."  (Compl. ¶¶ 133-36.)
- Immaterial and impertinent references to Defendant Abdulhadi's allegedly organizing a hunger strike.  (Compl. at ¶¶ 80, 122.)
- All references to Defendants Abdulhadi, Stuart, Piccinotti, and Harris as defendants.  (Compl. at 61:12-13, 63:7-8, 65:4-6, 70: 21-22.)  In the alternative, Defendants move for a more definite statement of the claims against these four purported defendants.

DATED: August 21, 2017

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP
   BRADLEY S. PHILLIPS
   ADELE M. EL-KHOURI
   SETH J. FORTIN

By:   /s/ *Bradley S. Phillips*
      BRADLEY S. PHILLIPS

Attorneys for Defendants
BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY; LESLIE WONG; MARY ANN BEGLEY; LUOLUO HONG; LAWRENCE BIRELLO; REGINALD PARSON; OSVALDO DEL VALLE; KENNETH MONTEIRO; BRIAN STUART; ROBERT NAVA; MARK JARAMILLA; VERNON PICCINOTTI; AND SHIMINA HARRIS