1  BRADLEY S. PHILLIPS (State Bar No. 085263)
   SETH J. FORTIN (State Bar No. 302790)
2  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
3  Los Angeles, CA 90071-1560
   Telephone:     (213) 683-9100
4  Facsimile:     (213) 687-3702

5
   ADELE M. EL-KHOURI (*Pro hac vice* pending)
6  MUNGER, TOLLES & OLSON LLP
   1155 F Street, NW, 7th Floor
7  Washington, D.C. 20004
   Telephone:    (202) 220-1100
8  Facsimile:    (202) 220-2300

9
   Attorneys for Defendants
10 BOARD OF TRUSTEES OF THE CALIFORNIA
   STATE UNIVERSITY, SAN FRANCISCO STATE
11 UNIVERSITY; LESLIE WONG; MARY ANN
   BEGLEY; LUOLUO HONG; LAWRENCE
12 BIRELLO; REGINALD PARSON; OSVALDO
   DEL VALLE; KENNETH MONTEIRO; BRIAN
13 STUART; ROBERT NAVA; MARK JARAMILLA;
   VERNON PICCINOTTI; AND SHIMINA HARRIS

14
                    UNITED STATES DISTRICT COURT
15
                   NORTHERN DISTRICT OF CALIFORNIA
16

17
   JACOB MANDEL, et al.                  CASE NO. CV 3:17-cv-03511-WHO
18
                Plaintiffs,              **NOTICE OF MOTION AND MOTION TO**
19                                       **STRIKE PORTIONS OF THE FIRST**
         vs.                             **AMENDED COMPLAINT**
20
   BOARD OF TRUSTEES OF THE              Judge:    Hon. William H. Orrick III
21 CALIFORNIA STATE UNIVERSITY,          Dept:     Courtroom 2, 17th Floor
   SAN FRANCISCO STATE                   Date:     November 8, 2017
22 UNIVERSITY, et al.,                   Time:     2:00 p.m.

23           Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO STRIKE ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.     INTRODUCTION .......................................................................................................... 1

II.    LEGAL STANDARD: THE COURT'S POWER TO STRIKE ....................................... 2

III.   THE COMPLAINT IS CONFUSING, OPAQUE, AND POORLY ORGANIZED, AND SHOULD BE STRICKEN IN ITS ENTIRETY ....................................................... 3

IV.    LARGE QUANTITIES OF REDUNDANT, IMMATERIAL, IMPERTINENT, AND SCANDALOUS MATERIAL SHOULD BE STRICKEN FROM THE COMPLAINT .................................................................................................................. 4

       A.     The Complaint is disorganized and full of redundancies. ................................. 4

       B.     Large sections of the Complaint are legal conclusions or irrelevant legal argumentation. ..................................................................................................... 6

       C.     Incidents of anti-Semitism on other campuses are irrelevant. .......................... 7

       D.     Historical incidents from decades ago are irrelevant and a scandalous attempt to invoke guilt by association. ............................................................. 7

       E.     The State Department definition of anti-Semitism is irrelevant. ...................... 8

       F.     Allegations about anti-Semitic campus speech are irrelevant. ......................... 8

       G.     Allegations of threats against Israeli soldiers are irrelevant. ........................... 9

       H.     The characterization of Defendant Wong's statement as invoking anti-Semitic stereotypes is unsupported on its face and deliberately scandalous. ......... 10

       I.     Allegations regarding Defendant Abdulhadi ................................................... 12

       J.     Mr. Stuart, Mr. Piccinotti, and Ms. Harris as Defendants ............................. 14

       K.     In the alternative, Defendants move for a more definite statement as to Defendants Abdulhadi, Stuart, Piccinotti, and Harris ..................................... 15

V.     CONCLUSION AND REQUEST FOR RELIEF .......................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alvarado-Morales v. Digital Equip. Corp.*,
   843 F.2d 613 (1st Cir. 1988) ...............................................................................11

*Alward v. Burrelle's Info. Servs.*,
   No. CV-00-365-PHX-ROS, 2001 WL 1708779 (D. Ariz. Dec. 5, 2001) ..................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................14

*In re Campora*,
   No. 14-CV-5066 JFB, 2015 WL 5178823 (E.D.N.Y. Sept. 3, 2015) ..........................................2

*Conklin v. Anthou*,
   No. 1:10-CV-02501, 2011 WL 1303299 (M.D. Pa. Apr. 5, 2011) ........................................3, 15

*Doe v. W. Am. Province of Capuchin Franciscan Friars*,
   No. 2:14-CV-01428-HZ, 2015 WL 5522016 (D. Or. Sept. 17, 2015)............................2, 10, 11

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ........................2, 7

*Fennell v. Marion Indep. Sch. Dist.*,
   804 F.3d 398 (5th Cir. 2015)...............................................................................9

*Garrett v. Selby Connor Maddux & Janer*,
   425 F.3d 836 (10th Cir. 2005)...............................................................................10

*Grayson v. Schriro*,
   No. CIV-05-1749 PHX RCB, 2007 WL 91611 (D. Ariz. Jan. 11, 2007) ..................................3

*Hatch v. Reliance Ins. Co.*,
   758 F.2d 409 (9th Cir. 1985)...............................................................................3

*Hearns v. San Bernardino Police Dep't*,
   530 F.3d 1124 (9th Cir. 2008)...............................................................................2

*In re Johnson*,
   236 B.R. 510 (D.D.C. 1999) ...............................................................................11

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996)...............................................................................1, 3, 7

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Micromed Tech., Inc. v. Birdsall,*
     No. CIV 13-586-TUC-CKJ, 2014 WL 129049 (D. Ariz. Jan. 3, 2014) ...............................2, 10

*Nixon v. Warner Commc'ns, Inc.,*
     435 U.S. 589 (1978) ...........................................................................................................10

