1  BRADLEY S. PHILLIPS (State Bar No. 085263)
   SETH J. FORTIN (State Bar No. 302790)
2  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
3  Los Angeles, CA 90071-1560
   Telephone:    (213) 683-9100
4  Facsimile:    (213) 687-3702

5  ADELE M. EL-KHOURI (admitted *pro hac vice*)
   MUNGER, TOLLES & OLSON LLP
6  1155 F Street, NW, 7th Floor
   Washington, D.C. 20004
7  Telephone:    (202) 220-1100
   Facsimile:    (202) 220-2300

8

9  Attorneys for Defendants
   BOARD OF TRUSTEES OF THE CALIFORNIA
10 STATE UNIVERSITY; SAN FRANCISCO STATE
   UNIVERSITY; LESLIE WONG; MARY ANN
11 BEGLEY; LUOLUO HONG; LAWRENCE
   BIRELLO; REGINALD PARSON; OSVALDO
12 DEL VALLE; KENNETH MONTEIRO; BRIAN
   STUART; ROBERT NAVA; MARK JARAMILLA;
13 VERNON PICCINOTTI; AND SHIMINA HARRIS

14                 UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16 | | |
   JACOB MANDEL, et al.                    CASE NO. 3:17-cv-03511-WHO

17        Plaintiffs,                      **NOTICE OF MOTION AND MOTION TO
                                           DISMISS OF DEFENDANTS BOARD OF
18     vs.                                 TRUSTEES OF THE CALIFORNIA
                                           STATE UNIVERSITY; LESLIE WONG;
19 BOARD OF TRUSTEES OF THE                MARY ANN BEGLEY; LUOLUO HONG;
   CALIFORNIA STATE UNIVERSITY,            LAWRENCE BIRELLO; REGINALD
20 SAN FRANCISCO STATE                     PARSON; OSVALDO DEL VALLE;
   UNIVERSITY, et al.,                     KENNETH MONTEIRO; BRIAN
21                                         STUART; ROBERT NAVA; MARK
          Defendants.                      JARAMILLA; VERNON PICCINOTTI;
22                                         AND SHIMINA HARRIS**

23                                         Judge:    Hon. William Orrick III
                                           Dept:     Courtroom 2, 17th Floor
24                                         Date:     November 8, 2017
                                           Time:     2:00 p.m.
25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.   INTRODUCTION .......................................................................................................... 1

II.  ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ........................................ 3

    A.   Plaintiffs allege that SFSU moved a Hillel event to the outskirts of campus and failed to prohibit or respond appropriately to protests of the event. ............... 3

    B.   Plaintiffs allege that SFSU excluded Hillel from a student-group fair. .................. 4

    C.   Plaintiffs allege conduct that either occurred prior to their attendance at SFSU or did not involve them. ................................................................................... 5

    D.   Plaintiffs allege violations of the federal constitution and Title VI of the Civil Rights Act of 1964 .............................................................................................. 6

III. LEGAL STANDARD ...................................................................................................... 6

IV.  ARGUMENT .................................................................................................................... 7

    A.   Plaintiffs' federal constitutional claims against the University are barred by the Eleventh Amendment. ........................................................................................... 7

    B.   Plaintiffs federal constitutional claims for damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment. ......................................................................................................................... 8

    C.   Plaintiffs' First Amendment claims fail as a matter of law. ................................... 8

        1.   Plaintiffs' freedom of assembly claim fails because they have not alleged any burden on their ability peaceably to assemble. ........................ 9

        2.   Plaintiffs' freedom of association claim fails because they have not alleged any burden on their right to intimate expression or their right to associate with others in protected activities. ................................ 10

        3.   Any free exercise claim fails because Plaintiffs have not alleged any burden on their practice of religion. .................................................... 11

        4.   Failure to protect an individual's First Amendment rights from infringement by third parties is not a basis for constitutional liability. .................................................................................................................. 12

    D.   Plaintiffs' equal protection claim fails as a matter of law ....................................... 13

        1.   Plaintiffs' equal protection claim fails because they have not alleged that they were treated differently from others in materially similar circumstances. ................................................................................... 14

        2.   Defendants Piccinotti and Harris are not liable under section 1983 because neither is sufficiently alleged to have personally participated in the conduct challenged in the Complaint. ........................ 15

    E.   Plaintiffs fail to allege facts sufficient to state a Title VI claim ............................ 16

        1.   Title VI prohibits only intentional discrimination. ................................... 16

        2.   A Title VI claim cannot be based on the theory that SFSU should have prohibited students from engaging in protected First Amendment activities. .............................................................................. 17

**TABLE OF CONTENTS**
(continued)

Page

3. Plaintiffs' Title VI claim also fails because they have not alleged facts sufficient to state a claim for intentional discrimination on a theory of peer-on-peer harassment. ........................................................... 19

a. Most incidents alleged in the Complaint were not witnessed by Plaintiffs, occurred long ago, or are not similar to acts that Plaintiffs personally experienced. ........................................... 19

b. Plaintiffs have not alleged that they suffered discrimination that was severe, pervasive, or objectively offensive. .................... 20

c. Plaintiffs have not alleged that SFSU was deliberately indifferent to the discrimination. ..................................................... 22

d. Plaintiffs have not alleged that they were deprived of educational benefits. ....................................................................... 24

F. Plaintiffs' claims for declaratory and injunctive relief fail for the reasons set forth above. ................................................................................................. 25

V. CONCLUSION AND REQUEST FOR RELIEF ............................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ................................................................................................16

*Almond Hill School v. U.S. Dep't of Agric.*,
768 F.2d 1030 (9th Cir. 1985) ..................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................7, 15

*Bair v. Shippensburg Univ.*,
280 F. Supp. 2d 357 (M.D. Pa. 2003) ....................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................7, 10, 11, 12

*Benham v. City of Charlotte, N.C.*,
635 F.3d 129 (4th Cir. 2011) ....................................................................................9

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000) ................................................................................................10

*Chandler v. McMinnville Sch. Dist.*,
978 F.2d 524 (9th Cir. 1992) ..................................................................................17

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ................................................................................................11

*Citizens for Health v. Leavitt*,
428 F.3d 167 (3d Cir. 2005) ....................................................................................12

*Civil Liberties for Urban Believers v. City of Chicago*,
342 F.3d 752 (7th Cir. 2003) ..................................................................................10

*Cole v. Oroville Union High Sch. Dist.*,
228 F.3d 1092 (9th Cir. 2000) ................................................................................25

*Coll. Republicans at San Francisco State Univ. v. Reed*,
523 F. Supp. 2d 1005 (N.D. Cal. 2007) ..................................................................17

*Dambrot v. Cent. Mich. Univ.*,
839 F. Supp. 477 (E.D. Mich. 1993), *aff'd*, 55 F.3d 1177 (6th Cir. 1995) ..............17

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999) ........................................................................................ passim

# TABLE OF AUTHORITIES
(continued)

Page(s)

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989) ...........................................................................................13

*Dible v. City of Chandler*,
515 F.3d 918 (9th Cir. 2008) ...........................................................................10

*Doe v. Willits Unified Sch. Dist.*,
473 F. App'x 775 (9th Cir. 2012) ....................................................................22

*Dunn v. Wash. Cnty. Hosp.*,
429 F.3d 689 (7th Cir. 2005) ............................................................................12

*Edelman v. Jordan*,
415 U.S. 651 (1974) .............................................................................................8

*Felber v. Yudof*,
851 F. Supp. 2d 1182 (N.D. Cal. 2011) .................................................... passim

*Fennell v. Marion Indep. Sch. Dist.*,
804 F.3d 398 (5th Cir. 2015)..............................................................................24

*Finkelshteyn v. Staten Island University Hospital*,
687 F. Supp. 2d 66 (E.D.N.Y. 2009)................................................................22

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009)............................................................................................16

*Fogel v. Collins*,
531 F.3d 824 (9th Cir. 2008)..............................................................................18

*Franceschi v. Schwartz*,
57 F.3d 828 (9th Cir. 1995).................................................................................7

*Gabrielle M. v. Park Forest-Chicago Heights, IL Sch. Dist.163*,
315 F.3d 817 (7th Cir. 2003 ).............................................................................24

*Gerritsen v. Warner Bros. Entm't Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............................................................11

*Grace United Methodist Church v. City of Cheyenne*,
451 F.3d 643 (10th Cir. 2006)............................................................................10

*Graham v. C.I.R.*,
822 F.2d 844 (9th Cir. 1987), *aff'd sub nom.*, *Hernandez v. C.I.R.*, 490 U.S.
680 (1989) ............................................................................................................11

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Grove v. Mead Sch. Dist. No. 354,*
  753 F.2d 1528 (9th Cir. 1985).............................................................................................12

*Haitian Refugee Ctr., Inc. v. Baker,*
  953 F.2d 1498 (11th Cir. 1992).........................................................................................12

