Robb C. Adkins (SBN 194576)
radkins@winston.com
Krista M. Enns (SBN 206430)
kenns@winston.com
Seth Weisburst (SBN 259323)
sweisburst@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Steffen N. Johnson (*pro hac vice*)
sjohnson@winston.com
Lowell D. Jacobson (*pro hac vice*)
ljacobson@winston.com
Adrianne Rosenbluth (*pro hac vice*)
arosenbluth@winston.com
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

Lawrence M. Hill (*pro hac vice*)
lhill@winston.com
Alexa Perlman (*pro hac vice*)
aperlman@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Brooke Goldstein (*pro hac vice*)
brooke@thelawfareproject.org
Amanda Berman (*pro hac vice*)
amanda@thelawfareproject.org
THE LAWFARE PROJECT
633 Third Avenue, 21st Floor
New York, NY 10017
Telephone: (212) 339-6995

Attorneys for Plaintiffs
JACOB MANDEL, CHARLES VOLK,
LIAM KERN, MASHA MERKULOVA,
AARON PARKER, and STEPHANIE ROSEKIND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MANDEL, CHARLES VOLK, LIAM KERN, MASHA MERKULOVA, AARON PARKER, and STEPHANIE ROSEKIND, <br><br>Plaintiffs, <br><br>v. <br><br>BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, and, in their official and individual capacities, LESLIE WONG, MARY ANN BEGLEY, LUOLUO HONG, LAWRENCE BIRELLO, REGINALD PARSON, OSVALDO DEL VALLE, KENNETH MONTEIRO, RABAB ABDULHADI, BRIAN STUART, ROBERT NAVA, MARK JARAMILLA, VERNON PICCINOTTI, and SHIMINA HARRIS, <br><br>Defendants. | Case No. 3:17-CV-03511-WHO <br><br>**PLAINTIFFS' OPPOSITION TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT DR. RABAB ABDULHADI'S MOTION TO DISMISS [ECF 80]** <br><br>Date: November 8, 2017 <br>Time: 2:00 p.m. <br>Location: Courtroom 2 (17th floor) <br>Judge: William H. Orrick <br><br>Complaint Filed: June 19, 2017 <br>First Am. Complaint Filed: August 31, 2017 |

## I. INTRODUCTION

With her motion to dismiss the First Amended Complaint ("FAC"), Dr. Abdulhadi filed a request for judicial notice (the "RJN") asking the Court to take judicial notice of four "documents." ECF 80.  But at least with respect to three of the documents—Exhibits A through C—what the RJN really seeks is for the Court to take judicial notice of the "facts" contained within these documents and/or to make factual findings based on other contents.  As a matter of law, this is impermissible.  Separately, she gives no reason and makes no argument as to why the request to take judicial notice of Exhibit D is appropriate.  Therefore, her request as to each exhibit should be denied.

## II. BACKGROUND

As noted, above, Dr. Abdulhadi's RJN identifies four documents.  Exhibit A—a substitute copy of which is attached to an errata filed as ECF 83—is the "Independent Review Regarding April Event: Summary Report of Findings, San Francisco State University, August 24, 2016" (the "Report").  Exhibit B is the "Faculty & Staff Advisors Of Recognized Student Organizations" webpage (the "Advisors Webpage").  Exhibit C is a 30-page SFSU document entitled "Student Organization Advisor Orientation" ("Advisor Orientation Document").  Exhibit D is Dr. Abdulhadi's now-moot motion to dismiss the original complaint.  Although the RJN sets forth that this is ECF 44, ECF 44 is Dr. Abdulhadi's motion to strike.  It is assumed that she meant to reference her motion to dismiss—ECF 43.

## III. LEGAL STANDARD

Federal Rule of Evidence 201 "governs judicial notice of an adjudicative fact." Fed. R. Evid. 201(a).  "Adjudicative facts are simply the facts of the particular case."  Notes of Advisory Committee on Proposed Rules Subdivision (a).  The "kinds of facts that may be judicially noticed" are those that "are not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).  A "high degree of indisputability is the essential prerequisite."  Fed. R. Evid. 201, Advisory Comm. Notes (2011).  To that end, "[c]are must be taken that Rule 201 not be used as a substitute for more rigorous evidentiary requirements and careful factfinding."  *Korematsu v. United States*, 584 F.Supp. 1406,

1

1415 (N.D. Cal. 1984); *see also* Rule 201 Advisory Comm. Notes (2011) ("[T]he tradition has been one of caution in requiring that the matter be beyond reasonable controversy.").

