BRADLEY S. PHILLIPS (State Bar No. 085263)
SETH J. FORTIN (State Bar No. 302790)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

ADELE M. EL-KHOURI (*Pro hac vice* pending)
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, D.C. 20004
Telephone:    (202) 220-1100
Facsimile:    (202) 220-2300

Attorneys for Defendants
BOARD OF TRUSTEES OF THE CALIFORNIA
STATE UNIVERSITY, SAN FRANCISCO STATE
UNIVERSITY; LESLIE WONG; MARY ANN
BEGLEY; LUOLUO HONG; LAWRENCE
BIRELLO; REGINALD PARSON; OSVALDO
DEL VALLE; KENNETH MONTEIRO; BRIAN
STUART; ROBERT NAVA; MARK JARAMILLA;
VERNON PICCINOTTI; AND SHIMINA HARRIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MANDEL, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, et al.,<br><br>Defendants. | CASE NO. CV 3:17-cv-03511-WHO<br><br>**REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT OF DEFENDANTS BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; LESLIE WONG; MARY ANN BEGLEY; LUOLUO HONG; LAWRENCE BIRELLO; REGINALD PARSON; OSVALDO DEL VALLE; KENNETH MONTEIRO; BRIAN STUART; ROBERT NAVA; MARK JARAMILLA; VERNON PICCINOTTI; AND SHIMINA HARRIS**<br><br>Judge:     Hon. William H. Orrick III<br>Dept:      Courtroom 2, 17th Floor<br>Date:      November 8, 2017<br>Time:      2:00 p.m. |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     THE APPLICABLE LEGAL STANDARDS SUPPORT THE MOTION TO
        STRIKE ......................................................................................................... 1

        A.      Plaintiffs' interpretation of the "no possible bearing" standard is needlessly
                onerous, undermines the policy behind Rule 12(f), and is in conflict with
                Ninth Circuit precedent ............................................................................ 1

        B.      The *McHenry* standard applies to motions to strike as well as motions to
                dismiss ..................................................................................................... 2

III.    THE  FIRST AMENDED COMPLAINT SHOULD BE STRUCK IN ITS
        ENTIRETY, OR ELSE REDUNDANT AND SURPLUS PASSAGES SHOULD
        BE EXCISED ................................................................................................. 3

        A.      The disorganized nature of the FAC is prejudicial to Defendants because it
                is nearly impossible to answer .................................................................. 3

IV.     NUMEROUS INDIVIDUAL PASSAGES ARE IMMATERIAL, IMPERTINENT,
        AND/OR SCANDALOUS ............................................................................... 5

        A.      The State Department definition of anti-Semitism is not material or
                pertinent, because it does not assist the Court in interpreting Title VI ..... 5

        B.      Material about supposed violations of campus policies and/or state laws is
                immaterial and impertinent ....................................................................... 6

        C.      Allegations about anti-Semitic campus speech, off-campus speech, and old
                speech do not bear on Plaintiffs' claims ................................................... 7

        D.      Allegations of threats against Israeli soldiers are irrelevant.................................. 11

        E.      Defendants challenge interpretations, not truthfulness, of fact allegations............. 11

        F.      Allegations regarding Defendant Abdulhadi ............................................ 13

        G.      Dr. Adulhadi, Mr. Stuart, Mr. Piccinotti, and Ms. Harris as Defendants ............... 14

V.      CONCLUSION AND REQUEST FOR RELIEF ............................................ 15

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*,
474 U.S. 361 (1986) ...................................................................................................5

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*,
526 U.S. 629 (1999) ...................................................................................................9

*Doe By & Through Doe v. Petaluma City Sch. Dist.*,
830 F. Supp. 1560 (N.D. Cal. 1993) .......................................................................10

*Doe v. Mercy Catholic Med. Ctr.*,
850 F.3d 545 (3d Cir. 2017)......................................................................................10

*Fantasy, Inc. v. Fogerty*,
984 F.2d at 1527..................................................................................................1, 2, 8

*Felber v. Yudof*,
851 F. Supp. 2d 1182 (N.D. Cal. 2011) ...............................................................9, 11

*Fennell v. Marion Indep. Sch. Dist.*,
804 F.3d 398 (5th Cir. 2015)....................................................................................11

*Green v. Los Angeles Cty. Superintendent of Sch.*,
883 F.2d 1472 (9th Cir. 1989)..................................................................................10

*Hatch v. Reliance Ins. Co.*,
758 F.2d 409 (9th Cir. 1985)......................................................................................2

*Hearns v. San Bernardino Police Dep't*,
530 F.3d 1124 (9th Cir. 2008).....................................................................................4

*MAI Sys. Corp. v. UIPS*,
856 F. Supp. 538 (N.D. Cal. 1994) ..........................................................................12

*Martel v. Cadjew*,
2011 WL 4386209 (E.D. Cal. Sept. 20, 2011) ....................................................2, 11

*Martin v. Hunt*,
28 F.R.D. 35 (D. Mass. 1961) ....................................................................................2

*McCoy v. Providence Journal Co.*,
190 F.2d 760 (1st Cir. 1951) ......................................................................................2

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996).................................................................................2, 3

*Mendez v. Draham*,
   182 F. Supp. 2d 430 (D.N.J. 2002) ...................................................2, 3, 4

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ...................................................................................10

