1   BRADLEY S. PHILLIPS (State Bar No. 085263)
    SETH J. FORTIN (State Bar No. 302790)
2   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, 50th Floor
3   Los Angeles, CA 90071-3426
    Telephone:    (213) 683-9100
4   Facsimile:    (213) 687-3702

5   ADELE M. EL-KHOURI (admitted *pro hac vice*)
    MUNGER, TOLLES & OLSON LLP
6   1155 F Street, NW, 7th Floor
    Washington, D.C. 20004
7   Telephone:    (202) 220-1100
    Facsimile:    (202) 220-2300

8
    Attorneys for Defendants
9   BOARD OF TRUSTEES OF THE CALIFORNIA
    STATE UNIVERSITY; SAN FRANCISCO STATE
10  UNIVERSITY; LESLIE WONG; MARY ANN
    BEGLEY; LUOLUO HONG; LAWRENCE
11  BIRELLO; REGINALD PARSON; OSVALDO
    DEL VALLE; KENNETH MONTEIRO; BRIAN
12  STUART; ROBERT NAVA; MARK JARAMILLA;
    VERNON PICCINOTTI; AND SHIMINA HARRIS

13
                    UNITED STATES DISTRICT COURT
14
                    NORTHERN DISTRICT OF CALIFORNIA
15

16  JACOB MANDEL, et al.                    CASE NO. 3:17-cv-03511-WHO

17              Plaintiffs,                 **REPLY BRIEF IN SUPPORT OF
                                            MOTION TO DISMISS OF DEFENDANTS
18      vs.                                 BOARD OF TRUSTEES OF THE
                                            CALIFORNIA STATE UNIVERSITY;
19  BOARD OF TRUSTEES OF THE                LESLIE WONG; MARY ANN BEGLEY;
    CALIFORNIA STATE UNIVERSITY,            LUOLUO HONG; LAWRENCE
20  SAN FRANCISCO STATE                     BIRELLO; REGINALD PARSON;
    UNIVERSITY, et al.,                     OSVALDO DEL VALLE; KENNETH
21                                          MONTEIRO; BRIAN STUART; ROBERT
                Defendants.                 NAVA; MARK JARAMILLA; VERNON
22                                          PICCINOTTI; AND SHIMINA HARRIS**

23                                          Judge:    Hon. William Orrick III
                                            Dept:     Courtroom 2, 17th Floor
24                                          Date:     November 8, 2017
                                            Time:     2:00 p.m.
25

26

27

28

1

# TABLE OF CONTENTS

2

**Page(s)**

3    I.      INTRODUCTION .......................................................................................................... 1

II.     ARGUMENT ................................................................................................................ 1

       A.     Plaintiffs fail to state claims against the individual Defendants in their personal capacities. .................................................................................... 1

       B.     Plaintiffs' First Amendment claims fail as a matter of law. ................................. 3

               1.     Plaintiffs waited until their Opposition to state their First Amendment claims clearly. ........................................................... 3

               2.     The Court may properly look to documents on which Plaintiffs rely in their FAC under the incorporation-by-reference doctrine. ..................... 3

               3.     Failure to protect an individual's First Amendment rights from infringement by third parties is not a basis for constitutional liability. ................................................................................ 4

               4.     Plaintiffs have not alleged any unconstitutional burden on their right peaceably to assemble or to associate with others in protected activities. ........................................................................... 5

       C.     Plaintiffs' equal protection claims fail as a matter of law. .................................. 7

               1.     Plaintiffs have not alleged that they were treated differently from others in materially similar circumstances. ....................................... 7

       D.     Plaintiffs have failed to state a Title VI claim. ................................................... 8

               1.     A Title VI claim cannot be based on the theory that SFSU should have infringed other students' First Amendment rights. ........................... 9

               2.     Plaintiffs have not alleged facts sufficient to state a claim that Defendants were deliberately indifferent to harassment that was severe, pervasive, or objectively offensive. .............................. 10

       E.     Plaintiff Mandel's allegations are based on his time as a student. ..................... 13

III.    CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Citizens for Health v. Leavitt*,
   428 F.3d 167 (3d Cir. 2005)......................................................................................4

*Civil Liberties for Urban Believers v. City of Chicago*,
   342 F.3d 752 (7th Cir. 2003)....................................................................................6

*Clark v. Ca. Dep't of Forestry & Fire Prot.*,
   212 F. Supp. 3d 808 (N.D. Cal. 2016) ..............................................................2, 3

*Cole v. Oroville Union High Sch. Dist.*,
   228 F.3d 1092 (9th Cir. 2000)................................................................................13

*Coll. Republicans at San Francisco State Univ. v. Reed*,
   523 F. Supp. 2d 1005 (N.D. Cal. 2007) ................................................................9

*Comm. Concerning Cmty. Improvement v. City of Modesto*,
   583 F.3d 690, 700-02 (9th Cir. 2009) ....................................................................8

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999) ......................................................................................... passim

*DeShaney ex rel. DeShaney v. Winnebago County Department of Social Services*,
   489 U.S. 189 (1989).............................................................................................4, 5

*Doe v. Willits Unified Sch. Dist.*,
   473 F. App'x 775 (9th Cir. 2012) ........................................................................11

