Alan F. Hunter (SBN 99805)
Elizabeth Gong Landess (SBN 138353)
**Gavin, Cunningham & Hunter**
1530 The Alameda Suite 210
San Jose, CA 95126
Telephone: (408) 294-8500
Facsimile: (408) 294-8596
Email:   hunter@gclitigation.com
             landess@gclitigation.com

Mark Allen Kleiman (SBN 115919)
**Law Office of Mark Allen Kleiman**
2907 Stanford Ave. Venice, CA 90292
Telephone: (310) 306-8094
Facsimile: (310) 306-8491
Email: mkleiman@quitam.org

Ben Gharagozli (SBN 272302)
**Law Offices of Ben Gharagozli**
18336 Soledad Canyon Road #2241
Canyon Country, CA 91386
Telephone: (661) 607-4665
Facsimile: (855) 628-5517
Email: ben.gharagozli@gmail.com

Attorneys for RABAB ABDULHADI

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB MANDEL, CHARLES VOLK, LIAM KERN, MASHA MERKULOVA, AARON PARKER, and STEPHANIE ROSEKIND;<br><br>Plaintiffs,<br>v.<br>BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, et al.;<br><br>Defendants. | Case No.: 3:17-CV-03511-WHO<br><br>**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:        November 8, 2017<br>Time:       2:00 p.m.<br>Location:  Courtroom 2 (17th floor)<br>Judge: William H. Orrick<br>Original Action Filed: June 19, 2017 |

---

DEF ABDULHADI'S REPLY MEMO RE MOTION TO DISMISS FAC - 1
MANDEL v. BOARD OF TRUSTEES – 3:17-cv-03511-WHO

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES..................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.........................................................1

1. Dr. Abdulhadi Must Be Dismissed From This Case Because Plaintiffs Had No Federal Right Which Required Her to Protect them from Private Actors....................................................................................................1

2. Plaintiffs' Have Not Established Any Standing to Sue Dr. Abdulhadi........................3

3. Plaintiffs' Claims Are Barred by the Eleventh Amendment........................................4

4. Plaintiff's Constitutional Claims Are Likewise Barred By The Qualified Immunity Doctrine..................................................................................6

5. Plaintiff's Claim for Declaratory Relief Likewise Fails............................................10

6. When Breath Becomes Air: The Marriage of McCarthyism And Confabulation......................................................................................................11

7. Conclusion..................................................................................................................15

.

# TABLE OF AUTHORITIES

**Page**

Anderson v. Creighton, 483 U.S. 635 [1987]............................................................................7

Ashcroft v. Iqbal, 556 U.S. 662, 677 [2009]..............................................................................9

Biodiversity Legal v. Badgley, 309 F.3d 1166 [9th Cir. 2002]................................................11

Calderon v. Ashmus, 523 US 740 [1998].................................................................................11

Citizens v. Leavitt, 428 F.3d 167 [3rd Cir. 2005]....................................................................8,9

Comm. For Immigrant Rights v. County of Sonoma,
    644 F.Supp.2d 1177 [N.D. Cal. 2009]...............................................................................10

Deshaney v. Winnebago County Dep't of Social Services,
    489 U.S. 189 [1989].........................................................................................................1,10

Dougherty v. City of Covina, 654 F.3d 892, 900 [9th Cir. 2011]..............................................10

Dubner v. San Francisco, 266 F.3d 959 [9th Cir. 2001]............................................................2

Ex Parte Young, 209 U.S. 123 [1908]..................................................................................4,5,6

Gladstone, Realtors v. Bellwood, 441 U.S. 91 [1979].............................................................3

Imagineering v. Kiewit Pacific, 976 F.2d 1303 [9th Cir. 1992]................................................3

Johnson v City of Seattle 474 F.3d 634 [9th Cir. 2007]............................................................2

Lacey v. Maricopa County, 693 F.3d 896, 915 [9th Cir. 2012] (en banc)..............................7,9

Maryland Casualty v. Pacific Coal, 312 US 270 [1941].........................................................11

