Robb C. Adkins (SBN 194576)
radkins@winston.com
Krista M. Enns (SBN 206430)
kenns@winston.com
Seth Weisburst (SBN 259323)
sweisburst@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Steffen N. Johnson (*pro hac vice*)
sjohnson@winston.com
Lowell D. Jacobson (*pro hac vice*)
ljacobson@winston.com
Adrianne Rosenbluth (*pro hac vice*)
arosenbluth@winston.com
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
Telephone:   (202) 282-5000
Facsimile:   (202) 282-5100

Lawrence M. Hill (*pro hac vice*)
lhill@winston.com
Alexa Perlman (*pro hac vice*)
aperlman@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:   (212) 294-6700
Facsimile:   (212) 294-4700

Brooke Goldstein (*pro hac vice*)
brooke@thelawfareproject.org
Amanda Berman (*pro hac vice*)
amanda@thelawfareproject.org
THE LAWFARE PROJECT
633 Third Avenue, 21st Floor
New York, NY 10017
Telephone:   (212) 339-6995

Attorneys for Plaintiffs
JACOB MANDEL, CHARLES VOLK,
LIAM KERN, MASHA MERKULOVA,
AARON PARKER, and STEPHANIE ROSEKIND

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MANDEL, et al.<br><br>        Plaintiffs,<br><br>    vs.<br><br>BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, et al.,<br><br>        Defendants. | **Case No. 3:17-CV-03511-WHO**<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Complaint Filed:            June 19, 2017<br>First Am. Complaint Filed:    August 31, 2017<br><br>Judge:       Hon. William H. Orrick<br>Dept:         Courtroom 2, 17th Floor<br>Date:         November 8, 2017<br>Time:         2:00 p.m. |

Plaintiffs Jacob Mandel, et. al. ("Plaintiffs"), Defendants Board of Trustees of the California State University ("CSU"), San Francisco State University, et al. ("Administration Defendants"), and Defendant Rabab Abdulhadi (together, the "Parties") jointly submit this Joint Case Management Statement & Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.  Administration Defendants contend that SFSU is not a proper defendant because it is not a legal entity separate from CSU.

### 1.    **Jurisdiction & Service**

This is a case alleging violations of the First and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*).  This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and § 1343(a)(3) and (a)(4).   Administration Defendants have not identified Eleventh Amendment immunity as a defense to jurisdiction because Plaintiffs have represented that, as set forth in the FAC, they are not asserting claims under Section 1983 against CSU or SFSU and are not asserting claims for damages under Section 1983 against the individual defendants in their official capacities.   Defendant Abdulhadi reserves all rights to assert Eleventh Amendment and subject matter jurisdiction defenses, including defenses falling within the political question doctrine.

This Court has personal jurisdiction over the Defendant Individuals[1] because, upon information and belief, each of the Defendant Individuals either resides in the Northern District of California or has sufficient contacts with the Northern District of California due to their employment or relation to San Francisco State University ("SFSU"), a part of CSU, to establish this Court's jurisdiction over them.  The Court has personal jurisdiction over Defendants CSU and SFSU because each is based in and operates in California.

This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

---

[1] The Defendant Individuals include Defendants Leslie Wong, Mary Ann Begley, Luoluo Hong, Lawrence Birello, Reginald Parson, Osvaldo del Valle, Kenneth Monteiro, Rabab Abdulhadi, Brian Stuart, Robert Nava, Mark Jaramilla, Vernon Piccinotti, and Shimina Harris.

1   This Court has jurisdiction to grant injunctive relief pursuant to Rule 65 of the Federal Rules

2   of Civil Procedure.

3   Venue in this judicial district is proper under 28 U.S.C. § 1391(b) because the events giving

4   rise to the claims for relief stated in this Complaint occurred in this District, and because Defendants

5   are subject to personal jurisdiction in this District or may be found in this District. Therefore, no

6   issues exist regarding personal jurisdiction or venue.

7   All Defendants in this action have been served.

8   **2.   <u>Facts</u>**

9   **Plaintiffs' Position:**

10   Plaintiffs bring this case to protect their First and Fourteenth Amendment civil rights and to

11   redress the discriminatory hostile environment at San Francisco State University ("SFSU" or "the

12   University"), which is largely recognized as being among the most anti-Semitic campuses in the

13   country.   Plaintiffs' action seeks to hold the Administration Defendants and Defendant Dr.

