1  Mark Allen Kleiman (SBN 115919)
2  Law Office of Mark Allen Kleiman
   2907 Stanford Avenue
3  Venice, CA 90292
4  Telephone: (310) 306-8094
   Facsimile:  (310) 306-8491
5  Email: mkleiman@quitam.org

6  Ben Gharagozli (SBN 272302)
   Law Offices of Ben Gharagozli
7  2907 Stanford Avenue
8  Marina Del Rey, CA  90292
   Telephone: (661) 607-4665
9  Facsimile:  (855) 628-5517
10 Email: ben.gharagozli@gmail.com

Alan F. Hunter (SBN 99805)
Elizabeth Gong Landess (SBN 138353)
GAVIN, CUNNINGHAM & HUNTER
1530 The Alameda Suite 210
San Jose, CA 95126
Telephone: (408) 294-8500
Facsimile:  (408) 294-8596
Email: hunter@gclitigation.com
            landess@gclitigation.com

Attorneys for RABAB ABDULHADI

11          **UNITED STATES DISTRICT COURT**

12        **NORTHERN DISTRICT OF CALIFORNIA**

13

14 JACOB MANDEL, CHARLES VOLK, LIAM      )  Case No.: 3:17-CV-03511-WHO
   KERN, SHACHAR BEN-DAVID, MICHAELA     )
15 GERSHON, MASHA MERKULOVA, and         )  **NOTICE OF MOTION AND**
   STEPHANIE ROSEKIND,                   )  **MOTION TO DISMISS SECOND**
16                                        )  **AMENDED COMPLAINT**
                  Plaintiffs,            )
17             v.                         )
                                          )  **(Filed concurrently with Motion to**
18 BOARD OF TRUSTEES of the CALIFORNIA   )  **Strike and [Proposed] Order)**
   STATE UNIVERSITY, SAN FRANCISCO       )
19 STATE UNIVERSITY, RABAB ABDULHADI,    )
   in her individual capacity, and LESLIE WONG, )  Date:   July 18, 2018
20 MARY ANN BEGLEY, LUOLUO HONG,         )  Time:  2:00 p.m.
   LAWRENCE BIRELLO, REGINALD PARSON,    )  Location: Courtroom 2, 17th Floor
21 OSVALDO DEL VALLE, KENNETH            )  Judge: William H. Orrick
   MONTEIRO, BRIAN STUART, and MARK      )  Original Action Filed: June 19, 2017
22 JARAMILA, in their official and individual )
23 capacities,                           )
                                          )
24                                        )
                  Defendants.            )
25                                        )
26 _____ )
27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on July 18, 2018 at 2:00 p.m. before the Honorable William H. Orrick in Courtroom 2 on the 17th floor of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102-3489, RABAB ABDULHADI, Ph.D. ("Dr. Abdulhadi") will move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") to dismiss as to her the third, fourth, fifth, and sixth causes of action (i.e. "Claims for Relief) in Plaintiffs' Second Amended Complaint.

Dr. Abdulhadi respectfully moves the Court to dismiss the Second Amended Complaint without leave to amend pursuant to Rule 12(b)(6) for the following reasons:

(1) The allegations Plaintiffs assert against Dr. Abdulhadi do not give rise to any cause of action.

(2) Sued as an "individual", Dr. Abdulhadi enjoys qualified immunity because the allegations do not indicate that she violated a clearly established law or constitutional right.

(3) Plaintiffs have failed to follow the clear and specific instructions of the Court when filing their Second Amended Complaint.

Therefore, there is no reason to give Plaintiffs a fourth chance, with another round of pleadings.  The Second Amended Complaint against her should be dismissed with prejudice.

This Motion is based upon the Memorandum of Points and Authorities included herein, the existing record in this matter, the documents, which this Court is asked to judicially notice, and any such additional authority and argument as may be advanced in Dr. Abdulhadi's reply and during argument on this motion.

DATED:  April 30, 2018          RESPECTFULLY SUBMITTED

**LAW OFFICE OF MARK ALLEN KLEIMAN**


By:____/s/ Mark Allen Kleiman

Mark Allen Kleiman, Esq.

**LAW OFFICES OF BEN GHARAGOZLI**
Ben Gharagozli, Esq.

**GAVIN, CUNNINGHAM & HUNTER**
Alan F. Hunter, Esq.
Elizabeth Gong Landess, Esq.

Attorneys for Dr. Abdulhadi

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...............................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

II.    STATEMENT OF ISSUES TO BE DECIDED......................................4

III.   SUCCINCT STATEMENT OF RELEVANT FACTS...............................4

IV.    ARGUMENT..................................................................................7

       A. Plaintiffs' Charging Allegations Against Dr. Abdulhadi Do
          Not Give Rise to Any Feasible Cause of Action................................8

       B. The Active Participation of Jewish Voice for Peace in the Know
          Your Rights Fair Shows That Hillel Was Not Excluded
          Because of Anti-Semitism or Out of a Belief That All Jewish
          Organizations Support Zionism...........................................13

       C. Plaintiffs' Allegations About "Anti-Semitism" and "Anti-
          Normalization" Cannot Support the Weighty Conspiracy
          Theory They Allege Against Dr. Abdulhadi....................................14

       D. Plaintiffs Do Not Even Meet the Threshold Test of Establishing
          Standing.................................................................................16

       E. Dr. Abdulhadi is Entitled to Qualified Immunity Because
          Plaintiffs Have Not Alleged and Cannot Allege She Violated a Clearly
          Established Constitutional
          Right.......................................................................................18

       F. Although Dr. Abdulhadi May Be Sued Only in Her Individual
          Capacity, Plaintiffs Insist Upon Treating Her As Though She
          Were Acting in an Official Capacity.............................................19

       G. The Second Amended Complaint Attacks Fundamental First
          Amendment Rights and Academic Freedoms...................................20

V.     CONCLUSION..........................................................................21

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

Anderson v. Creighton, 483 U.S. 635 (1987)......................................................18

Ashcroft v Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).......................................9

Buckley v. Valeo, 424 US 1 (1976)......................................................................20

