Robb C. Adkins (SBN 194576)
radkins@winston.com
Krista M. Enns (SBN 206430)
kenns@winston.com
Seth Weisburst (SBN 259323)
sweisburst@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Lawrence M. Hill (*pro hac vice*)
lhill@winston.com
Alexa Perlman (*pro hac vice*)
aperlman@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Steffen N. Johnson (*pro hac vice*)
sjohnson@winston.com
Lowell D. Jacobson (*pro hac vice*)
ljacobson@winston.com
Adrianne Rosenbluth (*pro hac vice*)
arosenbluth@winston.com
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

Brooke Goldstein (*pro hac vice*)
brooke@thelawfareproject.org
Amanda Berman (*pro hac vice*)
amanda@thelawfareproject.org
THE LAWFARE PROJECT
633 Third Avenue, 21st Floor
New York, NY 10017
Telephone: (212) 339-6995

Attorneys for Plaintiffs
JACOB MANDEL, CHARLES VOLK,
LIAM KERN, SHACHAR BEN-DAVID,
MICHAELA GERSHON, MASHA MERKULOVA,
and STEPHANIE ROSEKIND

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JACOB MANDEL, et al.,

Plaintiffs,

v.

BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY, et al.,

Defendants.

**Case No. 3:17-CV-03511-WHO**

**PLAINTIFFS' OPPOSITION TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT DR. RABAB ABDULHADI'S MOTION TO DISMISS [ECF NO. 135]**

Date: July 18, 2018
Time: 2:00 p.m.
Location: Courtroom 2 (17th floor)
Judge: Hon. William H. Orrick

Complaint Filed: June 19, 201
Second Am. Complaint Filed: March 29, 2018

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 1

A. Judicial Notice ..... 1

B. Incorporation by Reference ..... 2

III. DEFENDANT'S REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED ..... 2

A. The Facebook Post (Exhibit A to the RJN) ..... 2

1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Facebook Post ..... 3

2. The Court Should Not Incorporate the Facebook Post by Reference ..... 4

B. The Abdulhadi Column (Exhibit B to the RJN) ..... 4

1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Abdulhadi Column ..... 5

2. The Court Should Not Incorporate the Abdulhadi Column by Reference ..... 5

3. The Ostensible Participation of "Jewish Voice for Peace" in the "Know Your Rights" Fair is Irrelevant to Whether Plaintiffs Have Stated a Claim ..... 7

C. The Shehadeh Column (Exhibit C to the RJN) ..... 9

1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Shehadeh Column ..... 9

2. The Court Should Not Incorporate the Shehadeh Column by Reference ..... 9

D. The Spero Letter (Exhibit D to the RJN) ..... 10

1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Spero Letter ..... 10

2. The Court Should Not Incorporate the Spero Letter by Reference ..... 11

E. The Appeal Response (Exhibit E to the RJN) ..... 11

1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Appeal Response ..... 12

2. The Court Should Not Incorporate the Appeal Response by Reference ..... 12

IV. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrego v. Dow Chem Co.*,
443 F.3d 676 (9th Cir. 2006) ....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................2

*Ferdik v. Bonzelet*,
963 F.2d 1258 (9th Cir. 1992) ....................6

*Gerritsen v. Warner Bros. Entertainment Inc.*,
112 F.Supp.3d 1011 (C.D. Cal. 2015) ....................1, 2

*Hal Roach Studios v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1990) ....................6

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ....................6

*Korematsu v. United States*,
584 F.Supp. 1406 (N.D. Cal. 1984) ....................2

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ....................1

*Parrino v.* FHP, Inc.,
146 F.3d 699 (9th Cir. 1988) ....................4

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ....................2

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .................... *passim*

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) ....................1

**Other Authorities**

6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1476 (1990) ....................6

Fed. R. Evid. 201 .................... *passim*

## I. INTRODUCTION

In connection to her motion to dismiss the Second Amendment Complaint ("SAC"), Dr. Abdulhadi filed a request for this court to take judicial notice of five documents (ECF No. 135, the "RJN" and its Exhibits A-E). But the RJN is not clear whether Dr. Abdulhadi wants the Court to just take judicial notice that the documents exist, whether she wants the documents incorporated by reference into the SAC, or whether she hopes that the Court will accept as true certain statements within those documents. Regardless of which of these options Dr. Abdulhadi actually seeks, her request for judicial notice should be denied because she does not meet the standard for either judicial notice of adjudicative facts or incorporation by reference for any of the five documents.

