1   Robb C. Adkins (SBN 194576)
    radkins@winston.com
2   Krista M. Enns (SBN 206430)
    kenns@winston.com
3   Seth Weisburst (SBN 259323)
    sweisburst@winston.com
4   WINSTON & STRAWN LLP
    101 California Street, 35th Floor
5   San Francisco, CA  94111-5840
    Telephone:   (415) 591-1000
6   Facsimile:   (415) 591-1400

7   Steffen N. Johnson (*pro hac vice*)
    sjohnson@winston.com
8   Lowell D. Jacobson (*pro hac vice*)
    ljacobson@winston.com
9   Adrianne Rosenbluth (*pro hac vice*)
    arosenbluth@winston.com
10  WINSTON & STRAWN LLP
    1700 K Street, N.W.
11  Washington, D.C.  20006-3817
    Telephone:   (202) 282-5000
12  Facsimile:   (202) 282-5100

    Lawrence M. Hill (*pro hac vice*)
    lhill@winston.com
    Alexa Perlman (*pro hac vice*)
    aperlman@winston.com
    WINSTON & STRAWN LLP
    200 Park Avenue
    New York, NY 10166-4193
    Telephone:   (212) 294-6700
    Facsimile:   (212) 294-4700

    Brooke Goldstein (*pro hac vice*)
    brooke@thelawfareproject.org
    Amanda Berman (*pro hac vice*)
    amanda@thelawfareproject.org
    THE LAWFARE PROJECT
    633 Third Avenue, 21st Floor
    New York, NY 10017
    Telephone:   (212) 339-6995

13  Attorneys for Plaintiffs
    JACOB MANDEL, CHARLES VOLK,
14  LIAM KERN, SHACHAR BEN-DAVID,
    MICHAELA GERSHON, MASHA MERKULOVA,
15  and STEPHANIE ROSEKIND

16              **UNITED STATES DISTRICT COURT**

17             **NORTHERN DISTRICT OF CALIFORNIA**

18  JACOB MANDEL, et al.,                    Case No. 3:17-CV-03511-WHO

19                Plaintiffs,

20         v.                                **PLAINTIFFS' OPPOSITION TO
                                             DEFENDANT RABAB ABDULHADI'S
21  BOARD OF TRUSTEES of the CALIFORNIA      MOTION TO DISMISS SECOND
    STATE UNIVERSITY, et al.,                AMENDED COMPLAINT [ECF 136]**
22
                  Defendants.                Date: July 18, 2018
23                                           Time: 2:00 p.m.
                                             Location: Courtroom 2 (17th floor)
24                                           Judge: William H. Orrick

25                                           Second Am. Compl. Filed:  March 29, 2018

26

27

28

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    OVERVIEW OF THE LAW ....................................................................................... 1

III.   PRELIMINARY ISSUES ........................................................................................... 2

IV.    STATEMENT OF THE ISSUES TO BE DECIDED.................................................. 4

V.     STATEMENT OF RELEVANT FACTS .................................................................... 4

VI.    LEGAL STANDARDS ............................................................................................... 6

VII.   ARGUMENT .............................................................................................................. 7

A.     The "Charging" Allegations State a Claim Against Dr. Abdulhadi for the
       Third through Sixth Causes of Action. .......................................................... 7

       1.     Dr. Abdulhadi's own conduct amounts to constitutional violations................ 8

       2.     The SAC complies with all requirements for pleading specific intent. ........... 8

       3.     The SAC gives Dr. Abdulhadi fair notice of the claims against her,
              which are based on her own conduct—more specific facts are not
              required, and are exclusively within the possession of Defendants................ 9

       4.     Dr. Abdulhadi cites no authority that her direction of non-state actors
              to violate Plaintiffs' rights is constitutionally protected conduct. ................. 11

B.     The Ostensible Participation of "Jewish Voice for Peace" in the KYR Fair is
       Irrelevant to Whether Plaintiffs Have Stated a Claim ................................ 16

C.     Dr. Abdulhadi's Commitment to "Anti-Normalization" Is Confirmed by the
       SAC's Supporting Factual Allegations and Strongly Supports the Inference
       That Dr. Abdulhadi Violated Plaintiffs' First and Fourteenth Amendment
       Rights. ........................................................................................................... 18

D.     Plaintiffs Have Standing to Bring Their Claims Against Dr. Abdulhadi ................. 21

E.     Dr. Abdulhadi Is Not Entitled to Qualified Immunity.............................................. 23

F.     Dr. Abdulhadi Has Been Sued Only in Her Individual Capacity. ............................. 24

G.     The SAC Does Not Attack First Amendment Rights or Academic Freedoms.......... 24

H.     In the Alternative, Leave to Amend Should Be Granted. ........................................... 25

VIII.  CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ASARCO, LLC v. Union Pac. R. Co.*,
   765 F.3d 999 (9th Cir. 2014) ............................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................2, 6, 9, 21

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ..............................................................................16

*Christie v. Iopa*,
   176 F.3d 1231 (9th Cir. 1999) ..........................................................................15

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ............................................................................25

*Dorger v. City of Napa*,
   2012 WL 3791447 (N.D. Cal. Aug. 31, 2012) ................................................15

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ..........................................................................25

*Erickson v. Pardus*,
   551 U.S. 89 (2007)...........................................................................................2, 9

*Hydrick v. Hunter*,
   669 F.3d. 937 (9th Cir. 2012) ...........................................................................11

*Lacey v. Maricopa Cnty.*,
   693 F.3d 896 (9th Cir. 2012) ........................................................................6, 25

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)......................................................................................21, 22

*Mendocino Envt'l Center v. Mendocino Cnty.*,
   192 F.3d 1283 (9th Cir. 1999) ............................................................................7

*In re Mortgs. Ltd.*,
   771 F.3d 623 (9th Cir. 2014) ..............................................................................6

*Orin v. Barclay*,
   272 F.3d 1207 (9th Cir. 2001) ..........................................................................23

*OSU Student Alliance v. Ray*,
    699 F.3d 1053 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 70 (2013)........................................ *passim*

*Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017), *petition for cert. docketed* Aug. 24, 2017 ..............................2, 3, 10

*Robins v. Meecham*,
    60 F.3d 1436 (9th Cir. 1994) .................................................................................................12

*Rowe v. Educ. Credit Mgmt. Corp.*,
    559 F.3d 1028 (9th Cir. 2009) ...........................................................................................2, 10

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...........................................................................................7, 8, 9

*Suever v. Connell*,
    579 F.3d 1047 (9th Cir. 2009) ..................................................................................................7

*United States v. Classic*,
    313 U.S. 299 (1941)..................................................................................................................8

*United States v. Price*,
    383 U.S. 787 (1966)..................................................................................................................7

*West v. Atkins*,
    487 U.S. 42 (1988)....................................................................................................................8

*Williams v. California*,
    764 F.3d 1002 (9th Cir. 2014) ..................................................................................................7

**Statutes**

42 U.S.C. § 1983...............................................................................................................1, 5, 7, 21

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................................................6, 7, 9, 16

Fed. R. Civ. P. 15(a) .................................................................................................................25

http://ethnicstudies.sfsu.edu/faculty1 (visited May 30, 2018) ......................................................4

http://www.usacbi.org/advisory-board/ (visited March 29, 2017).................................................12

## I.   INTRODUCTION

With her Motion to Dismiss ("the Motion") the Second Amended Complaint ("SAC") Defendant Rabab Abdulhadi argues that each of the four causes of action against her fails to state a claim.  ECF No. 136.  Because the Motion does not meet its burden to show that any of Plaintiffs' claims are not legally cognizable, it should be denied as to each of the causes of action. As explained below, Plaintiffs state a valid claim in the SAC for each cause of action against Dr. Abdulhadi, and have complied with all relevant requirements ordered by the Court as to those claims.

## II.   OVERVIEW OF THE LAW

At the outset, Plaintiffs must provide an overview to clarify several key erroneous legal positions on which the Motion fundamentally relies.  *First*, Dr. Abdulhadi argues that Plaintiffs must allege facts showing *specific intent to discriminate against Jews* in order to state their claims against her.  *This is incorrect.*  When a supervisory state actor like Dr. Abdulhadi advances or manages a policy that instructs its adherents to violate constitutional rights of others, as Plaintiffs allege in the SAC, then that official specifically intends for such violations to occur.  Claims against such supervisory state actors, therefore, do not fail on the state of mind requirement, be it intent, knowledge, or deliberate indifference.  "Advancing a policy that requires subordinates to commit constitutional violations *is always enough for § 1983 liability, no matter what the required mental state*, so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy."  *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 70 (2013).