*Pigford v. Veneman,*
     215 F.R.D. 2 (D.D.C. 2003) ...........................................................................................10, 11

*Quatela v. Stryker Corp.,*
     820 F. Supp. 2d 1045 (N.D. Cal. 2010) ...........................................................................2, 11

*Sidney-Vinstein v. A.H. Robins Co.,*
     697 F.2d 880 (9th Cir. 1983) .................................................................................................1

*Talbot v. Robert Matthews Distrib. Co.,*
     961 F.2d 654 (7th Cir. 1992) ...............................................................................................11

**FEDERAL STATUTES**

42 U.S.C. § 2000(d) ...................................................................................................8, 9, 12

**FEDERAL RULES**

Fed. R. Civ. P. 8 ..............................................................................................................3

Fed. R. Civ. P. 8(a) .........................................................................................................3

Fed. R. Civ. P. 8(a)(2) ..................................................................................................1, 3

Fed. R. Civ. P. 12(e) ......................................................................................................15

Fed. R. Civ. P. 12(f) .....................................................................................................2, 11

**LEGISLATIVE MATERIALS**

H.R.6421, Anti-Semitism Awareness Act of 2016 ..........................................................8

**OTHER AUTHORITIES**

CNN.com, *Fact Check: Is Obama 'palling around with terrorists'?* (Oct. 5, 2008). ...................13

Cohen, Debra Nussbaum, *Anti-Zionist Hasidic Jews Shake the Room at Brooklyn's
     Barclays Center*, Haaretz (Jun 12, 2017), http://www.haaretz.com/us-
     news/.premium-1.795270 ..................................................................................................12

https://www.congress.gov/bill/114th-congress/house-bill/6421/text ..................................8

CASE NO. 3:17-CV-03511-WHO

DEFENDANTS' NOTICE OF MOT. AND MOT. TO STRIKE

1

2

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

3

Ross, Janell, *Why aren't we calling the Oregon occupiers 'terrorists'?*, Washington
    Post (Jan. 3, 2016). ...................................................................................................13

4

5

Stern, Kenneth, Letter to Members of Congress (Dec. 6, 2016), *available at*
    http://jkrfoundation.org/wp-content/uploads/2016/12/Letter-to-members-of-
    congress.pdf..............................................................................................................8

6

7

Terkel, Amanda, *Donald Trump Floats Conspiracy Theory That Huma Abedin Has
    Terrorist Ties*, Huffington Post (Aug. 29, 2016),
    http://www.huffingtonpost.com/entry/donald-trump-huma-
    abedin_us_57c4aaafe4b09cd22d92273c. ...............................................................13

8

9

Terry, Josh, *Let's laugh at this blogger who called Beyoncé an 'urban terrorist'*,
    Chicago Tribune (Apr. 25, 2016) .............................................................................13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 3:17-CV-03511-WHO

DEFENDANTS' NOTICE OF MOT. AND MOT. TO STRIKE

1

## NOTICE OF MOTION AND MOTION TO STRIKE

2       PLEASE TAKE NOTICE THAT on November 8, 2017 at 2:00 p.m., in  the

3   Courtroom of the Honorable William H. Orrick III, 450 Golden Gate Avenue, San Francisco,

4   California, defendants Board of Trustees of the California State University, Leslie Wong, Mary

5   Ann Begley, Luoluo Hong, Lawrence Birello, Reginald Parson, Osvaldo Del Valle, Kenneth

6   Monteiro, Brian Stuart, Robert Nava, Mark Jaramilla, Vernon Piccinotti, and Shimina Harris

7   (collectively, "Defendants") will and hereby do move pursuant to Federal Rule of Civil Procedure

8   12(f) to strike redundant, immaterial, impertinent, and scandalous portions of  Plaintiffs' First

9   Amended Complaint ("FAC" or "the Complaint").  The motion is based on this notice, the

10  memorandum of points and authorities that  follows, all pleadings and papers filed herein, oral

11  argument of  counsel, and any other matter which may be submitted at the hearing.

12

## MEMORANDUM OF POINTS AND AUTHORITIES

13  **I.       INTRODUCTION**

14         Plaintiffs' Complaint, weighing in at a gravitationally significant 77 pages and

15  comprising over 248 paragraphs, is bloated with irrelevancies, redundancies, groundless personal

16  attacks, and legal conclusions—to the point that the legal claims themselves are obscure and hard

17  to understand.  Defendants are entitled to a "short and plain statement of the claim[s]," Fed. R.

18  Civ. P. 8(a)(2), so that they may formulate an answer and so that all parties (including the Court)

19  "avoid the expenditure of time and money that must arise from litigating spurious issues by

20  dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885

21  (9th Cir. 1983).  Plaintiffs' allegations are neither short nor plain and, "[r]ather than set out the

22  basis for a lawsuit, the pleading seems designed to provide quotations for newspaper stories."

23  *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  To the extent that the Court declines to

24  strike or dismiss the Complaint altogether (*see* Motion to Dismiss filed herewith), Defendants

25  respectfully request that the Court strike certain portions of the Complaint, so that Defendants and

26  the Court may get down to the business of addressing the merits of Plaintiffs' actual claims.

27

28

1    II.    <u>LEGAL STANDARD: THE COURT'S POWER TO STRIKE</u>

2          Rule 12(f) provides that "[t]he court may strike from a pleading . . . any redundant,

3    immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

4          "'Immaterial' matter is that which has no essential or important relationship to the

5    claim for relief or the defenses being pleaded.  'Impertinent' matter consists of statements that do

6    not pertain, and are not necessary, to the issues in question. Superfluous historical allegations are a

7    proper subject of a motion to strike." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.

8    1993) (citations and internal quotation marks omitted), *rev'd on other grounds,* 510 U.S. 517

9    (1994).