*Harris v. Forklift Sys. Inc.,*
  510 U.S. 17 (1993)...............................................................................................................21

*Hawkins v. Anheuser-Busch, Inc.,*
  517 F.3d 321 (6th Cir. 2008)............................................................................................19

*Hawkins v. Sarasota Cnty. Sch. Bd.,*
  322 F.3d 1279 (11th Cir. 2003).......................................................................................24

*Hayut v. State Univ. of N.Y.,*
  352 F.3d 733 (2d Cir. 2003).............................................................................................24

*Hazelwood Sch. Dist. v. Kuhlmeier,*
  484 U.S. 260 (1988)....................................................................................................13, 17

*Healy v. James,*
  408 U.S. 169 (1972)............................................................................................................17

*Hendrichsen v. Ball State Univ.,*
  107 F. App'x 680 (7th Cir. 2004)...................................................................................20

*Jackson v. Hayakawa,*
  682 F.2d 1344 (9th Cir. 1982)...........................................................................................7

*Jones v. Williams,*
  297 F.3d 930 (9th Cir. 2002)...........................................................................................15

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.,*
  385 U.S. 589 (1967)............................................................................................................17

*King v. McMillan,*
  594 F.3d 301 (4th Cir. 2010)...........................................................................................19

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005)..........................................................................................11

*Morgan v. Town of Lexington, MA,*
  823 F.3d 737 (1st Cir. 2016)...........................................................................................20

*Moss v. U.S. Secret Serv.,*
  572 F.3d 962 (9th Cir. 2009)..............................................................................................7

DEFENDANTS' NOTICE OF MOT. AND MOT. TO DISMISS

36333160.1

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Oden v. N. Marianas Coll.*,
    440 F.3d 1085 (9th Cir. 2006)...........................................................................22, 23

*Oklevueha Native Am. Church of Hawaii, Inc. v. Lynch*,
    828 F.3d 1012 (9th Cir. 2016)...................................................................................11

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998)......................................................................................................21

*Papelino v. Albany Coll. of Pharm. of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011).........................................................................................19

*Peralta v. Cal. Franchise Tax Bd.*,
    124 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................................8

*Pinard v. Clatskanie Sch. Dist. 6J*,
    467 F.3d 755 (9th Cir. 2006)...............................................................................13, 17

*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life
    Activists*,
    290 F.3d 1058 (9th Cir. 2002) (en banc)...................................................................18

*Roberts v. Haragan*,
    346 F. Supp. 2d 853 (N.D. Tex. 2004).......................................................................17

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)....................................................................................................10

*San Jose Christian Coll. v. City of Morgan Hill*,
    360 F.3d 1024 (9th Cir. 2004).....................................................................................9

*Santopietro v. Howell*,
    857 F.3d 980 (9th Cir. 2017)......................................................................................10

*Savage v. Glendale Union High Sch. Dist., No. 205, Maricopa Cnty.*,
    343 F.3d 1036 (9th Cir. 2003).....................................................................................7

*Saxe v. State Coll. Area Sch. Dist.*,
    240 F.3d 200 (3d Cir. 2001)..................................................................................19, 21

*Schwapp v. Town of Avon*,
    118 F.3d 106 (2d Cir. 1997).......................................................................................19

*Scott v. Cal. State Lotto*,
    19 F.3d 1441 (9th Cir. 1994).......................................................................................8

DEFENDANTS' NOTICE OF MOT. AND MOT. TO DISMISS

36333160.1

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Serrano v. Francis*,
　345 F.3d 1071 (9th Cir. 2003)....................................................................................15

*Snyder v. Phelps*,
　562 U.S. 443 (2011)..................................................................................................18

*Stanley v. Trustees of Cal. State Univ.*,
　433 F.3d 1129 (9th Cir. 2006)...............................................................................7, 19

*Steshenko v. Albee*,
　42 F. Supp. 3d 1281 (N.D. Cal. 2014) .......................................................................7

*Sweezy v. State of N.H.*,
　354 U.S. 234 (1957)..................................................................................................17

*Thornton v. City of St. Helens*,
　425 F.3d 1158 (9th Cir. 2005)..................................................................................14

*UWM Post, Inc. v. Bd. of Regents of the Univ. of Wisc. Sys.*,
　774 F. Supp. 1163 (E.D. Wisc. 1991) .......................................................................17

*Will v. Mich. Dep't of State Police*,
　491 U.S. 58 (1989)..................................................................................................7, 8

*Wolfe v. Fayetville, Ark. Sch. Dist.*,
　648 F.3d 860 (8th Cir. 2011).....................................................................................20

*Ex Parte Young*,
　209 U.S. 123 (1908)................................................................................................2, 8

**FEDERAL STATUTES**

42 U.S.C. § 1983 .......................................................................................... passim

42 U.S.C. § 2000(d) ...................................................................................... passim

28 U.S.C. § 2201 ........................................................................................................25

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 6, 7, 12

Fed. R. Civ. P. 12(b)(1)....................................................................................................1, 7

DEFENDANTS' NOTICE OF MOT. AND MOT. TO DISMISS

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on November 8, 2017 at 2:00 p.m., before the Honorable Williams Orrick III in Courtroom 2 on the 17th Floor of the above-entitled Court, Defendants Board of Trustees of the California State University ("the University" or "SFSU"),[1] Leslie Wong, Mary Ann Begley, Luoluo Hong, Lawrence Birello, Reginald Parson, Osvaldo Del Valle, Kenneth Monteiro, Brian Stuart, Robert Nava, Mark Jaramilla, Vernon Piccinotti, and Shimina Harris (collectively, "Defendants") will and hereby do move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims brought against them in Plaintiffs' First Amended Complaint ("Complaint" or "Compl."), ECF No. 57, filed August 31, 2017. Defendants seek an order pursuant to Rules 12(b)(1) and 12(b)(6) dismissing with prejudice the Complaint and each of its causes of action for lack of subject-matter jurisdiction and for failure to state a claim for relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiffs allege in their Complaint that SFSU and the other defendants violated their First Amendment rights to assembly, association, and free exercise of their Jewish religion and discriminated against them on the basis of their religion in violation of their Fourteenth Amendment right to equal protection and Title VI of the Civil Rights Act of 1964. This lawsuit is an attempt by Plaintiffs to compel SFSU to restrict the speech and assembly of its other students, in violation of those students' First Amendment rights. Plaintiffs' principal complaint is that SFSU has permitted its students to engage in political demonstrations and protests against Israel and in support of Palestinian causes. The majority of the events alleged in the Complaint either occurred before Plaintiffs attended SFSU or did not involve Plaintiffs at all. Notwithstanding the Complaint's lengthy recitation of irrelevant allegations, Plaintiffs' claims are at bottom based on just two alleged incidents, both of which Plaintiffs describe with mere conclusory statements that are insufficient to state a claim for relief. All of Plaintiffs' claims fail as a matter of law.

---

[1] Plaintiffs purport to name as a defendant "San Francisco State University," but that is not a legal entity separate from the Board of Trustees of California State University.

1     *First*, Plaintiffs' federal constitutional claims against the University must be dismissed

2     because they are barred by the Eleventh Amendment.  The Board is an arm of the state and

3     therefore not a "person" subject to suit under 42 U.S.C. § 1983.

4     *Second*, Plaintiffs' federal constitutional claims for damages against the individual

5     Defendants in their official capacities must be dismissed because they are likewise barred by the

6     Eleventh Amendment.  Section 1983 does not permit recovery of damages against state officials

7     acting in their official capacities, because such officials, like the state itself, are not "persons"

8     within the meaning of section 1983.  Although *Ex Parte Young*, 209 U.S. 123 (1908), allows for

9     prospective claims for injunctive relief against state officials acting in their official capacities, it

10    does not allow claims for damages.

11    *Third*, claims 1 and 3—which allege that Plaintiffs were deprived of "their First

12    Amendment rights, including but not limited to the right to assemble, the right to listen or the

13    right to hear"—fail to state a claim because Plaintiffs have not alleged a substantial burden on

14    their ability to exercise their religion, any infringement of their ability to assemble to express their

15    views, or any burden on their right to intimate expression or their right to associate with others in

16    protected activities.  In addition, state officials cannot be liable for failing to protect students from

17    actions of other private individuals, even when those actions may affect the exercise of

18    constitutional rights.  Moreover, Defendants Piccinotti and Harris cannot be liable under § 1983

19    because Plaintiffs have not sufficiently alleged that either Defendant personally participated in the

20    incidents alleged in the Complaint.

21    *Fourth*, claims 2 and 4—which allege that Plaintiffs were deprived of "equal protection of

22    the laws, as secured by the Fourteenth Amendment to the United States Constitution"—fail to

23    state a claim because Plaintiffs have not alleged that they were treated differently from others in

24    materially similar circumstances.  Moreover, Defendants Piccinotti and Harris cannot be liable

25    under § 1983 because Plaintiffs have not sufficiently alleged that either Defendant personally

26    participated in the incidents alleged in the Complaint.