## IV. DEFENDANT'S REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED

With respect to Exhibits A through C, the RJN makes two arguments. First, it asserts that any statements therein are judicially noticeable because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." RJN at 2:25-27 (quoting Fed. R. Evid. 201(b)). In effect, this is asking the Court to accept as true the "facts" in the Report and in the policies. For example, she asks the Court to accept as true the "finding that there was no credible threat to public safety." Kleiman Decl. (ECF 80) ¶ 3.b. As another example, she asks the Court to accept as true the finding "that the actions were directed towards the mayor, not the audience" and that this "rebut[s] plaintiffs' claim of antisemitism." *Id.* ¶ 3.c.

But it is black-letter law that a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b); *Lee,* 250 F.3d at 689. The "facts" contained in the Report and the sources from which they came are, indeed, the subject of dispute. Indeed, the FAC— which must be taken as true—alleges facts to the contrary. Plaintiffs expressly allege that that they feared for their safety. FAC ¶¶ 79, 85, 90, 91, 93.[1] Plaintiffs also expressly allege that the disruptors' actions were not solely directed at Mayor Barkat. *Id.* ¶¶ 72, 93, 101.[2] Moreover, the FAC is not the only time facts to the contrary have been alleged. The Report itself makes clear that

---

[1] *See* FAC ¶ 79 ("As the disruptive individuals were shouting, some covering their faces with keffiyehs and advancing toward Plaintiffs, many of the audience members feared for their safety and for the safety of the other individuals who had come together to hear from, and engage with, Mayor Barkat."); *id.* ¶ 85 ("Unfortunately, as the event was shut down by the shouting group of GUPS members and others, Mr. Mandel's excitement was replaced by fear and anger, as he was scared for both himself and his fellow students."); *id.* ¶ 90 ("Plaintiff Stephanie Rosekind told a uniformed officer that she did not feel safe."); *id.* ¶ 91 ("They [the audience members] felt powerless, scared for their safety."); *id.* ¶ 93 ("Plaintiffs were then forced to stand by, in fear of threatened violence by the disruptors, while the entire event was completely shut down.").

[2] *See* FAC ¶ 72 (stating that two GUPS student leaders "began leading the entire group in the loud shouting of antagonizing and threatening phrases . . . . directed at Mayor Barkat, Plaintiffs, and the other students and audience members who came to hear Mayor Barkat speak"); *id.* ¶ 93 ("After Mayor Barkat left the room, the disrupting individuals cheered proudly and continued to shout 'Get the fuck off our campus!' to the Plaintiffs and other Jewish students and Jewish members of the community who remained in the room, clearly directing their vitriol at Plaintiffs and other attendees."); *id.* ¶ 101 ("[T]he disruptive individuals . . . were threatening the Jewish individuals with violence, as they shouted . . . not only to Mayor Barkat, but also to Plaintiffs and other Jewish students and community members who attended the event.").

1 these points are disputed, including contrary views on both the question of a threat to public safety
2 and whether the disruptors' actions were directed at the audience. RJN Exhibit A at 13-14.[3]

3       The RJN also argues the facts in these documents are judicially noticeable "because they
4 were posted on an officially [sic] government website." RJN at 3:1-2 (citing *Daniels-Hall v. Nat'l*
5 *Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010)). This, however, is a selective reading of
6 *Daniels-Hall*. When including the second half of the sentence the RJN quotes from *Daniels-Hall,*
7 that opinion states that "[i]t is appropriate to take judicial notice of [] information . . . made publicly
8 available by government entities . . . and neither party disputes the authenticity of the websites or the
9 accuracy of the information displayed therein." *Id.* 629 F.3d at 998-99. Here, as noted above,
10 Plaintiffs (and others) dispute the accuracy of the information in the Report. Moreover, to the extent
11 *Daniels-Hall* can be read narrowly, as the RJN reads it, there is an important exception to this rule:
12 while a court "may take judicial notice of 'matters of public record,'" it "may not take judicial notice
13 of a fact that is 'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th
14 Cir. 2001). Therefore, the request as to Exhibit A should be denied.