*Oden v. N. Marianas Coll.*,
   440 F.3d 1085 (9th Cir. 2006)....................................................................15

*San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*,
   2015 WL 8482187 (N.D. Cal. Dec. 10, 2015) ..............................................1

*Schlosser v. Univ. of Tenn.*,
   2014 WL 5325350 (E.D. Tenn. Oct. 20, 2014)...........................................12

*Shorts v. Palmer*,
   155 F.R.D. 172 (S.D. Ohio 1994) .................................................................5

*Stanley v. Trustees of Cal. State Univ.*,
   433 F.3d 1129 (9th Cir. 2006) ......................................................................9

*Stephen C. v. Bureau of Indian Educ.*,
   No. 3:17-cv-08004-SPL (C.D. Cal May 8, 2017) .........................................2

*Thomas v. Sandstrom*,
   2009 WL 5111788 (M.D. Pa. Dec. 16, 2009) ...............................................2

*United States v. Am. Coll. of Physicians*,
   475 U.S. 834 (1986) ......................................................................................5

*United States v. Gonzales*,
   520 U.S. 1 (1997) ..........................................................................................6

*Watkins & Son Pet Supplies v. Iams Co.*,
   107 F. Supp. 2d 883 (S.D. Ohio 1999), aff'd, 254 F.3d 607 (6th Cir. 2001)............................12

**Federal Statutes**

42 U.S.C. § 2000d .................................................................................................8

**State Rules**

Rule 8 ...........................................................................................................1, 2, 3, 4

Rule 8(a)................................................................................................................2

Rule 8(a)(2) ..........................................................................................................2

Rule 12(c)..............................................................................................................3

Rule 12(e)..........................................................................................................3, 15

Rule 12(f) ..............................................................................................................1, 2, 3, 8

**OTHER AUTHORITIES**

U.S. Dep't of State, "Defining Anti-Semitism" (January 20, 2017),
    https://www.state.gov/s/rga/resources/267538.htm ..................................................13

## I.      **INTRODUCTION**

Defendants'[1] Motion to Strike (or "MTS") sets forth numerous passages in the First Amended Complaint ("FAC") that are redundant, immaterial, impertinent, and scandalous.  As noted in the Motion and elaborated further below, such passages may be struck not only because they each individually contribute nothing to the FAC, but also because cumulatively they prejudice Defendants in having to answer them and, additionally, result in a FAC which does not adhere to Rule 8's requirement of a "short and plain statement of the claim."  As will be shown below, the arguments in Plaintiffs' Opposition do not counsel otherwise.

## II.     **THE APPLICABLE LEGAL STANDARDS SUPPORT THE MOTION TO STRIKE**

### A.      **Plaintiffs' interpretation of the "no possible bearing" standard is needlessly onerous, undermines the policy behind Rule 12(f), and is in conflict with Ninth Circuit precedent**

Plaintiffs repeatedly cite to *San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*, No. 14-CV-04393-WHO, 2015 WL 8482187, at *1 (N.D. Cal. Dec. 10, 2015), for the proposition that "granting a motion to strike is improper unless a defendant shows that the challenged text has '*no possible bearing*' on the subject matter of the litigation."  (Opp. at 9:20-10:2.  *See also id.* at 1:16-19, 8:1-3.)  But Plaintiffs' rigid application of that standard in the Opposition ignores the Ninth Circuit's admonitions in *Fantasy, Inc. v. Fogerty*:

> [T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.... 'Immaterial' matter is that which has **no essential or important relationship** to the claim for relief or the defenses being pleaded.  'Impertinent' matter consists of statements that do not pertain, and are **not necessary**, to the issues in question.

984 F.2d 1524, 1527 (9th Cir. 1993) (emphases added) (internal quotation marks and citations omitted), *rev'd as to other matters,* 510 U.S. 517 (1994).

Whatever the phrase "no possible bearing" might mean, it must be read with these definitions in mind.  Thus, the standard is not whether the matter being attacked has *any* relationship with the claims, no matter how tenuous.  The question to be answered is whether it

---

[1] The motion is made on behalf of all defendants except Dr. Abdulhadi (collectively, "Defendants").

has an "*essential or important* relationship to the claim," or whether it "pertains to" *and is*

"*necessary to*" the  issues.  This is because the whole point of the motion to strike, as the *Fantasy,*

*Inc.* court explained, is to reduce the burden of litigation.[2]  A standard allowing plaintiffs to plead

reams of tangential allegations on the theory that they might have *some* relationship to the claims

vitiates the careful definitions laid out in *Fantasy, Inc.*   As one federal court noted, plaintiffs are

not entitled to write a "dissertation" on every related piece of history or policy; they must focus on

the claims at hand.  Order at 2, *Stephen C. v. Bureau of Indian Educ.* No. 3:17-cv-08004-SPL

(C.D. Cal May 8, 2017), ECF No. 47.