*Dunn v. Wash. Cnty. Hosp.*,
   429 F.3d 689 (7th Cir. 2005)...................................................................................4

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) ....................................................... passim

*Fennell ex rel. Fennell v. Marion Indep. Sch. Dist.*,
   804 F.3d 398 (5th Cir. 2015)................................................................................12

*Finkelshteyn v. Staten Island University Hospital*,
   687 F. Supp. 2d 66 (E.D.N.Y. 2009)...................................................................11

*Gabrielle M. ex rel. Stanley M. v. Park Forest-Chi. Heights Sch. Dist.163*,
   315 F.3d 817 (7th Cir. 2003 )................................................................................13

*Gerritsen v. Warner Bros. Entm't Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) .................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Grace United Methodist Church v. City of Cheyenne,*
451 F.3d 643 (10th Cir. 2006) .................................................................6

*Haitian Refugee Ctr., Inc. v. Baker,*
953 F.2d 1498 (11th Cir. 1992) ...............................................................4

*Harris v. Forklift Sys. Inc.,*
510 U.S. 17 (1993) ..................................................................................11

*Hawkins v. Sarasota Cnty. Sch. Bd.,*
322 F.3d 1279 (11th Cir. 2003) .............................................................13

*Hayut v. State Univ. of N.Y.,*
352 F.3d 733 (2d Cir. 2003) ..................................................................13

*Hazelwood Sch. Dist. v. Kuhlmeier,*
484 U.S. 260 (1988) .................................................................................5

*Healy v. James,*
408 U.S. 169 (1972) .................................................................................9

*Hendrichsen v. Ball State Univ.,*
107 F. App'x 680 (7th Cir. 2004) ..........................................................11

*Herguan Univ. v. Immigration & Customs Enf't,*
No. 16-CV-06656-LHK, 2017 WL 2797860 (N.D. Cal. June 28, 2017) .................................8

*Keyishian v. Bd. of Regents of the Univ. of N.Y.,*
385 U.S. 589 (1967) .................................................................................9

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005) .................................................................3

*Morgan ex rel. R.M. v. Town of Lexington,*
823 F.3d 737 (1st Cir. 2016) ..................................................................11

*Oden v. N. Marianas Coll.,*
440 F.3d 1085 (9th Cir. 2006) ...........................................................11, 12

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75 (1998) ..................................................................................11

*Peralta v. Cal. Franchise Tax Bd.,*
124 F. Supp. 3d 993 (N.D. Cal. 2015) .................................................2, 3

*Pinard v. Clatskanie Sch. Dist. 6J,*
467 F.3d 755 (9th Cir. 2006) ...................................................................5

CASE NO. 3:17-CV-03511-WHO
DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOT. TO DISMISS

36848368.1

1

**TABLE OF AUTHORITIES**

2

(continued)

**Page(s)**

3

*Roberts v. U.S. Jaycees*,

4

468 U.S. 609 (1984) ....................................................................................6, 7

5

*San Jose Christian Coll. v. City of Morgan Hill*,

360 F.3d 1024 (9th Cir. 2004) ...........................................................................6

6

*Scott v. Cal. State Lotto*,

7

19 F.3d 1441 (9th Cir. 1994) .............................................................................2

8

*Serrano v. Francis*,

345 F.3d 1071 (9th Cir. 2003) ...........................................................................8

9

10

*Sweezy v. New Hampshire*,

354 U.S. 234 (1957) ...........................................................................................9

11

*Thornton v. City of St. Helens*,

12

425 F.3d 1158 (9th Cir. 2005) ...........................................................................7

13

*United States v. Ritchie*,

342 F.3d 903 (9th Cir. 2003) .............................................................................3

14

15

*Wolfe v. Fayetville Sch. Dist.*,

648 F.3d 860 (8th Cir. 2011) ...........................................................................11

16

17

18

19

20

21

22

23

24

25

26

27

28

36848368.1

1

## I.   **INTRODUCTION**

2

Plaintiffs' Opposition ("Opp.") demonstrates that all of their claims should be dismissed

3

with prejudice.  As to their First Amendment claims, Plaintiffs do not meaningfully dispute either

4

that Defendants cannot be held liable for failing to prevent third parties' interference with

5

Plaintiffs' rights or that Defendants could not, consistent with other students' First Amendment

6

rights, have responded to the events alleged in the Complaint in the ways Plaintiffs allege they

7

should have.  (Opp. 12-13.)  As to their equal protection claims, Plaintiffs now assert that,

8

although the word "race" does not appear in the FAC, they claim Defendants discriminated

9

against them on the basis of their race.  (*Id*. 1-2.)  But Plaintiffs' equal protection claims fail as a

10

matter of law—whether based on religion, ethnicity, or race—because Plaintiffs have not alleged

11

a fundamental element of such a claim: disparate treatment in materially similar circumstances.