Monell v. Dep't of Social Servs, 436 U.S. 658, 691 [1978]....................................................10

OSU Student Alliance v. Ray, 699 F.3d 1053 [9th Cir. 2012]...................................................3

Papasan v. Allain, 478 U.S. 265 [1986]...................................................................................5

Park v Thompson, 851 F.3d 910, 928-929 [9th Cir. 2017].........................................13,14,15

Shanks v. Dressel 540 F.3d 1082 [9th Cir. 2008].....................................................................1

Skelly Oil v. Phillips Petroleum, 339 US 667 [1950]..............................................................11

Smith v. Schwarzenegger, 2014 WL 2875627 [E.D. Cal. June 24, 2014]................................2

Starr v. Baca, 652 F.3d 1202 [9th Cir. 2011]..................................................................2

Thornton v. City of St. Helens, 425 F.3d 1158 [9th Cir. 2005]......................................8,9

Will v. Michigan Dept. of State Police, 491 U.S. 58 [1989]............................................4

Wood v. Moss, 134 S.Ct. 2056 [2014]...........................................................................7

# MEMORANDUM OF POINTS & AUTHORITIES

### 1. Dr. Abdulhadi Must Be Dismissed From This Case Because Plaintiffs Had No Federal Right Which Required Her to Protect Them From Private Actors.

Plaintiffs have sued Dr. Abdulhadi for allegedly violating their civil rights by failing to "assist" a student group "to adhere" to a SFSU non-discrimination policy resulting in the student disruption of a speech. FAC at 27/24-28/5 & 65/21-22. Three of the plaintiffs also allege that she "chose to disregard" this same policy to advise students in connection with a student-run fair FAC at 63/16-19, resulting in the Plaintiffs being denied the opportunity to speak and hear about their rights at the fair. FAC at 69/27-70/5. As to the speech, there is no federal right which requires the state to prevent private actors from interfering with anyone's civil rights.

> "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression," [Internal citations omitted.] . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.

Deshaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 195-196 (1989)

A private actor's violation of another's constitutional rights does not require the government to enforce laws against private wrongdoers. Shanks v. Dressel 540 F.3d 1082, 1087-1088 (9th Cir. 2008) held that: '[F]ailure-to-protect" and "failure-to-enforce" allegations do

not suffice. The Constitution generally does not require the state to "protect the life, liberty, and property of its citizens against invasion by private actors. Also see <u>Johnson v City of Seattle</u> 474 F.3d 634, 638-639 [9th Cir. 2007], holding that local government has no substantive due process constitutional duty to protect plaintiffs from private actors – even violent ones.

As to the Know Your Rights (KYR) Fair, Plaintiffs never articulate how Dr. Abdulhadi's choosing "to disregard" a university policy while advising college students led to the deprivation of rights of which Plaintiffs complain. Plaintiffs complain that Palestinian and other Arab groups threatened to withdraw from pull out the KYR Fair if Plaintiffs' preferred group (Hillel) was given a table. FAC at 63/12-13. Their theory appears to be that if Dr. Abdulhadi had given different advice to these students, they would not have said they would withdraw, and that this prospect of withdrawal proximately caused the KYR Fair's planning committee to deny Hillel a table.[1] In essence, Plaintiffs' theory requires multiple layers of speculation.

Per the FAC's own allegations, Dr. Abdulhadi's alleged role in both incidents was merely to advise college students who are themselves private actors. Even if some of those students acted in ways that interfered with Plaintiffs' interests, the Plaintiffs' actual rights involve freedom from <u>government</u> oppression, and there is no allegation that Dr. Abdulhadi deployed or could deploy even an atom's worth.

The vicarious liability cases Plaintiffs cite miss two key points. First, all of them involve allegations that one state official somehow caused <u>another state official</u> to deprive plaintiffs of their rights. (See <u>Starr v. Baca</u>, 652 F.3d 1202 [9th Cir. 2011]; <u>Dubner v. San Francisco</u>, 266 F.3d 959 [9th Cir. 2001]; <u>Smith v. Schwarzenegger</u>, 2014 WL 2875627 [E.D. Cal. June 24,

---

[1] Nowhere do Plaintiffs allege that Dr. Abdulhadi had or exercised authority to grant or deny any group the right to have a table at the event.