14   Abdulhadi accountable for their intentional discrimination against Plaintiffs as Jewish students and

15   community members and for their violations of Plaintiffs' civil rights under the First and Fourteenth

16   Amendments to the U.S. Constitution and Title VI of the Civil Rights Act of 1964.

17   Plaintiffs describe the pervasively hostile environment of anti-Jewish animus that has existed

18   at SFSU for many decades, beginning principally with the establishment of the College of Ethnic

19   Studies (COES), now led by Defendant Monteiro, and exacerbated by the creation of the Arab and

20   Muslim Ethnicities and Diasporas Studies program, spearheaded and commanded by Defendant

21   Abdulhadi. With the complicity of the Administration, Plaintiffs—as Jews—have been deprived of

22   their rights to participate in and benefit from educational opportunities at SFSU, including certain

23   campus events, as compared with other non-Jewish students and community members.   Plaintiffs

24   have also been made to fear for their safety and the safety of other Jews on campus. Student

25   Plaintiffs have been afraid to enroll in courses in COES, even those that may be necessary for the

26   completion of their degrees; they have communicated regularly with friends to alert them to

27   dangerous campus events and encourage them to hide any symbols of Jewish identification; they

28   have been physically and verbally intimidated and threatened, and reported such threats to the

2

Administration to no avail.  Instead, they have been told that they have too much "power" and should direct their concerns to lower level bureaucrats instead of Defendant Wong (SFSU's President). Plaintiffs have been subjected to anti-Semitic slurs from the highest levels of the administration, and have been denied their right to a safe and secure campus environment that allows all students the opportunity to participate in, and benefit from, the opportunities and privileges of enrollment at SFSU.

The primary incidents giving rise to the alleged constitutional violations occurred on April 6, 2016 and February 28, 2017.  In April 2016, San Francisco Hillel, SFSU's only recognized Jewish student group representing all of the University's Jewish student population, invited Jerusalem Mayor Nir Barkat to give a lecture on campus about the Israeli technology sector. Claiming that Mayor Barkat was a "controversial speaker" and that Hillel's request would be akin to a "lit fuse" on the "powder kegs all over campus," Administration Defendants and Defendant Dr. Abdulhadi forced Hillel to pay for the rental of a for-fee, out-of-the-way event space that was unknown to many SFSU students, rather than consenting to any of the repeated requests by Plaintiff Jacob Mandel and Hillel staff for a cost-free, available space at the Cesar Chavez Student Center. This unequal treatment resulted in a much smaller than anticipated audience size.

With full awareness of the virulent opposition to certain views held by many Jewish students on campus relating to the Jewish state, at the event, Defendants intentionally left Plaintiffs vulnerable and then encouraged the violation of their rights. SFSU's police chief, Defendant Reginald Parson, set up a designated protest area – dubbed a "free speech zone" – outside of the event, acknowledging that a shutdown of the event would not constitute "free speech"—but failed to use it. GUPS members led dozens of others in violent and disruptive chants calling for the destruction of the Jewish state; encouraging a terrorist uprising against Jewish civilians; and screaming that the mostly-Jewish audience should "Get the fuck off our campus." They began physically and menacingly encroaching on the audience members who were huddled in a corner around the Mayor, many of whom approached administration and/or campus police who were present in the room to express fear for their safety and frustration that the event was being shut down. Defendants made the choice, repeatedly, to allow the total shutdown of the event.

Administration Defendants instructed the campus police to "stand down" in an intentional move to protect, encourage and embolden the disruptors at the expense of Plaintiffs and other members of the audience.  Numerous Defendants acknowledged that the disruption of the Barkat event was not free speech but free speech suppression, and violated numerous laws and campus policies.  Thus, there is no basis whatsoever to support Defendants' assertion that Plaintiffs seek to suppress the protected speech and assembly of any other students or otherwise restrict the First Amendment Rights of any other students.  Although Defendants, including President Wong and others, told concerned members of the SFSU community and indeed, the national Jewish community, that the "conduct process" would determine culpability and impose corresponding consequences on the perpetrators, and although the University commissioned an investigation into the incident which determined that the event was fully disrupted, no action was ever taken to hold any of the disrupting students, faculty or staff responsible for this egregious violation of Plaintiffs' rights accountable (in part because Dr. Abdulhadi worked to extract a demand from SFSU that no students or faculty would face discipline).

In February 2017, Hillel was intentionally excluded from a "Know Your Rights" fair, an "informational and training fair for vulnerable populations who may be feeling targeted in the new political climate in the country since the presidential election."  The Fair was an official SFSU event, sponsored by, among others, COES (chaired by Defendant Dean Kenneth Monteiro) and GUPS (commanded by Defendant Dr. Abdulhadi).  The Fair advertised (through the SFSU website) that it would include "student groups," and given that student Plaintiffs were part of the *most* vulnerable population on campus, and the *most* targeted community both before and since the 2016 presidential election, Plaintiffs sought to participate in and benefit from the fair by tabling with their representative student group: Hillel.