Citizens v. Leavitt, 428 F.3d 167 (3rd Cir. 2005)……………...........………….…....8

Conservation Force v. Salazar, 646 F.3d 1240 (9th Cir. 2011)..........................13

Courtright v. City of Battle Creek, 839 F.3d 513 (6th Cir. 2016) .....................18

Cousins v. Lockyer, 568 F.3d 1063 (9th Cir. 2009)...............................................9

Dahlia v. Rodriguez, 735 F.3d 1060 (9th Cir. 2013)............................................9

Groten v. California, 251 F.3d 844 (9th Cir. 2001) ............................................18

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ...................................................19,21

Healy v. James, 408 U.S. 169 (1972) ..................................................................20

Hydrick v. Hunter, 669 F.3d 937 (9th Cir. 2012)............................................9,14

Imagineering v. Kiewit Pacific, 976 F.2d 1303 (9th Cir. 1992).........................16

In re Asbestos School Litigation 46 F.3d 1284 (3rd Cir. 1994) ........................21

In re Orthopeadic Bone Screw Litigation, 193 F.3d 781 (3rd Cir. 1999)..........20

Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)..........................................8

Keyishian v. Bd. of Regents, Univ. of State of N.Y, 385 U.S. 589 (1967).....................20

Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671 (9th Cir. 1981) ..........................7

OSU Student Alliance v. Ray, 669 F.3d 1053 (9th Cir. 2012)…………..........…….....passim

Sepehry-Fard v. Department Stores Nat'l Bank,
    15 F.Supp.3d 984 (N.D. Cal. 2014)........................................................................10,11

Starr v. Baca, 633 F.3d 1191 (9th Cir. 2011)............................................................1,7,14

Sweezy v. State of New Hampshire, 354 U.S. 234 (1957)..............................................20

Tahoe-Sierra Preservation Council v. Tahoe Reg'l
    Planning Agency, 216 F.3d 764 (9th Cir. 2000)......................................................8

Williams v. Alabama State Univ., 102 F.3d 1179 (11th Cir. 1997) ...............................18

Wood v. Moss, 134 S.Ct. 2056 (2014)..........................................................................18

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

In dismissing the Plaintiffs' second attempt to fashion a complaint that stated a plausible claim for relief this Court laid down a few simple rules based on well-settled authority for the plaintiffs to follow:

1.     "[T]he court is not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  Dkt. 124 at p. 12 citing <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008).

2.     "[P]laintiffs need to allege that these same defendants have acted in similar circumstances to remove student protestors or instructed the police to do so, in order for a plausible inference to arise that the Administrator Defendants acted the way they did *because of* Plaintiffs' Jewish identity."  Dkt. 124 a p. 24.

3.     "Plaintiffs attempt to avoid alleging facts showing specific intent to discriminate by relying on cases arising under the Eighth and Fourteenth Amendments that discuss 'deliberate indifference' when conditions of confinement are involved.  Those cases are inapposite.  Following *Iqbal*, the prison condition cases continue to recognize that 'deliberate indifference' can be a basis for supervisory liability under § 1983 for claims of 'unconstitutional conditions of confinement, *unlike* a claim of unconstitutional discrimination."  Dkt. 124 at p. 36 citing <u>Starr v. Bacca</u>, 652 F.3d 1202, 1206 (9th Cir. 2011) (emphasis added); see also <u>OSU Student Alliance v. Ray</u>, 669 F.3d 1053, 1071 (9th Cir. 2012).

4.     "[B]ecause plaintiffs' claims rest on intentional invidious discrimination, specific intent needs to be alleged."  Dkt. 124 at p. 36.

5.     "As to any affirmative acts by Abdulhadi that caused plaintiffs harm to their constitutional rights, the FAC is silent.  Plaintiffs, at most, attempt to build a bridge between Abdulhadi's alleged anti-Zionist and anti-Israel stances, her pro-Palestinian resistance support, and her academic pursuits to support an inference that she must have

1   encouraged GUPS or others to engage in the acts of discrimination complained of.  That

2   bridge supports no weight.  Plaintiffs offer only rank speculation that Abdulhadi took any

3   actions or failed to take required action *before* the alleged constitutional violations.  The

4   allegations regarding Abdulhadi's post-events comments do not show that she took any

5   pre-event acts that led to the alleged constitutional deprivations."  Dkt. 124 at pp. 36-37

6        6.    "Given the total lack of facts alleged showing that Abdulhadi *herself* acted

7   to cause plaintiffs' alleged constitutional injuries, the allegations in the FAC fail to state a

8   claim against her.  Out of an abundance of caution, I will allow plaintiffs leave to amend

9   their allegations against Abdulhadi."  Dkt. 124 at p. 37

10       The Second Amended Complaint ("SAC") fails to follow these six easy

11  guidelines, even though the Court admonished them to take heed of these criticisms.  Dkt.

12  124 p. 13.  Rather than heed them, Plaintiffs rest their case on critical allegations made

13  on "information and belief"  (See  SAC **¶ 70**) or fatally conclusory claims and pure

14  surmise.  These include notions that the bonds of  a professor-student academic

15  relationship are enough to drive SFSU students to do Dr. Abdulhadi's imagined political

16  bidding at the risk of jeopardizing their own academic futures.

17       Although the SAC acknowledges that Dr. Abdulhadi is being sued strictly in her

18  individual capacity (and, therefore, liable only for her own individual actions which she

19  directly commits), it attempts to recast her as an "official capacity" actor by transforming

20  alleged political advocacy into a University policy.  (See,  SAC ¶ 39)  This is a sleight-

21  of-hand pleading maneuver devoid of facts and rich in conclusions.