## II. LEGAL STANDARD

"Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). If a court looks beyond the pleadings then "[a] court must normally convert a rule 12(b)(6) motion into a Rule 56 motion for summary judgment." *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F.Supp.3d 1011, 1019-20 (C.D. Cal. 2015) (citing *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)). While there are limited exceptions to this rule—such as the doctrines of judicial notice and incorporation by reference—this does not change that "[t]he only relevant question in deciding such a motion is whether plaintiff's allegations, *taken as true*, plausibly state a claim." *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F.Supp.3d 1011, 1022 (C.D. Cal. 2015) (emphasis in original).

### A. Judicial Notice

Federal Rule of Evidence 201 "governs judicial notice of an adjudicative fact." Fed. R. Evid. 201(a). "Adjudicative facts are simply the facts of the particular case." Notes of Advisory Committee on Proposed Rules Subdivision (a). The "kinds of facts that may be judicially noticed" are those that "are not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). A "high degree of indisputability is the essential prerequisite." Fed. R. Evid. 201, Advisory Comm. Notes (2011). To

that end, "[c]are must be taken that Rule 201 not be used as a substitute for more rigorous evidentiary requirements and careful factfinding." *Korematsu v. United States*, 584 F.Supp. 1406, 1415 (N.D. Cal. 1984); *see also* Rule 201 Advisory Comm. Notes (2011) ("[T]he tradition has been one of caution in requiring that the matter be beyond reasonable controversy.").

**B. Incorporation by Reference**

A document not attached to a complaint "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. In deciding a motion to dismiss, courts will only incorporate a document by reference if the "document is central to a plaintiff's claim and no party questions its authenticity." *Gerritsen*, 112 F.Supp.3d at 1024. In the motion to dismiss context, the incorporation by reference doctrine is not meant to serve as a vehicle for the defendants to challenge the facts in the complaint. Instead, the incorporation is designed "to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (internal quotation marks and citations omitted).

**III. DEFENDANT'S REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED**

Dr. Abdulhadi has not met her burden of showing that the Court should take judicial notice of any purported facts within Exhibits A-E to the RJN, nor has she met her burden of showing that any of the documents should be incorporated by reference to the SAC.

**A. The Facebook Post (Exhibit A to the RJN)**

Exhibit A is a Facebook post by Dr. Abdulhadi referred to in one paragraph in the SAC (¶ 130) (the "Facebook post"). In that Paragraph, Plaintiffs allege in relevant part:

> On February 23, 2018, in response to **Wong's** recent reversal of his previous position that Zionists were not necessarily welcome on campus, **Defendant Abdulhadi** declared on her personal Facebook page—which she then shared to the official AMED page—that she "[C]onsider[s] [**Wong's**] statement…to be a declaration of war against Arabs, Muslims, Palestinians…I am ashamed to be affiliated with SFSU administration and demand the immediate retraction of this racist, Islamophobic and colonialist statement…it is embarrassing to have our campus leadership cater to…the Israeli lobby."

SAC ¶ 130. Factual allegations are sufficiently plausible when they "'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). Plaintiffs included this recent development because it reflects Dr. Abdulhadi's reactionary animus toward Zionist Jews (including Plaintiffs), and supports the more than plausibility of the allegations against Dr. Abdulhadi in the SAC. If the *mere welcoming* of Zionists on SFSU's public university campus prompts this kind of visceral reaction from Dr. Abdulhadi—a public statement considering that welcoming a "***declaration of war***" that demands an "immediate retraction"—this certainly supports drawing a reasonable inference that it is *plausible* that she instructed the shutdown of the Barkat event and the intentional denial of Hillel from hosting a table at the "Know Your Rights" Fair. Given this reaction in her Facebook post (combined with the detailed allegations regarding her "anti-normalization" mandate, it would be implausible to believe Dr. Abdulhadi had *not* done everything in her power to shut down the Barkat event and exclude Hillel.

Dr. Abdulhadi's apparent purpose with the RJN as to Exhibit A is to soften the quote from the SAC by adding additional text from the Facebook post. According to the RJN, the Court should be aware

> that Dr. Abdulhadi's statement indicates that President Wong's statement welcoming Zionist to campus and equating Jewishness with Zionism is a declaration of war against "all those who are committed to an indivisible sense of justice on and off campus. This includes our sisters and brothers in the Jewish community whose consciences refuses to allow Israel's colonialism, racism and occupation-the inherent character of Zionism-to speak in their name.'"