Moreover, while the SAC *does* allege Dr. Abdulhadi's specific intent to discriminate against Plaintiffs as Jews in the Sixth Cause of Action ("COA") with regard to the "Know Your Rights" Fair ("KYR Fair") (but not the others) (*see, e.g.*, SAC ¶¶ 120, 180, 189, 191), *OSU* is clear that specific intent is not required for any claim of a free speech violation under the First and Fourteenth Amendments, which applies to each of the four claims against Dr. Abdulhadi in the SAC: "[A]llegations of facts that demonstrate an immediate supervisor *knew about the subordinate violating* another's federal constitutional right to free speech, and *acquiescence in that violation*, *suffice to state free speech violations under the First and Fourteenth Amendments*."  *OSU*, 699

1

F.3d at 1075.  The Ninth Circuit concluded that "***knowledge*** suffices for free speech violations under the First and Fourteenth Amendments."  699 F.3d at 1073.  For each of these four claims, the SAC alleges that Plaintiffs were subjected to such viewpoint discrimination (based on Defendants' perception of the targeted individuals' viewpoint) with Dr. Abdulhadi's knowledge.

*Second*, the Motion relies on criticisms that the SAC does not include more "specific facts" supporting its claims against Dr. Abdulhadi.  Setting aside that the SAC does allege sufficiently specific facts, the applicable law is that:  "***Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests***.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (emphasis added); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("heightened fact pleading of specifics" is not required) (quoted in ECF No. 124 at 11:20-21).  Rather, the facts set forth in the complaint are required to be accepted as true and construed in the light most favorable to the plaintiff, and they are sufficiently plausible when they "'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Third*, the Motion repeatedly argues (without citing to any authority) that allegations made on information and belief are categorically improper.  This is wrong.  Especially where, as here, such allegations are well-supported by the other allegations, pleading on information and belief is not only entirely proper but also must be read in the light most favorable to Plaintiffs.  *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009).   "The *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017), *petition for cert. docketed* Aug. 24, 2017 (citation and internal quotation omitted).  Other legal errors in the Motion, including those on which Dr. Abdulhadi bases arguments on ratification, standing, qualified immunity, and official vs. individual capacity, are discussed in Plaintiffs' Argument Section below.

## III.   PRELIMINARY ISSUES

Dr. Abdulhadi focuses her Motion's Summary of Argument on six points from the Court's

2

March 9, 2018 Order (ECF No. 124), which she claims support her request to dismiss the SAC. None of the six points she raises support dismissal of the SAC's claims against her. *First*, Dr. Abdulhadi argues that Plaintiffs' allegations against her are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Mot. at 1:6-8. But as explained in detail below, the SAC includes detailed allegations, including those regarding Dr. Abdulhadi's stated commitment to implementing a policy of "anti-normalization," which strongly supports that Plaintiffs' factual deductions and inferences *are* warranted and reasonable—in fact, it would be unreasonable *not* to reach the SAC's deductions and inferences in light of the specific allegations included.

*Second*, Dr. Abdulhadi argues a point that on its face applies only to the "Administrator Defendants," and not to Dr. Abdulhadi. Mot. at 1:9-12. While this point also lacks merit, as explained in Plaintiffs' concurrently-filed opposition to the Administration Defendants' motion to dismiss it does not apply to Dr. Abdulhadi and therefore Plaintiffs do not address it here. ECF No. 148. *Third*, Dr. Abdulhadi argues the SAC fails to allege facts showing specific intent as required for allegations of deliberate indifference or intentional invidious discrimination, Mot. at 1:13-21, because, *fourth*, Plaintiffs' claims are asserted to rest on intentional invidious discrimination. *Id.* at 1:22-23. But this is not required for Plaintiffs' claims, which as explained above, do not rest on intentional invidious discrimination (though they do include specific intent allegations as to Dr. Abdulhadi's specific intent to discriminate against Jews with her conduct preventing Hillel from hosting a table at the KYR Fair). In the SAC, Plaintiffs have alleged Dr. Abdulhadi's knowledge of her own conduct, that of those whom she supervises, and the resulting violations of Plaintiffs' First and Fourteenth Amendment rights. As explained above, under *OSU*, nothing more is required to support claims based on viewpoint discrimination. 699 F.3d at 1073, 1076.

*Fifth,* the Motion argues the SAC lacks allegations which are not speculative and which occurred before the alleged constitutional deprivations. Again, as detailed below, Dr. Abdulhadi is wrong. Further, Dr. Abdulhadi ignores that discovery is stayed in this action, and that a plaintiff has more leeway in pleading where, as here, more detailed facts are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Park*, 851 F.3d at 928. *Sixth*, the Motion argues in the

3

Introduction that the SAC does not allege facts that Dr. Abdulhadi herself acted to cause Plaintiffs' alleged injuries.  Mot. at 2:6-9.  But as detailed below, each of the allegations listed above that took place before the Barkat event (for COAs 3-4) and before the KYR Fair (for COAs 5-6) are factual allegations regarding Dr. Abdulhadi's own conduct.  That some of these allegations *also* involve other individuals does not change that Plaintiffs have pleaded clear factual allegations regarding Dr. Abdulhadi's own conduct.

Thus, Plaintiffs have addressed each of the Court's concerns cited in Dr. Abdulhadi's Summary of Argument.  The SAC alleges that Dr. Abdulhadi's actions, under color of state law, have deprived Plaintiffs of their First and Fourteenth Amendment Rights.  The *OSU* opinion, along with other binding precedent cited here, confirms that there is no basis to dismiss any of the four causes of action against Dr. Abdulhadi.  The Court should deny the Motion in its entirety.

## IV.   STATEMENT OF THE ISSUES TO BE DECIDED

1.   Has Dr. Abdulhadi failed to meet her burden of demonstrating that one or more of the causes of action against her fails to state a claim?

## V.   STATEMENT OF RELEVANT FACTS

***Dr. Abdulhadi's Role at SFSU***.  Defendant Dr. Rabab Abdulhadi is a professor at SFSU. SAC ¶¶ 29, 54.  She is part of the faculty in SFSU's College of Ethnic Studies ("COES").  *See* http://ethnicstudies.sfsu.edu/faculty1 (visited May 30, 2018); SAC ¶¶ 29, 130.  She also serves as a "Senior Scholar" for SFSU's Arab and Muslim Ethnicities and Diasporas Initiative ("AMED") and the faculty advisor for the General Union of Palestine Students at SFSU ("GUPS").  *Id.* ¶¶ 29, 37.

***Dr. Abdulhadi's "Anti-Normalization" Mandate***.  The "anti-normalization" mandate of the BDS movement calls for the boycott, divestment, and sanctions against Israel, and for targeted economic discrimination against Israeli Jews, aiming to isolate, delegitimize and ultimately bankrupt the Jewish state and economically marginalize Jewish people.  *Id.* ¶ 36.  Dr. Abdulhadi is the ***co-founder*** of the U.S. Campaign for the Academic and Cultural Boycott of Israel ("USACBI"), which subscribes to the anti-normalization mandate and "***requires the disruption and silencing of divergent viewpoints*** relating to the Israeli-Palestinian conflict, based on the theory that the very process of an open dialogue should be resisted because it would 'normalize' Israel's existence."  *Id.*

4

¶ 37 (emphasis added).  USACBI's website offers "guidelines" that recommend its supporters "***work towards the cancellation or annulment of events***, activities, agreements, or projects . . . [that] promote the normalization of Israel in the global academy . . . ." *Id.* at 6 n.6 (emphasis added).

Dr. Abdulhadi "actively and regularly spearhead[s] on-campus programming advocating for the elimination of the Jewish state and the application of the anti-normalization mandate of BDS as official policy of AMED and COES." *Id.* ¶ 38.  Dr. Abdulhadi is required by this doctrine she subscribes to (and founded an organization in the name of) to "engage in and support efforts to disrupt speech and gatherings in support of Jewish sovereignty and bar Israelis, Zionists, and anyone who *acknowledges Israel's actual existence* from publicly expressing themselves." *Id.* ¶ 39.  The student group Dr. Abdulhadi leads and mentors (GUPS), and her departments (AMED and COES), have been clear in their intent to "take steps to ensure that SFSU remains free of 'Zionist Jews.'" *Id.* ¶ 40.  Dr. Abdulhadi publicly described a February 2018 reversal statement by SFSU's President Wong—that Zionists were in fact welcome on campus after all—as a "declaration of war" and demanded its "immediate retraction." *Id.* ¶ 130.