10          "Scandalous matters are allegations that unnecessarily reflect on the moral

11    character of an individual or states anything in repulsive language that detracts from the dignity of

12    the court." *Quatela v. Stryker Corp.*, 820 F. Supp. 2d 1045, 1050 (N.D. Cal. 2010) (citations and

13    internal quotation marks omitted).  A court may strike as scandalous "defamatory material,"

14    *Alward v. Burrelle's Info. Servs.*, No. CV-00-365-PHX-ROS, 2001 WL 1708779, at *9 (D. Ariz.

15    Dec. 5, 2001); "statements that amount to name-calling and are argumentative or disrespectful,"

16    *Micromed Tech., Inc. v. Birdsall*, No. CIV 13-586-TUC-CKJ, 2014 WL 129049, at *3 (D. Ariz.

17    Jan. 3, 2014); and derogatory allegations with "no apparent basis," *In re Campora*, No. 14-CV-

18    5066 JFB, 2015 WL 5178823, at *8 (E.D.N.Y. Sept. 3, 2015), whose "only effect" is to

19    "embarrass Defendants." *Doe v. W. Am. Province of Capuchin Franciscan Friars*, No. 2:14-CV-

20    01428-HZ, 2015 WL 5522016, at *6 (D. Or. Sept. 17, 2015).  "Rule 12(f) protects parties from the

21    improper use of judicial filings to broadcast scandalous or defamatory material." *Id.*

22          A district court has "ample remedial authority to relieve a defendant of the burden

23    of responding to a complaint with excessive factual detail." *Hearns v. San Bernardino Police*

24    *Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008).  This includes the authority to strike large portions of

25    the complaint if they are mere "surplusage." *Id.* (stating that the district court could strike *38*

26    *pages* of surplus allegations from the complaint).

27

28

1  **III.     THE COMPLAINT IS CONFUSING, OPAQUE, AND POORLY ORGANIZED,**
2          **AND SHOULD BE STRICKEN IN ITS ENTIRETY**

3            Rule 8(a)(2) requires a pleading party to set forth "a short and plain statement of

4  the claim showing that the pleader is entitled to relief."  "When a complaint fails to comply with

5  the requirements of Rule 8(a), the district court has the power, on motion or sua sponte, to dismiss

6  the complaint or to strike those parts of the complaint that are redundant or immaterial." *Grayson*

7  *v. Schriro*, No. CIV-05-1749 PHX RCB, 2007 WL 91611, at *3 (D. Ariz. Jan. 11, 2007).  While it

8  may be possible in some cases to strike just portions of the complaint, in other cases the pleading

9  may be "so saturated with redundant, immaterial, impertinent, and scandalous matter so as to

10  make precise surgery to excise the offending portions virtually impossible." *Conklin v. Anthou*,

11  No. 1:10-CV-02501, 2011 WL 1303299, at *2 (M.D. Pa. Apr. 5, 2011).  In such cases, the Court

12  may strike or dismiss the entire complaint and require a pleading that conforms to Rule 8.  *Id.*

13  (striking complaint); *McHenry v. Renne*, 84 F.3d 1172, 1176–78 (9th Cir. 1996) (affirming

14  dismissal).

15            As will be explained further below, and as in *McHenry*, the Complaint is

16  "argumentative, prolix, replete with redundancy, and largely irrelevant. It consists largely of

17  immaterial background information . . . ."  *Id.* at 1177.  As in *Hatch v. Reliance Ins. Co.*, the

18  Complaint "exceed[s] 70 pages in length" and is "confusing and conclusory."  758 F.2d 409, 415

19  (9th Cir. 1985).  The large quantities of material unmoored from any claim, the sections spent

20  recapitulating irrelevant history and/or other parts of the Complaint, legal argument disguised as

21  allegations of fact, and unsupportable attempts to smear several defendants all add up to a

22  Complaint that is nearly impossible to answer.  It should be stricken in its entirety, and the Court

23  should require Plaintiffs to comply with Rule 8 by filing a short, plain statement of their alleged

24  claims, shorn of the immaterial, repetitive, and confusing airing of grievances that bloats the

25  current Complaint.

26

27

28

**IV.** **LARGE QUANTITIES OF REDUNDANT, IMMATERIAL, IMPERTINENT, AND SCANDALOUS MATERIAL SHOULD BE STRICKEN FROM THE COMPLAINT**

The Complaint is redundant and confusing, needlessly treading the same ground over again.  It is also packed with immaterial and impertinent allegations.  This places an extraordinary and unwarranted burden on Defendants in responding to the claims and on the Court in refereeing them.  Additionally, several of the allegations are inflammatory and needlessly cast aspersions on the character of certain defendants and should be stricken as scandalous as well as immaterial and impertinent.

**A.** **The Complaint is disorganized and full of redundancies.**

Rather than making a plain, short statement of their case, Plaintiffs fill pages with either repeated boilerplate or multiple sets of allegations that appear to be duplicative.

For example, Defendants take four pages to identify the parties, because each Plaintiff is described in needlessly repetitive boilerplate.  (*Compare* FAC ¶ 22 ("due to the intentional exclusion of Hillel from the 'Know Your Rights' Fair, Mr. Mandel was denied the opportunity to equally participate in and benefit from that event . . . .  Mr. Mandel has been verbally and physically threatened and targeted on SFSU's campus based on his Jewish identity, and has personally experienced the University's intentional discrimination and deliberate indifference to SFSU's pervasively hostile anti-Jewish environment. These experiences have caused Mr. Mandel to miss class at SFSU and have deprived Mr. Mandel of equal access to the educational opportunities or benefits provided by SFSU and CSU to similarly situated students who are non-Jewish or who choose to not be open about their Jewish identity"), *with* ¶¶ 23-24 (virtually identical language); *compare* ¶ 25 ("Plaintiff Masha Merkulova is a Jewish member of the community who came to SFSU with her son on April 6, 2016 to hear Mayor Barkat's speech. Like the other attendees, she was deprived of the right to hear Mayor Barkat's speech or otherwise meaningfully participate in the event and express her views. She was among the group of attendees verbally and physically threatened by the disruptive individuals at the event."), *with* ¶¶ 26-27 (virtually identical language).)