27    *Fifth*, claim 5—which alleges a violation of Title VI of the Civil Rights Act of 1964, 42

28    U.S.C. § 2000(d)—fails to state a claim because (a) it is premised on the allegation that the

1    Defendants should have prohibited other students from engaging in First Amendment protected

2    speech; and (b) Plaintiffs have not alleged that SFSU was deliberately indifferent to

3    discrimination of which the school had actual knowledge and that was so severe, pervasive, and

4    objectively offensive that it deprived Plaintiffs of access to educational benefits or opportunities.

5           *Sixth*, claim 6—which seeks declaratory and injunctive relief for these alleged

6    violations—fails to state a claim for the reasons set forth above.  Moreover, Plaintiff Mandel

7    lacks standing to seek declaratory and injunctive relief because he has graduated from SFSU.

8    **II.    ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

9           Plaintiffs Jacob Mandel, a former SFSU student; Charles Volk and Liam Kern, current

10   SFSU students; and Masha Merkulova, Aaron Parker, and Stephanie Rosekind, members of the

11   Jewish community who attended one Hillel event on campus, claim that Defendants violated

12   Plaintiffs' rights to assemble, associate, and freely exercise their Jewish religion and

13   discriminated against them on the basis of their religion.  But the Complaint contains no

14   allegations about Plaintiffs' religious beliefs or practices, let alone any allegation that Defendants

15   prevented them from exercising their religion; no allegation that Plaintiffs were ever prevented or

16   substantially restrained from assembling or associating to express their views or religious beliefs;

17   and no allegation that Defendants treated Plaintiffs differently than other students, let alone on the

18   basis of their religion.   Instead, the Complaint describes various protests, demonstrations, and

19   protected (albeit in some instances offensive) speech against Israel, most of which occurred

20   before Plaintiffs attended SFSU or did not involve Plaintiffs at all.  Plaintiffs describe only two

21   incidents that could conceivably form a basis for their claims, and for the reasons set forth below,

22   neither is sufficient to state a claim for relief.

23           **A.      Plaintiffs allege that SFSU moved a Hillel event to the outskirts of campus
                         and failed to prohibit or respond appropriately to protests of the event.**

24           As to the first incident that forms the basis for Plaintiffs' claims—hereinafter the "Mayor

25   Barkat event"—Plaintiffs allege that Jewish student group Hillel arranged for Nir Barkat, the

26   Mayor of Jerusalem, to speak at the University, and Plaintiffs claim that SFSU "consigned" the

27   event to "the outskirts of campus" and failed to prohibit or respond appropriately to other

28   students' protests of the event.  (Compl. ¶ 60.)  Plaintiffs spend 22 pages setting forth allegations

related to the Mayor Barkat event, but the substance of their allegations can be reduced to a few propositions.

Plaintiffs allege that they attempted to reserve a room in the student center in "the heart of campus" and that Defendants initially assigned them to such a room but then informed them that the room was unavailable.  (*Id.* ¶ 63.)  Defendants assigned the event to a room in a building "comparatively far from the center of campus" that charged a fee for use, (*id.* ¶ 66) and expressed concerns about holding the event in the main student center because they expected protests and did not want classes to be disrupted, (*id.* ¶¶ 65, 67).  Defendants made preparations in conjunction with campus police to manage the expected protests.  (*Id.* ¶¶ 67–69.)

Plaintiffs allege that, after Mayor Barkat began his speech, approximately 30 individuals began "loud shouting of antagonizing and threatening phrases such as 'Get the fuck off our campus.'"  (*Id.* ¶¶ 70–72.)  The Mayor stopped speaking because the protestors were drowning out his voice, Plaintiffs and others who were there to hear the speech huddled around the Mayor so as to be able to hear him and felt "threatened and intimidated by the [protesting] group's encroaching physical presence."  (*Id.* ¶¶ 74–78.)  Generally, Plaintiffs allege that Defendants failed sufficiently to contain the protest to allow the event to continue, despite the fact that the protesting individuals were in violation of certain provisions of SFSU's Code of Student Conduct. (*Id.* ¶¶ 70–81.)  They also allege that the police asked the protestors to leave but did no more than that because "the University" had instructed them to "stand down" rather than forcing the protestors into the designated protest area.  (*Id.* ¶¶ 84–93.)  Finally, Plaintiffs allege that Defendants conducted an investigation of the incident, held meetings to discuss it, and generated a report that, Plaintiffs allege, wrongly concluded that the protesting students would not be punished.  (*Id.* ¶¶ 94–122.)

**B.**     **Plaintiffs allege that SFSU excluded Hillel from a student-group fair.**

As to the second incident that forms the basis for Plaintiffs' claims—hereinafter the "Know Your Rights fair"—Plaintiffs allege that SFSU intentionally excluded Hillel from a school-sponsored, student-group fair designed to "inform . . . students, faculty, staff and public about potential threats to their rights given the new political reality."  (*Id.* ¶¶ 148–151.)

1    Plaintiffs' allegations about the Know Your Rights fair consist of a few allegations.  Plaintiffs

2    allege that, "on information and belief, other groups—namely, GUPS, threatened to pull out of

3    the fair if Hillel were included." (*Id.* ¶ 149).  They continue that, "[o]n information and belief,

4    Hillel was invited to the fair by accident, and once the invitation had been extended, the event's

5    organizers . . . worked to find a way to rescind it."  (*Id.* ¶ 150).  Plaintiffs allege that they were

6    "subjected to a viewpoint-based test before being initially invited to participate," that SFSU then

7    invited them to participate, and that "after receiving this confirmation, on information and belief,

8    SFSU consciously and intentionally decided to excluded Hillel from the event, and did so by

9    surreptitiously changing the cut-off date for registration with the goal of excluding Hillel and

10   Jewish students from the event . . . excluding other groups in the process in an effort to cover up

11   this active discrimination."  (*Id.*)  Finally, Plaintiffs allege that SFSU's report on the event

12   concluded that Hillel was intentionally excluded from the Fair.  (*Id.* ¶¶ 157–60.)

13           **C.      Plaintiffs allege conduct that either occurred prior to their attendance at
                       SFSU or did not involve them.**

14

15           In the remainder of the Complaint, Plaintiffs set forth pages and pages of irrelevant and

16   conclusory allegations, including generalized grievances about the "ubiquitous" nature of

     antisemitism at SFSU (*id.* ¶ 60) and descriptions of events that occurred prior to Plaintiffs' time at
17
     SFSU or that seemingly did not involve Plaintiffs at all (*id.* ¶¶ 144–159, 123-141).  The substance
18
     of most of these allegations involves other students and faculty, particularly members of the Arab
19
     and Muslim Ethnicities and Diasporas Initiative ("AMED") and the General Union of Palestinian
20
     Students ("GUPS"), engaging in core First Amendment protected activities.  In particular,
21
     Plaintiffs describe prior speeches, meetings, and protests on campus (*id.* ¶¶ 48-52, 55-59, 123)
22
     and in-person and online political speech by other students (*id.* ¶¶ 123–35).  To cite just a few
23
     examples:  Plaintiffs allege that "[i]n 2002, on Holocaust Memorial Day . . . Malik Ali, the first
24
     Muslim student body president at SFSU reportedly known for supporting Hamas and Hezbollah
25
     and equating Jews and Nazis, praised suicide bombings against Israeli targets and said that
26
     Israelis should return to Germany, Poland and Russia."  (*Id.* ¶ 123.)  They allege that, "[w]hen
27
     Omar Barghouti, BDS movement founder and outrageous anti-Semite who frequently calls for the
28

36333160.1

genocidal annihilation of the Jewish state . . . was invited to speak at SFSU, Defendant Kenneth Monteiro defended the discussion, citing academic freedom."  (*Id.* ¶ 126.)  They allege that in 2013 the President of GUPS posted online that "Israelis ARE colonizers, there is literally no way around it . . . and my only regret is that not all colonizers were killed."  (*Id.* ¶ 128.)  These allegations are both unrelated to Plaintiffs' claims and describe speech and other forms of expression that, though hateful, are protected by the First Amendment.