15       Moving on to Exhibits B and C—the Advisors Webpage and the Advisor Orientation
16 Document—the RJN does not explain why Dr. Abdulhadi wants the Court to take judicial notice of
17 certain "facts" therein, why such "facts" are not subject to reasonable dispute, or why such "facts"
18 can be accurately and readily determined from sources whose accuracy cannot reasonably be
19 questioned. This in and of itself is fatal to her request as to these exhibits. Fed. R. Evid. 201(b),
20 (c)(2) (requiring judicial notice only when "the court is supplied with the necessary information").
21 But, even if that were not the case, it appears that Dr. Abdulhadi wants the Court to use certain
22 provisions of these documents to make a factual finding in her favor. The FAC cites these
23 documents and alleges that Dr. Abdulhadi is in violation of certain of their provisions. *Id.* ¶¶ 82,
24 162. Dr. Abdulhadi's motion to dismiss asks the Court to find that she was not in violation of those

---

[3] *See* RJN Exhibit A at 13 ("One witness shared: 'At one point, this stuck with me, it made me choke up – the demonstrators were chanting 'we don't want you on this campus' and 'get the fuck off this campus' ... It gave voice to us that the vitriol was not being directed just to the Mayor, but felt very personal.'"); *id.* at 13-14 ("The Assistant Director of SF Hillel noted that some students were crying and some left because they felt unsafe . . . 'The space does not feel safe.' . . . [S]he felt it had already escalated and her students did not feel safe.").

1  provisions because of other provisions therein.  ECF 79 at 8 n.5.  Asking the Court to decide an issue
2  of fact like this is improper.  *Eidson v. Medtronic, Inc.*, 981 F.Supp.2d 868, 878 (N.D. Cal. 2013)
3  (while matters of public record are proper subjects of judicial notice, a court may take notice only of
4  the authenticity and existence of such a document, "not the veracity or validity of its contents")
5  (citation omitted).  Therefore, the request as to Exhibits B and C should be denied.

6        As to Exhibit D, the RJN does not explain which "facts" it asks the Court to judicially notice
7  or why the request seeks judicial notice of a now-moot motion.  This alone is fatal to the request.
8  Fed. R. Civ. P. 201(c)(2).  Regardless, neither Rule 201(b) nor *Lee* supports the proposition that "a
9  court can take judicial notice of court filed documents."  RJN at 3:4-6.  Rule 201(b) says nothing
10 about court filed documents.  *Lee* discussed documents filed with the court, but its focus is on
11 judicial opinions.  250 F.3d at 690.  And *Lee*'s rationale for doing so is at odds with the RJN's
12 intentions here:  "[W]hen a court takes judicial notice of another court's opinion, it may do so 'not
13 for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to
14 reasonable dispute over its authenticity.'"  *Id.* (quoting *S. Cross Overseas Agencies, Inc. v. Wah
15 Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3rd Cir. 1999)); *see also Eidson*, 981 F.Supp.2d
16 at 878 (a court may take notice only of the authenticity and existence of matters of a particular public
17 record, "not the veracity or validity of its contents") (citation omitted).  Moreover, the original
18 motion to dismiss is replete with "facts" that are disputed.  *See, e.g.,* Mot. at 8:7-10 ("Plaintiffs have
19 brought suit against a number of individuals because they disagree with their political views"); *id.* at
20 12-15 ("Most of the allegations constitute irrelevant propaganda that goes back to as far as 1968 and
21 rely on an intentionally distorted and self-serving understanding of anti-Semitism"); *see Lee*, 250
22 F.3d at 689-90.  As such, whether the request is proper turns on the "facts" for which she seeks
23 judicial notice.  Without this information, the Court cannot evaluate the request and thus, as to
24 Exhibit D, it should be denied.

25 **V.     CONCLUSION**

26       For the foregoing reasons, Dr. Abdulhadi's request for judicial notice should be denied.

27
28

Dated: October 11, 2017           WINSTON & STRAWN LLP

By:    */s/ Robb C. Adkins*

Robb C. Adkins
Lawrence M. Hill (*pro hac vice*)
Krista M. Enns
Steffen N. Johnson (*pro hac vice*)
Lowell Jacobson (*pro hac vice*)
Seth Weisburst
Alexa Perlman (*pro hac vice*)
Adrianne Rosenbluth (*pro hac vice*)
WINSTON & STRAWN LLP

Brooke Goldstein (*pro hac vice*)
Amanda Berman (*pro hac vice*)
THE LAWFARE PROJECT

Attorneys for Plaintiffs
JACOB MANDEL, CHARLES VOLK, LIAM KERN, MASHA MERKULOVA, AARON PARKER, and STEPHANIE ROSEKIND