### B.    The *McHenry* standard applies to motions to strike as well as motions to dismiss

As an initial matter, Plaintiffs' FAC should be struck in its entirety for failure to

comply with Rule 8(a).  Courts may strike a pleading *in toto* under Rule 12(f) when redundant,

immaterial, impertinent, or scandalous material is so pervasive that the complaint fails to satisfy

Rule 8(a)(2).  *Mendez v. Draham*, 182 F. Supp. 2d 430, 433 (D.N.J. 2002) (striking overlong,

repetitive complaint for failure to conform to Rule 8).[3]

Plaintiffs observe that *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) and *Hatch*

*v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985), cited in the Motion to Strike, dealt with

motions to dismiss on the basis of failure to adhere to Rule 8, rather than motions to strike.  But

the standard articulated in those cases is broadly applied to several Federal Rules that allow courts

to eliminate complaints for failure to abide by Rule 8.  Indeed, the Ninth Circuit recently quoted

---

[2] *See also Martel v. Cadjew*, No. CIV S-11-0509 JAM, 2011 WL 4386209, at *2 (E.D. Cal. Sept. 20, 2011) ("[G]ranting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues.").

[3] *See also McCoy v. Providence Journal Co.*, 190 F.2d 760, 766 (1st Cir. 1951) (district court should have stricken complaint that failed to comply with Rule 8 because it was "argumentative, prolix, redundant and verbose"); *Martin v. Hunt*, 28 F.R.D. 35, 36 (D. Mass. 1961) (striking complaint as "the complete antithesis of the type of complaint contemplated by Rule 8(a)(2)"); *Thomas v. Sandstrom*, No. 1:09-CV-1557, 2009 WL 5111788, at *1 (M.D. Pa. Dec. 16, 2009) (striking motion in its entirety that was "so saturated with redundant, immaterial, impertinent, and scandalous matter so as to make precise surgery to excise the offending portions virtually impossible"); *Stephen C. v. Bureau of Indian Educ.*, No. 3:17-cv-08004-SPL, at 2 (granting motion to strike entire complaint that was lengthy, "read[] more like a dissertation than a complaint," and failed to clarify "whether the allegations are tied to any specific Plaintiff").

*Mendez*, a Rule 12(f) order, in a string cite with *McHenry*, a dismissal under Rule 12(e), in order

to rule on an appeal from a judgment on the pleadings under Rule 12(c).  *Cafasso, U.S. ex rel. v.*

*Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011).

## III.   THE  FIRST AMENDED COMPLAINT SHOULD BE STRUCK IN ITS ENTIRETY, OR ELSE REDUNDANT AND SURPLUS PASSAGES SHOULD BE EXCISED

### A.   The disorganized nature of the FAC is prejudicial to Defendants because it is nearly impossible to answer

As discussed in Section IV.A. of the Motion to Strike, Plaintiffs' FAC "fill[s] pages

with either repeated boilerplate or multiple sets of allegations that appear to be duplicative."

Plaintiffs argue that mere redundancy is not enough to support a motion to strike without a

showing of prejudice, citing *Lentz v. Woolley* for the proposition that a "few short summary

paragraphs" do not prejudice the defendant.  No. 89-0805 JGD, 1989 WL 91148, at *10 (C.D. Cal.

June 12, 1989).  But *Lentz* is not on point.  In *Lentz*, defendants sought to excise a total of five

paragraphs—one as immaterial and scandalous, and just four as redundant.  The court concluded

that the prejudice involved was not sufficient to merit striking the offending paragraphs.

But in the case of prolix and redundant allegations, the prejudice to an answering

defendant is inherently *cumulative*—more redundancy means more prejudice.  As the *Mendez*

court explained, where the same allegation is made numerous times in numerous paragraphs with

slightly different phrasing, "Defendants' attorneys do not have the luxury of clicking the 'paste'

button on their computer; if they fail to notice that one or two words have been varied, with

meaningful import . . . and inadvertently admit that allegation, they face the risk of malpractice."

*Mendez v. Draham*, 182 F. Supp. 2d at 433.

This is why Plaintiffs' statement in the Opposition that "[t]o answer the FAC, the

Defendants must do what every defendant does—go paragraph by paragraph and admit or deny

the allegations therein," (Opp. at 4:12-14), fails to adequately grapple with the real problems their

redundant and prolix FAC poses for Defendants.  To give a simple example, in one portion of their

FAC, Plaintiffs directly associate the "Protocols of the Elders of Zion" with the Third Reich and

the Holocaust.  (FAC ¶ 49 (describing the "Protocols" as "often used by the Third Reich as a

justification for the Holocaust").)  Sixty-seven paragraphs later, they assert that a statement of President Wong's was in fact "a well-established anti-Semitic stereotype, attributable directly to the *aforementioned* 'Protocols of the Elders of Zion.'"  (*Id.* at ¶ 116 (emphasis added).)  Yet in their Opposition, Plaintiffs audaciously assert that "[t]here are no references to the Holocaust in . . . Paragraph 116."  (Opp. at 13:13.)  Defendants are tempted to call this an argument made in bad faith, but in truth it seems more likely that Plaintiffs' attorneys simply *forgot* that ¶ 116 directly refers back to, and implicitly incorporates, ¶ 49.  Defendants have some sympathy for this error, as it is exactly the kind likely to occur when one attempts to decode a complaint this sprawling and disorganized—as the quote from the *Mendez* court, *supra*, forewarns.

Similarly, while Plaintiffs are correct that the mere presence of legal conclusions in a complaint is not a reason to strike (Opp. at 5-6), they miss the point—immaterial, conclusory language adds to the *cumulative* effect of prolixity and tends to render the FAC needlessly argumentative rather than factual.  When added to all the other redundant, immaterial, and impertinent matter, such passages contribute to the Rule 8 failure that justifies striking the FAC *in toto*.  *Mendez*, 182 F. Supp. at 433.  In the alternative, they contribute to the "surplusage" that a court may strike from a complaint for failure to adhere to Rule 8.  *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008).