12

As to Plaintiffs' Title VI claim, Plaintiffs wrongly characterize the argument that Defendants

13

were not permitted to infringe other students' First Amendment rights as an "affirmative

14

defense."  (*Id*. 21.)  Under Title VI, "[a] recipient [of federal funds] cannot be directly liable for

15

alleged indifference where it lacks the authority to take remedial action."  *Davis ex rel. LaShonda*

16

*D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644 (1999).  To state a Title VI claim, therefore,

17

Plaintiffs must allege, at a minimum, that Defendants failed to take remedial action that it could

18

lawfully have taken.  Plaintiffs' Title VI claim fails for the additional reasons that they concede it

19

is based on only a few incidents of alleged harassment and that Plaintiffs have not sufficiently

20

alleged that they have been deprived of  educational opportunities or benefits.  (Opp. 22-23.)

21

This is Plaintiffs' second attempt to plead these claims against Defendants.  Because

22

Plaintiffs' theories fail as a matter of law, the Court should dismiss them with prejudice.

23

## II.   **ARGUMENT**

24

### A.   **Plaintiffs fail to state claims against the individual Defendants in their personal capacities.**

25

26

Plaintiffs wrongly claim that "Defendants seemingly contend that *each* of the six causes of

27

actions [sic] in the FAC should be dismissed both for lack of subject matter jurisdiction under

28

Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6)."  (Opp. 1.)  But Defendants

1    contend only that Plaintiffs' federal constitutional claims against the University and their claims

2    for damages against the individual Defendants in their official capacities are barred by the

3    Eleventh Amendment.  (Mot. 7-8.)  As Plaintiffs argue, (Opp. 6-7), individual officials may of

4    course sometimes be sued in their personal capacities, but these defendants have not been

5    effectively sued in that capacity, because Plaintiffs' personal-capacity claims lack any supporting

6    factual allegations.  In *Hafer v. Melo*, the case on which Plaintiffs rely to suggest that their mere

7    "references" to personal capacity "suffice," (Opp. 6-7), the Supreme Court expressly stated that

8    "the distinction between official-capacity suits and personal-capacity suits is more than a mere

9    pleading device."  502 U.S. 21, 27 (1991) (internal quotation marks omitted).

10          Accordingly, "[t]o state a claim against state officials in their individual capacities, the

11   complaint must set forth allegations from which the court can infer that the individuals acted in

12   their individual capacities."  *Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1001 (N.D.

13   Cal. 2015) (citing *Scott v. Cal. State Lotto*, 19 F.3d 1441 (9th Cir. 1994)).  A plaintiff "is required

14   to plead specific facts regarding each individual Defendant's conduct sufficient to plausibly state

15   a cause of action against that Defendant individually."  *Clark v. Ca. Dep't of Forestry & Fire

16   Prot.*, 212 F. Supp. 3d 808, 815 (N.D. Cal. 2016).  To determine whether a defendant is properly

17   sued in her personal capacity, "the court must examine the specifics of the conduct involved and

18   not merely look at the caption of the complaint."  *Peralta*, 124 F. Supp. 3d at 1001 (internal

19   quotation marks omitted).

20          Even a cursory review of the FAC shows that Plaintiffs have not pleaded specific facts

21   plausibly to state claims against the individual Defendants in their personal capacities.  Indeed, as

22   Defendants have previously explained, as to some individual Defendants, Plaintiffs allege at most

23   one to two sentences about each of them.  (Mot. 15-16.)  Just one example suffices to demonstrate

24   that Plaintiffs' real issue is with the actions of the University as a whole, not with individual

25   defendants in their personal capacities:  "[Plaintiffs'] rights of free speech, association, and

26   religious expression were infringed upon *by SFSU's* coercion and intentional exclusion of Hillel

27   from the 'Know Your Rights' Fair." (FAC ¶ 142 (emphasis added).)  That Plaintiffs add as an

28   afterthought conclusory allegations that all of the individual Defendants "are each responsible for

coordinating and managing student events such as the 'Know Your Rights' Fair" and "allowed the admitted intentional discrimination of exclusion of Hillel to occur" is plainly insufficient plausibly to show that each individual Defendant's actions *independently* constituted a violation of each Plaintiff's constitutional rights.  (*Id.* ¶ 143.); *see Clark*, 212 F. Supp. 3d at 815; *Peralta*, 124 F. Supp. 3d at 1001.

     **B.**    <u>**Plaintiffs' First Amendment claims fail as a matter of law.**</u>

           **1.**    <u>**Plaintiffs waited until their Opposition to state their First Amendment claims clearly.**</u>

Plaintiffs admonish Defendants for "devot[ing] more than a page of their brief to attacking phantom Free Exercise claims that are wholly absent from the FAC."  (Opp. 2.)  But Plaintiffs' FAC repeatedly references Plaintiffs' religion and asserts that Defendants "deprived and continue to deprive Plaintiffs of their First Amendment rights, *including but not limited to* the right to assemble, the right to listen or the right to hear."  (FAC ¶¶ 174, 203 (emphasis added).)[1]  In light of Plaintiffs' open-ended claims and allegations, Defendants had no choice but to address every possible First Amendment theory Plaintiffs might be advancing.  Only in their Opposition do Plaintiffs clarify that they are asserting only association and assembly claims.