---

DEF ABDULHADI'S REPLY MEMO RE MOTION TO DISMISS FAC - 2
MANDEL v. BOARD OF TRUSTEES – 3:17-cv-03511-WHO

2014]; and OSU Student Alliance v. Ray, 699 F.3d 1053 [9th Cir. 2012]). Plaintiffs allege that Dr. Abdulhadi did not properly advise students, but nowhere do they allege (nor can they allege) that she had or exercised authority to grant or deny any group the right to have a table at the event. Second, each of the Plaintiffs' cases involves liability in the context of an employer-employee supervisorial relationship, which also does not pertain here. Indeed, the word "supervisor" does not appear anywhere in Plaintiffs' FAC.

**2. Plaintiffs' Have Not Established Any Standing to Sue Dr. Abdulhadi.**

A complaint must allege facts that demonstrate standing to sue. The principles of standing require an injury that (1) is concrete and qualitative; (2) is distinct and palpable and not merely conjectural; and (3) "fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." Imagineering v. Kiewit Pacific, 976 F.2d 1303, 1307-08 [9th Cir. 1992]. To have standing to sue, a plaintiff must assert his or her own legal interests rather than those of third parties. See Gladstone, Realtors v. Bellwood, 441 U.S. 91, 120 [1979]. The FAC fails to establish any of this.

As to Dr. Abdulhadi, first and second causes of action turn on the "information and belief" allegation that as a faculty advisor she disregarded an SFSU non-discrimination policy as it applied to a student protest of the Nir Barkat event. FAC at 27/24-28/5, 65/21-22 & 67/16-17. The third and fourth causes of action likewise allege on "information and belief" that she disregarded the policy as it applied to the attempt of some students to exclude Hillel from a "Know Your Rights" fair. FAC at 27/24-28/5, 62/20-24 & 63/12-19. None of this sets forth facts establishing a distinct and concrete injury suffered by Plaintiffs traceable to Dr. Abdulhadi's purported disregard of a non-discrimination policy. At best, the FAC describes an

___

abstract injury attributable to third parties who are not state actors at all. Plaintiffs fail to allege facts linking Dr. Abdulhadi's conduct to the harm they claim to have suffered. Accordingly, Plaintiffs have not established standing relative to her so the FAC should be dismissed.

### 3. Plaintiffs' Claims Are Barred by the Eleventh Amendment

Plaintiffs concede that every act that harmed them that they attribute to Dr. Abdulhadi was an act taken in her official capacity. FAC at 17/18-22, 17/24-27, 66/1, 66/10, 66/15, 66/28, 67/22-23, 68/3, 68/8, 68/26-27, 70/6, 70/23, 71/22, 72/1, 72/7. 72/23, and 75/10. However, Plaintiffs insist that under Ex parte Young 209 U.S. 123 [1908] the Eleventh Amendment allows equitable relief actions against state officials acting in their official capacity. Plts-Opp at 17/15-17. Plaintiffs point to various acts that they attribute to Dr. Abdulhadi while conceding that the acts are official capacity acts. The FAC purports to name Dr. Abdulhadi in both her official and individual capacities. FAC at 1/28 (fn-1). But the only real charging allegations against her are in paragraphs 82 and 162 which accuse her of official capacity acts. (Plts-Opp at 16/28) in her role as a faculty advisor. Plaintiffs concede these are official capacity acts. FAC at 17/18-22 & 17/24-27. The FAC contains no viable individual capacity claims because the FAC has nothing to do with any individual capacity acts that are both actionable and carried out by Dr. Abdulhadi. For this added reason, the complaint fails as to her. At the very least Plaintiffs have thus cemented her Eleventh Amendment defense.