The organizing committee for the fair, including COES and GUPS, with SFSU's knowledge and approval, consciously and intentionally cut off registration to purposefully exclude Hillel, excluding other groups in the process in an effort to cover up this active discrimination.  Defendant Begley was made aware of the fair organizers' intention to exclude Hillel thirteen days in advance. Two days before the event, Hillel Director Benn contacted Defendant Begley to express his regret that SFSU was allowing the event to proceed without participation from the only representative

Jewish campus group. With full awareness of the premeditated nature of Hillel's segregation, and full authority as the Dean of Students to force inclusion, Begley allowed the organizers to proceed with impunity.  Defendant Monteiro became aware that a problem was unfolding and declared that he would be reversing his previous acceptance of an invitation to deliver a keynote address at the event. However, as the Dean of COES, he was empowered to compel the event's organizers to include all interested student groups—including those who were innocent bystanders—and refused. SFSU commissioned yet another investigation into this incident, which found that the Fair organizers had engaged in retaliation and intentional discrimination against Hillel, which Defendant Dr. Abdulhadi also unambiguously admitted.  Although the Fair happened in February 2017 and the investigation report was released in July 2017, no action has been taken to hold anyone responsible for what the University itself described as an "unacceptable breach of the University's values, policies, and standards for inclusion."  Yet again, contrary to Defendants' assertions, nothing about Plaintiffs' claims arising from this event seeks to restrict the protected speech and assembly of other SFSU students or otherwise violate their First Amendment rights in any way.

**Defendants' Positions:**

***Administration Defendants*** dispute all of Plaintiffs' facts as they characterize them above, as well as all of the legal arguments contained in Plaintiffs' purported summary of the facts.  Plaintiffs allege in their First Amended Complaint that Administration Defendants violated their First Amendment rights and discriminated against them on the basis of their Jewish identity in violation of their Fourteenth Amendment right to equal protection and Title VI of the Civil Rights Act of 1964.  This lawsuit is in fact an attempt by Plaintiffs to compel SFSU to restrict the speech and assembly of its other students, in violation of those students' First Amendment rights.  The majority of the events alleged in the Complaint, and repeated in Plaintiffs' statement of facts above, either occurred before Plaintiffs attended SFSU or did not involve Plaintiffs at all.  Notwithstanding Plaintiffs' lengthy statements of irrelevant allegations, Plaintiffs' claims are at bottom based on just a few alleged incidents, which Administration Defendants dispute and which are, in any event, insufficient to state any claim for relief.

1    **Defendant Abdulhadi** acknowledges third-party disturbances relative to the Nir Barkat event

2    and third-party involvement relative to the Know Your Rights fair events – but Defendant Abdulhadi

3    did not participate in those disturbances, and she did not encourage others to participate.  Defendant

4    Abdulhadi did not engage in any alleged constitutional or statutory violations, she did not

5    discriminate against Plaintiffs, she did not harm Plaintiffs, she owed no constitutional or statutory

6    duty to prevent the third-party conduct alleged in the FAC, and she otherwise denies the material

7    allegations of the FAC.

8    **3.**    **Legal Issues**

9    The Parties identify the following disputed legal issues:

10   - Whether Plaintiffs have pleaded facts sufficient to state claims against Administration

11     Defendant Individuals in their individual (personal) capacities.

12   - Whether Administration Defendant Individuals have qualified immunity against

13     Plaintiffs' claims.

14   - Whether, under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and monetary

15     relief because Defendant Individuals have, in their individual and official capacities,

16     deprived and continue to deprive Plaintiffs of their First Amendment rights, including

17     but not limited to the right to assemble, the right to listen or the right to hear, as

18     secured by the First Amendment to the United States Constitution and made

19     applicable to the States by the Fourteenth Amendment.

20   - Whether, under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and monetary

21     relief because  Defendant Individuals have, in their individual and official capacities,

22     discriminated against and continue to discriminate against Plaintiffs on the basis of

23     their Jewish identities, violating their Fourteenth Amendment rights to equal

24     protection of the laws.

25

26

27

28

- Whether, under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and monetary relief because certain of the KYR Defendant Individuals[2] have, in their individual and official capacities, deprived Plaintiffs of their First Amendment rights.

- Whether, under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and monetary relief because certain of the KYR Defendant Individuals have, in their individual and official capacities, deprived Plaintiffs of equal protection under the laws, as secured by the Fourteenth Amendment of the United States Constitution.