22       The SAC is also organized in a way that is at best confusing and at worst

23  mendacious.  First, Plaintiffs have not even scrupled to acknowledge that their allegations

24  about Hillel representing all Jews on campus regardless of political ideology are

25  assertions (and dubious ones at that), far from the "facts" they portray them to be by

26

27

28

locating these claims in a section mislabeled "FACTUAL BACKGROUND" instead of the at least candidly labeled section, "ALLEGATIONS".[1] (SAC ¶ 34)

Plaintiffs' charging allegations against Dr. Abdulhadi are similarly misdirected. Although the SAC pays lip service to the Court's order that Dr. Abdulhadi be sued purely in her individual capacity, it charges her with the malfeasance of an official acting in her official capacity, accusing her of giving a "stand down" order during the Barkat demonstration (SAC ¶ 159) and giving improper instructions to the police and other administrators (SAC ¶ 162). This confusion is unsurprisingly compounded when the Defendants seek to enjoin Dr. Abdulhadi's conduct. (SAC ¶ 167) This hopeless muddle of allegations and remedies having nothing to do with Dr. Abdulhadi is repeated in the fourth and fifth and sixth causes of action. (SAC ¶¶ 173, 177, and 192, respectively.)

Finally, the actual allegations against Dr. Abdulhadi must be understood in the context of the SAC's effort to improperly equate opposition to Israeli policies, or to Zionism as an ideology, with anti-Semitism. Of course, were Dr. Abdulhadi engaged in actual anti-Semitic acts or had she made anti-Semitic statements, this alchemical effort would be unnecessary as Plaintiffs would have broadcast them to the world. In an era when American Nazi Richard Spencer has proclaimed himself a "White Zionist", treating Zionism as a purely ethnic or national project is an uncertain path to a finding of invidious discrimination against Jews or Israelis. Yet even though there are many Jews who are not Zionists and many Israelis who are not Jews, Plaintiffs insist that to oppose

---

[1] Similarly, Plaintiffs again try to disguise as "FACTUAL BACKGROUND" their inaccurate exposition of the State Department's discussion of anti-semitism. SAC ¶33. Plaintiffs' persistence in distorting this is therefore the subject of a renewed Motion to Strike.

Plaintiffs likewise bury gross, unsupported generalizations in ¶ 1 and ¶ 3 in a section they describe as "Background and Summary", as though the conclusory nature of these allegations may thereby be concealed.

Zionism as a political ideology is to bear animus towards Jews as Jews, or Israelis as Israelis.  For people who believe that Zionism is a racist ideology, this is tantamount to saying that opposition to white supremacy is anti-American or is racist hatred of white people.  Taken another way, the notion that criticism of Zionism is equivalent to hatred of all Jews is as logically sound as the notion that criticism of ISIS constitutes hatred of all Muslims.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the allegations made against Dr. Abdulhadi, taken as true, could constitute any facts showing that she directly caused any of the Plaintiffs any harm to a constitutionally protected right or interest.

2.   Whether the Plaintiffs allege actual facts sufficient to raise the plausible inference that Dr. Abdulhadi took any specific acts that violated a constitutional right of Plaintiffs that was clearly established in light of the specific context of the case.

3.   Whether the allegations against Dr. Abdulhadi concern speech and activities, protected by the First Amendment.

4.   Whether Plaintiffs' are entitled to a fourth chance to make a plausible claim against Dr. Abdulhadi.

## III.   SUCCINCT STATEMENT OF THE RELEVANT FACTS

The essence of Plaintiffs' legal grievance against Dr. Abdulhadi rests on two claims: (1) a student protest of an event where Nir Barkat, the Mayor of Jerusalem spoke on April 6, 2016; (2) the alleged exclusion of the Hillel organization from a "Know Your Rights" Fair in February 2017.  The SAC contains no allegations that Dr. Abdulhadi was involved in either of these incidents and merely alleges, on information and belief, that she "pulled strings", as though the students were mere puppets, compelling them to do her (assumed) bidding.

Plaintiffs complain that:

(1)  Dr. Abdulhadi, as a professor and as the faculty advisor to the General Union of Palestinian Students (GUPS) , subscribes to an alleged "mandate" of the movement for Boycott, Divestment, and Sanctions (BDS) called "anti-normalization" that requires its supporters to "disrupt, isolate, and silence all opposing viewpoints."  (SAC ¶ 36) Plaintiffs go on to insist that anti-normalization is the "official policy" of Arab and Muslim Ethnicities and Diasporas Studies ("AMED") program that Dr. Abdulhadi heads as part of the College of Ethnic Studies ("COES") at San Francisco State University (SFSU)[2] (SAC  ¶¶ 37-38);

(2)  This "policy" has been adopted by "academic programs and departments" and requires Dr. Abdulhadi to "engage in and support efforts to disrupt speech and gatherings"[3] (SAC ¶ 39);

(3)  Dr. Abdulhadi is the faculty advisor of the General Union of Palestine Students ("GUPS") (SAC ¶ 37);

(4)  AMED, COES, and GUPS have sponsored numerous events at which "Zionist Jews" were denounced[4] (SAC ¶ 40);

(5) In 2013 GUPS held a rally and distributed materials lauding violent resistance to colonization, (SAC ¶ ¶ 41-42);

(6)  GUPS has a commitment to enforce "anti-normalization, as [ordered] by Dr. Abdulhadi."[5] (SAC ¶51);

---

[2]  Plaintiffs allege no specific facts supporting the conclusory allegation that this policy exists despite the fact that since AMED and COES are arms of the University any "official policy" would be committed to writing.

[3]  The allegation that Dr. Abdulhadi is enforcing a University policy recasts her as an "official capacity" actor in direct contravention of this Court's order, Dkt. No. 124, at 35-36.

[4]  Plaintiffs allege no specific facts supporting this conclusory allegation.

[5]  There are no specific facts supporting this conclusory allegation.

(7) **On information and belief** Dr. Abdulhadi, as faculty advisor, ordered GUPS and all its members to implement anti-normalization at the Barkat event, causing GUPS members to work to disrupt the event SAC ¶70[6], and Barkat could not be heard over the protestors (SAC ¶ 71);

(8) Dr. Abdulhadi engaged in "social media intimidation"[7] (SAC ¶ 105);

(9) Dr. Abdulhadi either acted under the compulsion of an "anti-normalization mandate" "encouraged and pulled the strings on" others to exclude Hillel or its associates from the KYR event.[8,9] (SAC ¶ 120). She, at the least, "ratified" the decision to exclude Hillel.