Kleiman Decl. ¶ 3.[1] However, it is difficult to soften the characterization of welcoming to campus students who believe in Israel's right to exist as a "declaration of war."

**1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Facebook Post**

As far as any request to take judicial notice of adjudicative facts, regardless of the parties' distinct purposes in quoting the Facebook post, the post does not contain facts which are "not subject

[1] Notably, the. Kleiman Declaration omits a portion of the first quoted sentence that *is* included in the SAC, in which Dr. Abdulhadi states that she perceives Wong's statement to be a declaration of war "against Arabs, Muslims, Palestinians..." Kleiman Decl. ¶ 3; RJN Ex. A at 1 (quoted in SAC ¶ 130).

to reasonable dispute." Therefore under Rule 201, the RJN must be denied as to any purported adjudicative facts in Exhibit A.

**2. The Court Should Not Incorporate the Facebook Post by Reference**

Although not entirely clear, it appears that Dr. Abdulhadi wants the entire Facebook post incorporated by reference into the SAC. That is, she complains that "Plaintiffs selectively quote from the post" and "Its authenticity is not questioned in the case at bar." RJN at 3:23-25. And she cites the rule that "[a] court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint necessarily relies on the document and its authenticity is unquestioned." RJN at 3:7-14 (quoting *Parrino v.* FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1988), superseded by statute on other grounds in *Abrego v. Dow Chem Co.*, 443 F.3d 676 (9th Cir. 2006)).

Her stated reasoning as to her basis for incorporating Exhibit A by reference is that the Facebook post refers to the Arab and Muslim Ethnicities and Diasporas Studies department ("AMED"), and that "*AMED* is mentioned extensively" in the SAC. RJN at 3:18-4:26 ("The document is a post on Dr. Abdulhadi's personal Facebook page that was subsequently shared on what Plaintiffs claim is the official AMED (Arab and Muslim Ethnicities and Diasporas Studies) page. . . . AMED is mentioned extensively through the SAC.") (emphasis added). However, this is not the standard. The question is not whether the SAC refers to *AMED* extensively. Rather, the question is whether "the plaintiff refers extensively to the *document*" at issue in the RJN or whether "the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908 (emphasis added). The SAC only refers to Exhibit A in Paragraph 130. This is not extensive, and Dr. Abdulhadi does not even attempt to argue that Exhibit A "forms the basis" of the SAC (which it clearly does not). Thus, the Facebook post does not meet the standard for incorporation by reference and Dr. Abdulhadi's request should be denied.

**B. The Abdulhadi Column (Exhibit B to the RJN)**

Exhibit B to the RJN is a column written by Dr. Abdulhadi on the mondoweiss.net website, dated July 21, 2017 (the "Abdulhadi column"). Its title is "The Spirit of '68 Lives On: Zionism as racism, and the network of lies." RJN Ex. B at 1. According to the RJN, Dr. Abdulhadi's purpose in submitting this column here is to make the Court aware of the following purported facts: "that

another Jewish organization, Jewish Voice for Peace (hereinafter 'JVP') was welcomed in the KYR fair," that "JVP's table was intentionally tabling between GUPS and AMED Studies," that "JVP set up a table, handed out literature and signed up 14 students who expressed interest in forming a local SFSU JVP chapter, including members of Hillel," and that "the KYR Fair did not exclude Jewish students or community members." Kleiman Decl. ¶ 5.a.

**1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Abdulhadi Column**

The Abdulhadi column is a long mischaracterization of this lawsuit and the Plaintiffs. RJN Ex. B. Plaintiffs do not question Dr. Abdulhadi's right to write such blog posts, as vitriolic and inaccurate as they may be. But the Court cannot grant any request seeking judicial notice of adjudicative facts within Exhibit B without determining that purported facts in the Abdulhadi column were "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The purported facts from the Abdulhadi column are certainly in dispute. For example, the Abdulhadi column states that "organizers did not invite Hillel to table." RJN Ex. B at 6. The SAC alleges that Hillel was in fact originally invited and given a viewpoint-based test, before its invitation was rescinded and it was intentionally excluded. *See* ¶ 117. And the Abdulhadi column alleges that there was no "basis" for Hillel to participate in the KYR Fair—the SAC alleges Hillel (compared to other non-registered groups) was certainly entitled to participate. RJN Ex. B at 6; *see* SAC ¶ 116. Plaintiffs also submit that the Court should not instruct the jury to accept as conclusive (per Rule 201(f)) that Hillel is "a privileged white group whose members feel entitled to be represented everywhere and anywhere they deem the event to be of interest irrespective of the events goals." RJN Ex. B at 7. The RJN must be denied as to any purported facts offered by Dr. Abdulhadi in Exhibit B.