***Dr. Abdulhadi's Alleged Conduct Stating Plaintiffs' Claims Against Her***.  Plaintiffs bring four claims against Dr. Abdulhadi under 42 U.S.C. § 1983 (COAs 3-6).  The 3rd COA alleges that Dr. Abdulhadi, by directing under color of state law that GUPS members shut down Mayor Barkat's speech, and ensuring that the Barkat Shutdown Plaintiffs could not exercise their right to hear his speech, deprived Barkat Shutdown Plaintiffs of their First Amendment rights, including their right to assemble and their right to listen or hear.  COA 3, SAC ¶¶ 66-102, 158-68.  The 4th COA avers that this same viewpoint discriminatory action by Dr. Abdulhadi also supports a Fourteenth Amendment claim.  COA 4, *id.* ¶¶ 66-102, 169-74.  The other two Section 1983 claims relate to the intentional exclusion of Plaintiffs' registered Jewish student group, Hillel, under false pretenses, from the February 28, 2017 KYR Fair held on campus at SFSU.  *Id.* ¶¶ 112-27, 175-99.  The 5th COA alleges that Dr. Abdulhadi, by aiding, encouraging, organizing, and condoning the intentional exclusion of KYRF Plaintiffs' group under color of state law, depriving KYRF Plaintiffs of their First Amendment rights, including their right to assemble, their right to speak, and their right to listen or hear.  COA 5, *id.* ¶¶ 112-27, 175-86.  Because Dr. Abdulhadi discriminated on a perceived

viewpoint, and acted upon a distinction she drew between Hillel and other groups, the First Amendment KYR Fair claim supports Plaintiffs' Fourteenth Amendment claim as well. COA 6, *id.* ¶¶ 112-27, 187-99; *OSU*, 699 F.3d at 1067, 1075. The final claim *also* alleges that those same actions by Dr. Abdulhadi, under color of state law, deprived Plaintiffs, as Jews, of equal protection, as secured by the Fourteenth Amendment, by further depriving them of the opportunities others had to benefit from their group hosting a table at the Fair. COA 6, ECF No. 125 ¶¶ 112-27, 187-99.

More specifically, and in sum, Dr. Abdulhadi: 1) directed GUPS members and COES students she supervised and mentored to shut down Mayor Barkat's speech, ensuring Plaintiffs were deprived of their right to hear him. (*id.* ¶ 70); 2) flexed her influence with COES to conscript them to stage a hunger strike which successfully extracted a commitment from President Wong not to investigate GUPS students or *faculty* for disruption of the Barkat event; 3) directed Saliem Shehadeh and others to retract Hillel's invitation to the Fair, depriving the KYRF Plaintiffs of their constitutional rights related to that event (*id.* ¶¶ 118-20); and 4) with full knowledge of the expected violations as to both events (since she directed that they occur), refused to take any steps to prevent them, thereby endorsing them before the events took place (*see id.* ¶¶ 70, 118-20).

## VI. LEGAL STANDARDS

The issue to be decided is whether the SAC alleges "sufficient factual matter," if accepted as true, "to state a claim for relief that is plausible on its face." *OSU*, 699 F.3d at 1061 (internal citations and quotations omitted). It is inappropriate to dismiss such a pleading under Rule 12(b)(6). *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (internal citations and quotations omitted). Courts accept as true all well-pleaded facts in the complaint, *OSU*, 699 F.3d at 1058, and "[f]actual allegations in a pleading, as opposed to legal conclusions, must be presumed to be true." *In re Mortgs. Ltd.*, 771 F.3d 623, 632 (9th Cir. 2014) (citing *Twombly*, 550 U.S. at 555). A "complaint states sufficient facts 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 677). Because "[t]he plausibility standard is not akin to a 'probability requirement,'" *Iqbal*, 556 U.S. at 678, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint

6

survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Likewise, "dismissal under Rule 12(b)(6) is improper" if "an asserted defense raises disputed issues of fact." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

"To make out a cause of action under Section 1983," Plaintiffs must plead that "(1) the defendant[] [was] acting under color of state law, [and] (2) deprived [P]laintiffs of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (internal quotation marks omitted). "To state a claim under § 1983 against state officials *in their individual capacities*, a plaintiff must plead that the officials, 'acting under color of state law, caused the deprivation of a federal right.'" *OSU*, 699 F.3d at 1061 (quoting *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009)) (emphasis added).  To state a First Amendment claim for infringement of free speech, a plaintiff must allege facts showing that "by his actions the defendant deterred or chilled the plaintiff's [] speech and such deterrence was a substantial motivating factor in the defendant's conduct." *Mendocino Envt'l Center v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal citations omitted). A plaintiff need not allege that his or her speech was actually inhibited or suppressed, merely that "an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.*

## VII.   ARGUMENT

### A.   The "Charging" Allegations State a Claim Against Dr. Abdulhadi for the Third through Sixth Causes of Action.

Plaintiffs have alleged "sufficient factual matter," accepted as true, "to state a claim for relief that is plausible on its face." *OSU*, 699 F.3d at 1061 (citations omitted).  Nothing more is required.  In the SAC, Plaintiffs sufficiently allege each of the required elements of the four causes of action Plaintiffs assert against Dr. Abdulhadi under 42 U.S.C. § 1983.  To state a claim, Plaintiffs must allege that 1) the defendant is a state actor, 2) that she acted under the color of state law, and 3) that she violated a constitutional right.  State employment generally suffices to render the defendant a state actor. *United States v. Price*, 383 U.S. 787, 805-06 (1966).  The SAC alleges Dr. Abdulhadi is a "state actor" based on her employment as a professor at SFSU and advisor to GUPS. *See* SAC ¶¶ 29, 39, 176, 188.  A defendant has acted under color of state law where she has "exercised power

7

'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The SAC alleges that Dr. Abdulhadi directed students and subordinates to shut down the Barkat event and to prevent Hillel from hosting a table at the KYR Fair, and that she used her authority as a professor and advisor to enforce, and later ratify, these instructions. *See* SAC ¶¶ 29, 37-39, 51, 70, 118-20.

### 1.   Dr. Abdulhadi's own conduct amounts to constitutional violations.

As for whether Dr. Abdulhadi's own alleged conduct amounts to a constitutional violation, as required, the law is clear. Allegations of facts that show a supervisor "*knew about the subordinate violating another's federal constitutional right to free speech, and acquiescence in that violation, suffice to state free speech violations under the First and Fourteenth Amendments.*" *OSU*, 699 F.3d at 1075 (emphasis added). Because "knowledge suffices for free speech violations under the First and Fourteenth Amendments," the *only* mental state Plaintiffs must allege is that Dr. Abdulhadi knew of the violations of Plaintiffs' free speech rights at both events. *Id.* at 1073. The SAC not only alleges her knowledge but also her direct role in causing the free speech violations. *See* SAC ¶¶ 70 (Barkat shutdown COAs 3-4), 118-20 (KYR Fair, COAs 5-6). While here, Plaintiffs allege Dr. Abdulhadi's role in violating Plaintiffs' constitutional rights was much more proactive, all that is required is an allegation of *acquiescence* to the expected violation by a defendant with knowledge. *Starr*, 652 F.3d at 1216 (it is sufficient to allege that a defendant "acquiesced in the unconstitutional conduct of [her] subordinates, and was thereby deliberately indifferent to the danger posed to [plaintiffs]").

### 2.   The SAC complies with all requirements for pleading specific intent.

While stating most Fourteenth Amendment claims does not require specific intent to discriminate against a particular group (*OSU*, 699 F.3d at 1075), Plaintiffs clearly allege such specific intent for Abdulhadi's conduct related to the exclusion of Hillel from the KYR Fair. Under *OSU*, Plaintiffs allege discrimination based on a perceived viewpoint[1] which makes Plaintiffs' First

---

[1] Dr. Abdulhadi and the other KYRF Defendants have no valid basis for attributing a particular viewpoint to Hillel, which as alleged in the SAC is a Jewish group, not a political one. *See* SAC ¶ 34. Nevertheless, they attribute certain viewpoints to Hillel because its members are Jewish, and as

1    Amendment KYR Fair claim (COA 5) support the Fourteenth Amendment KYR Fair claim (COA

2    6), without any mental state requirement beyond knowledge.  699 F.3d at 1073, 1075.  However,

3    with regard to the Fourteenth Amendment KYR claim, Plaintiffs also allege that Dr. Abdulhadi

4    specifically sought to discriminate against and deny equal protection to Jewish students at SFSU

5    (COA 6), including the KYRF Plaintiffs.  *See* SAC ¶¶ 118, 120-21, 189-91, 193-94.  If there is any

6    doubt as to whether Plaintiffs' explanation of their claims is more plausible than the explanation

7    proffered by Dr. Abdulhadi, the Motion must be denied.  *Starr*, 652 F.3d at 1216 (where "there are

8    two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of

9    which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)").