Plaintiffs also needlessly spend over five pages on a "Summary of the Action" that—to the extent that it is not argumentative or irrelevant, *see* Parts IV.B-G, *infra*—is largely redundant with later sections of the Complaint. (*Compare, e.g., id.* at ¶¶ 5-9 (describing the Mayor Barkat speech), *with* ¶¶ 61-79 (same).)

At the same time, these redundancies are not simply grouped together in a way that would make them easy to respond to. Rather, they are sprinkled throughout the Complaint in a way that makes it unclear how Defendants should respond, or what causes of action certain allegations are pertinent to. For example, allegations of a supposedly anti-Semitic environment at SFSU are spread across at least six sections of the complaint and mixed in with irrelevancies, such as conditions on other college campuses or historical events from decades ago. (*Compare id.* at 1 (section titled "Exponential Rise in Anti-Semitism"), *with id.* at 1-2 ("San Francisco State University"), *id.* at 4-6 ("SFSU's Environment of Pervasive Racial Discrimination"), *id.* at 11-16 ("SFSU's Egregious History of Virulent Anti-Semitism and Civil Rights Violations"), *id.* at 42-44 ("Defendants' Selective Protection of Free Speech Discriminates Against Jews"), *and id.* at 64-65 ("Despite Repeated Promises and Declarations, SFSU Has Failed to Cure these Systemic Problems").)

These sections tell and re-tell the same narratives with slightly different details. (*See, e.g.*, FAC ¶¶ 123, 126 (telling different parts of the Omar Barghouti story); *id.* at ¶¶ 81, 126 (telling different parts of the hunger strike story); *id.* at ¶¶ 48, 123 (giving different details about a speech by "Khalid Abdul Muhammad" and "Khalid Muhammad"—apparently, though not certainly, the same person).) To answer the Complaint, Defendants would be forced to unravel these varying strands and attempt to re-weave them into a coherent narrative.

Moreover, despite the surfeit of historical detail, the Complaint is extremely vague about which details constitute the factual grounding for each of its claims. For example, which of the six or more sections detailing alleged anti-Semitism map to the claim that "Plaintiffs Mandel, Volk and Kern have been subjected to discrimination by SFSU and CSU based on their Jewish ancestry and religion"? (*Id.* at ¶ 233.) It is impossible to say from this Complaint.

1

**B.** **Large sections of the Complaint are legal conclusions or irrelevant legal argumentation.**

2

Much of the Complaint cannot, by any stretch of the imagination, be considered

3

factual allegation.  Rather, it contains page after page of conclusory legal argument—or simple

4

grandstanding.  The Complaint features, for example, unnecessary references to a non-specific

5

"dangerous assault on First Amendment rights on college campuses by administrators and officials

6

who support the suppression of free speech"; the opinions of an attorney unconnected to this case

7

about campus speech generally; generic descriptions of what "[u]niversities should be," and

8

unsourced summaries of what "courts have ruled."  And that is just in the "Summary of the

9

Action."  (FAC ¶¶ 10-11.)

10

Plaintiffs also spend numerous pages conclusorily asserting violations of various

11

campus codes and state criminal laws by protestors, notwithstanding that this Court is neither a

12

school honor board nor a state criminal court, and the protestors are not defendants here.  (*Id.* at ¶¶

13

60, 80-81, including subparagraphs.)  Plaintiffs also complain of alleged violations of certain

14

faculty and dean responsibilities by Prof. Abdulhadi and Ms. Harris, although, again, there is no

15

private right of action cognizable in this Court for a violation of faculty job requirements.  (*Id* at ¶¶

16

82, 162-63.) Such legal and quasi-legal assertions are at best tangential to the claims at issue, and,

17

more importantly, Defendants have no way of answering them without themselves engaging in

18

substantial legal argumentation in the responsive pleading.

19

The Complaint also thinly disguises legal argumentation and conclusions as the

20

thoughts of  one or more Plaintiffs: "He felt overcome by the devastating realization that the

21

administration would continue to deny the basic civil rights of the audience, just as they had

22

always refused to treat Jews equally on campus."  (*Id.* at ¶ 85.)  "Mr. Volk . . . sens[ed] that the

23

disruptors wished to conceal their identities to avoid the consequences of their unlawful activity."

24

(*Id.* at ¶ 86.)  "Plaintiffs could not understand why the administrators would instruct the police to

25

stand by and proactively further the erosion of their constitutionally protected rights."  (*Id.* at ¶91.)

26

27

28

1    These passages and others[1] render Plaintiffs' Complaint "argumentative" and

2    "prolix," rather than the short, plain statement of claims to which Defendants are entitled.

3    *McHenry*, 84 F.3d at 1177.

4    **C.    <u>Incidents of anti-Semitism on other campuses are irrelevant.</u>**

5    Plaintiffs devote a third of a page to alleging an "exponential rise" in anti-Semitic

6    incidents on campuses nationwide.  (FAC ¶ 1.)  Whether true or not, these allegations cannot have

7    any effect on the claims or defenses in this case and should be stricken.  *Fantasy, Inc.*, 984 F.2d at

8    1527.

9    **D.    <u>Historical incidents from decades ago are irrelevant and a scandalous attempt</u>**
      **<u>to invoke guilt by association.</u>**
10

11   Plaintiffs, in an attempt to tar present administrators (and, for that matter, students)

12   with alleged anti-Semitism of the past, devote *pages* to allegations of discrimination (or simply

13   free speech activities they find offensive) in the 1990s and early 2000s.  (FAC. ¶¶ 4, 46-49, 51-59,

14   123, 125-26.)  These alleged incidents are paraded before the Court as horribles *in se*, but without

15   any attempt to tie them to present-day administrators, present conditions on campus, or *any actual*

16   *harm to these Plaintiffs*.