### D.   Plaintiffs allege violations of the federal constitution and Title VI of the Civil Rights Act of 1964

Plaintiffs allege that "Defendants' conduct intentionally encouraged and benefited the disruptive individuals who were threatening the Jewish individuals with violence . . . [and] intimidated Plaintiffs through Defendants' complicity in the violent threats and the deliberate indifference to the clear violations of Plaintiffs' civil rights."  (*Id.* ¶ 101.)  Specifically, they claim that Defendants' conduct in the course of the Mayor Barkat event and the Know Your Rights fair "deprived and continue[s] to deprive Plaintiffs of their First Amendment rights, including but not limited to the right to assemble, the right to listen or the right to hear" (*id.* ¶¶ 174, 203) and "deprived and continue[s] to deprive Plaintiffs of equal protection of the laws, as secured by the Fourteenth Amendment" (*id.* ¶¶ 187, 218).  Plaintiffs further claim that Defendants discriminated against them in violation of Title VI of the Civil Rights Act of 1964.  (*Id.* ¶¶ 228–43.)[2]  Plaintiffs request damages, declaratory and injunctive relief, and attorneys' fees and costs.  (*Id.* pp. 75–76.)

## III.   LEGAL STANDARD

The Supreme Court has emphasized that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that *Twombly* standards apply in all cases).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[2] All of the Plaintiffs assert the constitutional claims based on the Mayor Barkat event.  By contrast, only the student Plaintiffs assert the constitutional claims based on the Know Your Rights fair and the Title VI claim.  For ease of reference, however, they are referred to throughout collectively as "Plaintiffs."

statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Thus, to survive a motion to dismiss, a

complaint must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)

("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and

reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

plaintiff to relief.").

    A motion to dismiss on the basis of Eleventh Amendment immunity is one for lack of

subject-matter jurisdiction under Rule 12(b)(1).  *Savage v. Glendale Union High Sch. Dist., No.

205, Maricopa Cnty.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003).

## IV.    ARGUMENT

### A.    Plaintiffs' federal constitutional claims against the University are barred by the Eleventh Amendment.

    Plaintiffs purport to sue the University under section 1983 for alleged violations of the

First Amendment and equal protection.  "The Eleventh Amendment bars suits which seek either

damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its

agencies."  *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995).  It is firmly settled that the

University is an arm of the state and therefore has sovereign immunity from all claims brought by

individuals in federal court, unless the claim is brought pursuant to a federal statute that expressly

abrogates states' sovereign immunity.  *Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1287–88 (N.D.

Cal. 2014) (citing *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006);

*Jackson v. Hayakawa*, 682 F.2d 1344, 1350–51 (9th Cir. 1982)).  42 U.S.C. § 1983, which creates

a right of action against "[e]very person" who, under color of state law, violates a party's federal

rights, does not abrogate states' sovereign immunity, and so states and state entities are not

"person[s]" subject to suit under section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58,

69-70 (1989).  Plaintiffs' federal constitutional claims for relief against the University must be

dismissed with prejudice in their entirety.

**B.** **Plaintiffs federal constitutional claims for damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment.**

Plaintiffs purport to sue the individual Defendants, in both their official and personal capacities, for damages under section 1983.  The personal-capacity claims plainly for lack of any supporting factual allegations. [3]  The official-capacity claims are barred by the Eleventh Amendment; section 1983 does not allow recovery of damages against state officials acting in their official capacities, because such officials, like the state itself, are not "persons" within the meaning of section 1983.  *Will*, 491 U.S. at 71.  Although *Ex parte Young*, 209 U.S. 123 (1908), permits prospective claims for injunctive relief against state officials acting in their official capacities, it does not authorize claims for damages.  *Almond Hill School v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1034 (9th Cir. 1985) ("The doctrine of *Ex parte Young* . . . has been limited to actions for prospective relief.") (citing *Edelman v. Jordan*, 415 U.S. 651, 676–77 (1974)).  Plaintiffs' federal constitutional claims for relief against all of the individual Defendants in their official capacities, to the extent those claims seek damages, must be dismissed with prejudice.

**C.** **Plaintiffs' First Amendment claims fail as a matter of law.**

Plaintiffs' first and third claims for relief allege that Defendants "deprived and continue to deprive Plaintiffs of their First Amendment rights, including but not limited to the right to assemble, the right to listen or the right to hear."  (Compl. ¶¶ 174, 203.)  Plaintiffs base these claims on two events only—the Mayor Barkat event and the Know Your Rights fair.  (*Id.*)  Assuming, though the phrasing of their claims is not entirely clear, that Plaintiffs intend to allege violations of their rights to free exercise of religion, freedom of assembly, and freedom of

---

[3] "[T]o state a claim against state officials in their personal capacities, the complaint must set forth allegations from which the court can infer that the individuals acted in their individual capacities."  *Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1001 (N.D. Cal. 2015) (citing *Scott v. Cal. State Lotto*, 19 F.3d 1441 (9th Cir. 1994)).  To determine whether a defendant is properly sued in her personal capacity, "the court must examine the specifics of the conduct involved and not merely look at the caption of the complaint."  *Peralta*, 124 F. Supp. 3d at 1001 (internal quotation marks omitted).  Plaintiffs have failed to allege any facts supporting the inference that any of the individual Defendants were acting in other than their official capacities.  (Compl. ¶¶ 30–42.)  Every allegation in the Complaint that refers to an individual Defendant by name has to do with the individual Defendant's official actions as an officer of SFSU.  Plaintiffs' claims against the individual Defendants in their personal capacities must therefore be dismissed.

association, Plaintiffs' claims fail as a matter of law for the reasons set forth below.  Another court in this district previously rejected the same First Amendment claims against the University of California, Berkeley, based on facts substantially similar to those alleged here.  *See Felber v. Yudof*, 851 F. Supp. 2d 1182, 1186–87 (N.D. Cal. 2011).

### 1. **Plaintiffs' freedom of assembly claim fails because they have not alleged any burden on their ability peaceably to assemble.**

Plaintiffs' freedom of assembly claim fails as a matter of law because they have not alleged that Defendants imposed a serious burden upon or substantially restrained Plaintiffs' ability to engage in any form of assembly.  Governmental action abridges an individual's right to assemble when it "imposes a serious burden upon, affects in any significant way, or substantially restrains" an individual's exercise of that right.  *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1033 (9th Cir. 2004).

Plaintiffs have not alleged facts suggesting that Defendants took actions that affected in any significant way Plaintiffs' right to assemble.  (Compl. ¶¶ 61–118; 142–63.)  By Plaintiffs' own account of the Mayor Barkat event, the University directed them to an off-campus location based on concerns about student safety and class disruption, not to prevent or burden the assembly itself.  (Compl. ¶¶ 65, 67.)  The fact that Plaintiffs had to use another space alone is insufficient to constitute a serious burden on their right to assemble.  *See Morgan Hill*, 360 F.3d at 1033 ("[T]he fact that the church's congregants cannot assemble at that precise location does not equate to denial of assembly altogether.").  Plaintiffs have not alleged, for example, that the move "reduce[d] the size of [their] audience[,] . . . denied [them] a particular opportunity to express [their] views[,] . . . interfered with their need[ ] to plan the substance or, at least, placement of their message, . . . or . . . caused sufficient self-censorship." *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 138 (4th Cir. 2011) (internal quotation marks and citations omitted).  Even assuming the decision to move the Mayor Barkat event to a less-central campus location incidentally burdened Plaintiffs' right to assembly, Plaintiffs have not alleged that the incidental burden was motivated by anything other than Defendants' neutral policy to minimize class disruption. *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 765

DEFENDANTS' NOTICE OF MOT. AND MOT. TO DISMISS

1   (7th Cir. 2003) (concluding that ordinance was content neutral and did not burden the right to

2   assembly,  reasoning that "to the extent that the [ordinance] incidentally regulates speech or

3   assembly within churches, such regulation is motivated not by any disagreement . . . with the

4   message conveyed by church speech or assembly, but rather by such legitimate, practical

5   considerations as the promotion of harmonious and efficient land use"); *see also Grace United*

6   *Methodist Church v. City of Cheyenne*, 451 F.3d 643, 656–57 (10th Cir. 2006) (same).  The

7   conclusory assertion that Defendants "deprived and continue to deprive Plaintiffs of their First

8   Amendment rights, including but not limited to the right to assemble, the right to listen or the

9   right to hear," is insufficient to defeat a motion to dismiss.  *See Twombly*, 550 U.S. at 555.

10
11
          **2.      Plaintiffs' freedom of association claim fails because they have not
                  alleged any burden on their right to intimate expression or their right
                  to associate with others in protected activities.**

12          Plaintiffs' freedom of association claim similarly fails as a matter of law because they

13   have not alleged that Defendants took any actions to burden their ability to associate with others

14   in order to engage in protected activities.  The First Amendment "encompasses a freedom of

15   association right, which includes the freedom of intimate expression and the right to associate

16   with others in activities otherwise protected by the First Amendment."  *Dible v. City of Chandler*,

17   515 F.3d 918,  929 (9th Cir. 2008).  "'Government actions that may unconstitutionally burden

18   this [expressive association] freedom may take many forms,'" *Santopietro v. Howell*, 857 F.3d

19   980, 989 (9th Cir. 2017) (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000)), such as

20   "seek[ing] to impose penalties or withhold benefits from individuals because of their membership

21   in a disfavored group . . . attempt[ing] to require disclosure of the fact of membership in a group

22   seeking anonymity . . . [and] try[ing] to interfere with the internal organization or affairs of the

23   group," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-623 (1984).