Adding to the surplusage are the passages that allege anti-Semitism or violations of First Amendment rights on college campuses generally, unnecessarily regurgitate Floyd Abrams' opinions about the role of universities, bring in irrelevant putative "admissions" about violations of university codes or state law not at issue in this action,[4] and otherwise contribute nothing to pleading Plaintiffs' claims, yet which Defendants have the burden of answering.  (*See* MTS at 6-7 for comprehensive discussion.)  Plaintiffs admit that allegations about other universities or a rise in society-wide anti-Semitism are only in the FAC to provide "public policy background and context."  (Opp. at 6:5-6.)  But the sheer volume of Plaintiffs' throat-clearing "policy" discussions prejudices Defendants, who will have to answer all this superfluity.

---

[4] *See* Part IV.B, *infra*.

IV.    **NUMEROUS INDIVIDUAL PASSAGES ARE IMMATERIAL, IMPERTINENT, AND/OR SCANDALOUS**

      A.    **The State Department definition of anti-Semitism is not material or pertinent, because it does not assist the Court in interpreting Title VI**

Plaintiffs admit that the State Department definition of anti-Semitism has been explicitly considered as an addition to Title VI, and that Congress has not so added it to the statute.  (Opp. at 9:7-8.)  They nonetheless attempt to rescue the immaterial and impertinent definition by pointing to a case that held that two opinion letters by an FTC attorney and a state assistant attorney general, attached as exhibits to a reply brief, would not be stricken because "they are offered for whatever assistance they might provide the Court in interpreting the relevant statutes, a purpose that is completely permissible."  *Shorts v. Palmer*, 155 F.R.D. 172, 176 (S.D. Ohio 1994).  But whatever the value of those legal opinion letters (especially by an FTC attorney interpreting a federal trade practice statute), and without conceding that the *Shorts* court made the right call, such letters are simply not on the same footing as a definition that has been explicitly considered and *rejected* by Congress.

It is black-letter law that what is *not* passed by Congress should not be used "either to supply a provision *not* enacted by Congress . . . or to define a statutory term enacted by a prior Congress."  *United States v. Am. Coll. of Physicians*, 475 U.S. 834, 846–47 (1986).  "Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises."  *Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 374 (1986).  It is not the place of the courts to second-guess such hard-fought compromises, or to read rejected proposals into legislation.  It would therefore be highly inappropriate to rely on the rejected State Department definition in interpreting the statute.

As it cannot be relied upon to interpret the statute, the allegation is immaterial and impertinent to the causes of action alleged.[5]

**B.** **Material about supposed violations of campus policies and/or state laws is impertinent and impertinent**

As a threshold matter, Plaintiffs concede that the allegations discussed below—of supposed violations of campus policies; campus speech that did not involve Plaintiffs or occurred many years ago; off-campus speech; supposed threats against Israeli soldiers—are merely "background" and "context" and do not in fact form the basis of their Title VI claim.  (Opp. to Mot. to Dismiss at 22-23.)  Nevertheless, Plaintiffs argue that their inclusion of numerous allegations about violations of campus policies and/or state laws are material and pertinent to the claims at issue because they are allegedly "in the context of *admissions* and concessions by Defendants as to underlying violations of SFSU policies and state law," which Plaintiffs claim are "party admissions of conduct underlying Plaintiffs' claims."  (Opp. at 6:12-13, 6:18-19 (emphasis in original).)  But an examination of the passages in question shows that the allegations of admissions are largely conclusory and, for the most part, do not actually touch on the underlying behavior.

For example, paragraph 80 alleges that "[t]he use of a sound amplifier to drown out and shut down a student group event in this way was expressly against University policies . . . [listing several policies]. This indisputable violation of both the SFSU Code of Student Conduct and/or the Seven Hills Conference Center rules has been acknowledged by Defendants Leslie Wong [and others]."  Even assuming that the conclusory and non-specific "has been acknowledged" could be construed as an allegation of a party admission, it is an admission of a *violation of the rules*, not an admission of specific conduct underlying the violation.

---

[5] Plaintiffs point to the fact that the Senate passed a bill endorsing the State Department definition in the same year that the House bill was rejected.  But this only underscores the point—if the two houses of Congress have not agreed and have, in actual fact, not incorporated the definition into Title VI, then by definition it is not a part of Title VI, and using it to interpret Title VI—far from providing any clarifying assistance—only "muddies the waters." *United States v. Gonzales*, 520 U.S. 1, 6 (1997).

1    Similarly, a number of subparagraphs to paragraph 81 allege laundry lists of

2 supposed statements about rules violations but, again, no descriptions of actual facts about

3 behavior.  E.g., "Defendant Begley wrote, 'based on my observation, members of GUPS

4 participated in behavior that was in violation of campus policies. They are as follows,'" followed

5 by—*not* a list of actual acts by the students—but rather a list a campus policies violated.  (FAC at

6 25:5-15.)  Other subparagraphs also fail to name actual acts by any person, but merely list, again,

7 rules that were allegedly violated.  (*Id.* at 25:16-24 (alleged list by Defendant Stuart of rules

8 violated); *id.* at 25:25-26:2 (alleged statement of university counsel noting certain "conduct

9 procedures SFSU has developed in cases involving student organizations")).)