           **2.**    <u>**The Court may properly look to documents on which Plaintiffs rely in their FAC under the incorporation-by-reference doctrine.**</u>

The Court may properly consider the entirety of Professor Abdulhadi's blog post on which Plaintiffs rely in their FAC.  Under the incorporation by reference doctrine, [a court may] "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks omitted); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); *Gerritsen v. Warner*

---

[1] Indeed, it is ironic that Plaintiffs assail Defendants for addressing a Free Exercise claim, even though the FAC repeatedly mentions "religion," while also assailing Defendants for failing to address discrimination on the basis of race, even though the FAC does not use the word "race" even once.

1   *Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1119 (C.D. Cal. 2015) ("Defendants, however, do not

2   assert that these documents, in isolation, are the only materials on which [plaintiff] relies; they

3   merely request that the court consider the entirety of the documents, which they assert [plaintiff]

4   'handpicked' to cite in her first amended complaint.").  Plaintiffs do not contest the authenticity

5   of the document; they simply want to rely on carefully selected parts of it.  The Court may and

6   should consider the entirety of the blog post.

7           **3.       Failure to protect an individual's First Amendment rights from**
           **infringement by third parties is not a basis for constitutional liability.**

8

9           The crux of Plaintiffs' First Amendment claims are allegations about the constitutionally

10  protected activities of third parties, and Plaintiffs' opposition confirms that fundamental point.

11  Plaintiffs have no answer to the legal argument that a First Amendment claim must be premised

12  on governmental action and not on the government's failure to prevent independent actions by

13  private parties.  Following the reasoning of the Supreme Court's decision in *DeShaney ex rel.*

14  *DeShaney v. Winnebago County Department of Social Services*, in which the Court held that

15  "nothing in the language of the Due Process Clause itself requires the State to protect the life,

16  liberty, and property of its citizens against invasion by private actors," 489 U.S. 189, 195 (1989),

17  courts have held that a First Amendment claim may not be premised on the actions of third

18  parties.  *See Citizens for Health v. Leavitt*, 428 F.3d 167, 185 (3d Cir. 2005) ("[Plaintiffs'] First

19  Amendment claim fails . . . [because] the potential 'chilling' of patients' rights to free speech

20  derives not from any action of the government, but from the independent decisions of private

21  parties."); *Dunn v. Wash. Cnty. Hosp.*, 429 F.3d 689, 692 (7th Cir. 2005); *Haitian Refugee Ctr.,*

22  *Inc. v. Baker*, 953 F.2d 1498, 1513 (11th Cir. 1992); *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1186

23  (N.D. Cal. 2011) ("[E]ven assuming that plaintiffs have alleged, or could amend to allege,

24  sufficient acts of harassment and intimidation directed against them based on their religion to be

25  deemed as an interference with their free exercise of that religion, they simply have no basis for

26  pursuing such constitutional claims against defendants.  With exceptions not implicated here,

27

28

36848368.1

1    state actors have no constitutional obligation to prevent private actors from interfering with the

2    constitutional rights of others.").[2]

3          Instead, Plaintiffs argue that their allegations are not in fact based on third-party conduct.

4    (Opp. 12-13.)  Plaintiffs' argument that Defendants' order to "stand down" is an "affirmative" act

5    is wrong.  They use a semantic trick, attempting to transform an alleged decision by Defendants

6    not to prevent others from interfering into affirmative interference by the Defendants themselves.

7    (*Id.* 3.)  That trick, if allowed, would swallow the *DeShaney* rule whole.  Whenever government

8    actors fail to protect individuals from third-party interference with their rights, some government

9    official arguably has decided not to do so.  If *DeShaney*'s rule could be avoided simply by

10   characterizing such a decision not to act as "affirmative," the Supreme Court's opinion would

11   become an irrelevance.  Indeed, were Plaintiffs here correct, in *DeShaney* itself the plaintiff could

12   have avoided the rule simply by alleging, not just that the Department of Social Services failed to

13   protect him from abuse by his father, but that the agency "affirmatively decided" not to do so.

14   *See DeShaney*, 489 U.S. at 191-193.

15         That leaves Plaintiffs with two allegations of affirmative conduct by Defendants—the

16   decision to move the Mayor Barkat event and the exclusion of Hillel from the Know Your Rights

17   Fair.  For the reasons set forth below, neither is sufficient to state a First Amendment claim.

18             **4.    Plaintiffs have not alleged any unconstitutional burden on their right
                       peaceably to assemble or to associate with others in protected
19                     activities.**

20         As a threshold matter, Plaintiffs misleadingly claim that Defendants have conceded

21   Plaintiffs' freedom-of-assembly claim based on the Know Your Rights Fair and freedom-of-

22   association-claim based on the Mayor Barket Event.  (Opp. 7-8, 9-10.)  They are wrong.  First,

23   where Defendants have stated that Plaintiffs' association and assembly claims fail, they have

24   clearly cited to the portions of the FAC about both the Mayor Barkat Event and the Know Your

---

[2] Plaintiffs also do nothing to refute the principles that a school must balance the First
Amendment rights of students against preservation of the educational process and that the First
Amendment protects all student speech unless it will "'substantially interfere with the work of the
school or impinge upon the rights of other students.'"  *Pinard v. Clatskanie Sch. Dist. 6J*, 467
F.3d 755, 766 (9th Cir. 2006) (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266
(1988)).