Actions for prospective equitable relief against state officials acting in their official capacities are authorized. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 & fn 10 [1989]. However, the doctrine's application "has been tailored to conform as precisely as possible to those specific situations in which… a violation of federal law by a state official is

---

ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past…." Papasan v. Allain, 478 U.S. 265, 276-77 [1986].

The FAC demonstrates that Plaintiffs' claims against Dr. Abdulhadi fall outside the ambit of Ex parte Young. Every allegation referring to her pertains strictly to past events – some of which are more than ten years old. FAC at 15/14-16/22, 24/2-4, 28/1-5, 44/18-22, 45/13-15, 46/20-22 & 54/6-55/20.

Although Plaintiffs claim the FAC is grounded in paragraphs 82 and 162, 9 (Plts-Opp at 16/28) these paragraphs merely contain bald conclusions that Dr. Abdulhadi – in her role as an advisor – disregarded a SFSU non-discrimination policy as it applied to both the protest at the Barkat event and the students' attempt to exclude Hillel from the KYR fair. [FAC at 27/24-28/5 & 63/14-19]. This conclusion is weakened not just by its vague nature, but also by the flawed premise that a student group was controlled by its advisor and stood in the same relationship to her as an employee to an employer.

Plaintiffs likewise invoke FAC paragraphs 81 and 126 to claim that Dr. Abdulhadi "organized the strike that demanded no one (including herself) would face discipline for shutting down the Barkat event." Plts-Opp at 17/1-2. FAC paragraph 81 (which goes on for 1,660 words) does not even mention her. FAC at 24/18-27/23. FAC paragraph 126 (which goes on for over 1,300 words) *does* mention her– but says nothing germane to the charging allegations: (1) Defendant Abdulhadi "effectively conscripted Ethnic Studies students… to demand increased funding for [the College of Ethnic Studies]… by staging a hunger strike…." [FAC at 45/13-15.]  (2) "Defendant Abdulhadi faced harsh criticism after taking a publicly-financed trip to Palestinian territories…." [FAC at 46/20-21.]

Plaintiffs also invoke FAC paragraphs 62 and 160 for the proposition that Dr. Abdulhadi organized and encouraged the "exclusion of Hillel" from the KYR fair. Plts-Opp at 17/2-5. But FAC paragraph 62 does not mention her at all. [FAC at 18/9-17.] FAC paragraph 160, insofar as it pertains to Defendant Abdulhadi, alleges that <u>after</u> the event Dr. Abdulhadi published an article which commented on it. [FAC at 62/20-63/1.]   It is entirely unclear how her publishing an article commenting on an incident deprived the Plaintiffs of their constitutional rights.

Other than advising college students, who are private actors the FAC alleges no ongoing and continuous misconduct.  And it is not conduct, but **<u>constitutional misconduct</u>** that is necessary to trigger <u>Ex parte Young.</u>  Absent ongoing and continuous violations of federal law, Plaintiffs are not entitled to any relief against Dr. Abdulhadi.  Since federal law does not require her to control the conduct of private citizens, this claim fails on those grounds as well.

Plaintiffs' opposition advances conclusions that go beyond the pile of imaginings, surmises, and conclusions that permeate the FAC.  [1] Some of the allegations advanced in Plaintiffs' opposition are not even *in* the FAC; [2] Not one of the the FAC paragraphs referenced in Plaintiffs' opposition points to past or ongoing constitutional misconduct; and [3] the FAC paragraphs referenced in the opposition concern acts that – by Plaintiffs' own admission – are all official capacity acts.  Under these circumstances, the FAC should be dismissed insofar as it asserts <u>official capacity claims</u> against Defendant Abdulhadi because the FAC is devoid of fact-based allegations of ongoing actionable misconduct.