- Whether, under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, Plaintiffs Mandel, Volk, and Kern are entitled to injunctive and monetary relief for intentional discrimination against them based on their Jewish ancestry and religion based on deliberate indifference to a racially hostile education environment that is so severe, pervasive, or persistent that it deprived Plaintiffs of equal access to SFSU's educational opportunities.

- Whether, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiffs are entitled to declaratory relief based on the conduct of Defendant Individuals in their official capacities.

- Whether Plaintiff Mandel, who has graduated from SFSU, has standing to seek declaratory and injunctive relief against Administration Defendants.

**4.** **Motions**

On September 14, 2017, the Administration Defendants and Defendant Abdulhadi each filed a motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure (ECF 44, 81) and each filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) Plaintiffs' First Amended Complaint (the "FAC") (ECF 79, 82). On October 11, 2017, Plaintiffs' filed oppositions to the Administration Defendants' and Defendant Abdulhadi's motions to strike

---

[2] The KYR Defendant Individuals include Defendants Leslie Wong, Mary Ann Begley, Luoluo Hong, Lawrence Birello, Kenneth Monteiro, Rabab Abdulhadi, Brian Stuart, Robert Nava, Mark Jaramilla, Vernon Piccinotti, and Shimina Harris.

7

and dismiss the FAC.  ECF 84–87.[3]  Defendants' replies were submitted on October 25, 2017.  ECF 101–04.  Defendant Dr. Abdulhadi filed a request for judicial notice in support of her motion to dismiss the FAC (ECF 80, 83 (Errata)), which Plaintiffs opposed (ECF 88), and Dr. Abdulhadi filed a reply brief on October 25, 2017 (ECF 105).  All of the foregoing pending motions are set for hearing on November 8, 2017 at 2:00 p.m.

Also pending is a motion to file an Amicus Curiae brief filed by David Mandel on October 25, 2017 (ECF 100), to which Plaintiffs responded on October 29, 2017 (ECF 106).

Plaintiffs intend to move for summary judgment at the appropriate time.

If Administration Defendants' motions to dismiss and/or strike the complaint are not granted, they intend to move for summary judgment at the appropriate time.

In the event the pending motion to dismiss fails, Defendant Abdulhadi intends to move for summary judgment at the appropriate time and further reserves the right to present a subject matter jurisdiction challenge as may be appropriate.

5.     **Amendment of Pleadings**

At this time, the Parties do not anticipate the need for the amendment of any pleadings. However, should the Court issue an order granting any portion of either of the pending Motions to Dismiss, Plaintiffs expect to file a Second Amended Complaint, to be completed within 30 days of such order.  It is Administration Defendants' position that the Court should dismiss the claims in Plaintiffs' First Amended Complaint with prejudice because Plaintiffs have failed to allege facts that could support their claims, even after having amended their complaint in response to Administration Defendants' first motion to dismiss.  Plaintiffs submit that they amended their original complaint as a matter of course, pursuant to Rule 15(a)(1)(B).  Plaintiffs further submit that dismissal with prejudice is unwarranted, not only because Defendants failed to justify their request in any way whatsoever, but also because leave to amend should be liberally granted and the pending motions to

---

[3] Dr. Abdulhadi's motion to strike Plaintiffs' original complaint was applied to the FAC through a Stipulation and Order.  ECF 74.  Dr. Abdulhadi filed a motion to dismiss Plaintiffs' original complaint (ECF 43) that Plaintiffs opposed as moot due to the filing of the FAC (ECF 73).  The Administration Defendants filed a motion to dismiss Plaintiffs' original complaint (ECF 40) and a motion to strike Plaintiffs' original complaint (ECF 41) that Plaintiffs opposed as moot due to the filing of the FAC (ECF 89, 90).

1    dismiss are the first motions the Court will have heard.  Should discovery reveal new information

2    supporting additional claims against any current Defendant, adding additional defendants to the

3    current claims, or adding new claims for new defendants, or Plaintiffs otherwise need to move for

4    leave to amend further, Plaintiffs expect to move for leave within a reasonable time of discovering

5    such new information.  Should discovery reveal new information warranting dismissal of any

6    pending claims against any Defendant, Plaintiffs expect to file such dismissals within a reasonable

7    time of discovering such new information.

8    **6.    Evidence Preservation**

9         The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored

10   Information ("ESI Guidelines") and have met and conferred pursuant to Fed. R. Civ. P. 26(f)

11   regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues

12   reasonably evident in this action.

13   **7.    Disclosures**

14        The Parties will serve their initial disclosures no later than November 1, 2017.

15   **8.    Discovery**

16        Pursuant to Rule 26(d), Plaintiffs served a narrowly-targeted initial set of document requests

17   on the Administration Defendants via Federal Express on October 26, with a courtesy copy to

18   Defendant Abdulhadi via U.S. mail as of that same date.

19        **(A)    Initial Disclosures**

20        The parties exchanged initial disclosures under Rule 26(a) earlier today, November 1, 2017,

21   before this filing.