(10) Dr. Abdulhadi deliberately conflates Jews, Israelis, and Zionists[10] (SAC ¶ 120);

(11) Dr. Abdulhadi "deprived and continues to deprive" some of the Plaintiffs of their First Amendment rights by giving a stand down order to University police (SAC ¶ 159); preventing some Plaintiffs from participating in the Barkat event[11] (SAC ¶ 161);

--------------------------------------------------

[6] The entirely speculative nature of this allegation is self-evident. Plaintiffs repeat the same allegation at SAC ¶ 164 but inexplicably dispose of their admission that it is based on "information and belief".

[7] Although Plaintiffs allege that this intimidation of "Jewish and Israeli students" by Dr. Abdulhadi is "described throughout this Complaint" no specific facts are ever set forth and the only posting of hers that is referred to specifically decries and disavows anti-Semitism. It must also be noted that in Plaintiffs' prolix ¶ 130, they refer to a posting from February 23, 2018, more than a year after the KYR Fair and nearly two years after the Barkat event.

[8] There are no specific facts supporting this conclusory allegation.

[9] A "mandate" is an authoritative command or formal order. Merriam-Webster Dictionary https://www.merriam-webster.com/dictionary/mandate last visited April 20. 2018.

[10] Not only do Plaintiffs fail to provide specific facts in support of this allegation, it is pure argument and flies in the face of Dr. Abdulhadi's own writings and teachings that Plaintiffs themselves refer to in Paragraph 130.

(12) Dr. Abdulhadi Improperly instructed the police, administrators, and faculty members about the appropriate way to handle disruptions (SAC ¶ 162);

(13) Dr. Abdulhadi "intentionally excluded Hillel from the KYR fair based on the Jewish identity of Hillel's members"[12] (SAC ¶ 177, see also ¶¶ 180, 189, 191).

(14) Dr. Abdulhadi "either intentionally discriminated against Plaintiffs as Jewish students or acted with deliberate indifference"[13] (SAC ¶ 180).

The third, fourth, fifth, and sixth causes of action are at issue in this motion. The third and fourth causes of action allege that Dr. Abdulhadi, as a professor and faculty advisor, ordered ("mandated") the "disruption and silencing of divergent viewpoints relating to the Israeli-Palestinian conflict" which in turn led third-party GUPS members to "disrupt and shut down the Barkat event. SAC at ¶37 & ¶70.

The fifth and sixth causes of action allege that Dr, Abdulhadi, as a professor and faculty advisor, "encouraged" third-party GUPS members to exclude Hillel from a "Know Your Rights" fair "on the basis of a perceived [Hillel-held] 'Zionist' viewpoint." SAC at ¶120.

## IV.   <u>ARGUMENT</u>

The "allegations in a complaint . . . must be sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it." <u>Starr v. Baca</u>, 633 F.3d 1191, 1204 (9th Cir. 2011).  The SAC fails to meet these standards and should therefore be dismissed. <u>Nevijel v. N. Coast Life Ins. Co.</u>, 651 F.2d 671, 673 (9th Cir. 1981).

---

[11]  There are no specific facts supporting this conclusory allegation.

[12]  There are no specific facts supporting this conclusory allegation.

[13]  There are no specific facts alleged to support the conclusory allegation that Dr. Abdulhadi intentionally discriminated, and the equally unsupported conclusory allegation that she acted with deliberate indifference is of course not actionable.

**A)      Plaintiffs' Charging Allegations Against Dr. Abdulhadi Do Not Give Rise to Any Feasible Cause of Action.**

Plaintiffs seek to inflict "massive punishments" upon Dr. Abdulhadi[14] for the following sins which they recited in their First Amended Complaint: (1) being a faculty adviser to a registered campus student group, the GUPS; (2) traveling to Jordan and Palestine with another faculty colleague to conduct research; (3) helping develop a student exchange program between SFSU and An-Najah National University in Palestine; and (4) co-founding an academic group they dislike; and (5) being involved with political events they disfavor.

The only nexus Plaintiffs have alleged between Dr. Abdulhadi and the two events at which they claim their rights were violated requires tremendous leaps of faith and logic that are unsupported by specific allegations – or are advanced only on information and belief.  For example, Plaintiffs insist that Dr. Abdulhadi be found guilty by association because she advised or mentored students who Plaintiffs claim were involved in the Barkat event and the exclusion of Hillel at the KYR event.  (SAC ¶¶ 70, 119)

The Plaintiffs must allege facts sufficient, if true, to lead to a plausible conclusion that Dr. Abdulhadi's conduct was the actionable cause of their claimed injuries.  Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 783 (9th Cir. 2000).  An enforceable constitutional claim requires the actions of a government or a government actor and not the failure to prevent the actions of third-parties.  Citizens v. Leavitt, 428 F.3d 167, 185 (3rd Cir. 2005).  There is no vicarious liability for §1983 claims so Dr. Abdulhadi cannot be found liable for the acts of others.  Jett v. Dallas Indep. Sch. Dist. 491 U.S. 701 736 (1989).   Plaintiffs must plead specific facts showing

---

[14] Speech by plaintiffs' counsel, Brooke Goldstein:  "The goal is … to send a message, a deterrent message, that similar actions such as those that they engage in will result in massive punishments."  https://www.youtube.com/watch?v=iSm22DhzC6k, at 30:47-30:56 in the video.  Last accessed August 19, 2017.  Dr. Abdulhadi does not advance these remarks as a separate basis for ordering dismissal, but to reveal to the Court the assumptive bases behind this suit.

1   that Dr. Abdulhadi, through [her] own individual actions, has violated the Constitution.