**2. The Court Should Not Incorporate the Abdulhadi Column by Reference**

The Court also should deny the request to incorporate by reference the Abdulhadi column (RJN Ex. B). Dr. Abdulhadi argues that "Plaintiffs mention [the Abdulhadi column] in Paragraph 160 of their First Amended Complaint and Paragraph 119 of their Second Amended Complaint." RJN at 2:10-12. As noted above, Dr. Abdulhadi's argument that her column is referenced in

Plaintiffs' FAC is of no moment as the FAC has been superseded and is a legal nullity. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). As for Dr. Abdulhadi's claim that Plaintiffs mention the Abdulhadi column in Paragraph 119 of the SAC, this is false.[2] Here is the full text of Paragraph 119 of the SAC:

> 119. **Defendants Begley** and **Montiero** consciously and intentionally knew of and permitted Hillel's exclusion. Saliem Shehadah, one of the self-described organizers of the Fair, admitted publicly that Hillel was intentionally excluded. As a GUPS member and a COES Graduate Student, Mr. Shehadeh worked very closely with **Dr. Abdulhadi**, who was not only GUPS's faculty advisor but was also the personal and academic focus of Mr. Shehadeh's graduate studies.[3]

There is no reference to any document written by Dr. Abdulhadi in this paragraph or its footnote. Dr. Abdulhadi refers to the Court's March 9, 2018 Order as part of her argument to incorporate this document by reference. RJN at 5:10-16. But the Court's Order did not grant Dr. Abdulhadi's request to incorporate her column by reference, noting that "the full blog post was not attached to either of the motions to dismiss or as part of Abdulhadi's request for judicial notice." ECF No. 124 at 25:4-13 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). The operative complaint makes no reference to the Abdulhadi column, nor does the Abdulhadi column form the basis of the SAC. Based on *Ritchie*, 342 F.3d at 908, the request to incorporate Exhibit B by reference must be denied.

---

[2] Contrary to the RJN (at 1:7-21) the SAC only cites to Exhibit A (at ¶ 130), and does not cite to any of the other RJN Exhibit documents. Any citations by Plaintiffs in the First Amended Complaint are irrelevant as that complaint has been superseded and is a legal nullity. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990) ("an amended pleading supersedes the original"); 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1476, at 556-59 (1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies. Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .")).

[3] Paragraph 119 includes a footnote that states: "Notwithstanding their extensive personal and academic relationship, Defendant Abdulhadi was on the committee that approved Mr. Shehadeh's hagiographic thesis, submitted in partial fulfillment for his Master of Arts in Anthropology in May 2017."

**3. The Ostensible Participation of "Jewish Voice for Peace" in the "Know Your Rights" Fair is Irrelevant to Whether Plaintiffs Have Stated a Claim**

While the SAC does not refer or rely on the Abdulhadi column, the RJN seeks to recall the FAC's reference to this column in order to bring purported facts about "Jewish Voice for Peace" ("JVP") into the record. *See* RJN at 2:10-11 (citing FAC ¶ 160). The RJN also attaches two other documents (Exhibits C and D, discussed further below) to accomplish this same purpose. However, the larger point—made in more detail in Plaintiffs' concurrently-filed opposition to Dr. Abdulhadi's motion to dismiss—is that the ostensible participation of JVP in the "Know Your Rights" Fair has no bearing on the question of whether Plaintiffs have stated a claim, for several reasons. *First*, to consider Plaintiffs' points regarding JVP would essentially be granting summary judgment, based on factual allegations that cannot be adequately investigated here. An individual named David Spero, who is not a student and has no affiliation to SFSU, purported to be at the KYR Fair, apparently handing out literature. Plaintiffs do not know that to be accurate, nor do they know who else he was with (if anyone), what his actual purpose was, what the circumstances or process was that led him to be there, whether he was called in that morning, etc. These are disputed facts that cannot be resolved at this stage without discovery, which is currently stayed pursuant to the Court's order.