10   ### 3.   The SAC gives Dr. Abdulhadi fair notice of the claims against her, which
11   are based on her own conduct—more specific facts are not required, and are exclusively within the possession of Defendants.

12   Dr. Abdulhadi argues repeatedly in the Motion that Plaintiffs "allege no specific facts" in the

13   SAC to support their allegations against her.[2]  As mentioned above, while the SAC does allege

14   specific facts, this near-constant refrain is not the actual legal standard.  Dr. Abdulhadi cites *Iqbal*

15   (556 U.S. at 676) for the requirement that a complaint must plead "specific facts."  Mot. at 8:23-9:2.

16   But *Iqbal* does not include a "specific facts" requirement and only requires that factual allegations

17   are sufficiently well-pleaded, which is a "context-specific task."  556 U.S. at 678-79.  If so, "a court

18   should assume their veracity and then determine whether they plausibly give rise to an entitlement to

19   relief."  *Id.*

20   According to the Supreme Court:  "*[s]pecific facts are not necessary; the statement need*

21   *only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests*.'"

22   *Erickson*, 551 U.S. at 93 (emphasis added); *see also Twombly*, 550 U.S. at 570 ("heightened fact

23   pleading of specifics" not required); *Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1048-49

24   (complaint need not contain "detailed factual allegations" to satisfy R. 8(a)(2)).  Further, a plaintiff

25   has more leeway in satisfying pleading requirements where, as here, "the facts are peculiarly within

26

27   alleged, their discriminatory conduct follows.

28   [2] *See* Mot. at 5 nn.2, 4, and 5; 6 nn.7-8, 10, 7 nn. 11-13, 8:10-13, 8:23-9:5, 10:4-6, 11:7-13:7 (Table) 13:8-9, 13:21-23, 15:10-13, 16:9-11, 17:16-18, 19:14-16, 19 n.18, 20:8-11, 21:11-14.

9

1    the possession and control of the defendant, or where the belief is based on factual information that

2    makes the inference of culpability plausible." *Park*, 851 F.3d at 928.  In such cases, allegations

3    made on information and belief are proper, and must be read in the light most favorable to Plaintiffs.

4    *Id.*; *Rowe*, 559 F.3d at 1029-30.  It is not surprising that Dr. Abdulhadi cites *no authority* suggesting

5    that otherwise sufficient allegations made on information and belief are not sufficient to survive a

6    motion to dismiss.[3]

7         The Motion also cites (at 14:13-19) to *Hydrick v. Hunter*, 669 F.3d. 937, 942 (9th Cir. 2012),

8    where the complaint lacked "any allegation of the specific wrong-doing by each Defendant," or of a

9    "*specific* event or events instigated by Defendants." 669 F.3d at 942. Where the complaint in

10   *Hydrick* did not differentiate between defendants, policies, or events (*id.*), the SAC specifically

11   identifies 1) *Dr. Abdulhadi*, 2) *which two events* involved her unconstitutional conduct (the Barkat

12   event and the Fair), 3) *what her conduct was* (directing Linda Ereikat, Lubna Morrar and other

13   GUPS members to shut down the Barkat event; directing Mr. Shehadeh and the Fair organizers to

14   intentionally exclude Hillel; refusing to take steps before the Fair to remedy the exclusion of which

15   she was aware; ratifying the conduct of both events and pressuring the University not to punish those

16   involved, including herself (SAC ¶¶ 70-71, 105, 119-120, 177, 180, 189, 191)), 4) *what motivated*

17   *her conduct*, and 5) *clear evidence of that motivation* (her "anti-normalization" doctrine, *see id.* ¶¶

18   37-40)).

19        Following the Court's prior guidance, the SAC clearly presents which claims Plaintiffs assert

20   against Dr. Abdulhadi and gives her fair notice of the grounds upon which each claim rests.  The

21   allegations against Dr. Abdulhadi are not the sort of bald, conclusory allegations unentitled to a

22   presumption of truth under *Iqbal*.  Rather, they are informed by Plaintiffs' other detailed factual

23   allegations in the SAC regarding the two events in question, the effect of Dr. Abdulhadi's conduct on

24   Plaintiffs, and the detailed factual allegations that reveal Dr. Abdulhadi's motives consistent with the

25   alleged conduct (both before and after the events occurred). These facts set forth in the SAC are

26   accepted as true and construed in the light most favorable to the Plaintiffs, and such facts are

_____

27

28   [3] *See* Mot. at 2:12-14, 4:22-24, 6:1-4, 6 n.6, 8:10-13, 11:25-27, 16:12-16, 21:11-13 (none of which
     cite to authority regarding allegations made on "information and belief").

1    sufficiently plausible because they "'allow[] the court to draw the reasonable inference that the

2    defendant is liable for the misconduct alleged.'"  *Iqbal*, 556 U.S. at 678.

3         Dr. Abdulhadi cites *Iqbal* (556 U.S. at 676) for the requirement that a complaint must plead

4    "specific facts."  Mot. at 8:23-9:2.  But *Iqbal* does not include a "specific facts" requirement and

5    only requires that factual allegations suffice to "plausibly give rise to an entitlement to relief," which

6    is a "context-specific task."  556 U.S. at 678-79.  Considering the context, the Court must decide

7    whether the allegations are "well-pleaded"; if so, "a court should assume their veracity and then

8    determine whether they plausibly give rise to an entitlement to relief."  *Id.*  The Motion also cites (at

9    14:13-19) to *Hydrick v. Hunter*, 669 F.3d. 937, 942 (9th Cir. 2012), where the complaint lacked "any

10   allegation of the specific wrong-doing by each Defendant," or of a "*specific* event or events

11   instigated by Defendants." 669 F.3d at 942. Where the complaint in *Hydrick* did not differentiate

12   between defendants, policies, or events (*id.*), the SAC specifically identifies 1) *Dr. Abdulhadi*, 2)

13   *which two events* involved her unconstitutional conduct (the Barkat event and the Fair), 3) *what her*

14   *conduct was* (directing Linda Ereikat, Lubna Morrar and other GUPS members to shut down the

15   Barkat event; directing Mr. Shehadeh and the Fair organizers to intentionally exclude Hillel; refusing

16   to take steps before the Fair to remedy the exclusion of which she was aware; ratifying the conduct

17   of both events and pressuring the University not to punish those involved, including herself (SAC ¶¶

18   70-71, 105, 119-120, 177, 180, 189, 191)), 4) *what motivated her conduct*, and 5) *clear evidence of*

19   *that motivation* (her "anti-normalization" doctrine, *see id.* ¶¶ 37-40)).

20         Where the allegations lack more specific details which are inaccessible to Plaintiffs until the

21   parties commence discovery, they remain sufficiently plausible to allow the Court to draw the

22   reasonable inference that Dr. Abdulhadi is liable for the misconduct alleged in the causes of action at

23   issue.  It would be unreasonable to infer otherwise.  And contrary to the Motion, these claims are not

24   based on vicarious liability (8:21-23), but rather on Dr. Abdulhadi's own conduct, which based on

25   *OSU*, is more than sufficient to satisfy *Iqbal*'s requirements as to COAs 3-6.

26              **4.    Dr. Abdulhadi cites no authority that her direction of non-state actors to**
                         **violate Plaintiffs' rights is constitutionally protected conduct.**

27         Dr. Abdulhadi criticizes that the SAC alleges Dr. Abdulhadi directed students to shut down

28   the Barkat event and to exclude Hillel from the KYR Fair, given that these students are themselves

11

not state actors.  Mot. at 10:1-4.  First, one of the individuals she directed to exclude Hillel from the Fair, Saliem Shehadeh (SAC ¶ 119), was a paid employee of SFSU.   Setting that aside, Dr. Abdulhadi cites no authority that her liability is contingent on the individuals carrying out her directions being state actors.  Nor does the Motion cite authority that a state actor can escape liability when acquiescing to conduct of non-state actors under her control, direction, or supervision expected to violate the constitutional rights of others.  *Contra Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1994) (when officials have "actual knowledge of impending harm easily preventable," their failure to act suggests that they actually want the harm to occur) (citation omitted).  Further, the allegations are clear that Dr. Abdulhadi *herself* intended to violate Plaintiffs' rights in relation to both the Barkat Event and the KYR Fair, took action to ensure that those rights were violated, and succeeded in bringing about that result. Therefore, the allegations state a claim against her as to her own conduct, regardless of any other conduct of those who acted under her supervision and pursuant to her demands.  For these reasons, the Court should ignore this argument as well.