17   Similarly, the academic politics of a debate over the funding and status of the

18   Jewish Studies Department or a donation to the university (*id.* at ¶¶ 54, 118-19) has *no connection*

19   *to the Plaintiffs*. There are no allegations that Plaintiffs attempted to take Jewish Studies classes

20   and were denied the opportunity, and the Complaint suggests that the department is in fact

21   thriving.  *Id.*  Whatever faculty members may have felt about being asked to attend a meeting with

22   a donor, none of those faculty members is a plaintiff here.

23   "Superfluous historical allegations are a proper subject of a motion to strike."

24   *Fantasy, Inc*, 984 F.2d at 1527.  Plaintiffs' superfluous history and faculty lounge gossip should be

25   stricken.

26   _____

27   [1] *E.g.*, FAC at ¶¶ 159 (impertinent and immaterial opinions of SF Hillel director), 152 (vague,
     unsourced editorializing about Jewish communities' level of victimization compared to other
28   communities).

1

      **E.**        **The State Department definition of anti-Semitism is irrelevant.**

2

      Plaintiffs devote nearly a full page to a "working definition of anti-Semitism"

3

"adopted" by the U.S. State Department.  (FAC ¶43.)  The State Department, of course, is not

4

charged with enforcing Title VI of the Civil Rights Act, 42 U.S.C. § 2000(d), on university

5

campuses, and naturally any definition of anti-Semitism it creates will not be tailored to that end.

6

The State Department definition does *not* apply to college campuses under Title VI, as evidenced

7

by the fact that Congress recently debated (but did not pass) a bill that would incorporate the State

8

Department definition into Title VI.  *See* H.R.6421, Anti-Semitism Awareness Act of 2016,

9

*available at* https://www.congress.gov/bill/114th-congress/house-bill/6421/text.  Kenneth Stern,

10

the lead author of the definition and a longtime crusader against anti-Semitism, has explicitly

11

stated in a letter to Congress that "[t]he definition was never intended to be used to limit speech on

12

a college campus; it was written for European data collectors to have a guideline for what to

13

include and what to exclude in reports."  Kenneth Stern, *Letter to Members of Congress*, Justus &

14

Karin Rosenberg Foundation (Dec. 6, 2016), http://jkrfoundation.org/wp-

15

content/uploads/2016/12/Letter-to-members-of-congress.pdf.  The State Department definition is

16

irrelevant, confuses the issues as to the standard under Title VI, and should be stricken.

17

      **F.**        **Allegations about anti-Semitic campus speech are irrelevant.**

18

      Plaintiffs devote numerous pages to detailing alleged anti-Semitic statements made

19

on the SFSU campus.  (*E.g.*, FAC ¶ 123 and subparagraphs.)  They suggest that these "examples

20

are noteworthy to demonstrate the rabidly anti-Semitic speech and conduct that is supported on

21

campus, as compared with the assault on the free speech rights of Plaintiffs and other Jews."  (*Id.*)

22

But that comparison is logically inapposite, in terms of either free speech, equal protection or Title

23

VI doctrine.  As to free speech, the question is whether *Plaintiffs' speech* was unduly restricted,

24

regardless of their Jewishness, and under circumstances similar to those in which others were

25

allowed to speak freely.  Plaintiffs' examples do not address this question.  They do not allege, for

26

example, that Khalid Muhammad, Malik Ali, Omar Barghouti or Bassem Tamimi were better-

27

protected against disruptive protesters than Mayor Barkat.

28

1    As to equal protection or Title VI, it does not matter what other *viewpoints* are

2  expressed on campus; the question is whether members of other *ethnicities and religions* are

3  afforded greater speech opportunities than Jewish students.  A comparison between the expression

4  of allegedly anti-Semitic *viewpoints* on the one hand and the speech of "Plaintiffs and other Jews"

5  on the other mixes apples and oranges.

6    Finally, these allegations are immaterial and impertinent to any sort of hostile

7  environment claim under Title VI.  As noted above, most of these incidents occurred years ago.

8  (*See* Part IV.D., *supra*.)  They are therefore irrelevant to whether there is *currently* a hostile

9  environment on campus.  And Omar Barghouti and Bassem Tamimi—alleged to have spoken on

10  campus in 2009 and 2015, respectively—are not actually alleged to have made any anti-Semitic

11  remarks during their talks or in any other capacity on campus.  (FAC ¶ 123.)  Rather, the sole

12  allegations about them concern their *off-campus* activities (and, in the case of Tamimi, acts by his

13  family members).  *Id.*  All of this is utterly irrelevant to the question whether Defendants have

14  created or tolerated a pervasively hostile environment on campus.[2]

15    Because allegations of supposedly anti-Semitic speech by campus speakers are

16  analytically irrelevant to Plaintiffs' claims, they should be stricken from the complaint as

17  immaterial and impertinent.

18    **G.    Allegations of threats against Israeli soldiers are irrelevant.**

19    The Complaint devotes four full pages to one student's alleged statements

20  regarding wanting to hurt or kill Israeli soldiers.  (FAC ¶¶ 100, 133-136.)  But Plaintiffs are not

21  Israeli soldiers and do not live in Israel.  The Complaint does not allege that Plaintiffs were

22  personally harmed, or even frightened, by these threats.  These allegations can therefore have no

23  relationship to Plaintiffs' claims—including the Title VI claim, which, as discussed in more detail

24  in the Motion to Dismiss, requires Plaintiffs to allege that the complained-of acts "deprived

25  Plaintiffs of access to the educational opportunities or benefits provided by the school."  *Fennell v.*

26  _____

27  [2] Additionally, for the reasons discussed in more depth in the Motion to Dismiss filed herewith, these factual allegations cannot support a hostile environment claim under Title VI because the

28  university lacked the authority to restrict these speakers' political speech, which is protected by the First Amendment, on the grounds that it is allegedly anti-Semitic.  (*See* MTD, Parts IV.E.2-3.)