24          Plaintiffs have not alleged facts showing that Defendants took actions that in any way

25   burdened Plaintiffs' freedom to engage with others in protected activities.  They have not alleged

26   that Defendants punished them for their membership in Hillel, interfered with Hillel's internal

27   affairs, or withheld benefits from Hillel members to dissuade them from participating in group

28   activities.  (Compl. ¶¶ 61–118; 142–63.)  They have not alleged facts to support their claims that

1   Defendants intentionally excluded Hillel from the fair on the basis of their religion or to prevent

2   them from associating as a group.  (*Id.* ¶ 142–63.)  Plaintiffs' allegations on this point are

3   contradictory.  First, Plaintiffs allege that "[o]n information and belief, Hillel was invited to the

4   fair by accident."  (*Id.* ¶ 150.)  They subsequently allege instead that the University "subjected

5   [Hillel] to a viewpoint-based test" and then concede that the University invited Hillel to

6   participate.  (*Id.*)  But Plaintiffs then allege that SFSU took a neutral action that applied to all

7   groups, "surreptitiously changing the cut-off date for registration with the goal of excluding Hillel

8   and Jewish students from the event . . . excluding other groups in the process in an effort to cover

9   up this active discrimination."  (*Id.*)  Second, Plaintiffs allege that SFSU commissioned a report

10  on the event and released "to certain individuals" the findings of the report, which allegedly

11  concluded that Hillel had been intentionally excluded.   (Compl. ¶ 157.)  According to Plaintiffs'

12  own subsequent allegations, however, if anything Hillel was excluded because of "its ill fit in the

13  mission of the Fair."  (Compl. ¶ 161.)  Indeed, Professor Abdulhadi's online statement about the

14  fair, which Plaintiffs rely on and describe in detail in their allegations, refutes the contention that

15  Hillel was excluded because it was a Jewish group:  Jewish Voice for Peace, another Jewish

16  group, *did* have a table at the fair.  According to Professor Abdulhadi, Hillel did not have a table

17  because the event was overbooked.[4]  Plaintiffs' contradictory allegations cannot support

18  Plaintiffs' attempt to characterize the Know Your Rights fair as intentional targeting on the basis

19  of religion or in an effort to prevent free association or speech.

20          **3.      Any free exercise claim fails because Plaintiffs have not alleged any
                      burden on their practice of religion.**

21

22          Any free exercise claim asserted by Plaintiffs fails as a matter of law because they have

23  not alleged that Defendants placed any burden on Plaintiffs' exercise of their religion, let alone

24  the sort of substantial burden that would be required to state a free exercise claim.  As the

25  Supreme Court has explained, "the free exercise inquiry asks whether government has placed a

26  substantial burden on the observation of a central religious belief or practice and, if so, whether a

---

[4] "Under the incorporation by reference doctrine, [a court may] take into account documents
whose contents are alleged in a complaint and whose authenticity no party questions, but which
are not physically attached to the [plaintiff's] pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076
(9th Cir. 2005) (internal quotation marks omitted).

1  compelling governmental interest justifies the burden." *Church of the Lukumi Babalu Aye, Inc. v.*

2  *City of Hialeah*, 508 U.S. 520, 565 (1993) (internal quotation marks omitted).  To prevail on a

3  free exercise claim, a plaintiff must prove that the governmental act "burdens the adherent's

4  practice of his or her religion by pressuring him or her to commit an act forbidden by the religion

5  or by preventing him or her from engaging in conduct or having a religious experience which the

6  faith mandates." *Graham v. Comm'r.*, 822 F.2d 844, 850–51 (9th Cir. 1987), *aff'd sub nom.*,

7  *Hernandez v. Comm'r.*, 490 U.S. 680 (1989).

8        Plaintiffs have not set forth a single allegation relating to a religious belief or practice.

9  The facts they allege about the Mayor Barkat event and the Know Your Rights fair involve Hillel

10  members' campus activities but not any activities that they allege are necessary to observe a tenet

11  or belief central to their religious faith.  (Compl. ¶¶ 61–118; 142–63.)  Even assuming Plaintiffs

12  had alleged that Defendants' actions offended their religious beliefs, "governmental actions that

13  merely offend or cast doubt on religious beliefs do not on that account violate free exercise.  An

14  actual burden on the profession or exercise of religion is required. . . .  [D]istinctions must be

15  drawn between those governmental actions that actually interfere with the exercise of religion,

16  and those that merely require or result in exposure to attitudes and outlooks at odds with

17  perspectives prompted by religion." *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1543 (9th

18  Cir. 1985).  Plaintiffs' free exercise claim must be dismissed.  *See Twombly*, 550 U.S. at 555

19  ("[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

20  factual allegations," a plaintiff must provide "more than labels and conclusions" ).

21        **4.**     **Failure to protect an individual's First Amendment rights from**
             **infringement by third parties is not a basis for constitutional liability.**

22

23        Even assuming Plaintiffs had alleged some burden on their exercise of religion or ability

24  to assemble or associate, the alleged source of that burden would be the actions of other students

25  and groups at the university.  Courts have consistently held that a First Amendment claim must be

26  premised on a governmental action and not on the government's failure to prevent independent

27  actions by private parties.  *See, e.g.*, *Citizens for Health v. Leavitt*, 428 F.3d 167, 185 (3d Cir.

28  2005) ("[Plaintiffs'] First Amendment claim fails . . . [because] the potential 'chilling' of patients'

1   rights to free speech derives not from any action of the government, but from the independent

2   decisions of private parties."); *Dunn v. Wash. Cnty. Hosp.*, 429 F.3d 689, 692 (7th Cir. 2005);

3   *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1513 (11th Cir. 1992). These cases follow

4   the reasoning of the Supreme Court's decision in *DeShaney v. Winnebago County Department of*

5   *Social Services*, in which the Court held that "nothing in the language of the Due Process Clause

6   itself requires the State to protect the life, liberty, and property of its citizens against invasion by

7   private actors." 489 U.S. 189, 195 (1989).

8        Moreover, in the educational context, a school must balance the First Amendment rights

9   of students and preservation of the educational process, and the First Amendment protects all

10   student speech unless it will "'substantially interfere with the work of the school or impinge upon

11   the rights of other students.'" *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 766 (9th Cir.

12   2006) (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)).

13        Even if Plaintiffs had alleged a burden on their exercise of First Amendment rights, it is

14   apparent from the Complaint that the source of that burden would be the actions of other students

15   and groups at the University, who were also exercising core First Amendment rights that the

16   University could not curtail. (Compl. ¶¶ 67–75) (describing student protestors' protected actions

17   at Mayor Barkat event and stating in conclusory fashion that "[t]he disruptive individuals were

18   emboldened by the decisions of the administration to allow the disruption to continue and

19   escalate"). This theory fails to state a constitutional claim. *See Felber*, 851 F. Supp. 2d at 1186

20   ("[E]ven assuming that plaintiffs have alleged, or could amend to allege, sufficient acts of

21   harassment and intimidation directed against them based on their religion to be deemed as an

22   interference with their free exercise of that religion, they simply have no basis for pursuing such

23   constitutional claims against defendants. With exceptions not implicated here, state actors have

24   no constitutional obligation to prevent private actors from interfering with the constitutional

25   rights of others.").

26        **D.    Plaintiffs' equal protection claim fails as a matter of law.**

27        Plaintiffs' second and fourth claims for relief allege that Defendants deprived Plaintiffs of

28   "equal protection of the laws, as secured by the Fourteenth Amendment to the United States

1   Constitution" by discriminating against them on the basis of their Jewish identity.  (Compl. ¶¶

2   187–88, 218–19.)  Plaintiffs base this claim on two incidents only—the Mayor Barkat event and

3   the Know Your Rights fair.  (*Id.*) Plaintiffs' claim fails as a matter of law for the reasons set forth

4   below.

**1.**      **Plaintiffs' equal protection claim fails because they have not alleged that they were treated differently from others in materially similar circumstances.**

7       Plaintiffs' claim that Defendants violated Plaintiffs' right to equal protection under the

8   Fourteenth Amendment fails because Plaintiffs have not alleged any facts suggesting that

9   Defendants treated Plaintiffs differently than they treated other individuals in materially similar

10  circumstances.  "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff

11  must show that the defendants acted with an intent or purpose to discriminate against the plaintiff

12  based upon membership in a protected class."  *Thornton v. City of St. Helens*, 425 F.3d 1158,

13  1166 (9th Cir. 2005) (internal quotation marks omitted).   "The first step in equal protection

14  analysis is to identify the [defendants' asserted] classification of groups. . . .  The groups must be

15  comprised of similarly situated persons so that the factor motivating the alleged discrimination

16  can be identified. . . .  An equal protection claim will not lie by conflating all persons not injured

17  into a preferred class receiving better treatment than the plaintiff."  *Id.* at 1166–67 (internal

18  quotation marks and citations omitted).