10    Plaintiffs do not argue that paragraphs 82, 162, and 163 are alleged party

11 admissions of anything.  They simply state that "Dr. Abdulhadi's stated requirements as a faculty

12 advisor . . . are at issue."  (Opp. at 6:19-20.)  But they are not; Dr. Abdulhadi is not being sued for

13 failing to meet her job requirements.  The same is true of Defendant Harris.

14    **C.    <u>Allegations about anti-Semitic campus speech, off-campus speech, and old</u>**
   **<u>speech do not bear on Plaintiffs' claims</u>**

15

16    Plaintiffs further argue that allegations about campus speakers who have made off-

17 campus remarks calling for the destruction of or otherwise disparaging Israel are relevant to their

    claims because SFSU "sponsored, funded, promoted, and celebrated" such speakers, whereas

18 Mayor Barkat received a different "reception."  (Opp. at 10:6-17 (citing FAC at 43:22-44:4).)

19 But, first, there are literally no factual allegations in the cited passage[6] that these speakers were

20 "funded," "promoted," or "celebrated" by SFSU or its administrators.  The only possible

21 connection to the university is that these speakers are alleged to have spoken at an "SFSU event,"

22 or that "SFSU hosted" the event.  (FAC at 43:22-44:4.)  But those ambiguous phrases indicate

23 only that the event took place at SFSU, not that it was official speech by the university or

24 otherwise endorsed by officials.  Indeed, the same passage makes clear that the Tamimi event, at

25 least, was "sponsored by GUPS and AMED," not by the university.  (*Id.*)  Thus, the allegations are

26

27 _____
   [6] Defendants are unable to locate such allegations anywhere else in the FAC.  To the extent
28 Plaintiffs have some other unnamed passage in mind that bears on the cited passage, this, again,
   goes to the poor organization and confusing structure of the FAC as a whole.

DEFENDANTS' NOTICE OF MOT. AND MOT. TO STRIKE

1   not related to actions taken by the university or its administrators that would create a hostile

2   discriminatory environment—they simply represent, as Plaintiffs actually recognize, protected

3   speech activities by students and faculty and their guests.  (FAC ¶ 12 ("Plaintiffs have never

4   believed, and do not now believe, that this vile speech is unprotected . . . .").)

5         Plaintiffs also argue that these allegations are relevant because they allege that their

6   "right to hear was abridged because they were Jewish."  (Opp. at 10:13-14.)  But in the same

7   breath they acknowledge that "alleging such an intent is not necessary to the First Amendment

8   claims."  (*Id.* at 10:14-15.)  They further acknowledge that "not necessary[] to the issues in

9   question" is *literally the definition of "impertinent"* for Rule 12(f) purposes.  (*Id.* at 10:28-11:1

10   (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d at 1527).)

11         Because Plaintiffs essentially concede the lack of relevance to their First

12   Amendment claims, it is surprising that they then argue that off-campus speech by certain invited

13   speakers is relevant to their Title VI claim because, again, SFSU "invited and celebrated" those

14   speakers, while "when a speaker with an expected contrary viewpoint sought to speak on campus,

15   he was not celebrated." (Opp. at 11:12-26.)  Again, it is not clear how speakers' opinions about

16   Israel (or other speakers' "contrary viewpoint[s]") could be relevant to the Title VI claim.

17         In order for these allegations to be relevant to the Title VI claim, Plaintiffs would

18   have to show either that there was an intentional policy of preventing Jews from speaking or that

19   anti-Semitic speech somehow created a pervasive environment of hostility.  As to the first possible

20   ground, if discrimination against Jews in speech opportunities *because they are Jewish* is the basis

21   of Plaintiffs' Title VI claim, the content of other speakers' on-campus speech is irrelevant—much

22   less what some speaker may have said off campus on another occasion. "No person in the United

23   States shall, *on the ground of race, color, or national origin*, be excluded from participation in, be

24   denied the benefits of, or be subjected to discrimination under any program or activity receiving

25   Federal financial assistance."  42 U.S.C. § 2000d.  Plaintiffs simply do not allege facts showing

26   that the supposed difference in treatment between the speakers discussed in ¶ 123 of the FAC and

27   Mayor Barkat has anything to do with race.  Thus, allegations about these speakers are irrelevant

28   to such a claim.

1    As to a hostile environment claim, the FAC's allegations of off-campus speech by

2  speakers invited to SFSU years ago does not factor in there, either.  First, as noted in the Motion to

3  Strike and the Motion to Dismiss, criticism of Israel is not analytically the same thing as

4  discrimination on the basis of race.  Second, there are simply no allegations that Plaintiffs heard

5  (or even knew of) the off-campus speech by speakers like Omar Barghouti and Bassem Tamimi.

6  Thus, their alleged off-campus speech cannot have created an environment that would have

7  prevented Plaintiffs from accessing the benefits of the university.  Courts "have never held the

8  presence of [a harassing] individual in a workplace or institution where the plaintiff is not present

9  constitutes a hostile environment."  *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1137

10  (9th Cir. 2006).  *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (dismissing Title

11  VI claim where "a broad swath of the conduct alleged occurred at times and in places where

12  plaintiffs were not present," or "years before plaintiffs ever enrolled at UC Berkeley, and/or on

13  different campuses entirely").