1    Rights Fair.  (Mot. 9, 10.)  Second, it is Plaintiffs who have failed clearly to tie their factual

2    allegations to their legal claims.  In their allegations concerning the Know Your Rights Fair, for

3    example, Plaintiffs do not even mention the word "assemble."  (FAC ¶¶ 142-163.)  And, in the

4    allegations concerning the Mayor Barkat event, Plaintiffs do not even mention the word

5    "associate."  (*Id.* ¶¶ 61-93.)  Plaintiffs' own descriptions of the rights at issue are inconsistent—at

6    times, they are rights of "free speech, association, and religious expression," (*id.* ¶ 142); at other

7    times, they are rights "to engage in dialogue or receive information," (*id.* ¶ 151); at yet others,

8    they are rights "to listen, engage, and assemble."  (*Id.* ¶ 93.)  It is not Defendants' burden to guess

9    which of Plaintiffs' allegations they think support which claims.

10           In any event, Plaintiffs' two allegations of affirmative actions by Defendants fail to state

11   assembly and association claims as a matter of law.  As Defendants have explained more

12   extensively in their Motion, these allegations do not rise to the level of a substantial burden on

13   Plaintiffs' rights to assemble and associate.  (Mot. 9-11); *see Roberts v. U.S. Jaycees*, 468 U.S.

14   609, 622-623 (1984); *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1033 (9th

15   Cir. 2004).  With respect to the Mayor Barkat event, Plaintiffs point to allegations of references

16   by two individual Defendants to "powder kegs," a "lit fuse," and "a controversial speaker."  (Opp.

17   9.)  Even assuming such statements could reasonably be construed to be about the content or

18   viewpoint of the event, the *motivation* for moving the event was, according to Plaintiffs' own

19   allegations, to minimize the impact on classes in the middle of the day—a content-neutral

20   consideration motivated by practical considerations and not by disagreement with a message.  *See*

21   *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 765 (7th Cir. 2003)

22   (concluding that ordinance was content neutral and did not burden the right to assembly,

23   reasoning that "to the extent that the [ordinance] incidentally regulates speech or assembly within

24   churches, such regulation is motivated not by any disagreement . . . with the message conveyed

25   by church speech or assembly, but rather by such legitimate, practical considerations as the

26   promotion of harmonious and efficient land use"); *see also Grace United Methodist Church v.*

27   *City of Cheyenne*, 451 F.3d 643, 656-57 (10th Cir. 2006) (same).

28

1   Similarly, for the reasons explained more fully below in the equal protection context,

2   Plaintiffs have failed to show that Defendants' alleged exclusion of Hillel from the Know Your

3   Rights Fair was an attempt to "withhold benefits from [Plaintiffs] because of their membership in

4   a disfavored group." *U.S. Jaycees*, 468 U.S. at 622.

5   **C.      Plaintiffs' equal protection claims fail as a matter of law.**

6   Plaintiffs' attempt to salvage their equal protection claims is equally unavailing.  They

7   state, for the first time in their Opposition, that when they refer to Jewish "identity and beliefs"

8   they mean race, ethnicity, and religion.  (Opp. 1-2.)  Once again, Plaintiffs have waited until their

9   Opposition to state their claims with clarity (the FAC does not use the word "race," for example).

10   Regardless whether they allege discrimination based on religion, ethnicity, or race, Plaintiffs have

11   failed to allege disparate treatment, which is fatal to their equal protection claims.  Indeed,

12   Plaintiffs' shifting terminology to describe the alleged protected class illustrates why they have

13   not met the threshold step in equal protection analysis: they cannot identify Defendants' alleged

14   classification of groups, composed of persons sharing particular characteristics, such that the

15   factor motivating the alleged discrimination can be identified.

16   **1.      Plaintiffs have not alleged that they were treated differently from
others in materially similar circumstances.**

17

18   Plaintiffs' Opposition does nothing to show they have satisfied the requirement that, "[t]o

19   state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the

20   defendants acted with an intent or purpose to discriminate against the plaintiff *based upon*

21   *membership in a protected class*." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir.

22   2005) (internal quotation marks omitted) (emphasis added).  Plaintiffs assert in conclusory terms

23   that "[t]he FAC has myriad allegations that Defendants intentionally discriminated against

24   Plaintiffs as Jews, a protected class on grounds of race and religion."  (Opp. 14.)  But Plaintiffs

25   have failed to identify any facts alleged in the FAC showing that Defendants' acted *differently* in

26   circumstances similar to the Mayor Barkat Event and Know Your Rights Fair but involving

27   individuals who do not share Plaintiffs' Jewish identity.  Of course a school's discrimination

28   against one group does not cure a school's discrimination against another group; nor does a

1  school's "overdiscrimination" cure discrimination.  (*Id*. 14-15.)  But here Plaintiffs have failed to

2  show discrimination at all.  They have not pointed to specific allegations that other groups that

3  hosted events similar in all material respects to the Mayor Barkat event requested space in a

4  campus classroom and were granted, rather than denied, that request; or that other groups hosted

5  similar events in an off-campus location, with comparable competing protests, and that campus

6  police acted differently.  (FAC ¶¶ 61-122, 142-163.)