**4. Plaintiffs' Constitutional Claims Are Likewise Barred by the Qualified Immunity Doctrine.**

Plaintiffs argue that the FAC survives a qualified immunity defense because "a reasonable person… [in Dr. Abdulhadi's] position would have known Plaintiffs' free speech and

equal protection rights would be violated." Plts-Opp at 18/15-16.  This is a superficial contention that assumes failing to prevent a third party from violating constitutional right defeats qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages… unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Wood v. Moss, 134 S.Ct. 2056, 2066-67 [2014].  In this regard, a right is clearly established if the "contours of the right… [are] sufficiently clear that a reasonable official would understand that what [he/she]… is doing violates the right." Anderson v. Creighton, 483 U.S. 635, 640 [1987].   Plaintiffs cannot establish that Dr. Abdulhadi violated a constitutional right or that any actionable misconduct on her part would be reasonably understood as a constitutional offense.  Since the only charging allegations center on her not advising students to obey University regulations, Plaintiffs would have to establish that (a) the students' alleged disregard for those regulations amounted to a deprivation of Plaintiffs' **constitutional** right to meet and speak without government interference and (b) that it would be clear to a reasonable faculty adviser that the actions of third parties (the students) could result in a constitutional violation. "Only when an officer's conduct violates a clearly established constitutional right – when the officer should have known he was violating the Constitution – does he forfeit qualified immunity."  Lacey v. Maricopa County, 693 F.3d 896, 915 [9th Cir. 2012] (en banc).

A brief review of Plaintiffs' four damage-related causes of action underscores the point.  The first cause of action, insofar as it pertains to Dr. Abdulhadi, is premised on the bare and unconnected allegations that (1) she failed to "assist" GUPS "to adhere" to a SFSU non-discrimination policy and (2) the student protest disrupted the Barkat event.  FAC at 27/24-28/5

---

& 65/21-22. In short, the first cause of action seeks to hold her liable for the actions of non-governmental third-parties. But an enforceable First Amendment claim depends on the actions of a government or a government actor and not the failure of the government to prevent the actions of third-parties. <u>Citizens v. Leavitt</u>, 428 F.3d 167, 185 [3rd Cir. 2005] (holding that plaintiffs cannot advance a cause of action based on the threatened independent actions of private parties.) The first cause of action even if true, does not establish that she violated any of Plaintiffs' constitutional rights.

The second cause of action, as to Dr. Abdulhadi likewise depends on the entirely speculative conclusion, without a single fact, that her failure to "assist" students "to adhere" to a SFSU non-discrimination policy was intended to discriminate against Plaintiffs based upon "their Jewish identities." FAC at 27/24-28/5 & 67/23-68/17. Plaintiffs' mere suspicion that she purposely interfered with an enforceable Fourteenth Amendment equal protection right does not cite a single anti-semitic thing she ever said or did, because there are none.

Instead, Plaintiffs are reduced to arguing, without alleging any facts, that the movement for the boycott, divestment, and sanctions against Israel is "inherently anti-Semitic" and presumably, Dr. Abdulhadi's role in it, (alongside tens of thousands of scholars and activists, including Jews) makes her an anti-Semite. [FAC 15/17-19].[2] Plaintiffs' "claim for violation of the Equal Protection Clause… must show that the defendant… acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1166 [9th Cir. 2005]. Culpability requires both a causal connection to the complained-of violation and the defendant's intent. Dr. Abdulhadi must be

---

[2] Since this is the only argument that Dr. Abdulhadi acted out of animus toward Plaintiffs because they are Jewish, Plaintiffs are inviting this Court to put an international political movement on trial, and with it the acts of the Israeli government that has provoked the BDS movement and brought it into existence..

shown to have the same level of intent as though she had directly deprived Plaintiffs of their rights.  Lacey, 693 F.3d at 916, citing Ashcroft v. Iqbal, 556 U.S. 662, 677 [2009].   Beyond the bare, rote recitation that Dr. Abdulhadi and other defendants discriminated – lies nothing.

The second cause of action fails because Plaintiffs allege no facts to link the alleged failure to properly advise the students with an actual intent to discriminate against Plaintiffs based on their identities.