22        **(B)    Discovery Plan**

23        **Plaintiffs:**  The Plaintiffs propose the following discovery plan under Federal Rule of Civil

24   Procedure 26(f)(3):

25        To support its claims for violations of the First and Fourteenth Amendments of the U.S.

26   Constitution and Title VI of the Civil Rights Act of 1964, Plaintiffs intend to seek discovery

27   regarding the following topics:

28

- The April 6, 2016 Mayor Barkat event (including but not limited to its planning and location; what occurred before, during, and after the event and what deviations there were from SFSU policy and state and federal law; the University's stand-down order; reactions by Defendants to the event; any investigation into the event; and any public relations response to this event, including related to this lawsuit);

- The February 28, 2017 "Know Your Rights" Fair event (including but not limited to its planning, the planning committee, what occurred before, during, and after the event and what deviations there were from SFSU policy and state and federal law related to the exclusion of Plaintiffs' group, reactions by Defendants to the event, any investigation into the event, and any public relations response to this event, including related to this lawsuit);

- The hostile environment for Jewish students at SFSU (including but not limited to discrimination related to campus events, tabling, murals, and academics; the denial of equal access to educational benefits as a result of the hostile environment; conduct and positions contributing to the hostile environment by Defendants, GUPS, the College of Ethnic Studies, the Arab and Muslim Ethnicities and Diasporas Initiative, including any impact on Plaintiffs' academics or any political litmus tests; conduct related to Mohammad Hammad and his violent and threatening social media posts and ability to return to campus and earn his degree; SFSU's Memorandum of Understanding and exchange program with An-Najah University; attacks or undermining of the Jewish Studies department; physical threats to Jews on campus and any reaction by Defendants to those threats or lack thereof; decisions not to enforce policies that protect Jewish students' rights, safety, and equality).

Plaintiffs do not believe that the statements below of the Administration Defendants and Defendant Abdulhadi regarding the discovery plan complies with their obligations under Rule 26(f)(3) to state the parties' views and proposals on the specified topics that must be included in the discovery plan. This further fails to comply with the requirements of Rule 26(f)(2); Defendants'

1   belief that it is premature to specify these details or that discovery should be stayed does not relieve

2   them of these obligations.

3       **Defendants:**

4       ***Administration Defendants*** believe it is premature to specify the issues on which discovery

5   may be needed, when discovery should be completed, and whether it should be conducted in phases

6   or otherwise limited, until the Court has ruled on Administration Defendants' pleading motions.

7       ***Defendant Abdulhadi***'s position is that discovery should be stayed pending a resolution of

8   the pleadings following motions to dismiss and a qualified immunity determination.

9       At this time the Parties do not believe discovery should be conducted in phases or be limited

10   to or focused on particular issues.

11       **(C)**       **Rule 26(f)(3)(B); Discovery Subjects and Scope**

12       **Plaintiffs:**

13   •   The general subjects on which discovery may be needed include:

14       o   The 4/6/16 Mayor Barkat event (including its planning and aftermath).

15       o   The 2/28/17 "Know Your Rights" Fair (including its planning and aftermath).

16       o   The hostile environment for Jewish students at SFSU.

17       o   Physical threats and intimidation against Jewish students at SFSU (and SFSU/the

18           Board of Trustees' involvement in and response to those threats).

19       o   SFSU's decision not to investigate/respond/discipline those targeting and threatening

20           Plaintiffs, and depriving Plaintiffs of their civil rights.

21       o   SFSU's denial of equal educational benefits to Plaintiffs.

22   •   Fact discovery should be completed May 30, 2018.  Expert discovery should be completed

23       September 19, 2018.

24   •   Discovery should not be conducted in phases or have other limitations at this time.

25   Plaintiffs again note that Defendants' refusal to provide their views regarding the issues on which

26   discovery may be needed fails to comply with their obligations under Rule 26(f)(2) and 26(f)(3)(B).

27   Plaintiffs further dispute that their allegations "date back decades"; the long and sordid history of

28   Anti-Semitism at SFSU, recognized by then-President Robert Corrigan, is relevant background for

the notice that the current Defendants have had regarding the hostile on-campus environment for Jewish students.

**Defendants:**

Again, ***Administration Defendants*** believe it is premature to specify the issues on which discovery may be needed, when discovery should be completed, and whether it should be conducted in phases or otherwise limited, until the Court has ruled on Administration Defendants' pleading motions.   Plaintiffs' proposed discovery schedule is particularly unreasonable in light of the fact that Plaintiffs apparently want to pursue allegations that date back decades and represent below that they intend to take 42 depositions and propound 140 interrogatories.