2   Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Individual actions that trigger constitutional

3   tort liability are "specific" actions that equate with direct participation in the offending

4   act – e.g., direct instigation of the offending act by a subordinate government actor --

5   with the defendant's knowledge of and acquiescence in the misconduct.  The only other

6   theory for Dr. Abdulhadi's liability would be her direct implementation of a government

7   policy in circumstances that establish a causation link between the government policy and

8   the constitutional harm.  Hydrick v. Hunter, 669 F.3d 937, 941-42 [9th Cir. 2012] and

9   OSU v. Ray, 699 F.3d 1053, 1076 (9th Cir. 2012). Of course, such an allegation would

10  recast Dr. Abdulhadi as acting in her "official capacity", which the Plaintiffs repeatedly

11  disclaim.    Plaintiffs thus make contradictory and conclusory allegations about Dr.

12  Abdulhadi's "encouragement" of others who are not state actors, in furtherance of an

13  imagined University policy ."Conclusory allegations and generalities without any

14  allegation of the specific wrong-doing by each Defendant" are not sufficient. Id.

15        Although a complaint need not contain detailed factual allegations it must plead

16  enough facts to state a claim to relief that is plausible on its face. Cousins v. Lockyer, 568

17  F.3d 1063, 1067-68 (9th Cir. 2009).  A claim is facially plausible only when it "allows

18  the court to draw the reasonable inference that the defendant is liable for the misconduct

19  alleged." Ashcroft v. Iqbal(internal quotation marks omitted). "[C]onclusory allegations

20  of law and unwarranted inferences are insufficient to avoid . . . dismissal" under this

21  standard.  Cousins, 568 F.3d at 1067 (internal quotation marks omitted).  A court may

22  reject as implausible, allegations that are too speculative to warrant further factual

23  development.  Dahlia v. Rodriguez, 735 F.3d 1060, 1076 (9th Cir. 2013)

24       In this case Plaintiffs rely upon the very fact-deprived conclusory terms such as

25  "mandated" and "encouraged" which Ashcroft abjured.  From this shaky start, Plaintiffs

26  proceed to allege that Dr. Abdulhadi advocated an anti-Israel/anti-Zionist political

27  position that caused third-parties to disrupt an anti-Palestinian speech and to exclude a

28

Zionist organization from a fair.  It is also important to note that the SAC admits that the offending acts that actually caused purported harm are the acts of individuals who are <u>not</u> government actors – i.e., individuals who are GUPS members – and who thus do not stand in supervisor-subordinate position with Defendant.  SAC ¶38.  Accordingly, the SAC fails because there are no specific facts that establish Defendant's direct participation in the disruption of the Barkat event or the exclusion of Hillel from a "Know Your Rights" fair.  In brief, Plaintiffs do not – and truthfully cannot – allege that Defendant caused a subordinate government actor to violate a government policy in a manner that caused harmed the Plaintiffs' constitutional interests.  In different words, to the extent Defendant's own political speech contributed to the subject third-party acts, her political speech did not violate Plaintiffs' constitutional rights because there is not a single fact to suggest that she advanced any government policy of purposeful constitutional violations.

Plaintiffs' constitutional claims are invidious discrimination claims – i.e., the unequal treatment of a class of individuals – and are thus viable claims only if they are based on facts that demonstrate Dr. Abdulhadi acted with the specific intent to discriminate against Plaintiffs because of a protected characteristic.  <u>OSU</u> at 1074.  Here there are no facts that show she singled Plaintiffs out or otherwise had any knowledge that Plaintiffs were individuals with a protected characteristic.

Although the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences in favor of the plaintiff, it is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. <u>Sepehry-Fard v. Department Stores Nat'l Bank</u> 15 F.Supp.3d 984, 987 (N.D. Cal. 2014)  (internal quotation marks omitted) (Dismissing with prejudice Plaintiff's second amended complaint for failure to allege facts amounting to violations of the federal Fair Debt Collection Practices Act and the Telephone Consumer Protection Act.) This Court in <u>Sepehry-Fard</u> noted that the plaintiff failed to allege the content of any of

the allegedly harassing calls and failed to allege when they were made, the number to which they were made, or even whether they were prerecorded, all elements of the torts involved.  Id. at 987-988.

Plaintiffs' allegations against Dr. Abdulhadi are just as inadequate, conclusory and unspecified.  Their theory of the case, although repackaged, contains the same defects the Court was forced to endure in the FAC.   The main defects are:

| Allegation | Specific Facts Advanced in Support |
|---|---|
| Dr. Abdulhadi subscribes to a doctrine that **requires** disruption and silencing of divergent viewpoints. (SAC ¶ 37) | None. |
| The disruption and silencing of divergent viewpoints is the official policy of San Francisco State University's College of Ethnic Studies and of the AMED program and violates the civil rights of Jews and Israelis on campus. (SAC ¶¶ 37-39) | None. |
| COES, AMED, and GUPS (for which Dr. Abdulhadi is the faculty advisor) have sponsored numerous events heaping opprobrium upon "the Zionist Jew". (SAC ¶ 40) | None. |
| Dr. Abdulhadi has ordered GUPS to carry out a policy of anti-normalization (silencing and disruption).  (SAC ¶ 51) | None. |
| This included an order to disrupt the Barkat event. (SAC ¶ 70) | Alleged on information and belief. |

| | |
|---|---|
| Dr. Abdulhadi engaged in "social media intimidation". (SAC ¶ 105) | The only posting plaintiffs ascribe to Dr. Abdulhadi (see SAC ¶ 130, p. 29, lines 13-16) occurred more than a year after the KYR Fair and nearly two years after the Barkat event.  This post also expressly refers to Dr. Abdulhadi's "sisters and brothers in the Jewish community." |
| Dr. Abdulhadi deliberately conflates Jews, Israelis, and Zionists.  (SAC ¶ 120) | None.  In fact, in the only social media posting by Dr. Abdulhadi that Plaintiffs mention in SAC ¶130, Dr. Abdulhadi expressly denounces the equation of Jewishness with Zionism. |
| Dr. Abdulhadi either acted under the compulsion of an "anti-normalization mandate" or compelled others to act under such a mandate to exclude Hillel or its associates.  (SAC ¶ 120)  She either "pulled the strings" to force this to occur or, at the least, "ratified" the decision to exclude Hillel. | None.<br><br>This also ignores the fact that "ratification" is not an actionable offense. |
| Dr. Abdulhadi "intentionally excluded Hillel from the KYR Fair based on the Jewish identity of Hillel's members." (SAC ¶177, see also ¶¶ 180, 189, 191) | None.  Additionally, see California State University's (Revised) Appeal Response's conclusions that there was no religious discrimination, and that Hillel was blocked from the KYR Fair |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | because they it had previously filed a civil rights complaint (which was denied) falsely claiming that the disruption of the Barkat speech was anti-Semitic. (Exh. E to Request for Judicial Notice). |
|---|---|