*Second*, with regard to the Fifth and Sixth Causes of Action focused on the "Know your Rights" Fair, Plaintiffs allege in the SAC that they were treated differently than other similarly situated students when their registered student group was intentionally barred from hosting a table at the event. If their group had hosted a table, they would have had a place at the Fair to exchange ideas and information focused on the rights of Jews (regardless of what viewpoints they had). JVP is not a registered student group, and David Spero is not a student. JVP and its supporters are not similarly situated to Hillel and the KYRF Plaintiffs. For this simple reason, what did or did not happen with JVP is irrelevant.

*Third*, even assuming one off-campus non-registered group which strategically includes "Jewish" in its name was allowed to participate in the KYR Fair, that does not necessarily mean that Plaintiffs, as Jews, did not face religious discrimination. In addition, whether one gentleman at a table constitutes a "Jewish group" participating in the fair, and whether that gentleman was equipped

to provide the kind of informational training related to the protection of civil rights that was offered to other students whose representative *on-campus organizations* participated in the Fair, and whether JVP is a Jewish group at all, are factual questions that cannot be decided on a motion to dismiss, nor can the circumstances of this alleged participated in the "at capacity" KYRF be resolved on a motion to dismiss. With regard to the KYR Fair constitutional claims against Dr. Abdulhadi (COAs 5-6), Plaintiffs have alleged facts in the SAC that suffice to state a claim against her regardless of any purported JVP involvement. *See* SAC ¶¶ 34, 113, 116-120, 130 (alleging Hillel is the only SFSU student group welcoming all Jews as Jews; that Hillel was entitled to host a table at the Fair, that Hillel sought to participate and was denied a table under false pretenses after being the only group subject to a viewpoint-based test; that Dr. Abdulhadi advised and closely mentored members of the planning committee, including Mr. Shehadeh; that Dr. Abdulhadi's advisees intentionally brought about Hillel's exclusion with the knowledge, before the event, of the other KYRF Defendants; and that the intentional exclusion was executed on the specific direction of Dr. Abdulhadi, who later ratified the exclusion).

*Fourth*, Dr. Abdulhadi's argument that JVP's participation negates a religious discrimination claim is undermined by the RJN itself. According to Dr. Abdulhadi, and quoting an article by her protégé and mentee, Saliem Shehadeh, which is one of the subjects of the RJN, "JVP set up a table, handed out literature and signed up 14 students who expressed interest in forming a local SFSU JVP chapter, ***including members of SF Hillel***." RJN Ex. C (emphasis added). Dr. Abdulhadi thereby expressly admits that SF Hillel is a group whose Jewish student members hold a diverse array of positions on Israel and Zionism—including anti-Zionist and anti-Israel positions, such that multiple SF Hillel members would "express interest in forming a local SFSU JVP chapter." The corollary is that, in contrast to the "big [Jewish] tent" of SF Hillel, *JVP* is not a Jewish group that welcomes Jewish students of all stripes, but a political group that exclusively welcomes students holding the same positions on Israel and Zionism—namely, in opposition to both. Dr. Abdulhadi ignores that based on her own (mis-)characterization of Hillel as a political group, and not a Jewish or religious one, *JVP would necessarily also be a political group, and not a Jewish or religious group*. Even if the Court were to consider purported facts about JVP's involvement, the extent of the consideration

would be that an off-campus, unrecognized, non-student, political organization strategically called "Jewish Voice for Peace" participated in the "Know Your Rights" Fair as a cover for the intentional exclusion of and discrimination against Hillel—the only campus student group representing all Jews, regardless of other considerations.

**C. The Shehadeh Column (Exhibit C to the RJN)**

Exhibit C is a column written by non-party Saliem Shehadeh regarding the "Know Your Rights" Fair (the "Shehadeh column"). While Dr. Abdulhadi asks the Court to take judicial notice of the Shehadeh column in order to introduce JVP's involvement into the record (RJN at 7:10-24; Kleiman Decl. at ¶¶ 6-7), for the reasons explained above, JVP's involvement is irrelevant to whether Plaintiffs have stated their "Know Your Rights" Fair claims against Dr. Abdulhadi. Further, Dr. Abdulhadi cannot meet either the Rule 201 standard or the incorporation by reference standard as to this document.