Below, Plaintiffs respond to Dr. Abdulhadi's table that purports to identify the "main defects" of the allegations at issue, Mot. at 11:4-13:7—in each case, the SAC's allegations are sufficient.

**<u>Plaintiffs' Factual and Legal Response to the Motion's Claimed "Main Defects"</u>**

| Criticized SAC Allegations | Specific Factual Allegations in the SAC, and Plaintiffs' Further Response |
|---|---|
| Dr. Abdulhadi adheres to the mandate of "anti-normalization"; AMED and COES have adopted the mandate as policy. | Dr. Abdulhadi claims there are no facts to support these allegations. Plaintiffs direct the Court to the following: <br>• <u>SAC ¶ 36</u>: "...The "anti-normalization" mandate of the BDS movement requires that activists disrupt, isolate, and silence all opposing viewpoints, even moderate opinions such as those acknowledging Israel's actual existence..." <br>• <u>SAC ¶ 37</u>: "Defendant Abdulhadi, ... **co-founder** of the U.S. Campaign for the Academic and Cultural Boycott of Israel subscribes to the anti-normalization mandate of the BDS movement, which requires the disruption and silencing of divergent viewpoints..." (emphasis added). <br>• <u>SAC Footnote 6</u>: "See http://www.usacbi.org/advisory-board/ (visited Mar. 29, 2017). USACBI's website offers 'guidelines' for its 'academic boycott,' recommending that its supporters "***work towards the cancellation or annulment of events,*** activities, agreements, or projects . . . *[that] promote the normalization of Israel in the global* |

| Criticized SAC Allegations | Specific Factual Allegations in the SAC, and Plaintiffs' Further Response |
|---|---|
| | *academy* . . ." (emphasis added). |
| | • <u>SAC ¶ 38</u> (spearheading programming advocating for anti-normalization on campus) |
| | • <u>SAC ¶ 39</u> (adopting a policy of anti-normalization on campus and supporting efforts to disrupt speech and gatherings in support of Jewish sovereignty) |
| | • <u>SAC ¶ 40</u> (sponsoring events where the goal is to take steps to ensure that SFSU remains free of "Zionist Jews.") |
| | Plaintiffs allege throughout the SAC that "anti-normalization" was the driving force behind the Barkat disruption and the exclusion of Hillel from the KYR Fair, both of which violated their civil rights.  *See* SAC ¶¶ 36-40, 51, 70, 88, 120. |
| COES, AMED, and GUPS have sponsored numerous events harshly criticizing Zionist Jews. | Dr. Abdulhadi claims there are no facts to support these allegations.  At the Court's request, and after Defendants' criticisms, Plaintiffs excised substantial factual detail regarding events sponsored by COES, AMED, and GUPS which were encouraged and fostered by Defendants, and which were never shut down (unlike the Mayor Barkat event).  Given this history, Dr. Abdulhadi's criticisms that the SAC lacks this additional factual background should fall on deaf ears.  Dr. Abdulhadi's table also ignores the following, which allege specific facts regarding GUPS events:
• <u>SAC ¶ 41</u>:  (re: a GUPS rally on campus to paint placards that said 'My heroes have always killed colonizers,' with images of a convicted hijacker)
• <u>SAC ¶ 42</u>:  (re: writing 'My Heroes Have Always Killed Colonizers,' at a 'State of Emergency' rally)
• <u>SAC ¶ 50</u>:  (re: hosting notorious Palestinian polemicist Bassem Tamimi in an event sponsored by GUPS and AMED) |
| Dr. Abdulhadi directed GUPS students to carry out | Dr. Abdulhadi complains that these allegations either lack supporting facts or are improperly alleged on information and belief.  Plaintiffs direct the Court to the following supporting facts (in addition to SAC ¶¶ 36-40 |

13

| Criticized SAC Allegations | Specific Factual Allegations in the SAC, and Plaintiffs' Further Response |
|---|---|
| a policy of "anti-normalization" (silencing and disruption), including specific directions to shut down the Barkat event and to prevent Hillel from hosting a table at the KYR Fair. | (quoted above)):<br><br>• SAC ¶ 70:  "**Defendant Abdulhadi** is GUPS's faculty advisor and a mentor to its members, and had a particularly close relationship with GUPS then- President and Vice President, Linda Ereikat and Lubna Morrar. On information and belief... **Dr. Abdulhadi** mandated that the group and all of its members implement anti-normalization at every opportunity on campus, including, explicitly, during Hillel's event featuring the Jerusalem Mayor.  Consistent with this mandate, Ereikat and Morrar, along with the other GUPS members, who were also mentees of **Dr. Abdulhadi**, worked to disrupt and shut down the Barkat event."<br><br>• SAC ¶ 119 (re: Dr. Abdulhadi's close relationship with Saliem Shehadah, one of the organizers of the KYR Fair)<br><br>• SAC ¶ 120: "Consistent with her anti-normalization mandate and her deliberate conflation of Jews, Israelis and Zionists, upon becoming aware that Hillel had been invited to the KYRF, **Abdulhadi** encouraged Shehadeh and other GUPS members retract the invitation. **Abdulhadi** pulled the strings on the exclusion of Hillel from KYRF on the basis of a perceived "Zionist" viewpoint that she, Shehadeh, and GUPS and its allies wrongly attributed to Hillel and anyone affiliated with it. As GUPS's faculty advisor and a faculty member in COES, with knowledge of the intentional exclusion of Hillel from the fair, **Abdulhadi's** refusal to take steps to ensure that all groups wishing to participate in the fair was, at minimum, ratification of the decision to intentionally exclude Hillel."<br><br>Plaintiffs addressed the Motion's complaint that limited allegations are made on information and belief earlier in this section. |
| Dr. Abdulhadi deliberately conflates Jews, Israelis, and Zionists. | Throughout the SAC, Plaintiffs allege facts that demonstrate Dr. Abdulhadi and the other Defendants deliberately ascribe certain viewpoints regarding Israel to Hillel, which is a *Jewish* student organization, not a political, Israeli, or Zionist organization.  *See* SAC ¶¶ 103, 117-18, 120-21, 127.  Dr. Abdulhadi then mischaracterizes her religious discrimination in excluding Hillel from the KYR Fair as viewpoint discrimination. |

PLAINTIFFS' OPPOSITION TO DR. ABDULHADI'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:17-CV-03511-WHO

| Criticized SAC Allegations | Specific Factual Allegations in the SAC, and Plaintiffs' Further Response |
|---|---|
| Dr. Abdulhadi's ratification of unconstitutional conduct amounts to an actionable claim. | Dr. Abdulhadi cites no supporting authority for her point that "'ratification' is not an actionable offense." Mot. at 16:3-5. She is incorrect.[4] Dr. Abdulhadi ratified the unconstitutional conduct of those she directed in several public statements (*see* SAC ¶ 130) and again when she attended the Student Conduct hearing with her mentees and Defendant del Valle when, with full awareness of the fact Plaintiffs' rights had been violated, she did nothing to hold them accountable or to enforce reasonable consequences. *Id.* ¶ 93. |
| Dr. Abdulhadi's conduct intentionally excluded Hillel from the KYR Fair based on the Jewish identity of Hillel's members. | Dr. Abdulhadi's discriminatory conduct in directing the exclusion of Hillel from the KYR Fair, and the facts to support Plaintiffs' allegations, are addressed in the earlier entries in this table. Dr. Abdulhadi cites the Appeal Response (RJN Ex. E) to support her argument that her conduct did not amount to religious discrimination. Dr. Abdulhadi's RJN with regard to the Appeal Response should be denied for the reasons stated in Plaintiffs' concurrently filed opposition to the RJN. However, it is important to note that the questionable finding of the Appeal Response cited by Dr. Abdulhadi 1) is not legally binding in any way on the Court, and 2) was not reached by any independent investigators or decisionmakers, but rather by Dr. Abdulhadi's co-Defendants. |

---

[4] *See Dorger v. City of Napa*, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (in the Ninth Circuit *post hoc* statements approving of the unconstitutional conduct of others "evince[] ratification, regardless of whether they precede the unconstitutional actions or post-date them," denying motion to dismiss claim based on ratification) (citation omitted); *see also Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999) (liability is appropriate where a representative of the municipality "affirmatively approved" the allegedly unconstitutional conduct").