1   *Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (brackets omitted).  These allegations

2   are therefore not related to any claim and should be stricken from the Complaint.

3   **H.    The characterization of Defendant Wong's statement as invoking anti-Semitic**
        **stereotypes is unsupported on its face and deliberately scandalous.**

4

5          Plaintiffs allege that Defendant Wong stated that Jewish students, like other

6   students, should go through normal institutional channels (i.e., address initial complaints to lower

7   level officials), and that he believed that the students were taking up too much of his time and had

8   too much access to his office.  (FAC ¶ 116.)  Even if true, such statements are, on their face, the

9   innocuous complaints of an overburdened school official.  Yet Plaintiffs characterize this normal

10  and reasonable request as "invoking an anti-Semitic trope of Jewish power," a "reference to Jews'

11  disproportional power," and "a well-established anti-Semitic stereotype, attributable directly to the

12  . . . 'Protocols of the Elders of Zion,'" an infamous anti-Semitic tract.  (*Id.*; *and see* FAC ¶ 49

13  (noting the use of the 'Protocols' as Nazi propaganda).)  These assertions are so far from plausible

14  that they serve no legitimate purpose and bear no relationship to any claim; their sole purpose here

15  is to embarrass, harass, and silence President Wong and to provide fodder for press clippings.

16          "[C]ourts have refused to permit their files to serve as reservoirs of libelous

17  statements for press consumption."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

18  "The federal courts do not provide a forum for mudslinging, name calling and 'privileged'

19  defamation."  *Micromed Tech., Inc.* 2014 WL 129049, at *3.  To this end, "Rule 12(f) protects

20  parties from the improper use of judicial filings to broadcast scandalous or defamatory material."

21  *Doe*, 2015 WL 5522016, at *6.  "[I]f the complaint or other pleadings are abusive or contain

22  offensive language, they may be stricken . . . under the inherent powers of the court."  *Garrett v.*

23  *Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005).

24          Numerous cases have stricken obviously groundless accusations in pleadings and

25  other filings.  In *Pigford v. Veneman*, 215 F.R.D. 2 (D.D.C. 2003), the plaintiffs' counsel, with "no

26  factual basis," accused defense counsel of "contempt for 'lawyers of color'" as well as of

27  "exhibit[ing] . . . [a] racist attitude."  *Id.* at 3-4.  The court held that

28

Chestnut, Sanders' charges of racism are plainly scandalous within the meaning of the Rule, in that they "improperly cast[ ] a derogatory light" on a dedicated government attorney . . . .   The accusations are indefensible and wholly inappropriate and have no place in filings in this court.

Because **the accusations of racism in the Chestnut, Sanders filings are unsupported by facts or evidence, constitute a form of harassment, and are scandalous,** the Court will grant defendant's motion to strike Chestnut, Sanders' Response.

*Id.* at \*4-5 (emphasis added).

As in *Pigford*, the accusation against President Wong is unsupported and unsupportable on its face.  The allegation that President Wong "nodded" when someone else stated that "'Zionist power' and 'Jewish power' allusions were categorically anti-Semitic" does not support the "anti-Semitic" allegation about him, since there is no allegation that President Wong made any similar allusion to "Zionist power" or "Jewish power."  His complaint, *as alleged by Plaintiffs themselves*, was directed toward specific students who had circumvented the university's established channels, not "Jews" or "Jewish power" or anything else like it.  The accusation is hollow.

Similarly, in *Alvarado-Morales v. Digital Equip. Corp.*, the use of such terms as "concentration camp," "brainwash" and "torture"—"repugnant words replete with tragic historical connotations"—to describe a voluntary retirement program was held to have "no place in pleadings before the court."  843 F.2d 613, 618 (1st Cir. 1988).  Here, too, Plaintiffs grotesquely invoke the historical horrors of the Holocaust to describe an official's asking them to direct their inquiries to someone else.[3]

Plaintiffs unnecessarily couch this portion of their Complaint in "repulsive language that detracts from the dignity of the court" in order to "cast a cruelly derogatory light on a[nother] party."  *Quatela*, 820 F. Supp. 2d at 1050.  The entire passage should be stricken from the Complaint.

---

[3] Other courts have stricken such plainly meritless, distracting, and harassing accusations as "scandalous matter" under Rule 12(f).  *See, e.g.*, *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992) (court struck allegations of intentional food poisoning and fraud that were "devoid of any factual basis"); *In re Johnson*, 236 B.R. 510, 523 (D.D.C. 1999) ("[T]he allegations of the Trustee being a 'liar' are so devoid of the necessary evidence to sustain them that they amount to little more than name-calling.").

I.      **Allegations regarding Defendant Abdulhadi**

Plaintiffs devote nearly two pages to complaining about Defendant Abdulhadi's[4] allegedly meeting with, in their words, "terrorists," and an alleged "political litmus test" in her classes.  (FAC ¶¶ 137-41.)  Plaintiffs also allege that Professor Abdulhadi "effectively conscripted Ethnic Studies students . . . to demand increased funding for [the Ethnic Studies department] by staging a hunger strike."  (*Id.* at ¶ 126.)  None of these events or practices is tied to any of the claims Plaintiffs asserts.