19      Plaintiffs have not alleged facts sufficient to show either that Defendants acted with an

20  intent or purpose to discriminate based on Plaintiffs' religion or that Defendants treated Plaintiffs

21  differently from other groups in materially similar circumstances.  (Compl. ¶¶ 61–118, 142–63.)

22  For example, they have not alleged in their accounts of the Know Your Rights fair or the Mayor

23  Barkat event that any other groups expressed interest and were granted participation in the former

24  or that any other groups asked for and received space in a campus classroom.  (*Id.*)  Nor have they

25  alleged that any of Defendants' actions in connection with the events were based on Plaintiffs'

26  religion.  Indeed, by Plaintiffs' own account of the Mayor Barkat event, the University directed

27  them to an off-campus location based on concerns about student safety and class disruption, not

28  the organization's religious affiliation.  (*Id.* ¶ 65.)  And, by Plaintiffs' own account of the Know

1   Your Rights fair, Defendants changed the registration deadline for everyone, and there was

2   another Jewish group present at the Fair.  (*Id.* ¶ 150, 160.)  The Complaint's failure to allege

3   disparate treatment is fatal to Plaintiffs' equal protection claim.  *See Serrano v. Francis*, 345 F.3d

4   1071, 1082 (9th Cir. 2003) ("To state a claim for violation of the Equal Protection Clause, a

5   plaintiff must show that the defendant acted with an intent or purpose to discriminate against him

6   based upon his membership in a protected class.").

7        2.    **Defendants Piccinotti and Harris are not liable under section 1983**
           **because neither is sufficiently alleged to have personally participated**
8          **in the conduct challenged in the Complaint.**

9        Plaintiffs' First Amendment and equal protection claims under section 1983 against

10  Defendants Piccinotti and Harris should be dismissed for the additional reason that the Complaint

11  does not allege that either Defendant personally deprived Plaintiffs of their rights to free exercise,

12  assembly, or association.  The Supreme Court has held that "vicarious liability is inapplicable to .

13  . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the

14  official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *see also*

15  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[I]n order for a person acting under color

16  of state law to be liable under section 1983 there must be a showing of personal participation in

17  the alleged rights deprivation.").  As to Defendant Harris, the Complaint alleges only that in July

18  2016 she assumed the role of Assistant Dean of Students & Director, Student Conduct; that in that

19  role she was responsible for punishing violations of SFSU's Code of Student Conduct; and that,

20  "on information and belief," she did nothing to address the alleged violations involved in the

21  Mayor Barkat event and the Know Your Rights Fair.  (Compl. ¶¶ 110, 163.)  It is not even clear

22  that these conclusory allegations about lack of action subsequent to the events that form the basis

23  for Plaintiffs' claims are relevant to their claims of intentional discrimination, but they are

24  certainly insufficient to allege Defendant Harris's personal participation in the purported

25  discrimination.  The Complaint contains only a few references to Defendant Piccinotti.  The

26  Complaint notes that he, along with several other individuals, received an email stating that Hillel

27  had reserved a classroom for the Mayor Barkat event.  (Compl. ¶ 65.)  It alleges that "SFSU's

28  website directs questions regarding event reservations and event planning meetings to Piccinotti,

1    that Piccinotti is listed on SFSU's website as a source of information on event requirements and

2    best practices" (Compl. ¶ 63), and that, "on information and belief," Defendant Piccinotti

3    "allowed" the intentional discrimination of Hillel to occur (Compl. ¶ 143), and "collectively

4    executed" the move of the Mayor Barkat speech (Compl. ¶ 64).  These conclusory allegations—

5    which amount to the notion that Defendant Piccinotti "must have been" involved in the events

6    that form the basis for Plaintiffs' claims—with no factual support, are insufficient to allege his

7    personal participation in the purported discrimination.  The claims against these two Defendants

8    must therefore be dismissed.

9           **E.      Plaintiffs fail to allege facts sufficient to state a Title VI claim.**

10          Plaintiffs' Title VI claim fails because: (1) it is based primarily on Plaintiffs' objections to

11   student protests against Israel, and SFSU cannot be liable for allowing speech that SFSU could

12   not have prohibited without violating the First Amendment; (2) Plaintiffs have not alleged facts

13   sufficient to support an inference that SFSU was deliberately indifferent to discrimination of

14   which the school had actual knowledge and that was so severe, pervasive, and objectively

15   offensive that it deprived Plaintiffs of access to educational benefits or opportunities. The same

16   district court that previously rejected First Amendment claims against UC Berkeley based on

17   facts substantially similar to those alleged here also rejected the Title VI claim in that case.  *See*

18   *Felber*, 851 F. Supp. 2d at 1187–88.

19          **1.      Title VI prohibits only intentional discrimination.**

20          Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), prohibits discrimination in

21   connection with any federally funded program or activity based on race, color, religion, sex, or

22   national origin.  The Supreme Court has held that Title VI prohibits only intentional

23   discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  In certain limited

24   circumstances, a school's failure to respond to student-to-student discrimination can constitute

25   intentional discrimination.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526

26   U.S. 629, 643 (1999) (setting forth standard under Title IX); *see also Fitzgerald v. Barnstable*

27   *Sch. Comm.*, 555 U.S. 246, 258 (2009) ("Congress modeled Title IX after Title VI . . . and passed

28   Title IX with the explicit understanding that it would be interpreted as Title VI was.").

To state a Title IV claim against a school under this theory, a plaintiff must show that the school was "deliberately indifferent to [discrimination], of which [the school] ha[d] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650.

> ### 2. A Title VI claim cannot be based on the theory that SFSU should have prohibited students from engaging in protected First Amendment activities.

As a threshold matter, Plaintiffs' Title VI claim fails because the majority of the alleged actions Plaintiffs claim Defendants should have prevented were those of other students engaging in activities protected by the First Amendment—namely, political speech that SFSU could not prohibit or punish. As the Supreme Court has emphasized, an entity that receives federal funds may be liable for acts committed by third parties "only where the funding recipient has some control over the alleged harassment. A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Davis*, 526 U.S. at 644. Accordingly, "it would be entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims." *Id.* at at 649. This is precisely the situation here: the University lacked any authority to discipline other students for exercising their right to engage in protected speech.

It is a well-established principle that freedom of speech is particularly important in a university setting. *See, e.g.*, *Healy v. James*, 408 U.S. 169, 180 (1972); *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967); *Sweezy v. State of N.H.*, 354 U.S. 234, 250 (1957). A school therefore may not impinge students' First Amendment activities unless they will "'substantially interfere with the work of the school or impinge upon the rights of other students.'" *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 766 (9th Cir. 2006) (quoting *Hazelwood Sch. Dist*, 484 U.S. at 266). Indeed, "core principles of the First Amendment acquire a special significance in the university setting, where the free and unfettered interplay of competing views is essential to the institution's educational mission." *Coll. Republicans at San Francisco State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1016 (N.D. Cal. 2007) (internal quotation

marks omitted).  The First Amendment thus "protects all student speech that is neither school-sponsored, a true threat nor vulgar, lewd, obscene or plainly offensive unless school officials show "facts which might reasonably have led [them] to forecast substantial disruption of or material interference with school activities." *Pinard*, 467 F.3d at 767 (quoting *Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524, 529 (9th Cir. 1992)).  It is for this reason that courts have often struck down university speech codes as unconstitutional.[5]

Plaintiffs' allegations demonstrate that the students protesting the Mayor Barkat event were engaged in political speech and expressive conduct—core First Amendment-protected activities.  (Compl. ¶¶ 72 (alleging that protestors chanted [g]et the fuck off our campus," "Palestine will be free," and "we don't want your racist war"); 79 (alleging that protestors wore keffiyehs)).  Plaintiffs' allegations about the Palestinian student group's other actions similarly all involve core First Amendment activities.  (*Id.* ¶¶ 123 (op-ed in student newspaper; demonstrations at pro-Israel student rally; speech on campus); 127 (organized rally); 128, 129, 133 (social media posts)).  The fact that the speech may have been hateful and offensive does not remove it from the ambit of First Amendment protection.  *See Snyder v. Phelps*, 562 U.S. 443, 454 (2011).  A Title VI claim premised on the theory that a school should prohibit such speech fails.  *See Felber*, 851 F. Supp. 2d at 1188 (reasoning, in rejecting Title VI claim, that "a very substantial portion of the conduct to which plaintiffs object represents pure political speech and expressive conduct, in a public setting, regarding matters of public concern, which is entitled to special protection under the First Amendment").