14    Plaintiffs further argue that events from decades ago are relevant to their Title VI

15  claims because "substantially similar incidents are still occurring today, contributing to the

16  pervasive and persistent hostile environment."  (Opp. at 11:1-3.)  But the past events they discuss

17  are the speech activities of other students and faculty, which they admit are protected speech.  As

18  to supposed discrimination against Jews, Plaintiffs cite only a single,[7] *recent* incident, which does

19  not a hostile environment claim make.  (*Id.* at 11:18-24 (citing allegations of disruption of "a

20  speaker"—Mayor Barkat).)  There is simply no pattern of discrimination extending back into the

21  past, *even in Plaintiffs' pleading*.

22    Plaintiffs also allege no actual facts to suggest that the Mayor Barkat speech was

23  moved, or that police did not interfere with protests, because he or Plaintiffs are Jewish.  Indeed,

24  the FAC alleges facts showing that the event was moved for other reasons, such as scheduling

25

26

27  _____

[7] Generally, a single incident of peer-to-peer harassment is insufficient to state a claim for hostile
28  environment discrimination.  *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526
U.S. 629, 652–53 (1999).

conflicts, concerns about safety, and concerns about disruption of nearby classes.  (FAC ¶¶ 65, 67-68.)

Plaintiffs suggest that they can allege a hostile environment by showing "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period."  (Opp. at 11:3-11 (quoting *Doe By & Through Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1568 (N.D. Cal. 1993) and *Green v. Los Angeles Cty. Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir. 1989)).)  Indeed, it is correct that "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct. . . .  Such claims are based on the cumulative effect of individual acts."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  But that is precisely the problem with Plaintiffs' claims: they *do not* allege a continuous pattern of repeated conduct.  Rather, they recite a long history of admittedly protected speech acts by parties other than university administrators, but their actual claim (at least as to discrimination in campus speech) is framed around a *single event*—the Barkat speech.  There simply is no allegation of a history of preventing Jews from speaking or holding events, nor anything else that would make these decades-old protected speech acts part of a pattern of severe and pervasive discrimination amounting to a hostile environment.  As the *Green* court noted, where earlier incidents "were not sufficiently related to" the alleged later discriminatory conduct, "the continuing violating theory . . . does not apply."  883 F.2d at 1480.

Moreover, to allege a pattern of behavior constituting a hostile environment, a plaintiff must plead acts that are "part of the *same* unlawful . . . practice, meaning they involved *similar conduct by the same individuals*, suggesting a persistent, ongoing pattern."  *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017) (emphases added) (internal quotation marks and citations omitted).  Plaintiffs do not allege that the speech conduct that occurred years ago, or off campus altogether, involves the same individual administrators that they now allege behaved in discriminatory fashion with regard to the Mayor Barkat event.

For the same reason, Plaintiffs' argument that these historical allegations are necessary to show Defendants' "knowledge and awareness" (Opp. at 8:15) falls flat.  Plaintiffs

rely on *Martel v. Cadjew*, No. CIV S-11-0509 JAM, 2011 WL 4386209 (E.D. Cal. Sept. 20, 2011).  In *Martel*, the court declined to strike allegations of actions *by the defendants* that showed their knowledge by implication.  *Id.* at *4.  But allegations of decades-old events that no administrator Defendant was involved with, nor is alleged to have any personal knowledge of, are not at all on the same footing.

In short, the FAC's allegations of protected speech, decades-old events and off-campus speech have no possible bearing on Plaintiffs' claims and should be stricken as immaterial and impertinent.

**D.      Allegations of threats against Israeli soldiers are irrelevant**

Plaintiffs argue that immaterial and impertinent allegations of threats against Israeli soldiers "are relevant to Plaintiffs' Title VI claim."  (Opp. at 12:2-9.)  But to succeed on that claim, Plaintiffs must allege that the complained-of acts "deprived *Plaintiffs* of access to the educational opportunities or benefits provided by the school."  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (emphasis added) (brackets omitted).[8]  But the FAC does not alleged that Plaintiffs were deprived of access to education by these threats—it only alleges that *other*, unnamed students were frightened by the threat.  (FAC ¶¶ 100, 126.)  The allegations are therefore immaterial and impertinent to the Title VI claim.

**E.      Defendants challenge interpretations, not truthfulness, of fact allegations**

Defendants have moved to strike the FAC's "characterization of" a supposed statement by Defendant Wong.  (MTS at 10:5-11:28 (citing FAC ¶¶ 116-17).)  Plaintiffs respond that the Court cannot make determinations about the truthfulness of allegations on a motion to strike (Opp. at 12:21-28), but this argument misses the mark in two ways.

First, Defendants are not asking the Court to make a determination as to the *factual* allegations about what was said.  Rather, Defendants challenge the *interpretations* of the statement

---

[8] *See also Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) (dismissing Title VI claim because "plaintiffs have not alleged facts showing that they were denied access to the University's educational services in any meaningful sense").

embedded in Plaintiffs' allegations.  The FAC does not merely recount a conversation; rather, it affirmatively makes interpretive statements about the hidden meaning of President Wong's words:

> He also expressed that Jewish students had too much access to the President of the University and reiterated his request that they instead reach out to lower level officials, **thereby invoking an anti-Semitic trope of Jewish power**.  When confronted about this comment, he refused to acknowledge that **this reference to Jews' disproportional power was a well-established anti-Semitic stereotype, attributable directly to the aforementioned "Protocols of the Elders of Zion,"**  . . . .