7          Nor have Plaintiffs pointed to specific factual allegations in their account of the Know

8  Your Rights Fair that show they were excluded from participating *because* of their Jewish

9  identity.  In fact, non-Jewish groups were *also* excluded from the Fair.  (FAC ¶ 151.)  And, even

10 if *every* student group other than Hillel had been allowed a table at the fair, given that other

11 Jewish groups were there, Plaintiffs' allegations would still not support the inference that Hillel

12 was excluded because of its Jewish identity.  Once again, the FAC's failure to allege facts

13 showing disparate treatment in materially similar circumstances is fatal to Plaintiffs' equal

14 protection claim.  *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("To state a claim

15 for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with

16 an intent or purpose to discriminate against him based upon his membership in a protected

17 class."); *Herguan Univ. v. Immigration & Customs Enf't*, No. 16-CV-06656-LHK, 2017 WL

18 2797860, at*15 (N.D. Cal. June 28, 2017) (dismissing a Chinese-owned university's Equal

19 Protection claim with prejudice because the plaintiff failed to "allege that any non-Chinese-

20 owned universities were similarly situated to Plaintiff or were treated differently").

21          **D.     Plaintiffs have failed to state a Title VI claim.**

22          Plaintiffs' attempt to salvage their Title VI claim also fails.  As an initial matter, Plaintiffs'

23 contention that Defendants do not address Plaintiffs' theory of direct discrimination under Title

24 VI is a red herring, as the bar for alleging intentional discrimination is the same as under the

25 Equal Protection clause, and Plaintiffs have failed to meet that bar for the reasons described

26 above.  *See, e.g.*, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 700-

27 02 (9th Cir. 2009).  As for the true substance of Plaintiffs' Title VI claim—deliberate

28 indifference—Plaintiffs wrongly contend that Defendants' argument that they cannot be liable

1   under Title VI for allowing other students to engage in First Amendment protected activities is an

2   "affirmative defense."  (Opp. 21.)  To the contrary: to state a Title VI claim, Plaintiffs must

3   allege, at a minimum, that Defendants failed to do something they could lawfully have done; as

4   explained below, it cannot be "deliberate indifference" to fail to violate the constitutional rights of

5   other students.  Moreover, Plaintiffs concede that most of their FAC is merely "background" and

6   that their Title VI claim is based on only a few incidents of harassment.  (*Id.* 22-23.)  As a matter

7   of law, that is insufficient to state a claim under Title VI.  *See Felber*, 851 F. Supp. 2d at 1187-88.

8             **1.**      **A Title VI claim cannot be based on the theory that SFSU should have**
                  **infringed other students' First Amendment rights.**

9         The Supreme Court has made clear that an entity receiving federal funds may be liable for

10  acts committed by third parties "only where the funding recipient has some control over the

11  alleged harassment.  A recipient cannot be directly liable for its indifference where it lacks the

12  authority to take remedial action."  *Davis*, 526 U.S. at 644.  Accordingly, "it would be entirely

13  reasonable for a school to refrain from a form of disciplinary action that would expose it to

14  constitutional or statutory claims."  *Id.* at 649.  Here, the University lacked authority to discipline

15  other students for exercising their right to engage in protected speech.

16        Plaintiffs' Opposition does not contend with the weight of the case law cited in

17  Defendants' Motion holding that the freedom to express opposing viewpoints is especially

18  important in the university setting.  *See, e.g.*, *Healy v. James*, 408 U.S. 169, 180 (1972);

19  *Keyishian v. Bd. of Regents of the Univ. of N.Y.*, 385 U.S. 589, 603 (1967); *Sweezy v. New*

20  *Hampshire*, 354 U.S. 234, 250 (1957).  "[C]ore principles of the First Amendment acquire a

21  special significance in the university setting, where the free and unfettered interplay of competing

22  views is essential to the institution's educational mission."  *Coll. Republicans at S.F. State Univ.*

23  *v. Reed*, 523 F. Supp. 2d 1005, 1016 (N.D. Cal. 2007) (internal quotation marks omitted).  Nor

24  have Plaintiffs explained why other students' alleged First Amendment activities, even if hateful

25  or offensive, are not protected speech.  (FAC ¶¶ 72 (alleging that protestors chanted "[g]et the

26  fuck off our campus," "Palestine will be free," and "we don't want your racist war"), 79 (alleging

27  that protestors wore keffiyehs), 123 (op-ed in student newspaper; demonstrations at pro-Israel

28

1    student rally; speech on campus), 127 (organized rally) & 128, 129, 133 (social media posts).)

2    And, in the face of the authorities cited in the Motion, Plaintiffs cite *no* case for the proposition

3    that these students' speech-related activities were unprotected "true threats."  (Opp. 20.)