The third and fourth causes of action are tied to the alleged exclusion of Hillel from the KYR fair.  FAC at 69/23-26 & 71/19-21.  Plaintiffs allege that (1) Months after the fact, Dr. Abdulhadi wrote an article recounting that the students who organized the fair excluded Hillel from it; and (2) In her role as a faculty advisor, she failed to order the students to obey an SFSU non-discrimination policy. FAC 62/20-24 & 63/12-19.  The third cause of action is a First Amendment claim and the fourth cause of action is an Fourteenth Amendment equal protection claim.  FAC at 69/9-11 & 71/7-9.

Although Plaintiffs make much of the article Dr. Abdulhadi wrote after the KYR fair, a *post hoc* report that a third-party excluded someone from an event is simply not an actionable wrong.  Second, her alleged failure as an academic advisor to control the acts of third parties is not actionable.  Citizens v. Leavitt, 428 F.3d at 185.  Third, not a single fact is alleged showing that Dr. Abdulhadi intended to discriminate based on anyone's Jewish identity.  And absent discriminatory intent there is no viable equal protection claim.  Thornton, 425 F.3d at 1166; Lacey, 693 F.3d 916.  The third and fourth causes fail to state a constitutional violation.

Plaintiffs' entire case against Dr. Abdulhadi rests on the claim that as a faculty advisor she failed to "assist" students in complying with the university's discrimination policy.  FAC at 27/24-28/5 & 63/14-19.  Buried within this claim is the supposition that a reasonable faculty

advisor with the obligation to "assist" (but not control) her students should know that failing to properly assist them follow a university policy violates the constitutional rights of non-group members. This result is underscored when (as here), the operative facts do not include whether the student group ever requested advice, or what it may have gotten. Plaintiffs even deny that by accusing Dr. Abdulhadi of "failure to assist" they are asserting a claim for vicarious liability which is forbidden by the Eleventh Amendment. <u>Monell v. Dep't of Social Servs</u> 436 U.S. 658, 691 [1978]; <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900 [9th Cir. 2011]. Plaintiffs' argue that they have asserted a claim for deliberate indifference based upon the supervisor's knowledge of or acquiescence in unconstitutional conduct by his or her subordinates. Plts-Opp at 10/2-11/18 & 19/1-6. Yet every case Plaintiffs cite involves a direct supervisorial employment relationship, a far cry from the relationship between college students and their faculty *<u>advisors</u>*. Dr. Abdulhadi, as a state actor, had no obligation to prevent private actors from interfering with anyone's constitutional rights. See <u>Deshaney</u>, 489 U. S. at 196.

### 5. **<u>Plaintiffs' Claim for Declaratory Relief Likewise Fails</u>**

Plaintiffs argue that their sixth cause of action for declaratory relief survives a motion to dismiss because "they are likely to suffer future injury…" at the hands of Dr. Abdulhadi. Plts-Opp at 19/ 13-14. Plaintiffs cite <u>Comm. For Immigrant Rights v. County of Sonoma</u>, 644 F.Supp.2d 1177, 1195-96 [N.D. Cal. 2009], for the proposition that a pattern and practice of constitutional violations equates with ongoing misconduct that justifies declaratory relief. Plts-Opp at 19/18-22. Plaintiffs have missed two basic points.

First, even were it true that Dr. Abdulhadi had not properly advised students to protect the Plaintiffs, this does not give rise to a cause of action because as a state actor, she has no such duty. Second, there is no basis for this Court to find that an ongoing controversy exists.

---

A party seeking declaratory relief must establish an actual controversy. Skelly Oil v. Phillips Petroleum, 339 US 667, 671 [1950]; Calderon v. Ashmus, 523 US 740, 745 [1998], a substantial dispute "between parties having adverse legal interests… of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty v. Pacific Coal, 312 US 270, 273 [1941].  An actual controversy is inextricably tied to concrete and demonstrable injuries to legally protected interests. Biodiversity Legal v. Badgley, 309 F.3d 1166, 1172 [9th Cir. 2002]. The FAC fails to establish any statutory or constitutional injury suffered by Plaintiffs at Dr, Abdulhadi's hands.   Accordingly, the subject allegations have no material or concrete application to a justiciable controversy or an enforceable right. Furthermore, and putting aside the unsupported conclusions and "information and belief" fabulisms, the FAC does not allege a pattern and practice of constitutional violations by Dr. Abdulhadi.  To the contrary, the FAC concerns two discreet past events: the Barkat event and the KYR fair in which, in the light most favorable to Plaintiffs, she failed to properly advise third party non-state actors.  Even if every word of the FAC were true, the FAC presents no factual nexus between Dr. Abdulhadi and any injury to a constitutionally protected interest.