***Defendant Abdulhadi*** adopts the position advanced by the Administration Defendants. Defendant Abdulhadi further reserves all rights to proceed with medical/psychological exams as discovery developments may warrant.  Defendant Abdulhadi further reserves all rights to proceed with discovery concerning CSU/SFSU activities and communications that related to the FAC allegations adverse to Defendant Abdulhadi.

**(D)      Rule 26(f)(3)(C); Issues Regarding ESI**

The Parties are not aware of any such issues.

**(E)      Rule 26(f)(3)(D); Issues Regarding Privilege**

The Parties are not aware of any such issues regarding claims of privilege, although Administration Defendants do expect to assert various privileges, including the attorney-client privilege, with regard to documents and testimony that may be sought by Plaintiffs.

The parties agree to separately enter into an agreement as contemplated by Federal Rule of Evidence 502 under which inadvertently produced privileged information would not be a waiver of any privilege, and a reasonable mechanism for clawing back such information and/or documents would be put in place.

**(F)      Rule 26(f)(3)(E); Limitations on Discovery**

**Plaintiffs' Position:**

Regarding depositions by oral examination (Rule 30), given the number of Defendants and the breadth of Plaintiffs' claims regarding the Mayor Barkat event, the "Know Your Rights" Fair,

12

1   and the Title VI claim alleging a pervasively hostile environment for Jewish students on campus,

2   Plaintiffs propose that Plaintiffs may take up to 42 depositions (3 per defendant), and Defendants

3   may take up to 18 depositions (3 per plaintiff).

4          Regarding interrogatories (Rule 33), the Plaintiffs propose that the permitted number of

5   interrogatories be allotted as follows:

6          o   Plaintiffs may propound up to 140 total interrogatories (10 per defendant, to be

7              allocated among Defendants however Plaintiffs see fit).

8          o   Defendants may propound up to 60 total interrogatories (10 per plaintiff, to be

9              allocated among Plaintiffs however Defendants see fit).

10  Plaintiffs again note that Administration Defendants' refusal to provide their views regarding

11  changes to discovery limits, and their statement that they only "*may* be prepared to consider this

12  issue further" fails comply with their obligations under Rule 26(f)(2) and 26(f)(3)(E).

13  **Defendants' Position:**

14          ***Administration Defendants*** do not believe any changes to the limitations on discovery are

15  appropriate at this time.  Administration Defendants may be prepared to consider this issue further

16  after the Court has ruled on their pleading motions, if any claims remain.   Administration

17  Defendants believe that Plaintiffs' proposal that they be allowed to take 42 depositions and propound

18  140 interrogatories (while allowing Defendants much smaller numbers) is highly unreasonable.

19          ***Defendant Abdulhadi*** adopts the position advanced by the Administration Defendants while

20  noting that the number of depositions requested by Plaintiffs is excessive.  Moreover, Plaintiffs and

21  Defendants should be allowed the same number of depositions and written discovery requests.

22          **(G)   Rule 26(f)(3)(F); Any Other Orders**

23  **Plaintiffs' Position:**

24          Plaintiffs propose that, under Rule 26(c) ("Protective Orders"), the Parties submit a Proposed

25  Stipulated Protective Order based on the Northern District of California's Model Stipulated

26  Protective Order for Standard Litigation with only minor modification.

27  **Defendants' Position:**

28

13

*Administration Defendants* agree that entry of a Protective Order may be appropriate after the Court has ruled on their pleading motions, if any claims remain, but believe it is premature to negotiate such an order at this time.

The parties currently have no other orders to propose that the Court should issue under Rule 26(c) or under Rule 16(b) and (c).

**9.     Class Actions**

Not applicable.

**10.    Related Cases**

Not applicable.

**11.    Relief**

**Plaintiffs' Position:**   Plaintiffs have suffered an irreparable injury for which remedies available at law are inadequate to compensate for, and considering the balance of hardships between Plaintiffs and Defendants a remedy in equity is warranted, and the public interest would not be disserved by permanent injunctive relief, Plaintiffs respectfully request that the Court enter judgment against Defendants alleged in the FAC and award (1) an injunction preliminarily and permanently enjoining Defendants and their agents from establishing, maintaining, or executing policies, practices, or procedures that penalize, discriminate against, or violate the free speech of equal protection rights of Jewish Students or visiting Jewish members of the community in any way; (2) a declaratory judgment, adjudging and declaring that the actions of Defendants (a) violated, and continue to violate, the First Amendment of the United States Constitution, (b) violated, and continue to violate, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and (c) violated, and continue to violate, the requirements of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*; (3) monetary damages for intentional discrimination in an amount to be proven at trial; (4) compensatory damages caused by Defendants' denial of equal protection of the laws and Defendants' violation of Plaintiffs' First Amendment rights, in an amount to be proven at trial; (5) damages for Defendants' denial of equal protection of the laws pursuant to the Fourteenth Amendment and Defendants' violation of Plaintiffs' First Amendment rights; (6) punitive damages to sanction Defendants' deliberate misconduct and to deter Defendants and others