When the guesses and innuendo are stripped away, what remains of Plaintiffs' allegations that are grounded in specific facts are:  (1) Dr. Abdulhadi opposes Zionist political beliefs and practices.  (2)  Dr. Abdulhadi advises GUPS and is a mentor to some of its members.  (3) Two of the students to whom she is allegedly "close" disrupted the Barkat event.  (4) Another student, nearly a year later, had an active role in blocking Hillel's participation in the student run KYR Fair.

From these four points, Plaintiffs wrench the conclusion that Dr. Abdulhadi must have directed these activities because her students, whose strings she "pulled" are mere puppets.  These are not facts sufficient to make a cognizable legal theory plausible. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011).

**B)     The Active Participation of Jewish Voice for Peace in the KYR Fair Shows That Hillel Was Not Excluded Because of Anti-Semitism or Out of a Belief That All Jewish Organizations Support Zionism.**

Plaintiffs cannot honestly advance specific facts showing that Dr. Abdulhadi directed either the disruption of the Barkat event or Hillel's exclusion from KYR, and that she did so out of anti-Semitic animus.  To conceal this weakness it is the Plaintiffs, not Dr. Abdulhadi who conflate opposition to Zionism with anti-Semitism.  (Dr. Abdulhadi is by no means unique in recognizing the danger of this conflation.  Even Plaintiffs admit (SAC ¶130, p. 29, at 17-21) that the Department of Women and Gender

Studies, agreeing with Dr. Abdulhadi, "unequivocally rejects the equation of Zionism with Judaism" and sharply criticized the campus administration's recent statements.

Plaintiffs refer to a social media post by Dr. Abdulhadi but neglect to inform the Court that in the very post from which they selectively quote Dr. Abdulhadi decried "equating Jewishness with Zionism, and giving Hillel ownership of campus Jewishness." Plaintiffs likewise refer to an article written by Mr. Shehadeh and another written by Dr. Abdulhadi (Exhibits "C" and "B", respectively, to the Request for Judicial Notice, Dkt. No. 135). Both articles describe the prominent role, that Jewish Voice for Peace played in the KYR Fair.

"The absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal at 129 S. Ct. at 1948. In short, Plaintiffs' "bald" and "conclusory" allegations are insufficient to establish individual liability under 42 U.S.C. § 1983. Id. at 1950-53; cf. Starr, 652 F.3d at 1216-17." Hydrick v. Hunter, 669 F.3d at 942.

Despite this Court's prior admonition to provide more than conclusory allegations, unwarranted deductions, and unreasonable inferences, we again have guesses – the very "bald" and "conclusory" allegations that the Ninth Circuit in Hydrick and Supreme Court in Iqbal abjured.

In sum, the stated allegations on their face fail to implicate adverse legal interests and fail to establish Dr. Abdulhadi's role in injuring Plaintiffs. For this reason, the Court should dismiss the entire SAC as to Dr. Abdulhadi without leave to amend.

C)   **Plaintiffs' Allegations About "Anti-Semitism" and "Anti-Normalization" Cannot Support the Weighty Conspiracy Theory They Allege Against Dr. Abdulhadi.**

While accusing Dr. Abdulhadi of deliberately conflating Israel, Zionism, and Jewishness, Plaintiffs indulge in the wildly conclusory allegation that the use of Boycott,

Divestment, and Sanctions ("BDS") "to pressure Israel to comply with international law"[15] is anti-Semitic. (SAC ¶ 36)   Plaintiffs next allege, without any supporting facts, that "the BDS movement *requires* that activists disrupt, isolate, and silence *all* opposing viewpoints". (SAC ¶ 36) (Emphases added.)  From these unsupported premises they leap from one bald conclusion to the next:  That Dr. Abdulhadi adheres to this "requirement" for disruption and silencing, that university programs (COES and AMED) have adopted this as official policy, that Dr. Abdulhadi directs GUPS and her students to put this into action, and that therefore the disruption of the Barkat event and the denial of a table to Hillel were done at her direction.

Plaintiffs claim, without any specific facts in support, that Dr. Abdulhadi subscribes to "the anti-normalization mandate of the BDS movement, which requires the disruption and silencing of divergent viewpoints relating to the Israeli-Palestinian conflict." (SAC ¶ 37)   Plaintiffs claim  that Dr. Abdulhadi has had the authority to implement this alleged "mandate" since 2007 when she joined the faculty as a tenured professor and Senior Scholar at the AMED Program.  (FAC ¶ 57), and that this requirement that events be silenced and disrupted is the official of the University's College of Ethnic Studies and the AMED Program.  (SAC ¶ 38)  Yet despite this alleged official policy and Dr. Abdulhadi's senior position, Plaintiffs do not claim that she caused the disruption or silencing of a single event for nine years, until the 2016 Barkat event.  (SAC ¶ 27)  Taken together, these allegations are implausible.  The notion that it took Dr. Abdulhadi nine years to finally be able to implement official policy and disrupt one of the Plaintiffs' events on a campus is itself not believable.  That this would take so long to accomplish on a campus that Plaintiffs insist has such a "pervasively hostile environment for Jews and Israelis on campus" (SAC ¶ 39) stretches plausibility beyond breaking point.

---

[15] https://bdsmovement.net/what-is-bds. Last visited April 29, 2018

**D)  Plaintiffs Do Not Even Meet the Threshold Test of Establishing Standing.**

The basic principles of standing obligate plaintiffs to clearly demonstrate an injury in fact that can fairly be traced to the challenged action and is likely to be redressed by a favorable decision.  Imagineering v. Kiewit Pacific, 976 F.2d 1303, 1307-08 (9th Cir. 1992).  The SAC fails to establish standing.