**1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Shehadeh Column**

Like the Abdulhadi column, non-party Saliem Shehadeh's column, also printed on mondoweiss.net, is not a reliable source for adjudicative facts which are beyond dispute. Fed. R. Evid. 201(b). For example, the Shehadeh column also states, among other purported "facts," that Hillel was an "ill fit" for the Fair. RJN Ex. C at 5. But the SAC specifically disputes this, as noted above, alleging that Hillel was entitled to host a table at the KYR Fair and belonged there (SAC ¶¶ 114-116). The Shehadeh column amounts to a series of attacks and mischaracterizations of Mr. Shehadeh's targets, including Hillel and this lawsuit—it is not a source of undisputable (or undisputed) facts and Mr. Shehadeh is not a source "whose accuracy cannot reasonably be questioned" such that his column could be judicially noticed for its content pursuant to the Federal Rules of Evidence. Fed. R. Evid. 201(b). Therefore the RJN should be denied as to any purported facts in Exhibit C.

**2. The Court Should Not Incorporate the Shehadeh Column by Reference**

According to the RJN, Plaintiffs "mention this document in Paragraph 119." *Id.* at 2:13-15. This is false. As the RJN points out, Plaintiffs do allege that Mr. Shehadeh "admitted publicly that

Hillel was intentionally excluded" from the "Know Your Rights" Fair. *Id.* at 6:20-21 (citing SAC ¶ 119). But the SAC does not reference the Shehadeh column itself. Regardless, the RJN seeks to have the "full document" of the Shehadeh column before the Court so that the purported "full story" will be apparent. *Id.* at 6:22-23. This arguable reference to the Shehadeh column in the SAC is vague at best, and does not constitute the SAC "extensively" relying on the Shehadeh column. Nor is there any viable argument that the Shehadeh column forms the basis of the SAC. Therefore, based on *Ritchie*, 342 F.3d at 908, the request to incorporate Exhibit C by reference also must be denied.

**D. The Spero Letter (Exhibit D to the RJN)**

Exhibit D is a letter by David Spero to JWeekly regarding his opinions of Hillel and this lawsuit (the "Spero letter"). Mr. Spero is neither a student nor is he employed at SFSU, and neither Mr. Spero nor his letter are referenced anywhere in the SAC in any way. Nevertheless, Dr. Abdulhadi asks the Court to consider the Spero letter's purported facts at the pleading stage, apparently because "Plaintiffs repeatedly refer to JWeekly throughout the SAC" and the Spero letter was also printed in JWeekly. *Id.* at 7:17-24. While Dr. Abdulhadi asks the Court to take judicial notice of the Spero letter in another attempt to introduce JVP's involvement into the record (RJN at 7:10-24; Kleiman Decl. at ¶¶ 8-9), for the reasons explained above, JVP's involvement is irrelevant to whether Plaintiffs have stated a claim. Further, as with the other RJN exhibits, Dr. Abdulhadi cannot meet either the Rule 201 standard or the incorporation by reference standard as to Exhibit D.

**1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Spero Letter**

Exhibit D is a letter written by David Spero published in the "Opinion" section of The Jewish News of California on June 23, 2017. RJN Ex. D at 1. Mr. Spero is not a party to this litigation and has no affiliation with SFSU. According to Mr. Spero, he personally attended the "Know Your Rights" Fair and hosted a table there—something Hillel was intentionally denied the opportunity to do, based on the conduct of Dr. Abdulhadi and the other KYRF Defendants. Mr. Spero states that the conflict over the Fair incident "stems from the institutional Jewish community's desire to stop criticism of Israel, not to protect Jewish students." *Id.* at 2.

While the basis for this opinion is not at all clear, Mr. Spero is entitled to it. Yet the SAC specifically alleges the opposite (*see* SAC ¶¶ 175-199). Mr. Spero has certainly made clear that he and his letter to the Opinion section are not sources "whose accuracy cannot reasonably be questioned," and that any purported facts in his letter are "subject to reasonable dispute"—and in fact, are expressly disputed. Therefore the RJN must be denied as to any purported facts in Exhibit D.