**B.      The Ostensible Participation of "Jewish Voice for Peace" in the KYR Fair is Irrelevant to Whether Plaintiffs Have Stated a Claim**

Dr. Abdulhadi argues that "[t]he Active Participation of Jewish Voice for Peace in the KYR Fair Shows that Hillel was Not Excluded Because of Anti-Semitism or Out of a Belief That All Jewish Organizations Support Zionism" (Mot. at 13:18-15:25)—a subject which is improperly raised for several disqualifying reasons. *First*, as a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994) (citation omitted). "Jewish Voice for Peace" ("JVP") is not mentioned anywhere in the SAC. While Dr. Abdulhadi's Request for Judicial Notice (the "RJN," ECF No. 135) seeks the Court's approval to consider purported "facts" regarding JVP at this stage, it should be denied for the reasons discussed in Plaintiffs' concurrently filed opposition to the RJN. And if the RJN is denied, as it should be, the Court need not consider this argument in the Motion.

Beyond those reasons, to consider Defendants' points regarding JVP would essentially be granting summary judgment, based on factual allegations that can neither be adequately investigated here nor assumed to be true on their Motion. An individual named David Spero, who is not a student and has no affiliation to SFSU, purported to be at the KYR Fair, apparently handing out literature. Plaintiffs do not know that to be accurate, nor do they know who else he was with (if anyone), what his purpose was, under what circumstances or process he came to be there, whether he was called in that morning, etc. These are disputed facts that cannot be resolved at this stage without discovery, which is currently stayed pursuant to the Court's order.

*Second*, with regard to the COAs 5-6 focused on the "Know your Rights" Fair, Plaintiffs allege in the SAC that they were treated differently than other similarly situated students when their registered student group was intentionally barred from hosting a table at the event. If their group had hosted a table, they would have had a place at the Fair to exchange ideas and information focused on the rights of Jews (regardless of what political viewpoints they had). JVP is not a registered student group, nor is David Spero a student. JVP and its supporters are not similarly situated to Hillel and the KYRF Plaintiffs. For this simple reason, what did or did not happen with JVP is irrelevant.

*Third,* even if one off-campus political group that strategically includes "Jewish" in its name

1  were allowed to participate in the KYR Fair, that does not necessarily mean that Plaintiffs, as Jews,

2  did not face religious discrimination.  In addition, whether one individual at a table constitutes a

3  "Jewish group" participating in the fair, and whether that person was equipped to provide the kind of

4  informational training related to the protection of civil rights that was offered to other students

5  whose representative *on-campus organizations* participated in the Fair, and whether JVP is a Jewish

6  group at all, are factual questions that cannot be decided against Plaintiffs on a motion to dismiss,

7  nor can the circumstances of this alleged participation in the "at capacity" KYR Fair be resolved.

8  The SAC alleges (in COAs 5-6) that the KYRF Defendants' conduct resulted in the intentional

9  exclusion of Hillel—SFSU's only recognized Jewish student organization that is open to all Jewish

10 students regardless of gender or viewpoint—from a school-sponsored event which, ironically, would

11 have equipped the KYRF Plaintiffs to protect and enforce the very civil rights Defendants violate

12 day after day.   Given its openly exclusionary political agenda and status as an off-campus

13 organization, the factual assertions concerning JVP's presence are entirely irrelevant to the question

14 of whether Plaintiffs were discriminated against.

15      With regard to the KYR Fair constitutional claims against Dr. Abdulhadi (COAs 5-6),

16 Plaintiffs have alleged the following facts in the SAC that suffice to state a claim against her

17 regardless of any purported JVP involvement: that Hillel is the only SFSU student group welcoming

18 all Jews as Jews; that Hillel was entitled to host a table at the Fair; that Hillel sought to participate

19 and was denied a table under false pretenses after being the only group subject to a viewpoint-based

20 test; that Dr. Abdulhadi advised and closely mentored members of the planning committee,

21 including Mr. Shehadeh; that Dr. Abdulhadi's advisees intentionally brought about Hillel's

22 exclusion with the knowledge, before the event, of the other KYRF Defendants; and that the

23 intentional exclusion was executed on the specific direction of Dr. Abdulhadi, who later ratified the

24 exclusion).  Plaintiffs have stated their claims against Dr. Abdulhadi—and these allegations do not

25 depend on any finding or facts regarding JVP.  *See* SAC ¶¶ 34, 113, 116-120, 130.

26      *Finally*, while any consideration of JVP's alleged participation in the KYR Fair would be

27 improper, as this is extrinsic to the allegations in the SAC and irrelevant to the question of whether

28 Plaintiffs have stated a claim, Dr. Abdulhadi's argument that JVP's participation negates a religious

1   discrimination claim is undermined by her own RJN.  According to Dr. Abdulhadi, and quoting an

2   article by her protégé and mentee, Saliem Shehadeh, that is one of the subjects of the RJN, "JVP set

3   up a table, handed out literature and signed up 14 students who expressed interest in forming a local

4   SFSU JVP chapter, *including members of SF Hillel*." (RJN Ex. C, emphasis added). Dr. Abdulhadi

5   thereby expressly admits that SF Hillel is a group whose Jewish student members hold a diverse

6   array of positions on Israel and Zionism—including anti-Zionist and anti-Israel positions, such that

7   multiple SF Hillel members would "express interest in forming a local SFSU JVP chapter." The

8   corollary is that, in contrast to the "big [Jewish] tent" of SF Hillel, *JVP is not a Jewish group that*

9   *welcomes Jewish students of all stripes*, but a political group that exclusively welcomes students

10  holding the same positions on Israel and Zionism—namely, in opposition to both.

11      Dr. Abdulhadi ignores that based on her own (mis-)characterization of Hillel as a political

12  group, and not a Jewish or religious one, *JVP would necessarily also be a political group, and not a*

13  *Jewish or religious group*.  This eviscerates the theory Dr. Abdulhadi seeks to inject that JVP's

14  presence at the fair somehow represents all Jewish students and means that Hillel's exclusion could

15  not have been based on religious discrimination.  Even if the Court were to allow Dr. Abdulhadi's

16  irrelevant extrinsic point to be considered, the extent of the consideration would be that an off-

17  campus, unrecognized, non-student, political organization strategically called "Jewish Voice for

18  Peace" participated in the KYR Fair as a cover for the intentional exclusion of and discrimination

19  against Hillel—the only campus student group representing all Jews as Jews.  Just as the KYRF

20  organizers changed the cutoff date for registration for the Fair, and excluded other groups as a cover

21  for their exclusion of Hillel, the same organizers invited an off-campus group (seemingly after the

22  cutoff) in order to whitewash their constitutionally impermissible conduct.[5]

23      **C.    Dr. Abdulhadi's Commitment to "Anti-Normalization" Is Confirmed by the**
            **SAC's Supporting Factual Allegations and Strongly Supports the Inference That**
24          **Dr. Abdulhadi Violated Plaintiffs' First and Fourteenth Amendment Rights.**

25      According to the Motion, "Plaintiffs' allegations about 'anti-semitism' and 'anti-

26  normalization' cannot support the weighty conspiracy theory they allege against Dr. Abdulhadi."

---

[5] Also irrelevant and extrinsic is any suggestion that Plaintiffs alleged that "all Jewish organizations
support Zionism," which is oddly included in the header of Section III.B of the Motion and neither
has any relation to any of the allegations in the SAC nor is correct.

1   Mot. at 14:23-25.  Dr. Abdulhadi argues that "Plaintiffs claim, without any specific facts in support,

2   that Dr. Abdulhadi subscribes to 'the anti-normalization mandate of the BDS movement, which

3   requires the disruption and silencing of divergent viewpoints...'" (Mot. at 10-13, quoting SAC ¶ 37)

4   while completely ignoring SAC ¶ 36, which alleges a very specific fact in support of that allegation:

5   Dr. Abdulhadi is a ***co-founder*** of the U.S. Campaign for the Academic and Cultural Boycott of

6   Israel (USACBI).  The SAC also cites directly to the USACBI website's "Guidelines for Applying

7   the International Academic Boycott of Israel," which "urges academics, academic

8   associations/unions, and academic — as well as other — institutions around the world…to boycott

9   and/or ***work towards the cancellation or annulment of events***, activities, agreements, or projects

10   involving Israeli academic institutions or that otherwise promote the normalization of Israel in the

11   global academy … or violate the BDS guidelines… All such academic events, whether held in Israel

12   or abroad, deserve to be boycotted on institutional grounds." SAC at 6 n.6 (emphasis added).