Even assuming Plaintiffs' allegations are true, not one of them supports a First Amendment, Fourteenth Amendment, or Title VI claim against Professor Abdulhadi.  Her meetings and any hunger strike she may have engaged in are protected speech and associational activities and in any event are not alleged to have caused Plaintiffs any harm.  The allegation that she organized a hunger strike to raise money for her department does not suggest a diminishment of Plaintiffs' speech, assembly, or association rights.  Nor would such an act create an environment of racial or religious hostility that could support a Title VI claim.  Even if it were true that Professor Abdulhadi requires a *political* litmus test regarding Israel or Zionism in her class, this would also not support a claim of discrimination under Title VI, since Zionism is not a defining trait of either racial Jewishness or religious Judaism, and many Jews do not subscribe to Zionism.[5]  There is also no allegation that any Plaintiff took a class from Professor Abdulhadi or even wanted to do so.[6]  Plaintiffs simply do not allege that Professor Abdulhadi harmed them in any way.  These allegations are therefore immaterial and impertinent.

---

[4]  Moving Defendants' counsel do not represent Professor Abdulhadi, but Defendants move to strike these allegations because Plaintiffs apparently purport to sue her in her official capacity as an employee of the University.

[5]  *See, e.g.*, Debra Nussbaum Cohen, *Anti-Zionist Hasidic Jews Shake the Room at Brooklyn's Barclays Center*, Haaretz (Jun 12, 2017), http://www.haaretz.com/us-news/.premium-1.795270 (last accessed Aug. 18, 2017) (quoting a Hasidic Jew: "We feel very strongly that there should not be and could not be a State of Israel before the Messiah comes . . . .").

[6]  Plaintiffs do allege that they believed that "Jewish students" generally "would be unfairly targeted" if they were to enroll in COES classes.  FAC, ¶ 141.  The FAC does not, however, allege that Plaintiffs *themselves* wished to enroll in any such classes, attempted to do so, or were

1

2          Because they are not relevant to any cause of action, the allegations regarding

3   Professor Abdulhadi's "meeting with terrorists" should also be stricken as scandalous.  As with

4   the assertions about President Wong noted above, they are an obvious attempt to draw headlines

5   and smear Professor Abdulhadi's name, without any utility in resolving the claims in this action.

6   The inflammatory term "terrorist" is routinely applied in a highly political and racially charged

7   manner to demonize brown, black, and Muslim people.[7]  The attempt to associate Professor

8   Abdulhadi with violence by alleging that she met with Leila Khaled is analogous to scurrilous

9   attempts to paint Barack Obama as "pallin' around with terrorists" because of his association with

10  1960s radical William Ayers.[8]  These allegations should be stricken as scandalous.

11          Finally, the FAC names Prof. Adbulhadi as a defendant as to the Mayor Barkat and

12  Know Your Rights events.  (FAC at 65:19-20, 67:14-15, 69:13-14, 71:7-9.)  Plaintiffs' only

13  apparent attempts to connect Prof. Abdulhadi to these incidents are meaningless recitations of

14  alleged faculty "advisor requirements."  (FAC, ¶¶ 82, 162.)  But, as discussed above in part IV.B.,

15  such job requirements are not independently cognizable sources of legal claims.  Nor do they

16  indicate that Prof. Abdulhadi had *any* personal involvement in these incidents.  Thus, there are no

17  actual facts alleged tying her to the First, Second, Third, or Fourth Causes of Action.

18

19

20  _____

discriminated against in any such classes.  Plaintiffs therefore have not alleged any harm that these

21  allegations could be tied to.

22  [7] *See, e.g.*, Josh Terry, *Let's laugh at this blogger who called Beyoncé an 'urban terrorist'*,
    Chicago Tribune (Apr. 25, 2016), http://www.chicagotribune.com/redeye/redeye-beyonce-

23  lemonade-drudge-role-model-urban-terrorist-20160425-story.html; Amanda Terkel, *Donald
    Trump Floats Conspiracy Theory That Huma Abedin Has Terrorist Ties*, Huffington Post (Aug.

24  29, 2016), http://www.huffingtonpost.com/entry/donald-trump-huma-
    abedin_us_57c4aaafe4b09cd22d92273c.  *Cf.* Janell Ross, *Why aren't we calling the Oregon*

25  *occupiers 'terrorists'?*, Washington Post (Jan. 3, 2016),
    https://www.washingtonpost.com/news/the-fix/wp/2016/01/03/why-arent-we-calling-the-oregon-

26  militia-terrorists/?utm_term=.3a6c94bcbf7f. (All links last accessed Aug. 18, 2017.)

27  [8] *See Fact Check: Is Obama 'palling around with terrorists'?*, CNN.com (Oct. 5, 2008),
    http://politicalticker.blogs.cnn.com/2008/10/05/fact-check-is-obama-palling-around-with-

28  terrorists/. (Last accessed Aug. 18, 2017.)

1

**J.      Mr. Stuart, Mr. Piccinotti, and Ms. Harris as Defendants**

2
Plaintiffs do purport to name Defendants Brian Stuart, Vernon Piccinotti, and

3
Shimina Harris as defendants in their substantive claims.  Stuart and Harris are named as

4
defendants in the First, Second, and Third Causes of Action, while Piccinotti is named as to the

5
Third Cause of Action.  (FAC at 65:19-20, 67:14-15, 69:13-14, 71:7-9.)  The problem is that there

6
are no factual allegations that could conceivably support any claim for relief against any of them.

7
The allegations regarding Mr. Stuart (apart from his employment status) are as

8
follows: he *received* an email on March 30, 2016 regarding Hillel reserving a room (FAC ¶ 65); he

9
*received* an email notifying him that there was a potentially controversial speaker at a student

10
event (FAC ¶ 65); in an investigative narrative, he noted several possible student code violations

11
by students (FAC ¶ 80); and he wrote an email to a student protestor offering security support.

12
(FAC ¶ 122.)