As indicated in the descriptions above, Plaintiffs have not alleged any speech or expressive conduct that would constitute a true threat.  "A true threat is 'an expression of an intention to inflict evil, injury, or damage on another' and such speech receives no First Amendment protection.  *Fogel v. Collins*, 531 F.3d 824, 830 (9th Cir. 2008) (quoting *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075

---

[5] *See, e.g.*, *Reed*, 523 F. Supp. 2d at 1016; *see also Roberts v. Haragan*, 346 F. Supp. 2d 853 (N.D. Tex. 2004); *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357 (M.D. Pa. 2003); *Dambrot v. Cent. Mich. Univ.*, 839 F. Supp. 477 (E.D. Mich. 1993), *aff'd*, 55 F.3d 1177 (6th Cir. 1995); *UWM Post, Inc. v. Bd. of Regents of the Univ. of Wisc. Sys.*, 774 F. Supp. 1163 (E.D. Wisc. 1991).

(9th Cir. 2002) (en banc)).  "By contrast, speech that can reasonably be characterized as political

rhetoric or hyperbole, particularly such speech not directed at specific individuals, is protected."

*Id.*  And speech that merely advocates violence is protected.  *See Willamette*, 290 F.3d at 1071.

Plaintiffs' allegations show, at most, that other students at the University were engaged in

political speech that advocated violence; nowhere do Plaintiffs allege that those students engaged

in speech that targeted specific individuals or threatened violence directly.

> **3.**      **Plaintiffs' Title VI claim also fails because they have not alleged facts**
> **sufficient to state a claim for intentional discrimination on a theory of**
> **peer-on-peer harassment.**

Plaintiffs' Title VI claim, which is based on the theory that SFSU failed to respond to

student-on-student discrimination, also fails for the reason that Plaintiffs have not sufficiently

alleged that SFSU was deliberately indifferent to discrimination of which the school had actual

knowledge and that was so severe, pervasive, and objectively offensive that it deprived Plaintiffs

of access to educational benefits or opportunities.

> **a.**      **Most incidents alleged in the Complaint were not witnessed by**
> **Plaintiffs, occurred long ago, or are not similar to acts that**
> **Plaintiffs personally experienced.**

As a threshold matter, Plaintiffs cannot base a Title VI claim on events of which they were

not aware when they were SFSU students and which are not proximate in time or similar to

incidents they personally experienced.  To the extent Plaintiffs allege facts that occurred prior to

the time period during which they were students at the University, those acts cannot form the

basis for Plaintiffs' Title VI claim.  *See Stanley*, 433 F.3d at 1137 ("Stanley, however, has not

alleged that the University caused her to undergo, or be vulnerable to, any harassment during the

limitations period, a time when she was not present at the University.").  Title VI borrows the

"hostile environment" standard from Title VII cases involving hostile environments in the

workplace.  *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 214–16 (3d Cir. 2001); *see also*

*Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).  In the Title

VII context, courts may consider "harassing acts [that] were directed at others or occurred outside

of the plaintiff's presence," but only if the "plaintiff bec[ame] aware during the course of his or

her employment" of that harassment.  *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336 (6th

1    Cir. 2008); *see also, e.g., King v. McMillan*, 594 F.3d 301, 310 (4th Cir. 2010); *Schwapp v. Town*

2    *of Avon*, 118 F.3d 106, 111-12 (2d Cir. 1997).

3          Accordingly, alleged acts of harassment that happened outside of Plaintiffs' presence are

4    potentially relevant to their Title VI claim only if they were aware of them while they were

5    students at SFSU; past acts of harassment directed at other individuals are potentially relevant

6    only if they occurred close in time to incidents that Plaintiffs personally experienced; and

7    incidents of harassment directed at others are potentially relevant, regardless of timing, only if

8    they are "similar" to acts of harassment that have been experienced directly by the plaintiff.  *See*

9    *Hawkins*, 517 F.3d at 337; *King*, 594 F.3d at 306–08.

10          The Complaint does not allege incidents other than the Mayor Barkat event and Know

11    Your Rights fair that were directed at, or involved, Plaintiffs.  There is no allegation in the

12    description of the other events that Plaintiffs were aware of such events, that they occurred close

13    in time to the Mayor Barkat event or the Know Your Rights fair, or that they were similar to the

14    latter two events.  Indeed, most of the other events occurred years and even decades prior to

15    Plaintiffs' enrollment at SFSU.  (Compl. ¶¶ 123–36.)  And Plaintiffs' allegations about a

16    professor's meetings with terrorists abroad are not at all related to or similar to the two events

17    underlying Plaintiffs' claims.  (*Id.* ¶¶ 137–41.)  These other events are therefore irrelevant to

18    Plaintiffs' Title VI claim.  *See Felber*, 851 F. Supp. 2d at 1188 ("While such conduct may, to the

19    extent plaintiffs were actually aware of it, have some extremely marginal relevance to plaintiffs'

20    contention that they perceived a hostile environment, acts occurring years before plaintiffs ever

21    enrolled at UC Berkeley, and/or on different campuses entirely, does little to demonstrate that

22    plaintiffs suffered severe and pervasive harassment.").  For the reasons described below, the

23    alleged conduct surrounding the Mayor Barkat event and Know Your Rights fair is not severe or

24    pervasive enough to provide a basis for a deliberate-indifference claim.

25              **b.      Plaintiffs have not alleged that they suffered discrimination that**
                         **was severe, pervasive, or objectively offensive.**

26

27          To prevail on their Title VI claim, Plaintiffs must show first that the alleged

28    discrimination was severe, pervasive, and objectively offensive.  A few incidents involving even

1   pointed singling out are insufficient to rise to the requisite level of severity and pervasiveness.

2   *See, e.g.*, *Morgan v. Town of Lexington, MA*, 823 F.3d 737, 745 (1st Cir. 2016) (finding one

3   incident of harassment insufficient); *Wolfe v. Fayetville, Ark. Sch. Dist.*, 648 F.3d 860, 866–67

4   (8th Cir. 2011) (explaining that insults, teasing, shoving, pushing, and other such actions in

5   school setting are insufficient); *Hendrichsen v. Ball State Univ.*, 107 F. App'x 680, 685 (7th Cir.

6   2004) (concluding that conduct was not severe or pervasive where it was inappropriate but not

7   physically threatening or humiliating).

8          The Complaint fails to meet the requisite standard.  As to the Know Your Rights fair,

9   Plaintiffs' allegation that "other groups—namely GUPS—threatened to pull out of the fair if

10  Hillel were included" is insufficient to sustain an inference that they suffered from discrimination,

11  let alone discrimination that was severe, pervasive, and objectively  offensive.  (Compl. ¶¶ 149,

12  161.)  As to the Mayor Barkat event, for the reasons described above, the other students were

13  engaged in core political speech that was at times severe and offensive but did not rise to the level

14  of discrimination that was severe, pervasive, and objectively offensive for purposes of Title VI.

15  *See Saxe*, 240 F.3d at 214–17 (holding that school district's policy banning verbal or physical

16  conduct that had purpose or effect of either substantially interfering with a student's educational

17  performance or creating an intimidating hostile or offensive environment was unconstitutionally

18  overbroad under the First Amendment).  And it is not obvious how events occurring at the speech

19  would deny Plaintiffs access to educational opportunities.  *See Felber*, 851 F. Supp. 2d at 1188

20  ("Despite the fact the Sproul Plaza likely serves as an important campus thoroughfare and

21  gathering place, it is not even clear that activities on Sproul Plaza or at Sather Gate necessarily

22  would significantly impede any student's access to the educational services offered by the

23  University, regardless of the nature of those activities.").  Even interpreting these incidents as

24  harassment toward Plaintiffs, they would not constitute harassment sufficiently pervasive to

25  violate Title VI.  *See Davis*, 526 U.S. at 652-53 ("Although in theory, a single instance of

26  sufficiently severe one-on-one peer harassment could be said to have [the systemic effect of

27  denying the victim equal access to an educational program or activity] we think it unlikely that

28  Congress would have thought such behavior sufficient to rise to this level.").

1    Moreover, even assuming the other incidents alleged throughout the Complaint could

2    form the basis for Plaintiffs' Title VI claim (they cannot), the Supreme Court has held in the Title

3    VII context that, in order to constitute harassment under a hostile-environment theory, conduct

4    must be objectively severe and pervasive such that a reasonable person would agree that it is

5    harassment.  *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21-22 (1993); *see also Oncale v.*

6    *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).  A reasonable person would not believe

7    that criticism of Israel is harassment at all, let alone harassment of Jewish students for being

8    Jewish.  In *Finkelshteyn v. Staten Island University Hospital*, 687 F. Supp. 2d 66 (E.D.N.Y.

9    2009), the court rejected a Jewish plaintiff's claim that a co-worker's comments that Israelis

10   "needed to leave the country they were fighting in" created a hostile work environment, finding

11   that the comment instead represented a "disagree[ment] with [plaintiff's] position on volatile geo-

12   political issues."  *Id.* at 71, 78; *see also id.* at 82 (holding that a comment that "Israelis should

13   leave Gaza" was not a sign of anti-Semitism).  The other incidents that Plaintiffs allege were

14   harassment include political speeches, demonstrations, online postings, and other similar

15   activities critical of Israel and supportive of Palestinians.  (Compl. ¶¶ 123–141.)  These incidents,

16   while perhaps disruptive, are not alleged to have been directed at Plaintiffs or any other Jewish

17   student on the basis of their Jewish background.  These alleged events cannot reasonably be

18   characterized as religiously motivated harassment and therefore cannot support a Title VI student-

19   on-student harassment claim.