(FAC ¶ 116 (emphasis added).)  The bolded phrases are *not* factual allegations about what was said by any person present, but Plaintiffs' *interpretations* of what was said.  Even at the pleading stage, "legal conclusions, deductions or opinions couched as factual allegations are *not* entitled to a presumption of truthfulness." *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 540 (N.D. Cal. 1994).  Plaintiffs are entitled to plead their facts, but their conclusions and opinions *about* their alleged facts are given no special deference.[9]

Second, "a court may grant a motion to strike for falsity if the court finds that the allegations are 'obviously false and clearly injurious to a party.'" *Schlosser v. Univ. of Tenn.*, No. 3:12-CV-534, 2014 WL 5325350, at *3 (E.D. Tenn. Oct. 20, 2014) (citing *Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 887 (S.D. Ohio 1999), *aff'd,* 254 F.3d 607 (6th Cir. 2001).).  In *Schlosser*, the court struck allegations about a defendant's motives that the court found "nonsensical" based on the circumstances and that went beyond "the type of negative assertions that arise in any civil complaint into deeper waters of undue and unfair prejudice."  *Id.* at *4.  Similarly, here, Plaintiffs' characterizations of Defendant Wong's statements are nonsensical on their face.  (MTS at 10:8-9, 11:10-13.)  And the undue and unfair prejudice here is obvious—asserting that Defendant Wong "invok[es] an anti-Semitic trope" poisons readers against him, rather than letting any alleged statements speak for themselves.

---

[9] For the same reason, Plaintiffs cannot simply hide their legal conclusions behind such constructions as "He felt overcome by the devastating realization that . . . ." or "Plaintiffs could not understand why . . . ." where the construction *assumes* the desired legal conclusion as a factual predicate to a plaintiff's alleged thought process. MTS 6:20-26.

**F.**      <u>Allegations regarding Defendant Abdulhadi</u>

The FAC takes numerous opportunities to tar Dr. Abdulhadi as associated with "terrorists" or to attack her political views.  (MTS at 12-13.)  As discussed at greater length in the accompanying Motion to Dismiss and Reply, as well as Dr. Abdulhadi's own motion to dismiss, none of these accusations supports a First or Fourteenth Amendment claim against Dr. Abdulhadi, nor a Title VI claim against the university.  Because they are not relevant to any cause of action— and, indeed, it is not clear what the cause of action against Dr. Abdulhadi could *be* (*see* Part IV.F, *infra*)—Defendants again respectfully request that references to her as a defendant, and certain immaterial, impertinent, and scandalous passages about her, be stricken.  (MTS at 12-13, 15.)

Plaintiffs respond that their allegations are relevant to their Title VI claim of a hostile environment.  But, for example, allegations that Dr. Abdulhadi signed an MOU that "seeks to establish a student exchange program that would bring An-Najah students to SFSU's campus" (Opp. at 14:1-3) do not pertain to claims of a hostile environment: there is no allegation that the exchange program was actually created—let alone that its creation meaningfully created or exacerbated a hostile environment for Jews at SFSU.

Plaintiffs argue that they, "as Jews, are made to feel targeted and unequal" by Dr. Abdulhadi's protected speech and association activities. (Opp. at 14:4-7.)  But Plaintiffs do not allege that they were prevented from accessing educational opportunities at SFSU because of Dr. Abdulhadi's political associations in the Middle East. As to the alleged litmus test (*id.* at 14:7-8), Plaintiffs do not allege that they wanted to take classes with Dr. Abdulhadi or in her department but were prevented from doing so by her actions.  (*See* MTS at 12:18-19.)[10]

Plaintiffs also argue that certain passages are relevant to their First and Fourteenth Amendment claims, because Dr. Abdulhadi allegedly organized a hunger strike to petition the administration not to punish "students, staff, administrators or *faculty* based on their involvement in the shutdown of Mayor Barkat's speech."  (Opp. at 14:12-17.)  But Plaintiffs provide no

---

[10] Additionally, "criticism of Israel similar to that leveled against any other country cannot be regarded as anti-Semitic." U.S. Dep't of State, "Defining Anti-Semitism" (January 20, 2017), https://www.state.gov/s/rga/resources/267538.htm.

1   authority for the proposition that allegations she tried to avoid "punishment" (for herself or others)

2   in her individual capacity would be material or pertinent to a First or Fourteenth Amendment

3   claim against her.[11]

4          Because these allegations are immaterial and impertinent to Plaintiffs' claims, and

5   because, as discussed in the Motion to Strike, they are also cast in scandalous and derogatory

6   language (MTS at 13), they should be stricken from the FAC.