4              **2.      Plaintiffs have not alleged facts sufficient to state a claim that**
                        **Defendants were deliberately indifferent to harassment that was**
5                       **severe, pervasive, or objectively offensive.**

6           Plaintiffs concede Defendants' argument that incidents that occurred long ago, were not

7    witnessed by Plaintiffs, and were not similar to actions Plaintiffs personally experienced cannot

8    support their Title VI claim, explaining that extensive discussion of those in the FAC is just

9    "background" and "context."  (Opp. 22.)  Accordingly, the only allegations that form the basis of

10   Plaintiffs' Title VI claim are that another student group, GUPS, threatened to pull out of the

11   Know Your Rights Fair if Hillel were included, (FAC ¶¶ 149, 161); that some Plaintiffs felt

12   threatened by other students' conduct at the Mayor Barkat event, (*id.* ¶¶ 8, 25); that the day after

13   the Mayor Barkat event Plaintiff Volk felt sufficiently threatened by a member of GUPS in one of

14   his classes that he was unable to concentrate and had to leave midway through class, (*id.* ¶ 99);

15   that Plaintiffs Mandel and Volk "routinely experienced a similar inability to focus, concentrate,

16   and fully participate in class," (*id.*); that Plaintiff Mandel "has missed class due to concerns about

17   his physical safety," (*id.* ¶ 120); and that the University took three weeks to make a statement

18   after the Mayor Barkat event and six months to issue its report about the Know Your Rights Fair.[3]

19   These allegations are plainly insufficient to satisfy Plaintiffs' burden of showing that the

20   University was "deliberately indifferent to [discrimination], of which [the school] ha[d] actual

21   knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the

22   victims of access to the educational opportunities or benefits provided by the school."  *Davis*, 526

23   U.S. at 650.

24   [3] Plaintiffs once again misleadingly cite to the FAC when they claim that they have alleged that
     the harassment "has caused them to miss class, be threatened on the way to class, hide their
25   Jewish identity by not wearing Stars of David or yarmulkes on campus, take alternate, circuitous
     routes throughout campus, and avoid certain classes altogether."  (Opp. 22-23 (citing FAC ¶¶ 60,
26   99, 120, 141).)  Paragraphs 120 and 141 contain no such allegations.  Paragraph 60 contains no
     allegations specific to these Plaintiffs—only to the general "background" that Plaintiffs now
27   correctly disavow as a basis for their Title VI claim.  Paragraph 99, as Defendants have
     acknowledged in both their Motion and this Reply, is the one paragraph that contains allegations
28   about Plaintiffs' missing class.

1       As to harassment that is severe, pervasive, and objectively offensive, a few incidents

2   involving even pointed singling out of the plaintiff are insufficient to rise to the requisite level of

3   severity and pervasiveness.  *See, e.g.*, *Morgan ex rel. R.M. v. Town of Lexington*, 823 F.3d 737,

4   745 (1st Cir. 2016); *Wolfe v. Fayetville Sch. Dist.*, 648 F.3d 860, 866-67 (8th Cir. 2011);

5   *Hendrichsen v. Ball State Univ.*, 107 F. App'x 680, 685 (7th Cir. 2004).  Even interpreting

6   (wrongly) the alleged conduct of the other students related to the Know Your Rights Fair and

7   Mayor Barkat event as harassment toward Plaintiffs, as opposed to protected conduct, they do not

8   constitute harassment sufficiently pervasive to violate Title VI.  *See Davis*, 526 U.S. at 652-53

9   ("Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could

10  be said to have [the systemic effect of denying the victim equal access to an educational program

11  or activity] we think it unlikely that Congress would have thought such behavior sufficient to rise

12  to this level.").

13      Moreover, the alleged conduct must be objectively severe and pervasive such that a

14  reasonable person would agree that it is harassment.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-

15  22 (1993); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).  A

16  reasonable person would not believe that criticism of Israel is harassment at all, let alone

17  harassment of Jewish students for being Jewish.  *See Finkelshteyn v. Staten Island Univ. Hosp.*,

18  687 F. Supp. 2d 66, 71, 78, 82 (E.D.N.Y. 2009) (finding anti-Israel comments not to support a

19  claim of harassment or discrimination).

20      As to deliberate indifference, the test is "'whether a reasonable fact-finder could conclude

21  that the [school]'s response was clearly unreasonable in light of the known circumstances.'"  *Doe

22  v. Willits Unified Sch. Dist.*, 473 F. App'x 775, 775-76 (9th Cir. 2012) (quoting *Oden v. N.

23  Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006)).  "To meet this high standard there must, in

24  essence, be *an official decision not to remedy the violation and this decision must be clearly

25  unreasonable*."  *Id.* (citing *Davis*, 526 U.S. at 649) (emphasis added).  A showing of heightened

26  negligence is insufficient.  *Id.*

27      Plaintiffs' Opposition does not even attempt to point out allegations showing that

28  Defendants' response to the alleged discrimination was clearly unreasonable.  By Plaintiffs' own

1  admission, SFSU *did* respond to Plaintiffs' complaints about the Mayor Barkat event and the

2  Know Your Rights Fair by conducting thorough investigations and issuing reports that explained

3  the University's findings and actions.  (FAC ¶¶ 73, 76, 84, 94-95, 111-113, 157-159.)  That it

4  took the University some time to conduct the investigations and that the results were not to

5  Plaintiffs' liking does not demonstrate that SFSU was deliberately indifferent or that its conduct

6  in the investigations was clearly unreasonable.