In sum, the stated allegations on their face fail to implicate adverse legal interests and fail to establish real and non-speculative injuries to Plaintiffs.  For this reason, the declaratory relief claim should be dismissed as to Defendant Abdulhadi.

**6.  When Breath Becomes Air:  The Marriage of McCarthyism and Confabulation**

The FAC fails.  It does not show how Dr. Abdulhadi's alleged failure to advise students, who are not state actors, led to the deprivation of a constitutional right.  It does not show why she should have known that that the advice she allegedly gave or failed to give would cause

students, who are private parties, to use the color of law to deprive Plaintiffs of their rights.  And it does not show that she harbored animus toward Plaintiffs based on their identity as Jews.

To hide these deficiencies, Plaintiffs attack Dr. Abdulhadi's entirely legal political activities.  (Plts-Opp. at 8/1).  The argument appears to be that years before the events complained of, Dr. Abdulhadi helped co-found an organization which supports a boycott intended to pressure the government of Israel to change its policies, and that support for this boycott, coupled with the alleged "conscription" of students to stage a hunger strike *__after__* the Barkat event shows that she somehow caused the disruption of Barkat's speech.  The FAC remains fatally opaque about what Dr. Abdulhadi did *__before__* the Barkat event to bring about the alleged violations of Plaintiffs' constitutional rights.    What is more, although Plaintiffs' opposition insists that Dr. Abdulhadi "supervises" GUPS students, the word "supervises" does not appear anywhere in the FAC.  Indeed, all Plaintiffs have done and can do is allege that Dr. Abdulhadi advises GUPS students.  This is not enough to survive the pleading stage.

Plaintiffs then argue that Dr. Abdulhadi's inviting GUPS' previous student president, Mohammad Hammad to join her on a University-funded trip to the Palestinian territories to visit Leila Khaled, who was convicted of hijacking a plane more than forty years ago, "informs Plaintiffs' allegations." (Opp. 8:13-16).  It is entirely unclear how this allegation has anything to do with the Barkat event or the KYR event.

Plaintiffs next demand that the Court look into Dr. Abdulhadi's alleged involvement in the U.S. Campaign for the Academic and Cultural Boycott of Israel ("USCBI").  Plaintiffs complain of this group's principles that oppose "normalization" of what is sees as an illegal occupation, and cite websites that are nowhere to be found in the FAC.  (Opp. 8:22-9:9).

The absence of facts has forced Plaintiffs to fall back upon a disgraced chapter in American legal history: McCarthyism.  This is completely in keeping with Lawfare's stated desire to "inflict massive punishment" on people like Dr. Abdulhadi.  Hence, Plaintiffs demand that the Court allow their suit to continue by claiming that Dr. Abdulhadi's political beliefs means she probably "conscripted" students into violating Plaintiffs' constitutional rights.  Plaintiffs want the lawsuit to continue against Dr. Abdulhadi because she espouses beliefs that the Plaintiffs do not like.  In other words, adopting the Plaintiffs' position would require accepting their theory that if someone holds these beliefs, they must be acting illegally.  Indeed, Plaintiffs seek to use this Court as a means to outlaw advocacy for Palestinian rights in violation of well-established constitutional jurisprudence.

In advocating this way, Plaintiffs confuse plausibility with hunch and reasonable inference with speculation.  It does not follow that because Dr. Abdulhadi espouses certain politics that she must have conspired with students to unconstitutionally disrupt the Barkat event and unconstitutionally exclude students from the KYR event based on their Jewish identities.