14

from engaging in similar racially discriminatory and retaliatory actions in the future; (7) Plaintiffs' reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs of suit and reasonable expenses; (8) pre- and post-judgment interest at the maximum rate allowable by the law; and (9) any other relief which this Court may deem just and proper, including but not limited to any appropriate mechanism for the oversight and continued enforcement of injunctive relief against Defendants.

Based on the information presently available to Plaintiffs, Plaintiffs identify the following computation of damages:

- For each of claims 1–4 and 6, compensatory damages for each Plaintiff in an amount to be proven at trial;
- For each of claims 1–4, punitive damages against each Individual Defendant whose conduct was "malicious, intentional, or recklessly and callously indifferent to protected rights," as proven at trial, in an amount to be proven at trial;
- For each of claims 1–6, Plaintiffs' costs and reasonable Attorney's Fees, should Plaintiffs prevail on the merits

**Defendants' Position(s):**

*Administration Defendants* maintain that all of Plaintiffs' claims fail as a matter of law, that Plaintiffs are therefore not entitled to any relief, and that the Court should dismiss all of Plaintiffs' claims with prejudice.  In addition, Administration Defendants believe that Plaintiffs' purported computation of damages above is inadequate to provide a measure of damages or to describe a method of proving damages.

*Defendant Abdulhadi* adopts the position advanced by the remaining Defendants and denies that Plaintiffs are entitled to any form of relief against her.

**12.     Settlement and ADR**

The Parties met and conferred regarding ADR and stipulated to participate in private mediation with JAMS at the appropriate time.

**13.     Consent to Magistrate Judge For All Purposes**

The Parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14. **Other References**

The Parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. **Narrowing of Issues**

The Parties believe that they may be able to narrow the factual and legal issues prior to trial, depending in part on the Court's rulings on Defendants' pleading motions and any subsequent motions for summary judgment and on the information and documents obtained through discovery.

16. **Expedited Trial Procedure**

The Parties do not believe that this case can be handled under expedited trial procedures.

17. **Scheduling**

**Plaintiffs' Position:** Due to the pressing need for the requested injunctive relief in this case without further delay, and mindful of Defendants' position that claims for declaratory and injunctive relief are moot when all student plaintiffs have graduated (ECF 82 at 25, ECF 101 at 13) Plaintiffs propose the schedule below in this action (without conceding Defendants' position). Plaintiffs would agree to a more elongated schedule should Defendants agree with Plaintiffs that declaratory and injunctive relief for these claims are not moot upon graduation.

| Event | Proposed Date |
|---|---|
| Fact Discovery Cut-off (all discovery responses must be due and served by this date) | May 30, 2018 |
| Last day for hearing on fact (non-expert) discovery motions | August 1, 2018 |
| Initial Expert Disclosures | August 10, 2018 |
| Rebuttal Expert Disclosures | September 3, 2018 |
| Expert Discovery Cut-off | September 19, 2018 |
| Last day for hearing on expert discovery motions | October 24, 2018 |
| Last day for hearing on non-discovery motions, including summary judgment or other dispositive motions | November 14, 2018 |

16

| Motions *in limine* filing deadline (hearing on motions to be held at Final Pretrial Conference or sooner) | December 6, 2018 |
| Final Pretrial Conference | January 7, 2019 |
| Trial | February 4, 2019 |

**Defendants' Position**:

*Administration Defendants* believe that, in light of the pending motions directed to the complaint, it is premature to set a discovery or trial schedule.  In any event, Administration Defendants believe that the schedule proposed by Plaintiffs for fact discovery is unrealistic and unreasonable, particularly in light of Plaintiffs' apparent desire (to which Defendants object) to conduct discovery going back several decades and to take 42 depositions and propound 140 interrogatories.  Administration Defendants also believe that Plaintiffs' proposed schedule for expert disclosures and discovery is unreasonably short, particularly given that much of the expert discovery period falls in August and early September, when scheduling of expert depositions is especially difficult.