This Court has cautioned that "facts showing that Abdulhadi had the specific intent to discriminate against plaintiffs and that she took actions against plaintiffs causing harm to their constitutional rights need to be alleged."  Dkt. 124 at p. 36.  The SAC fails to put forward facts showing Dr. Abdulhadi had such a specific intent or facts showing that she acted to harm such constitutional rights.  Instead, Plaintiffs fall back on conclusory allegations and mere imaginings.

Plaintiffs allege **on information and belief** that Dr. Abdulhadi ordered GUPS and all of its members to disrupt the Barkat event (SAC ¶ 70), ignoring the Court's prior admonition that "mere supervisory responsibility will not suffice."  Dkt. 124 at p. 17, citing OSU Student Alliance v. Ray, 669 F.3d 1053, 1070 (9th Cir. 2012.)

Plaintiffs likewise allege that Dr. Abdulhadi is among those defendants who "excluded Hillel from the fair based on the Jewish identity of Hillel's members," which included some of the Plaintiffs.  (SAC ¶ 177).  But at most only one of the Plaintiffs was even a member of Hillel.  The Plaintiffs are described at SAC ¶¶ 10-16.  Only one (Mandel) is alleged to have any connection at all to Hillel, and he was not even a student at the time of the KYR Fair.  According to the SAC, Mandel "was a registered student at SFSU from August 2013 through December 2016, graduating in January 2017."  However, the SAC alleges that the KYR Fair was held on February 28, 2017, at least one month after his graduation.  (SAC ¶¶ 10, 112).

The SAC also fails to state the facts that would allow Dr. Abdulhadi or anyone else to intuit Plaintiffs' membership status, if any existed.  Nothing suggests that Dr.

Abdulhadi or anyone else knew of any organizational affiliation that any of the Plaintiffs (including Mandel) had with Hillel at the time of the KYR Fair. Plaintiffs then waver, complaining that Dr. Abdulhadi merely acted with "deliberate indifference" (SAC ¶ 180) and that she continues "to fail to ensure that Plaintiffs, as Jewish students, are treated equally". (SAC ¶ 183) Yet most of the plaintiffs (Mandel, Volk, Ben-David, Merkulova, and Rosekind) are *not* "students". Worse yet, Plaintiffs fail to explain how Dr. Abdulhadi, in her individual capacity, has such a duty. Plaintiffs next accuse Dr. Abdulhadi, along with the mass of other "KYR Defendants" of having excluded Hillel based solely on a viewpoint Hillel is presumed to have based on its Jewish identity. (SAC ¶ 189) Not a single fact is offered to show that Dr. Abdulhadi (or anyone else for that matter) presumed any such thing. Finally, Plaintiffs return to the claim, still devoid of supporting facts, that to exclude Hillel is to discriminate against and exclude all Jews. (SAC ¶ 191). This fact is of course undermined by the fact that another Jewish organization, Jewish Voice for Peace, was present at the KYR Fair as indicated in Exhibits B, C, and D of Dr. Abdulhadi's corresponding Request for Judicial Notice.

The SAC fails to set forth specific facts showing that a distinct and concrete injury allegedly suffered by Plaintiffs may be traced to Dr. Abdulhadi's direct actions, much less that those actions were a form of invidious discrimination.[16] At most, the SAC describes an abstract injury attributable to third parties, a few of whom Dr. Abdulhadi supposedly advised. There are simply no facts alleged that link Dr. Abdulhadi's conduct to any harm Plaintiffs may have suffered. Since Plaintiffs have failed to establish standing to assert claims against Dr. Abdulhadi the SAC should be dismissed without leave to amend.

---

[16] Any claim that Plaintiffs need not show invidious discrimination because Dr. Abdulhadi was allegedly implementing a "policy" fails because, as students, the GUPS members and their allies are neither subordinates nor state actors.

E)   **Dr. Abdulhadi is Entitled to Qualified Immunity Because Plaintiffs Cannot Allege She Violated a Clearly Established Constitutional Right.**

Dr. Abdulhadi is entitled to qualified immunity unless her conduct "violated a - statutory or constitutional right, and … that the right was clearly established' at the time of the challenged conduct." Wood v. Moss, 134 S.Ct. 2056, 2066-67 (2014). A right is not clearly established unless, "in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The idea that criticism of a particular foreign government is tantamount to ethno-religious hatred is so controversial, as well as novel, that it is very far from "clearly established". Absent that, Dr. Abdulhadi cannot be said to have breached a constitutionally protected interest.

Although the question of qualified immunity normally arises at summary judgment, it can and should be granted on a 12(b)(6) motion where the facts are established on the face of the complaint without further need for factual review. Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001). Compare Williams v. Alabama State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997) with Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016).

Plaintiffs are hard-pressed to articulate factual support for any colorable civil rights theory. Instead they try to reframe criticism of Israel as anti-Semitism. This redefinition fails on several grounds: First, it confuses a government with a nation, and a nation with a people, as though criticisms of racism in the U.S. were anti-American or criticism of North Korea was anti-Asian. Second, Plaintiffs' theory purports to rely on the State Department's radically expansive and protean redefinition of anti-Semitism, but it cannot even claim that provenance, as it has significantly distorted even that definition[17] Third, Plaintiffs cannot possibly use a novel and radical expansionist

---

[17] See Dkt. No. 134, Motion to Strike Allegations of Second Amended Complaint.

definition of anti-Semitism and still meet the test of <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, which requires that the equation of criticizing Israel with anti-Semitism be so clearly established that any reasonable person would have known that criticizing Israel violated someone's constitutional civil rights. A reasonable person who is a professor or faculty advisor who voices a political position relating to equal rights and justice in Palestine cannot fairly be expected to know that <u>existing</u> law rendered such political advocacy a violation of the constitutional rights of those who hold different political views. This satisfies the second prong of the qualified immunity defense.[18]

F) **Although Dr. Abdulhadi May Only Be Sued in Her Individual Capacity, Plaintiffs Insist Upon Treating Her As Though She Acted in an Official Capacity.**

Since Dr. Abdulhadi is being sued only in her personal capacity the Plaintiffs "must plead specific facts showing that each named defendant directly engaged in culpable conduct." Dkt. 124 at p. 17.  Since there are no specific facts set forth against her that meet this test, the defendants engage in shotgun-style pleading that hopelessly muddies the waters about what, exactly, this culpable conduct is.