**2. The Court Should Not Incorporate the Spero Letter by Reference**

The request to incorporate the Spero letter by reference should also be denied. Dr. Abdulhadi does not point to one paragraph in the SAC that refers to the Spero letter (because there are none). Instead, Dr. Abdulhadi notes that the Spero letter refers to the "Independent Review Report," and the Court took judicial notice of the same report ("for the limited purpose of the fact of SFSU's investigation and conclusions and not as to the truth of any disputed facts"), ECF No. 124 at 5:21-28. Because the Spero letter refers to a report judicially noticed by the Court, Abdulhadi argues, the Spero letter should also be judicially noticed. But there is no authority that the transitive property applies to the doctrine of incorporation by reference. Applying the actual test under *Ritchie*, 342 F.3d at 908, the SAC does not rely on the Spero letter at all, and the letter does not form the basis of the SAC. Therefore, the request to incorporate Exhibit D by reference should be denied.

**E. The Appeal Response (Exhibit E to the RJN)**

Finally, Exhibit E is ostensibly a redacted version of California State University's ("CSU") Executive Order 1096/1097 (Revised) Appeal Response regarding CSU's nonpublic findings of its internal (and not independent) investigation into the exclusion of Hillel from the KYR Fair (the "Appeal Response"). The RJN argues that Exhibit E "represents an authoritative version of California State University's conclusions about the investigation of the Know Your Rights Fair," and therefore the Court should either incorporate the Appeal Response by reference or potentially take judicial notice of its purported factual findings (notwithstanding that those findings were reached by Dr. Abdulhadi's co-Defendant, the findings have no legal authority, and no one has provided Plaintiffs or the Court with the underlying report, appeal, or an unredacted version of the Appeal Response).

**1. The Court Should Not Take Judicial Notice of Adjudicative Facts within the Appeal Response**

The investigation that led to the underlying response was not conducted by any independent or outside investigators, but rather by Dr. Abdulhadi's co-Defendant Board of Trustees of the California State University. The facts and findings of the Appeal Response are directly disputed by the SAC (as well as many others with knowledge in the SFSU community). Granting judicial notice of the "facts" within the Appeal Response would require that the jury be *instructed* that Hillel's exclusion was viewpoint discrimination and not religious discrimination. RJN Ex. E at 4-5. The SAC specifically disputes this, alleging the exclusion was in fact religious discrimination. *See* SAC ¶ 189 ("the KYR Defendants, who intentionally excluded from the fair based on the Jewish identity of Hillel's members..."). The RJN therefore must be denied as to purported facts or findings in the Appeal Response as well.

**2. The Court Should Not Incorporate the Appeal Response by Reference**

Finally, Dr. Abdulhadi seeks to incorporate by reference the Appeal Response (Exhibit E to the RJN) regarding the KYR Fair. Dr. Abdulhadi has made no showing that this document forms the basis of the SAC or that the SAC extensively refers to the Appeal Response. In fact, the SAC does not refer to the Appeal Response at all, most likely because it is dated April 13, 2018, *two weeks after* Plaintiffs filed the SAC. Plaintiffs had not seen or reviewed the Appeal Response at all before Dr. Abdulhadi filed the RJN. And while the results of SFSU's commissioned, internal non-independent investigation impacted the KYRF Plaintiffs, the unredacted version of Exhibit E has never been made public or produced to Plaintiffs. *See* SAC ¶ 124. For all of these reasons, the request to incorporate the Appeal Response by reference also should be denied.

## IV. CONCLUSION

For the foregoing reasons, Dr. Abdulhadi's request for judicial notice should be denied.

Dated: June 6, 2018

WINSTON & STRAWN LLP

By: */s/ Seth Weisburst*

Robb C. Adkins
Lawrence M. Hill (*pro hac vice*)
Krista M. Enns
Steffen N. Johnson (*pro hac vice*)
Lowell Jacobson (*pro hac vice*)
Seth Weisburst
Alexa Perlman (*pro hac vice*)
Adrianne Rosenbluth (*pro hac vice*)
WINSTON & STRAWN LLP

Brooke Goldstein (*pro hac vice*)
Amanda Berman (*pro hac vice*)
THE LAWFARE PROJECT

Attorneys for Plaintiffs
JACOB MANDEL, CHARLES VOLK, LIAM KERN, MASHA MERKULOVA, AARON PARKER, and STEPHANIE ROSEKIND

13

PLAINTIFFS' OPPOSITION TO DR. ABDULHADI'S REQUEST FOR JUDICIAL NOTICE
Case No. 3:17-CV-03511-WHO