13          As Dr. Abdulhadi is the co-founder of a national organization which urges academic

14   institutions to cancel or annul events they believe "promote the normalization of Israel in the global

15   academy," Plaintiffs' allegations that she urged the members of academic associations that she leads

16   and affiliates with at SFSU (GUPS, AMED, COES and their allies) to shut down the Barkat event

17   and exclude Hillel from the KYR Fair are more than plausible.  Rather, they are virtually impossible

18   to credibly deny in assessing the adequacy of the SAC's factual allegations.

19          If any other community were subjected to a similar litmus test that Jews face at SFSU, and

20   only a small and decidedly unrepresentative minority of that community was determined to be

21   entitled to civil rights protection, it would lead to absurd consequences.  For example, if Defendants

22   were to only protect the rights of Catholics who condemn the Vatican—and not those who support

23   it—that would clearly be unacceptable.  Or, if there were theoretically a SFSU group for women

24   called "Future Housewives of America" that believed women should rarely leave their homes, and

25   Defendants determined that only *those* women's rights should be protected—but not those from the

26   actual SFSU group "Providing Opportunity for Women" (seeking, for example, to empower women

27   in business and leadership roles)—the campus, community, and courts would be rightfully

28   outraged—and no one would doubt for a moment that this was textbook discrimination.  If civil

19

rights law is to mean anything to any community, it must be enforced for all protected communities, including Jews.

Dr. Abdulhadi ironically argues that "Plaintiffs claim that Dr. Abdulhadi has had the authority to implement this alleged 'mandate' since 2007 when she joined the faculty…yet despite this alleged official policy and Dr. Abdulhadi's senior position, Plaintiffs do not claim that she caused the disruption or silencing of a single event for nine years, until the 2016 Barkat event." Mot. at 15. Dr. Abdulhadi seems to forget her own arguments relating to the length and detail of the First Amended Complaint ("FAC") filed in this case, which documented an anti-Semitic environment at SFSU that has been festering for many decades, and which included allegations detailing the repeated disruption and shutting down of Jewish events during that period. Consistent with the Court's suggestion in the order that "[s]hort, plain, necessary allegations – targeted to the claims alleged – are in everyone's best interests" (ECF No. 124 at 12:23-24), Plaintiffs have removed allegations from the SAC that do not directly relate to the Barkat event, the KYR Fair, or other extremely disturbing events and incidents that have occurred during the tenure of the student Plaintiffs which support the Title VI claims against SFSU and the Board of Trustees. In light of this, Dr. Abdulhadi's current criticism of the SAC for lacking 11-year-old allegations should be ignored.

Furthermore, regardless of whether the Barkat event was the first time or the twenty-seventh time that Dr. Abdulhadi directed her students and mentees to disrupt and shut down a Jewish event that "normalized" Israel's existence, with knowledge of and intent to violate the First Amendment rights of the audience members, the SAC properly alleges that Dr. Abdulhadi did that at the Barkat event and threatened to do it to the KYR Fair if Hillel were allowed to participate. The allegations are plausible because they "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Considering Dr. Abdulhadi's deeply held commitment to "anti-normalization," her authority both on campus and with USACBI, her unequivocal and oft-stated position that "Zionists" are not welcome on campus at all, let alone welcome to exercise their right to free speech and assembly, and her ratification of the repeated violations of Plaintiffs' civil rights, it is clearly plausible that there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plaintiffs have here alleged facts more than sufficient to

20

1   "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

2   It is unconvincing for Dr. Abdulhadi to argue on one hand that it is a speculative conspiracy

3   theory to suggest that she would work to silence Jews on campus, including Plaintiffs—when she

4   has unequivocally said that President Wong's statement merely *welcoming Zionist Jews' presence*

5   *on campus*, recognizing the legal requirements of the Fourteenth Amendment (among other laws),

6   was a "declaration of war" against "Muslims, Arabs, Palestinians"—*including herself*.   Dr.

7   Abdulhadi would somehow have the Court reconcile her apparent position that Zionists (Jews who

8   support the idea of Jewish self-determination) are *not* welcome to *exist* at SFSU, but *are* welcome to

9   speak, assemble, listen, engage and participate in events at SFSU.  *This* is implausible.

10   **D.     Plaintiffs Have Standing to Bring Their Claims Against Dr. Abdulhadi**

11   To establish standing, a plaintiff must do three things. First, the plaintiff must have suffered

12   an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and

13   particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of*

14   *Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).  Second, there must be a causal connection

15   between the injury and the conduct at issue—the injury has to be "fairly ... trace[able] to the

16   challenged action of the defendant, and not ... th[e] result [of] the independent action of some third

17   party not before the court." *Id.*  Third, it must be "likely," as opposed to only "speculative," that the

18   injury will be "redressed by a favorable decision." *Id.* "At the pleading stage, general factual

19   allegations of injury resulting from the defendant's conduct may suffice [to establish standing]." *Id.*

20   Plaintiffs have properly alleged general factual allegations of injury—42 U.S.C. § 1983

21   violations of their First and Fourteenth Amendment rights—relating to both the Barkat event and the

22   KYR Fair.  SAC COAs 3-6.  Plaintiffs Mandel, Volk, Kern, Merkulova and Rosekind have alleged

23   that their concrete and particularized rights to speak, hear, and assemble on April 7, 2016, without

24   being silenced, attacked and marginalized when they attended an event on a public university

25   campus. These Plaintiffs have alleged that the disruption would not have happened but for Dr.

26   Abdulhadi's conduct, that she was responsible for the disruption, and that she ratified the disruption.

27   Plaintiffs Mandel, Volk, Kern and Ben-David have alleged 42 U.S.C. § 1983 violations of their First

28   and Fourteenth Amendment rights based on the intentional prevention of Hillel from hosting a table

at the KYR Fair and the inability of Hillel's members—Jewish students—to listen, speak and participate, as Jews, or to learn about their civil rights and their ability to protect and enforce them.

Dr. Abdulhadi argues that the majority of the Plaintiffs bringing COAs 3-6 do not have standing to sue her for various reasons.  First, she claims the SAC alleges "at most only one of the Plaintiffs was even a member of Hillel" and that "only one (Mandel) is alleged to have any connection at all to Hillel."  Mot. at 6:19-22.  Dr. Abdulhadi is wrong.  As a threshold matter, the Barkat Shutdown Plaintiffs (COAs 3-4) are attendees of the event who were deprived the right to hear Mayor Barkat speak—they are not suing as members of Hillel.  As to the KYRF Plaintiffs (COAs 5-6), the SAC alleges that each of the student Plaintiffs were "*members of Hillel* while enrolled at SFSU and attended numerous Hillel events."  SAC ¶ 34.  In the context of a motion to dismiss, this allegation—which is true—must be taken as true.  *OSU*, 699 F.3d at 1058.  Therefore, this standing argument is unavailing.

Second, Dr. Abdulhadi argues that Mr. Mandel lacks standing to bring COAs 5-6 against her because he graduated the month before the Fair.  Mot. at 16:20-25.  Again, Dr. Abdulhadi is wrong. While Plaintiff Jacob Mandel was not a registered student at SFSU at the time of the Fair (which the SAC makes clear at ¶ 10), he was a recent graduate and former SF Hillel President who was still living in San Francisco and active in the San Francisco Jewish community as well as with SF Hillel.[6] *See* SAC ¶¶ 10, 18. 178.  Had Hillel been treated the same as all the other on campus groups that desired to host a table at the Fair, Mr. Mandel—a member of SFSU's community and part of a group feeling marginalized in the wake of the 2016 presidential election—would have attended the event to learn about his rights and how to protect and enforce them.  *See id.*  A plaintiff has standing if he suffers an injury-in-fact, caused by the defendants' conduct, that would likely be redressed by a favorable decision.  *Lujan*, 504 U.S. at 561.  As alleged in the SAC, Mr. Mandel suffered an injury in fact because his constitutional right to be informed of his rights as a Jew at the KYR Fair he

---

[6] It is ironic that Dr. Abdulhadi appears to argue that Mr. Mandel would not have attended the Fair because he was not an active student, as Dr. Abdulhadi seeks to introduce evidence in her RJN that David Spero hosted a table for JVP at the Fair.  Mr. Mandel is a student who had graduated from SFSU the month prior, and was still living in San Francisco at the time of the Fair.  Mr. Spero has no affiliation to SFSU whatsoever, yet Dr. Abdulhadi hopes the Court will believe that he could attend the Fair but Mr. Mandel would not have had Hillel been allowed to participate.

would have attended, and to exchange information about his rights as a Jew at the Fair, was intentionally denied by the conduct of state actor Defendants, acting under cover of state law. And that injury would clearly be redressed by a favorable decision in this lawsuit. Therefore, Mr. Mandel therefore has standing the same way that the non-student Plaintiffs who were audience members at the Barkat event have standing in those claims.