13
The sole factual allegation as to Mr. Piccinotti (apart from his employment status)

14
is that he *received* an email on March 30, 2016 regarding Hillel reserving a room.  (FAC ¶ 63.)

15
There are no factual allegations at all as to Harris, who Plaintiffs admit was not

16
even on the job when the Mayor Barkat event took place.  (FAC, ¶ 110.)

17
There are no allegations that any of these Defendants took any action of any kind

18
that harmed Plaintiffs.  Plaintiffs attempt to paper over these deficiencies with fact-free

19
editorializing about Harris's role as Dean of Student Conduct, (FAC, ¶ 163), and by stating

20
conclusorily that, "[o]n information and belief, Defendants Begley, Hong, Stuart, Birello,

21
Piccinotti, and Jaramilla collectively executed the University's effort to move the Barkat event

22
away from CCSC and to require Hillel's payment to host the event.  On information and belief,

23
these Defendants were also responsible for SFSU's inadequate preparation before the event and

24
the unacceptable way the University handled the event as it was being shut down."  *Id.* at ¶ 64.

25
This attempt to invoke "collective[]" action while making no material factual allegations of any

26
kind as to individual behavior on the part of Piccinotti and Stuart is a direct analog to the naked

27
allegations of conspiracy that the Supreme Court found insufficient to state a claim in *Bell Atl.*

28
*Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *and see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)

1   (Section 1983 claims cannot be made on the basis of vicarious liability).  As is discussed in more

2   detail in the Motion to Dismiss filed herewith, Plaintiffs make no allegations that Stuart,

3   Piccinotti, and Harris had any material *personal* involvement in the events underlying the claims.

4

5   **K.    In the alternative, Defendants move for a more definite statement as to Defendants Abdulhadi, Stuart, Piccinotti, and Harris**

6

7         Because Plaintiffs do not make any factual allegations that Defendants Abdulhadi,

8   Stuart, Piccionotti, and Harris were personally involved in the Mayor Barkat and Know Your

9   Rights incidents, references to these four defendants in the individual causes of action should be

10  stricken as immaterial to those causes of action.

11        In the alternative, Defendants respectfully request that the Court order Plaintiffs to

12  make a more definite statement as to exactly how any unlawful conduct by Defendants Abdulhadi,

13  Stuart, Piccinotti, or Harris has harmed them.   "A party may move for a more definite statement

14  of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that

15  the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  As the Complaint stands,

16  these four Defendants cannot determine what, if any, actions they are alleged to have taken that

17  form the basis of Plaintiffs' claims and so cannot reasonably answer those claims.

18        If Plaintiffs do not or cannot provide a more definite statement, the Court has the

19  authority to strike the allegations and the claims against these Defendants.  *Id.*

20  **V.    CONCLUSION AND REQUEST FOR RELIEF**

21        Because the Complaint is "saturated with redundant, immaterial, impertinent, and

22  scandalous matter," striking just portions of it may prove "virtually impossible." *Conklin*, 2011

23  WL 1303299, at *2.  Defendants therefore respectfully request that the Court strike the Complaint

24  in its entirety.

25        In the alternative, and at a minimum, Defendants respectfully request that the Court

26  strike the following portions of the Complaint:

27        •      The redundant "Summary of the Action" section (FAC ¶¶ 1-16.)

28

- Immaterial, impertinent and redundant references to events from the 1990s and 2000s—especially the mere recounting of irrelevant protected speech under circumstances not comparable to the complained-of events.  (FAC ¶¶ 46-49, 51-59, 123, 125-26.)

- Immaterial, impertinent, and conclusory assertions of violations of student codes, faculty requirements, and state criminal laws.  (FAC ¶¶ 60, 80-82, 162-63.)

- Immaterial and impertinent allegations regarding the funding or status of the Jewish Studies department.  (FAC ¶¶ 54, 118-19.)

- Immaterial and impertinent State Department definition of anti-Semitism.  (FAC ¶ 43.)

- Immaterial and impertinent references to alleged threats against Israeli soldiers. (FAC ¶¶ 97, 100, 126-136.)

- Immaterial, impertinent, and scandalous references to Defendant Wong's statement that Jewish students should go through proper university channels.  (FAC ¶¶ 116-17.)

- Immaterial, irrelevant, and scandalous references to Defendant Abdulhadi's alleged "meeting with terrorists."  (FAC ¶¶ 137-41.)

- Immaterial and impertinent references to Defendant Abdulhadi's allegedly organizing a hunger strike.  (FAC at ¶¶ 81, 126.)

- All references to Defendants Abdulhadi, Stuart, Piccinotti, and Harris as defendants.  (FAC at 65:19-20, 67:14-15, 69:13-14, 71:7-9.)  In the alternative, Defendants move for a more definite statement of the claims against these four purported defendants, including facts showing their personal involvement in the Barkat and Know Your Rights events.

1    DATED: September 14, 2017                    Respectfully submitted,

2                                                 MUNGER, TOLLES & OLSON LLP
                                                     BRADLEY S. PHILLIPS
3                                                    ADELE M. EL-KHOURI
                                                     SETH J. FORTIN
4
                                                 By:____/s/ Seth J. Fortin_____
5                                                          SETH J. FORTIN

6                                                Attorneys for Defendants
                                                 BOARD OF TRUSTEES OF THE
7                                                CALIFORNIA STATE UNIVERSITY, SAN
                                                 FRANCISCO STATE UNIVERSITY;
8                                                LESLIE WONG; MARY ANN BEGLEY;
                                                 LUOLUO HONG; LAWRENCE BIRELLO;
9                                                REGINALD PARSON; OSVALDO DEL
                                                 VALLE; KENNETH MONTEIRO; BRIAN
10                                               STUART; ROBERT NAVA; MARK
                                                 JARAMILLA; VERNON PICCINOTTI; AND
11                                               SHIMINA HARRIS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOT. AND MOT. TO STRIKE