20                          **c.        Plaintiffs have not alleged that SFSU was deliberately
                                       indifferent to the discrimination.**

21

22          To prevail on their Title VI claim, Plaintiffs must show second that Defendants acted with

23   deliberate indifference to the alleged discrimination.  "The test for deliberate indifference is

24   'whether a reasonable fact-finder could conclude that the [school]'s response was clearly

25   unreasonable in light of the known circumstances.'"  *Doe v. Willits Unified Sch. Dist.*, 473 F.

26   App'x 775, 775–76 (9th Cir. 2012) (quoting *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th

27   Cir. 2006)).  "To meet this high standard there must, in essence, be an official decision not to

28

1  remedy the violation and this decision must be clearly unreasonable." *Id.* (citing *Davis*, 526 U.S.

2  at 649).  A showing of heightened negligence is insufficient.  *Id.*

3      Plaintiffs have not alleged facts sufficient to support an inference that the school's

4  response to the other students' alleged discrimination was objectively unreasonable.  As described

5  above, the school was constitutionally required to balance the students' First Amendment rights

6  with the preservation of the educational process, a balance it properly struck when, for example, it

7  moved the Mayor Barkat event to a larger space off-campus to minimize disruption but allowed

8  both the event and the protests to proceed.  (Compl. ¶¶ 62–66.)  Additionally, by Plaintiffs' own

9  admission, SFSU *did* respond to Plaintiffs' complaints about the Mayor Barkat and the Know

10 Your Rights fair event by conducting thorough investigations and issuing reports that explained

11 the University's findings and actions.  (*Id.* ¶¶ 73, 76, 84, 94–95, 111–113, 157–59.)  That it took

12 the University more time than Plaintiffs would have liked to conduct the investigations and that

13 the results were not the ones that Plaintiffs wanted does not demonstrate that SFSU was

14 deliberately indifferent or that its conduct in the investigation was clearly unreasonable.

15      First, "[a]n aggrieved party is not entitled to the precise remedy that he or she would

16 prefer." *Oden*, 440 F.3d at 1089.  Second, the Ninth Circuit has held that even a nine-month

17 delay in conducting disciplinary proceedings, in contravention of an institution's policy, did not

18 support a finding of deliberate indifference.  *See id.* (nine-month delay was insufficient to "permit

19 an inference that the delay was a deliberate attempt to sabotage Plaintiff's complaint or its orderly

20 resolution").  Here, the University did not delay in beginning the investigation and took the time

21 necessary to conduct it thoroughly and effectively.  Even if delay alone could ever constitute

22 deliberate indifference, the delay here was neither "more than negligent, lazy, or careless" nor "a

23 deliberate attempt to sabotage Plaintiff's complaint or its orderly resolution," as would be

24 required to show deliberate indifference.  *Id.*  This approach conforms with the Supreme Court's

25 instruction that "courts should refrain from second-guessing the disciplinary decisions made by

26 school administrators." *Davis*, 526 U.S. at 648; *see also Felber*, 851 F. Supp. 2d at 1188 ("That

27 the University may not have acted as plaintiffs would prefer does not rise to deliberate

28 indifference." (internal quotation marks omitted)).

1

### d.     Plaintiffs have not alleged that they were deprived of educational benefits.

2

3      Finally, to prevail on their Title VI claim Plaintiffs must show that SFSU's deliberate

4  indifference to severe, pervasive, and objectively offensive discrimination deprived Plaintiffs of

5  educational benefits and opportunities.  The alleged conduct must have a "concrete, negative

6  effect on [the plaintiff's] ability to receive an education."  *Davis*, 526 U.S. at 654.  To rise to the

7  level of such deprivation, the discrimination "must have a concrete, negative effect on the

8  victims' education . . . such as creating disparately hostile educational environment relative to

9  [the victim's] peer, forcing the student to change his or her study habits or to move to another

10  district, or lowering the student's grades."  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410

11  (5th Cir. 2015) (collecting cases).

12      Plaintiffs have not alleged facts sufficient to support an inference that they faced a hostile

13  environment compared to their peers, that their grades fell, that they had to change their study

14  habits, or that the alleged discrimination in any way affected their access to education.  The

15  Complaint makes two allegations to this effect, stating that the day after the Mayor Barkat event

16  Plaintiff Volk felt sufficiently threatened by a member of GUPS in one of his classes that he was

17  unable to concentrate and had to leave midway through class.  (Compl. ¶ 99.)  Plaintiffs Mandel

18  and Volk allege that they "routinely experienced a similar inability to focus, concentrate, and

19  fully participate in class when anti-Jewish events and sentiment, and the support from SFSU of

20  these events and this sentiment, became overwhelming" (*id.*), and Plaintiff Mandel alleges that he

21  "has missed class due to concerns about his physical safety" (*id.* ¶ 120).  Yet these conclusory

22  statements fail to allege how often this occurred, in response to which events, or how it affected

23  academic performance.  (*Id.*)  Plaintiff Mandel has already graduated, and none of the other

24  Plaintiffs has alleged that she is in danger of not graduating.  Courts have made clear that

25  "[f]inding the harassment pervasive means that the challenged incidents are more than episodic;

26  they must be sufficiently continuous and concerted."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733,

27  745 (2d Cir. 2003) (internal quotation marks omitted); *see also Gabrielle M. v. Park Forest-

28  Chicago Heights, IL Sch. Dist.163*, 315 F.3d 817, 823 (7th Cir. 2003 ) (finding no evidence that

1   plaintiff was denied access to education because "[a]lthough [she] was diagnosed with some

2   psychological problems, the record show[ed] that her grades remained steady and her absenteeism

3   from school did not increase"); *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th

4   Cir. 2003) (holding that facts "[fell] short of demonstrating a systemic effect of denying equal

5   access to an educational program or activity" where students' grades did not suffer and their

6   teachers did not observe any change in their classroom demeanor). Plaintiffs' single allegation

7   fails to meet this standard.

8          **F.**      **Plaintiffs' claims for declaratory and injunctive relief fail for the reasons set forth above.**

9

10         Plaintiffs have requested relief under the Declaratory Judgment Act, 28 U.S.C. § 2201,

11  and injunctive relief based on all of their claims. (Compl. ¶¶ 179, 194, 209, 225, 2236, 244–48.)

12  Plaintiffs are not entitled to these remedies, as their claims fail for the reasons stated above.

13         Additionally, Plaintiff Mandel lacks standing to seek declaratory and injunctive relief. "It

14  is well-settled that once a student graduates, he no longer has a live case or controversy justifying

15  declaratory and injunctive relief against a school's action or policy." *Cole v. Oroville Union High*

16  *Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000). Because Plaintiff Mandel has graduated from

17  SFSU, he does not have standing to seek declaratory or injunctive relief with respect to the

18  school's actions or policies.

    **V.**       **CONCLUSION AND REQUEST FOR RELIEF**

19

20         For the foregoing reasons, Defendants respectfully request that the Court dismiss all of

21  Plaintiffs' claims against Defendants.

22

23

24

25

26

27

28

1   DATED: September 14, 2017                    Respectfully submitted,

2                                                MUNGER, TOLLES & OLSON LLP
                                                   BRADLEY S. PHILLIPS
3                                                  ADELE M. EL-KHOURI
                                                   SETH J. FORTIN
4
                                                 By:    /s/ Seth J. Fortin
5                                                           SETH J. FORTIN

6                                                Attorneys for Defendants
                                                 BOARD OF TRUSTEES OF THE
7                                                CALIFORNIA STATE UNIVERSITY, SAN
                                                 FRANCISCO STATE UNIVERSITY;
8                                                LESLIE WONG; MARY ANN BEGLEY;
                                                 LUOLUO HONG; LAWRENCE BIRELLO;
9                                                REGINALD PARSON; OSVALDO DEL
                                                 VALLE; KENNETH MONTEIRO; BRIAN
10                                               STUART; ROBERT NAVA; MARK
                                                 JARAMILLA; VERNON PICCINOTTI; AND
11                                               SHIMINA HARRIS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36333160.1