7        **G.**     **Dr. Adulhadi, Mr. Stuart, Mr. Piccinotti, and Ms. Harris as Defendants**

8          Plaintiffs argue that they have alleged "Dr. Abdulhadi's extensive connections to

9   the deprivation of their civil rights in" the Mayor Barkat and the Know Your Rights incidents,

10   "through both her own direct involvement and her encouragement of GUPS and knowing refusal

11   to terminate GUPS' actions." (Opp. 15:19-21.)  To support this argument, they cite to FAC ¶¶ 81-

12   82, 96, 101, 126, 175-76, 187, 189 (regarding the Barkat event) and *id.* ¶¶ 150, 160, 162, 204, 217-

13   20 (regarding Know Your Rights).  Paragraphs 81, 96, 101, 150, 175-176, 187, 189, 204 and 217-

14   20 do not allege any actions taken by Dr. Abdulhadi; they only make conclusory assertions about

15   "Defendants" or "KYR Defendants" as a collective.  Paragraphs 82 and 162 say only that she did

16   not follow the university's requirements for advisors of student organizations.  Paragraph 126 says

17   that she organized the hunger strike discussed above.  Paragraph 160 only alleges that she

18   expressed certain opinions about the Know Your Rights incident after the fact and that "on

19   information and belief" she was a "faculty organizer[]" of the event.  None of these allegations

20   shows that there is a claim against Dr. Abdulhadi based on her own actions.

21          Similarly, there are no allegations against Defendants Stuart, Piccinotti, and Harris

22   that are a clear basis for claims against them.  (MTS at 14:1-15:3.)  Plaintiffs argue that they do

23   assert claims against Stuart because they allege that he "knew" that there was a room change for

24   the Barkat event and that he "knew" that protesters' use of an amplifier to disrupt a speech was a

25   violation of university policies.  (Opp. at 16:5-8.)  Neither allegation shows that Stuart took any

26   action that deprived any Plaintiff of his or her rights.  Plaintiffs argue that ¶ 63 alleges that

27   _____

28   [11] Plaintiffs also do not allege that Abdulhadi had the authority to punish the protesters; indeed, the allegation is that she had to use a hunger strike in order to try to influence administrators.

1    Piccinotti "was involved in denying SF Hillel access to a free event space on campus for Mayor

2    Barkat's speech," (*id.* at 16:8-10), but in fact that paragraph only states that he was "responsible

3    for properly coordinating and managing events at SFSU, including those sponsored by student

4    organizations" and that he is "listed on SFSU's website as a source of information."  Again,

5    neither allegation shows personal involvement in any of the complained-of decisions.

6           Plaintiffs further argue that ¶¶ 110 and 163 allege that Harris "did not impose any

7    consequences on the student organizations . . . [regarding] the Mayor Barkat event."  (*Id.* at 16:10-

8    13.)  That is true, but it is several jumps from a claim against her, given that she was not on the job

9    when the event actually occurred (FAC ¶ 110), and that Plaintiffs have not explained why

10   "impos[ing] consequences" on individuals is the only possible constitutional response to these

11   alleged events.  (*See* Mot. to Dismiss at 22:21-27 (discussing failure to allege deliberate

12   indifference) (citing *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) ("An

13   aggrieved party is not entitled to the precise remedy that he or she would prefer.")).)[12]

14          Plaintiffs also argue that "application of a discriminatory policy" is a basis for a

15   civil rights claim (Opp. 16:16-17), but they do not actually identify such a policy.  Indeed, as far

16   as Defendants can determine, the gravamen of their complaint is that Defendants failed to enforce

17   existing policies, not that they applied a discriminatory policy.  (*See, e.g.*, FAC ¶ 82.)

18          Because the bases for the claims against all these Defendants remain unclear,

19   Defendants respectfully request that references to them as Defendants be stricken, or that, in the

20   alternative, the Court order Plaintiffs to make a more definite statement of the claims against them,

21   so that they may answer.  Fed. R. Civ. P. 12(e).

22   **V.    CONCLUSION AND REQUEST FOR RELIEF**

23          For the foregoing reasons, Defendants respectfully request that the Court grant the

24   relief requested in the Motion to Strike.

25

26   _____

27   [12] Plaintiffs also argue that where a supervisor has "knowingly acquiesced to a subordinate's
     violation of free speech rights," a claim may be brought against the supervisor.  (Opp. at 16:14-

28   16.)  But the FAC does not make clear whom they are supposed to have been supervising or how
     *those* people violated Plaintiffs' rights.

DEFENDANTS' NOTICE OF MOT. AND MOT. TO STRIKE

CASE NO. 3:17-CV-03511-WHO

1   DATED: August 21, 2017           Respectfully submitted,

2                                MUNGER, TOLLES & OLSON LLP
                                  BRADLEY S. PHILLIPS

3                                  ADELE M. EL-KHOURI
                                  SETH J. FORTIN

4

5                          By:_____/s/ *Bradley S. Phillips*_____
                                BRADLEY S. PHILLIPS

6                              Attorneys for Defendants

7                              BOARD OF TRUSTEES OF THE
                              CALIFORNIA STATE UNIVERSITY, SAN

8                              FRANCISCO STATE UNIVERSITY;
                              LESLIE WONG; MARY ANN BEGLEY;

9                              LUOLUO HONG; LAWRENCE BIRELLO;
                              REGINALD PARSON; OSVALDO DEL

10                             VALLE; KENNETH MONTEIRO; BRIAN
                             STUART; ROBERT NAVA; MARK

11                             JARAMILLA; VERNON PICCINOTTI; AND
                             SHIMINA HARRIS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOT. AND MOT. TO STRIKE

CASE NO. 3:17-CV-03511-WHO