7       Plaintiffs have no answer to the arguments that "[a]n aggrieved party is not entitled to the

8  precise remedy that he or she would prefer," *Oden*, 440 F.3d at 1089, and that the Ninth Circuit

9  has already held that a delay in conducting disciplinary proceedings, even in contravention of an

10  institution's policy, did not support a finding of deliberate indifference, *see id.* (nine-month delay

11  was insufficient to "permit an inference that the delay was a deliberate attempt to sabotage

12  Plaintiff's complaint or its orderly resolution").  Plaintiffs would simply have this Court disregard

13  the Supreme Court's instruction that "courts should refrain from second-guessing the disciplinary

14  decisions made by school administrators."  *Davis*, 526 U.S. at 648; *see also Felber*, 851 F. Supp.

15  2d at 1188 ("That the University may not have acted as plaintiffs would prefer does not rise to

16  deliberate indifference." (internal quotation marks omitted)).

17       Finally, the University's alleged deliberate indifference must, to support a Title VI claim,

18  have a "concrete, negative effect on [the plaintiff's] ability to receive an education."  *Davis*, 526

19  U.S. at 654.  To rise to the level of such deprivation, the discrimination "must have a concrete,

20  negative effect on the victims' education, such as creating disparately hostile educational

21  environment relative to [the victim's] peer, forcing the student to change his or her study habits or

22  to move to another district, or lowering the student's grades."  *Fennell ex rel. Fennell v. Marion*

23  *Indep. Sch. Dist.*, 804 F.3d 398, 410 (5th Cir. 2015) (internal quotation marks and citations

24  omitted) (collecting cases).

25       Plaintiffs make no argument as to how events occurring at the Mayor Barkat speech or

26  Hillel's exclusion from the Know Your Rights Fair could have denied Plaintiffs access to

27  educational opportunities.  *See Felber*, 851 F. Supp. 2d at 1188 ("Despite the fact the Sproul

28  Plaza likely serves as an important campus thoroughfare and gathering place, it is not even clear

1    that activities on Sproul Plaza or at Sather Gate necessarily would significantly impede any

2    student's access to the educational services offered by the University, regardless of the nature of

3    those activities.").  And the allegations that a few of the Plaintiffs skipped class or felt harassed

4    on a few occasions are simply insufficient to plead a denial of access to education.

5    Fundamentally, "[f]inding the harassment pervasive means that the challenged incidents are more

6    than episodic; they must be sufficiently continuous and concerted." *Hayut v. State Univ. of N.Y.*,

7    352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted); *see also Gabrielle M. ex rel.*

8    *Stanley M. v. Park Forest-Chi. Heights Sch. Dist.163*, 315 F.3d 817, 823 (7th Cir. 2003 ) (finding

9    no evidence that plaintiff was denied access to education because "[a]lthough she was diagnosed

10   with some psychological problems, the record show[ed] that her grades remained steady and her

11   absenteeism from school did not increase"); *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279,

12   1289 (11th Cir. 2003) (holding that facts "[fell] short of demonstrating a systemic effect of

13   denying equal access to an educational program or activity" where students' grades did not suffer

14   and their teachers did not observe any change in their classroom demeanor).  Plaintiffs' minimal

15   allegations fail to meet this standard.

16                **E.      Plaintiff Mandel's allegations are based on his time as a student.**

17          "It is well-settled that once a student graduates, he no longer has a live case or controversy

18   justifying declaratory and injunctive relief against a school's action or policy." *Cole v. Oroville*

19   *Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000).  In their Opposition, Plaintiffs argue

20   for the first time that Plaintiff Mandel "is an active alumnus who still lives in the Bay Area and

21   continues to frequent on-campus events open to the public, including those focusing on the

22   interests of Jewish students and those offered by Hillel." (Opp. 24-25.)  Plaintiffs purport to cite

23   to portions of the FAC supporting that statement, but Mandel's name is nowhere to be found there

24   except in relation to the Mayor Barkat event and the Know Your Rights Fair.  (FAC ¶¶ 151-154,

25   197-227.)  Because Mandel's allegations are limited to the time during which he was a student on

26   campus, he lacks standing to seek declaratory and injunctive relief now that he has graduated.

27

28

1

**III.    CONCLUSION**

2

3          For the reasons set forth above, and because affording Plaintiffs yet another attempt to

4  cure the deficiencies in their pleadings would be futile, all of Plaintiffs' claims against Defendants

5  should be dismissed with prejudice.

DATED: October 25, 2017                    Respectfully submitted,

6
                                           MUNGER, TOLLES & OLSON LLP
7                                             BRADLEY S. PHILLIPS
                                              ADELE M. EL-KHOURI
8                                             SETH J. FORTIN

9                                          By:    /s/ Bradley S. Phillips
                                                      Bradley S. Phillips
10
                                           Attorneys for Defendants
11                                         BOARD OF TRUSTEES OF THE
                                           CALIFORNIA STATE UNIVERSITY, SAN
12                                         FRANCISCO STATE UNIVERSITY;
                                           LESLIE WONG; MARY ANN BEGLEY;
13                                         LUOLUO HONG; LAWRENCE BIRELLO;
                                           REGINALD PARSON; OSVALDO DEL
14                                         VALLE; KENNETH MONTEIRO; BRIAN
                                           STUART; ROBERT NAVA; MARK
15                                         JARAMILLA; VERNON PICCINOTTI; AND
                                           SHIMINA HARRIS

16

17

18

19

20

21

22

23

24

25

26

27

28

36848368.1