Plaintiffs stack their inferences on a tower of guesswork, with endless allegations "on information and belief".  The Ninth Circuit's tolerance for confabulation is rightly limited to those situations where a case's foundations are armored with solid facts, and where the plaintiff's guesses are limited to knowledge uniquely controlled by the defendants.  <u>Park v Thompson</u>, 851 F.3d 910, 928-929 (9th Cir. 2017)[3] held that pleading standards may be relaxed where facts alleged by the Plaintiffs state a plausible claim and where additional relevant facts are known <u>only</u> to the defendant.  That will not save the deficiencies in the FAC because neither

---

[3] Petition for *certiorari* filed.

of those conditions are present in the case at bar. In Park the plaintiff sued a police detective and a number of Doe defendants after she had been charged with (and acquitted of) a homicide. While under indictment, Park notified the prosecutor that she would put on exculpatory evidence that the victim's boyfriend was the actual killer, and that an exculpatory witness, Ayala, would testify that after the murder, the victim's former boyfriend brutally choked her when she accused him of having committed the murder. She would testify that he shouted, "you want to see how she felt?"

In her civil suit Park alleged that (1) After she informed the prosecutor, Thompson, (the detective investigating the murder) contacted Ayala to urge her to break off contact with Park's investigators; (2) Thompson warned Ayala former boyfriend, who had physically abused Ayala in the past, was "really upset" about her statements; (3) Thompson admitted she had not spoken with Ayala for investigative purposes; and that (4) after speaking with the detective, Ayala, who had cooperated fully with the defense, broke off all contact with them. id. at 916. After alleging these very specific and very material facts, Park *then* alleged on information and belief that Thompson instigated officers in a neighboring police department to pursue criminal charges against Ayala, which were then used to intimidate Ayala into invoking her Fifth Amendment rights at Park's criminal trial, which in turn violated Park's constitutional rights. id. at 917.

In her civil suit Park thus alleged many highly salient facts which by themselves showed that Thompson was interfering with Park's defense in the homicide case. The only facts alleged on information and belief were those involving Thompson's contacts with the other police department, whose officers were named as Doe defendants.

By contrast, Plaintiffs here are far more promiscuous with their "information and belief" guesswork, <u>even when they allege facts known to non-defendants</u>. (As to Dr. Abdulhadi

---

DEF ABDULHADI'S REPLY MEMO RE MOTION TO DISMISS FAC - 14
MANDEL v. BOARD OF TRUSTEES – 3:17-cv-03511-WHO

specifically, see FAC 28/3-5; 45/27-48/4; 48/21-24; 54/8-14; 55/13-17; 55/17-20; and 63/17-19 — and that is just for purported facts about which non-defendants would have knowledge. As to the defendants generally, which Plaintiffs seek to lump together, see FAC 11/16-18; 15/22-26; 21/18-23; 22/11-14; 22/21-23; 33/27-28; 36/11-12; 38/25-26; 39/24-27; 40/16-17; 40/21-23; 46/8-14; 58/22-23; 58/24-26; 62/3-6; and 63/25-64/2 for similar, non-secret "facts".)

The FAC is leagues away from the logic underlying liberalized pleading in Park, and the Plaintiffs here do not deserve the benefit of such liberality.

### 7. Conclusion

For all of the above reasons, Plaintiffs' FAC should be dismissed as requested. This is their second failed attempt to sue Dr. Abdulhadi on a truly specious civil rights claim. They ought not be permitted a third strike.

DATED: October 25, 2017        RESPECTFULLY SUBMITTED

**GAVIN, CUNNINGHAM & HUNTER**

By: /s/ Alan F. Hunter
    Alan F. Hunter


**LAW OFFICE OF MARK ALLEN KLEIMAN**

By:  /s/ Mark Allen Kleiman, Esq.
     Mark Allen Kleiman, Esq.

**LAW OFFICES OF BEN GHARAGOZLI**

By: /s/ Ben Gharagozli, Esq.
    Ben Gharagozli, Esq.

Attorneys for Dr. Abdulhadi