*Defendant Abdulhadi* generally adopts the position advanced by the Administration Defendants while taking the position that Plaintiffs' proposed schedule is not realistic in light of Plaintiffs' proposed discovery.  Defendant Abdulhadi proposes extending each of Plaintiffs' proposed dates by a period of 3 months (e.g., starting with a fact discovery cut-off date of August 30, 2018, and ending with a trial date of May 6, 2019.)

**18.**   **Trial**

Plaintiffs have requested a jury trial.  Defendant Abdulhadi also requests a jury trial.

Plaintiffs estimate that the length of trial will be 11-15 days.  Administration Defendants believe that any estimate as to the length of the trial is premature, but that 11-15 days is likely more than would be required.

**19.**   **Disclosure of Non-party Interested Entities or Persons**

Plaintiffs have filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15 as required on June 19, 2017.  Pursuant to that rule, Plaintiffs certified that, other

than the named parties, there is no such interest to report.  Plaintiffs further note that even though Civil Local Rule 3-15 required that Administration Defendant Individuals and Defendant Abdulhadi file their respective Certifications no later than August 21, 2017, no such certifications had been filed by any Defendant in this case until November 1, 2017.

Administration Defendants filed, concurrently with the filing of this Statement, the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.

Defendant Abdulhadi belatedly filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15.  Pursuant to that rule, Defendant Abdulhadi certified that, other than the named parties, there is no such interest to report.

**20.**    **Professional Conduct**

All attorneys of record for Plaintiffs have reviewed the Guidelines for Professional Conduct for the Northern District of California.

All attorneys of record for Administration Defendants have reviewed the Guidelines for Professional Conduct for the Northern District of California.

All attorneys of record for Defendant Abdulhadi have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.**    **Other**

At this time, the Parties have not identified any other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

Dated: November 1, 2017         WINSTON & STRAWN LLP

By:  */s/ Seth Weisburst*

        Robb C. Adkins
        Lawrence M. Hill (*pro hac vice*)
        Krista M. Enns
        Steffen N. Johnson (*pro hac vice*)
        Lowell D. Jacobson (*pro hac vice*)
        Seth Weisburst
        Alexa Perlman (*pro hac vice*)
        Adrianne Rosenbluth (*pro hac vice*)
        WINSTON & STRAWN LLP

Brooke Goldstein (*pro hac vice*)
Amanda Berman (*pro hac vice*)
THE LAWFARE PROJECT

Attorneys for Plaintiffs
JACOB MANDEL, CHARLES VOLK, LIAM
KERN, MASHA MERKULOVA, AARON
PARKER, and STEPHANIE ROSEKIND

Dated:  November 1, 2017              MUNGER, TOLLES & OLSON LLP

                                     By:   */s/ Bradley S. Phillips*

                                           Bradley S. Phillips
                                           Adele M. El-Khouri (*pro hac vice*)
                                           MUNGER, TOLLES & OLSON LLP

                                           Attorneys for Defendants
                                           BOARD OF TRUSTEES OF THE CALIFORNIA
                                           STATE UNIVERSITY, LESLIE WONG, MARY
                                           ANN BEGLEY, LUOLUO HONG, LAWRENCE
                                           BIRELLO, REGINALD PARSON, OSVALDO
                                           DEL VALLE, KENNETH MONTEIRO, BRIAN
                                           STUART, ROBERT NAVA, MARK
                                           JARAMILLA, VERNON PICCINOTTI, and
                                           SHIMINA HARRIS

Dated:  November 1, 2017              GAVIN, CUNNINGHAM & HUNTER

                                     By:   */s/  Alan F. Hunter*
                                           Mark Allen Kleiman
                                           LAW OFFICE OF MARK ALLEN KLEIMAN

                                           Ben Gharagozli
                                           LAW OFFICES OF BEN GHARAGOZLI

                                           Alan F. Hunter
                                           Elizabeth Gong Landess
                                           GAVIN, CUNNINGHAM & HUNTER

                                           Eliot Lee Grossman
                                           LAW OFFICE OF ELIOT LEE GROSSMAN

                                           Attorneys for Defendant
                                           RABAB ABDULHADI

        Attestation Regarding Signature: This document is being filed electronically under my ECF

User ID and Password.  Pursuant to Local Rule 5-1(i)(3), I hereby attest that concurrence in the

filing of this document has been obtained from each of the other Signatories to this document.

                                           */s/  Seth Weisburst*
                                           Seth Weisburst

## <u>CASE MANAGEMENT [PROPOSED] ORDER</u>

The above JOINT CASE MANAGEMENT STATEMENT is approved as the Case Management Order for this case and all Parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: _____

                                         Hon. William H. Orrick
                                  United States District Judge