Although Plaintiffs dutifully intone that Dr. Abdulhadi is sued purely in her individual capacity, Plaintiffs nonetheless accuse her of:  enforcing official policy of COES or AMED (SAC ¶ 39); giving a "stand down" order limiting police activity at the Barkat demonstration (SAC ¶¶ 159, 162, 171); failing to change the University's policies, practices, and procedures, thus requiring a court order (SAC ¶¶ 167, 173, 198); "inadequately training faculty, administrators, and other student organizations as to the appropriate way to administer university events" (SAC ¶ 179, 192); and failing to ensure

---

[18] Indeed and relatedly, Plaintiffs have not identified a single specific fact to support their conclusory allegation that criticizing Israel *should* be equated with anti-Semitism.

1   equal treatment (SAC ¶ 194).  From this it is impossible to tell in what capacity she has

2   actually been charged or of what she stands accused.

3   **G)    The Second Amended Complaint Attacks Fundamental First**

4   **Amendment Rights and Academic Freedoms**

5   The stated allegations fail to establish any constitutional injury suffered by

6   Plaintiffs at the hands of Dr. Abdulhadi.  Since the Plaintiffs cannot point to anything Dr.

7   Abdulhadi has said or done that is even remotely anti-Semitic they seek (and fail) to

8   blame her for the alleged statements and conduct of others.  Since the Plaintiffs can point

9   to no actual act Dr. Abdulhadi has taken that impairs a constitutionally protected right,

10  they rely on guesses and leaps of logic that are untethered to any specific facts they have

11  put forward.  As in the FAC, which plainly attacked Dr. Abdulhadi's scholarship and

12  academic undertaking, this third attempt at a pleading now complains about a social

13  media posting that criticized the campus administration as "racist, Islamophobic, and

14  colonialist".  (SAC, ¶ 130, p. 29, lines 13-16.)  The 1,500-word screed encompassed in ¶

15  130 of the SAC shows once again that Plaintiffs misguidedly seek to use this Court to

16  muzzle their political opponents – or to pressure the University into doing it for them.

17  Needless to say, political speech is afforded First Amendment protection.  Buckley v.

18  Valeo, 424 US 1, 14 (1976).  That speech is especially important on a college campus.

19  See, e.g., Healy v. James, 408 U.S. 169, 180 (1972); Keyishian v. Bd. of  Regents, Univ.

20  of State of N.Y, 385 U.S. 589, 603 (1967); Sweezy v. State of New Hampshire., 354 U.S.

21  234, 250 (1957). For First Amendment purposes "civil liability…is treated no less

22  stringently than direct regulation on speech."  In re Orthopeadic Bone Screw Litigation,

23  193 F.3d 781, 792 (3rd Cir. 1999).

24  Yet Dr. Abdulhadi is subjected to a McCarthyite attack based purely on her

25  beliefs, speech, and associations.  "[R]equiring [a defendant] to stand trial… predicated

26  solely on [the defendants'] exercise of its First Amendment freedoms could generally

27  chill the exercise of the freedom of association by those who wish to contribute to, attend

28

1   meetings of, and otherwise associate with…organizations that engage in public advocacy

2   and debate." In re Asbestos School Litigation, 46 F.3d 1284, 1295-96 (3rd Cir. 1994).

3   Plaintiffs' persistently bringing defective lawsuits against Dr. Abdulhadi supports the

4   notion that the real relief that Plaintiffs seek is not monetary or injunctive.  Rather,

5   Plaintiffs seek to silence Dr. Abdulhadi's scholarship, pedagogy and advocacy simply

6   because they disagree with it.

7   **V.   CONCLUSION**

8       This Court cautioned Plaintiffs to take heed of its criticisms when they amend the

9   complaint  (Dkt. 124 at 13) and stated that it was allowing Plaintiffs to amend their

10  obligations against Dr. Abdulhadi "out of an abundance of caution".  Dkt. 124 at 37.

11  Despite these cautions Plaintiffs have returned with innuendo, surmise, and the one key

12  allegation (that Dr. Abdulhadi directed the Barkat disruption) being guessed at on

13  information and belief with no specific facts in support.  Plaintiffs are no closer to

14  showing specific facts than they were in their FAC.  They have also returned with a

15  controversial theory that criticism of Israel constitutes anti-Semitism and fail to explain

16  how this questionable claim meets the "bright line" test of Harlow.

17      After this Court patiently gave specific directions, and Plaintiffs proved their

18  inability to follow them, there is no reason to believe the claims against Dr. Abdulhadi

19  can be saved.  Accordingly, the SAC should be dismissed with prejudice.

20      Plaintiffs continue to cloak a political attack in the garb of a defective civil rights

21  suit.  They seek to conscript the judicial process in giving them the upper hand in a

22  political debate by demanding that this Court suppress Dr. Abdulhadi's First Amendment

23  rights and that the University suppress the rights of students calling for equal rights and

24  equal justice in Palestine to vigorously express their opinions.  On the very sparse facts

25  alleged, there is no reason for the Court to become the arena for this debate.

26

27

28

1    DATED:  April 30, 2018       RESPECTFULLY SUBMITTED

2

3                             **LAW OFFICE OF MARK ALLEN KLEIMAN**

4

5                             By:  /s/ Mark AllenKleiman

6                                Mark Allen Kleiman, Esq.

7                             **LAW OFFICES OF BEN GHARAGOZLI**

8                              Ben Gharagozli, Esq.

9                             **GAVIN, CUNNINGHAM & HUNTER**

10                            Alan F. Hunter, Esq.

11                            Elizabeth Gong Landess, Esq.

12                            Attorneys for Dr. Abdulhadi

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28