Third, Dr. Abdulhadi argues that Plaintiffs' "organizational affiliation" with Hillel was unknown to her at the time of the KYR Fair and that the SAC "fails to state the facts that would allow Dr. Abdulhadi … to intuit Plaintiffs' membership status, if any existed." Mot. at 16:27-28. But Dr. Abdulhadi's intentional discrimination against and exclusion of Hillel was clearly intended to discriminate against and exclude Hillel's members: Jewish students, including Plaintiffs. Her argument is also undermined by her RJN, which requests that the court take judicial notice of the KYRF investigation Appeal Response (Ex. E to the RJN) (which the Court should deny for the reasons expressed in Plaintiffs' concurrently-filed opposition, but which found that "Retaliation against SF Hillel SFSU amounted to actual Retaliation against [Jewish student complainants]"). ECF No. 135, Ex. E at 10. Dr. Abdulhadi did not need to know these Plaintiffs personally to deny them their civil rights, which is what the SAC alleges, and which is what she intended.

### E.   Dr. Abdulhadi Is Not Entitled to Qualified Immunity.

The Motion argues that Dr. Abdulhadi is entitled to qualified immunity because her conduct has not violated a constitutional right that was "clearly established." Mot. at 18:1-19:8. The Motion absurdly characterizes her conduct here as pursuing "[t]he idea that criticism of a particular foreign government is tantamount to ethno-religious hatred." *Id.*  As explained herein and in the SAC, it is Dr. Abdulhadi's constitutional violations of *Plaintiffs'* rights that is at issue here, not her views about Israel or even Jews. Try as she might to ignore the actual harm to the Plaintiffs in this case, this is the focus of the allegations in the SAC. A plaintiff's rights are "clearly established" if a reasonable public official in the defendant's position would have known, based on clearly established law and the information she possessed, that the conduct at issue violated the those rights. *Orin v. Barclay*, 272 F.3d 1207 (9th Cir. 2001). Based on Plaintiffs' allegations in the SAC, it is clear that a reasonable person with Dr. Abdulhadi's position would have known Plaintiffs' free speech and equal

1    protection rights would be violated based on her alleged conduct.  Further, Dr. Abdulhadi concedes

2    that the question of qualified immunity is not usually decided at this point in the litigation, i.e.,

3    before there has been any discovery (as opposed to summary judgment).  Mot. at 8:12-13.

4    Therefore, Dr. Abdulhadi's claimed entitlement to qualified immunity does not support dismissal.

### F.    Dr. Abdulhadi Has Been Sued Only in Her Individual Capacity.

6        The Motion argues that since Dr. Abdulhadi is being sued only in her individual capacity,

7    Plaintiffs must plead sufficient facts showing she directly engaged in culpable conduct.  Mot. at

8    19:12-16 (citing ECF No. 124 at 17).  As explained in detail above, Plaintiffs have done this in the

9    SAC, pleading factual allegations that are more than sufficient to "'allow[] the court to draw the

10   reasonable inference that the defendant is liable for the misconduct alleged.'"  *Iqbal*, 556 U.S. at

11   678.  Plaintiffs suggest Dr. Abdulhadi cannot be sued in her individual capacity based on conduct

12   connected to her official duties.  The Supreme Court has held the opposite.  *Hafer v. Melo*, 502 U.S.

13   21, 22-23 (1991).  The Court should disregard Dr. Abdulhadi's criticism that it is "impossible to tell

14   in what capacity she has actually been charged."  Mot. at 20:1-2.  The SAC is entirely clear,

15   repeating numerous times, that Plaintiffs have sued her only in her individual capacity.  SAC ¶¶ 159,

16   161-62, 166 & nn. 12-15; 170-71 & nn. 16-17; 178-79, 184, & nn. 18-20; 190-92, 197 & nn. 21-24.

17   While she may be frustrated that the express allegations in the SAC bar the intended result of her

18   motion, that of course has no bearing on the Court's analysis.

### G.    The SAC Does Not Attack First Amendment Rights or Academic Freedoms.

20       According to the Motion, holding Dr. Abdulhadi accountable for her own conduct—which,

21   under color of her authority as a state actor at a public university, deprived Plaintiffs of their civil

22   rights—would be requiring her to stand trial "predicated solely on [her] exercise of [her] First

23   Amendment freedoms."  This is a blatant mischaracterization of Plaintiffs' claims.  Dr. Abdulhadi's

24   freedoms are not under attack—*Plaintiffs' are*.  And Plaintiffs have repeatedly made clear they do

25   not seek to silence Dr. Abdulhadi, or change her views—they simply seek to prevent her from

26   continuing to deprive *them* of *their* right to speak, assemble, and listen to others, at public events on

27   their own public university campus.  Dr. Abdulhadi does not understand that while she is certainly

28   entitled to disagree with Mayor Barkat (who was on campus to engage in a dialogue), *she is not*

24

*entitled to shut him down from speaking or direct others to do so*.  While she may disagree with Plaintiffs' views and would prefer they not exchange them at the KYR Fair, *she cannot use her authority as a state actor to exclude them or direct others to do so*.  The Court must consider the question of whose civil rights and freedoms are relentlessly restricted on campus at SFSU—at the hands of whom, and based on what motive.  Dr. Abdulhadi has not parsed her words: According to her, most Jews are not worthy of civil rights protection at their events, when expressing themselves or when receiving information at SFSU.  According to Dr. Abdulhadi, when Jews try to understand, protect, or enforce their civil rights, it is an affront to *her* and *her "free expression"*—which she believes gives her the right to deny them those rights.

### H.   In the Alternative, Leave to Amend Should Be Granted.

Finally, the Motion argues that, in the event any portion of it is granted, "Plaintiffs do not deserve to leave to amend." Mot. at 17:21-23.  But unless a defendant makes a strong showing of undue prejudice or delay, bad faith, or futility, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The Motion fails to make this strong showing, arguing only that "there is no reason" to give Plaintiffs further opportunity to amend (should further amendment be necessary).  Notice of Mot. at 2:17-19.  Because Plaintiffs can amend if need be—it would not be futile to do so—and the Court should apply the requisite standard of "extreme liberality" and grant them leave to amend.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Lacey*, 693 F.3d at 939 ("Leave to amend shall be freely given where justice so requires, and it should be granted unless . . . the pleading could not possibly be cured by the allegation of other facts").

## VIII.   CONCLUSION

Plaintiffs have properly stated their claims in the SAC that Dr. Abdulhadi deprived them of their civil rights while acting under color of state law.  Dr. Abdulhadi has not met her burden in proving otherwise as to any of the Third, Fourth, Fifth, or Sixth Causes of Action.  Therefore, when viewing the SAC's allegations in the light most favorable to Plaintiffs as the nonmoving party, Dr. Abdulhadi's motion to dismiss should be denied.  In the event the Court grants any portion of the Motion, Plaintiffs respectfully request leave to amend.

Dated:  June 6, 2018                                 WINSTON & STRAWN LLP

                                          By:    */s/ Seth Weisburst*
                                                Robb C. Adkins
                                                Lawrence M. Hill (*pro hac vice*)
                                                Krista M. Enns
                                                Steffen N. Johnson (*pro hac vice*)
                                                Lowell Jacobson (*pro hac vice*)
                                                Seth Weisburst
                                                Alexa Perlman (*pro hac vice*)
                                                Adrianne Rosenbluth (*pro hac vice*)
                                                WINSTON & STRAWN LLP

                                                Brooke Goldstein (*pro hac vice*)
                                                Amanda Berman (*pro hac vice*)
                                                THE LAWFARE PROJECT

                                                Attorneys for Plaintiffs
                                                JACOB MANDEL, CHARLES VOLK, LIAM
                                                KERN, MASHA MERKULOVA, AARON
                                                PARKER, and STEPHANIE ROSEKIND

PLAINTIFFS' OPPOSITION TO DR. ABDULHADI'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:17-CV-03511-WHO