Robb C. Adkins (SBN 194576)
radkins@winston.com
Krista M. Enns (SBN 206430)
kenns@winston.com
Seth Weisburst (SBN 259323)
sweisburst@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Steffen N. Johnson (*pro hac vice*)
sjohnson@winston.com
Lowell D. Jacobson (*pro hac vice*)
ljacobson@winston.com
Adrianne Rosenbluth (*pro hac vice*)
arosenbluth@winston.com
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
Telephone:   (202) 282-5000
Facsimile:   (202) 282-5100

Lawrence M. Hill (*pro hac vice*)
lhill@winston.com
Alexa Perlman (*pro hac vice*)
aperlman@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:   (212) 294-6700
Facsimile:   (212) 294-4700

Brooke Goldstein (*pro hac vice*)
brooke@thelawfareproject.org
Amanda Berman (*pro hac vice*)
amanda@thelawfareproject.org
THE LAWFARE PROJECT
633 Third Avenue, 21st Floor
New York, NY 10017
Telephone:   (212) 339-6995

Attorneys for Plaintiffs
JACOB MANDEL, CHARLES VOLK,
LIAM KERN, MASHA MERKULOVA,
AARON PARKER, and STEPHANIE ROSEKIND

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MANDEL, CHARLES VOLK, LIAM KERN, SHACHAR BEN-DAVID, MICHAELA GERSHON, MASHA MERKULOVA, and STEPHANIE ROSEKIND,<br><br>      Plaintiffs,<br><br>   v.<br><br>BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, RABAB ABDULHADI, in her individual capacity, and LESLIE WONG, MARY ANN BEGLEY, LUOLUO HONG, LAWRENCE BIRELLO, REGINALD PARSON, OSVALDO DEL VALLE, KENNETH MONTEIRO, BRIAN STUART, and MARK JARAMILLA, in their official and individual capacities,<br><br>      Defendants. | **Case No. 3:17-CV-03511-WHO**<br><br>**PLAINTIFFS' OPPOSITION TO ADMINISTRATION DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [ECF NO. 131]**<br><br>Date: July 18, 2018<br>Time: 2:00 p.m.<br>Location: Courtroom 2 (17th floor)<br>Judge: William H. Orrick<br><br>Complaint Filed: June 19, 2017<br>First Am. Complaint Filed: Aug. 31, 2017<br>Second Am. Complaint Filed: Mar. 29, 2018 |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ........................................................................................................... 1

III.    STATEMENT OF ISSUES ........................................................................................... 2

IV.     LEGAL STANDARD.................................................................................................... 2

V.      OVERVIEW OF THE CLAIMS AT ISSUE................................................................ 3

        A.      Claims Under Section 1983 Based On Constitutional Violations ................................ 3

        B.      Claims Under Title VI of the Civil Rights Act of 1964................................................. 5

        C.      Claims for Declaratory and Injunctive Relief.................................................................. 6

VI.     THE MOTION SHOULD BE DENIED ...................................................................... 6

        A.      The Motion to Dismiss Does Not Carry Its Burden to Demonstrate that the
                SAC Fails to State a Cognizable Legal Claim for any Cause of Action...................... 6

                1.      The Barkat Removal Claims (First and Second Causes of Action).................. 9

                2.      The Barkat Shutdown Claims (Third and Fourth Causes of Action).............. 10

                3.      The "Know Your Rights" Fair Claims (Fifth and Sixth Causes of
                        Action) .............................................................................................................. 10

                4.      The Title VI Claims (Seventh and Eighth Causes of Action)........................ 12

                5.      Conclusion: Defendants are Incorrect; the SAC's allegations do not
                        Suffice.............................................................................................................. 16

        B.      Notwithstanding Defendants' Deficient Motion, Plaintiffs State a Cognizable
                Legal Claim for Each of the Nine Causes of Action ................................................ 17

                1.      Plaintiffs Allegations Support Legally Cognizable Section 1983
                        Claims (First through Sixth Causes of Action)............................................... 17

                2.      The SAC States Legally Cognizable Claims for Violations of Title VI
                        of the 1964 Civil Rights Act (Seventh and Eighth Causes of Action)........... 22

                3.      The SAC States a Valid Claim for Declaratory and Injunctive Relief. .......... 24

VII.    SHOULD ANY PORTION OF DEFENDANTS' MOTION BE GRANTED, THE
        COURT SHOULD ALSO GRANT LEAVE TO AMEND ................................................ 25

VIII.   CONCLUSION............................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achal v. Gate Gourmet, Inc.*,
    114 F. Supp. 3d 781 (N.D. Cal. 2015) ..................................................................2, 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................3

*Benham v. City of Charlotte*,
    625 F.3d 129 (4th Cir. 2011) ..................................................................................4

*Board of Ed. v. Pico*,
    457 U.S. 853 (1982) ...............................................................................................4

*Brooks v. Skinner*,
    139 F. Supp. 3d 869 (S.D. Ohio 2015) .............................................................14, 22

*Cedano-Viera v. Ashcroft*,
    324 F.3d 1062 (9th Cir. 2003) ................................................................................2

*Center for Bio-Ethical Reform v. Los Angeles*,
    533 F.3d 780 (9th Cir. 2008) ............................................................................18, 19

*Christie v. Iopa*,
    176 F.3d 1231 (9th Cir. 1999) ..............................................................................20

*Cole v. Oroville Union High Sch. Dist.*,
    228 F. 3d 1092 (9th Cir. 2000) .............................................................................24

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) ..............................................................................8, 9

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999)...........................................................................................6, 14

*Del Raine v. Williford*,
    32 F.3d 1024 (7th Cir. 1994) ...........................................................................11, 19

*Doe ex rel. Doe v. Derby Bd. of Educ.*,
    451 F. Supp. 2d 436 (D. Conn. 2006)......................................................................5

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995) ..................................................................................25

*Erickson v. Pardus*,
    551 U.S 89 (2007)....................................................................................................3

ii

*Doe ex rel. Farley, Piazza & Assocs. v. Gladstone Sch. Dist.*,
    No. 3:10-CV-01172, 2012 WL 2049173, at *9 ..........................................................24

*Ferdik v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992) .........................................................................................7

*Forsyth Cnty. v. Nationalist Movement*,
    505 U.S. 123 (1992)..............................................................................................17, 19

*Hal Roach Studios v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1990) .........................................................................................7

*AE ex rel. Hernandez v. Cnty. of Tulare*,
    666 F.3d 631 (9th Cir. 2012) ............................................................................................2

*Hightower v. City of San Francisco*,
    77 F. Supp. 3d 867 (N.D. Cal. 2014) .............................................................................10

*Jager v. Douglas Cnty. Sch. Dist.*,
    862 F.2d 824 (11th Cir. 1989), *cert. denied*, 490 U.S. 1090 .......................................25

*Johnson v. City of Shelby*,
    135 S. Ct. 346 (2014)........................................................................................................3

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972)..........................................................................................................4

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
    No. C 12-03762, 2014 WL 1569151 (N.D. Cal. April 17, 2014)....................................2

*Lacey v. Maricopa Cnty.*,
    693 F.3d 896 (9th Cir. 2012) ...............................................................................2, 3, 25

*Makah Indian Tribe v. Verity*,
    910 F.2d 555 (9th Cir. 1990) ............................................................................................2

*Maximo v. San Francisco Unified Sch. Dist.*,
    No. C 10-3533, 2011 WL 1045292 (N.D. Cal. Mar. 21, 2011)........................2, 7, 8, 9

*Monroe v. Pape*,
    365 U.S. 167 (1961)........................................................................................................19

*Monteiro v. Tempe Union High Sch. Dist.*,
    158 F.3d 1022 (9th Cir. 1998) .............................................................................. *passim*

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir. 2009) ............................................................................................2

*OSU Student Alliance v. Ray*,
    699 F.3d 1053 (9th Cir. 2012) .............................................................................. *passim*

PLAINTIFFS' OPPOSITION TO ADMINISTRATION DEFS.' MOT. TO DISMISS SECOND AM. COMPLAINT
Case No. 3:17-CV-03511-WHO

*Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ......................................................................................8

*Red Lion Broadcasting Co. v. FCC*,
   395 U.S. 367 (1969)....................................................................................................4

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984)...............................................................................................4, 20

*Robins v. Meecham*,
   60 F.3d 1436 (9th Cir. 1994) ........................................................................11, 19, 21

*Shaare Tefila Congregation v. Cobb*,
   481 U.S. 615 (1987)....................................................................................................5

*Sheppard v. David Evans & Assoc.*,
   694 F.3d 1045 (9th Cir. 2012) ....................................................................................3

*Stanley v. Georgia*,
   394 U.S. 577 (1969)....................................................................................................4

*Suever v. Connell*,
   579 F.3d 1047 (9th Cir. 2009) ....................................................................................3

*Swierkiewicz v. Sorema*,
   534 U.S. 506 (2002)...............................................................................................13, 22

*T.E. v. Pine Bush Cent. Sch. Dist.*,
   58 F. Supp. 3d 332 (S.D.N.Y. 2014)......................................................................5, 13

*TC v. Valley Cent. Sch. Dist.*,
   777 F. Supp. 2d 577 (S.D.N.Y. 2011).......................................................................5, 6

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ....................................................................................25

*Thomas v. Collins*,
   323 U.S. 516 (1945)....................................................................................................4

*United States v. Price*,
   383 U.S. 787 (1966)..................................................................................................17

*Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*,
   429 U.S. 252 (1977)..................................................................................................10

*Washegesic v. Bloomingdale Pub. Schs.*,
   33 F.3d 679 (6th Cir. 1994) ......................................................................................25

*Watison v. Carter*,
   668 F.3d 1108 (9th Cir. 2012) ..................................................................................25

iv

*Williams v. California*,
    764 F.3d 1002 (9th Cir. 2014) ................................................................................3, 6

**Statutes**

28 U.S.C. § 2201 ................................................................................................................8

42 U.S.C. § 2000d ..............................................................................................................5

Fed. R. Civ. P. § 8(a)(2) ......................................................................................... *passim*

Fed. R. Civ. P. § 12(b)(6) ...................................................................................................2

Fed. R. Civ. P. § 15 ..........................................................................................................25

**Other Authorities**

18A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 4446 (2d ed. 2017) ..................6, 8

6 Charles Wright, Arthur R. Miller & Mary K. Kane, *Fed. Prac. & Proc.* § 1476
    (1990) ..........................................................................................................................7

Civil Rights Act of 1964 Title VI ............................................................................. *passim*

*https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/race-origin.html* ......................................15

https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.html (last visited
    June 4, 2018) ..............................................................................................................5

https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010_pg2.html ..................................6

Wright & Miller, *Fed. Prac. & Proc.* § 4446 (2d ed. 2017) ............................................24

## I.       INTRODUCTION

On March 29, 2018, Plaintiffs filed their Second Amended Complaint ("SAC"), which sets forth nine causes of action[1] based on the Defendants' violations of, among other things, Plaintiffs' constitutional rights and of Title VI of the Civil Rights Act of 1964.  Defendants[2] have moved to dismiss the SAC in its entirety.  Dkt. 131 (the "Motion" or "Mot.").  Rather than address the applicable pleadings standards or even attempt to show how the SAC fails to state a claim, the Motion blithely asserts that the SAC is not materially different from the superseded FAC, and that it fails to address the deficiencies *in the FAC* identified in the Court's order *dismissing the FAC* with leave to amend.  *See id.*  But simply imputing the alleged flaws of the FAC to the SAC is not sufficient to meet their burden on a motion to dismiss.  Because Plaintiffs nine claims are all properly pled, and because Defendants' cursory, eight-page motion fails to show that *any* claim in the SAC is not legally cognizable, which is Defendants' burden, and because Defendants' motion fails to comply with the requirements of the Local Rules, the Motion to Dismiss should be denied in its entirety as to each of the nine causes of action.

## II.      BACKGROUND

This case proceeds on Plaintiffs' Second Amended Complaint ("SAC") filed on March 29, 2018.  Dkt. 125.  It brings nine claims against twelve defendants, alleging § 1983 claims based on violations of the First and Fourteenth Amendments arising out of (a) the removal of Plaintiffs' event hosting the mayor of Jerusalem from an available no-fee location at the center of campus to a for-free location on the outskirts of campus based on concerns about the impact of disruptive protests; (b) a stand down order issued to campus police that allowed disruptive attendees to successfully shut down that event without any consequence; and (c) the admitted discriminatory exclusion of Hillel from an official SFSU-sponsored event on pretextual grounds; and well as (d) claims arising under Title VI of the Civil Rights Act of 1964 based on a hostile educational environment for Jewish and Israeli students; and (e) a claim for declaratory and injunctive relief.

---

[1] Although the SAC originally set forth ten causes of action, the parties stipulated to withdrawal of the Tenth Cause of Action (Dkt. 130), which the Court so-ordered on April 30, 2018.  Dkt. 133.
[2] For the purposes of this Opposition, the "Defendants" are all of the named defendants other than Defendant Rabab Abdulhadi, who has filed her own motion to dismiss the claims against her.  Dkt. 136.  The "Individual Defendants" also exclude the University and the Board.

1    On April 27, 2018, Defendants filed a cursory eight-page motion to dismiss.  Dkt. 131.  The

2    Motion does little more than "hand-wave."  That is, rather than address the allegations in the SAC

3    head-on, the Motion summarily claims that "Plaintiffs have made very few material changes from

4    the dismissed FAC."  Mot. at 4 (p. 1).  The Motion is wrong.  For each of the nine claims, the SAC

5    alleges facts sufficient to support a cognizable claim.  Therefore, the Motion should be denied.

## III.   STATEMENT OF ISSUES

7    1.   Whether the Defendants have failed to meet their burden under Federal Rule of Civil

8    Procedure Rule 12(b)(6), and, therefore, the Motion should be denied.

## IV.   LEGAL STANDARD

10   Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth the required pleading

11   standards for most cases, and merely requires that the claimant "include a short and plain statement

12   of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This burden "is

13   relatively light."  *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 793 (N.D. Cal. 2015).  The

14   purpose of a 12(b)(6) motion is to test the legal sufficiency of a pleading.  *Id.*  As the movant, "[t]he

15   defendant bears the burden of demonstrating that the plaintiff has not met the pleading requirements

16   of FRCP 8(a)(2) in stating a claim."  *Maximo v. San Francisco Unified Sch. Dist.*, No. C 10-3533,

17   2011 WL 1045292, at *4 (N.D. Cal. Mar. 21, 2011); *see Makah Indian Tribe v. Verity*, 910 F.2d 555,

18   558 (9th Cir. 1990) ("The moving party has the burden of persuasion in arguing for dismissal.").

19   Thus a 12(b)(6) motion must be denied if the defendant fails to demonstrate[3] that "the non-

20   conclusory 'factual content,' and reasonable inferences from that content, [are not] plausibly

21   suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969

22   (9th Cir. 2009).  The facts set forth in the complaint are accepted as true and construed in the light

23   most favorable to the plaintiff.  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir.

24   2012).  Allegations are sufficiently plausible when they "'allow[] the court to draw the reasonable

25   inference that the defendant is liable for the misconduct alleged.'"  *Lacey v. Maricopa Cnty.*, 693

---

[3] This showing can only be made *prima facie* in the movant's opening brief; it is improper to raise new arguments in a reply brief, and a court should decline to address any such issues so raised.  *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762, 2014 WL 1569151, at *2 n.5 (N.D. Cal. April 17, 2014); *see Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1065, at n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief").

F.3d 896, 911 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).   Even after *Twombly*, "'[s]pecific facts are not necessary'" to show an entitlement to relief, as long as the complaint contains sufficient support (even if inferential) to sustain recovery under some viable legal theory.   *Id.* at 968 (quoting *Erickson v. Pardus*, 551 U.S 89, 93 (2007)); *see Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012) ("detailed factual allegations" need not be pleaded)).   Thus, allegations that describe the factual basis of the claim will survive a 12(b)(6) motion.   *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346-47 (2014).

It is black-letter law that Plaintiffs need not meet any evidentiary burden at the pleading stage, and a complaint need not invoke a particular legal theory *for proving* the claim alleged as long as its allegations fit some viable legal theory.   *See id.* (federal pleading requirements "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"). Dismissal is inappropriate unless it is demonstrated that the pleaded facts, and all reasonable inferences therefrom drawn in plaintiffs' favor, cannot support recovery under *any* viable legal theory.   *Achal*, 114 F. Supp. 3d at 193 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## V.   OVERVIEW OF THE CLAIMS AT ISSUE

### A.   <u>Claims Under Section 1983 Based On Constitutional Violations</u>

 "To state a claim under § 1983 against state officials in their individual capacities, a plaintiff must plead that the officials, 'acting under color of state law, caused the deprivation of a federal right,'" i.e., one secured by the Constitution or federal statutes.   *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012) (quoting *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009)); *see Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014).   To aver a sufficient § 1983 claim,

> [T]he plaintiff must allege that the defendant acted with sufficient culpability to breach a duty imposed by the relevant provision of federal law. . . . After *Iqbal*, the first question in a § 1983 case, like a common law tort case, is whether the defendant's conduct breached a duty to the plaintiff.

*OSU*, 699 F.3d at 1072 n.12 (internal citations omitted).   Precisely what must be pleaded to support a particular § 1983 claim depends on the underlying right in question: "Put simply, constitutional tort liability after *Iqbal* depends primarily on the requisite mental state for the violation alleged."   *Id.* at 1071.   To be sure, a valid § 1983 claim must still "'plead that each government-official defendant,

3

1   through the official's own individual actions, had violated the Constitution."  *Id.* at 1069 (citing

2   *Iqbal*).  But although pleading proximate cause is required, "[a]n action taken with the purpose of

3   violating a constitutional right, or the knowledge that such a violation will occur, will typically be

4   the foreseeable cause of the ensuing violation."  *Id.*

5        For claims alleging a violation of the First Amendment-protected freedom of expression,[4]

6   factual allegations that state actors engaged in content or viewpoint discrimination sufficiently plead

7   the breach of a federal duty to support a Section 1983.  *See OSU*, 699 F.3d at 1066-67.  Nothing in

8   *OSU* requires "specific facts" in the pleadings regarding the extent of damages or impact of that

9   discrimination, just that there was such discrimination.  *See id.*  For other rights protected by the

10  First Amendment, an allegation that defendants sought "to impose penalties or withhold benefits

11  from individuals because of their membership in a disfavored group," suffices to state a claim for an

12  abridgement of the right of association. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984).

13  Similarly, an allegation that a venue change reduces the size of an audience pleads a cognizable First

14  Amendment injury.  *See Benham v. City of Charlotte*, 625 F.3d 129, 138 (4th Cir. 2011).

15       Those same factual allegations also support the breach of a duty based on differential

16  treatment that trenches upon a fundamental right, sounding in the Fourteenth Amendment's equal

17  protection clause.  *Id.* at 1067-68 (citing *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 785, 798); *see*

18  *also id.* at 1075 & n.18.  For such breaches of duty, alleging that the state actors had "knowledge

19  suffices for free speech violations under the First and Fourteenth Amendments."  *Id.* at 1073.  Even

20  if the state actor in question did not *personally* violate the Constitutional duty, "allegations of facts

21  that demonstrate an immediate supervisor knew about the subordinate violating another's federal

22  constitutional right to free speech, and acquiescence in that violation, suffice to state free speech

23  violations under the First and Fourteenth Amendments."  *Id.* at 1075.

24       On the other hand, invidious discrimination claims—charging a breach of the Constitutional

---

[4] The First Amendment "right to freedom of speech . . . necessarily protects the right to receive it."
*Board of Ed. v. Pico*, 457 U.S. 853, 867 (1982); *Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972)
(quoting *Stanley v. Georgia*, 394 U.S. 577, 564 (1969)).  An abridgement of the right "'to hear what
[a speaker] had to say'" thus constitutes a breach of the freedom of speech.  *Id.* at 763 (citing
*Thomas v. Collins*, 323 U.S. 516 (1945)); *see also Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367,
386-90 (1969) ( "the right of the public to receive suitable access to social, political, esthetic, moral,
and other ideas and experiences . . . . may not constitutionally be abridged.").

4

1   duty imposed by the Equal Protection Clause "to not purposefully discriminate on the basis of race,

2   religion, or national origin," *OSU*, 699 F.3d at 1072 n.12—must be supported by allegations that the

3   plaintiffs *were* singled out based on race, religion, or national origin, due to the actions of a state

4   actor.  *See id.* at 1074.  Moreover, the complaint must also plead sufficient facts to support for

5   specific intent—i.e., that the state actors in question acted with the purpose of discriminating based

6   on such protected characteristic.  *See id.* at 1070.

7        **B.       Claims Under Title VI of the Civil Rights Act of 1964**

8        Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall,

9   on the ground of race, color, or national origin, be excluded from participation in, be denied the

10  benefits of, or be subjected to discrimination under any program or activity receiving federal

11  financial assistance."  42 U.S.C. § 2000d.  The United States Department of Education's ("DOE")

12  regulations state that a recipient of federal funds may not "[r]estrict an individual in any way in the

13  enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or

14  other benefit under the program." *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 353-54

15  (S.D.N.Y. 2014). "[C]ourts have regularly found that anti-Semitic harassment and discrimination

16  amount to racial discrimination," and can violate Title VI if it creates a pervasively hostile

17  environment. *Id.* at 354-55; *see Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987).

18       A pervasively hostile environment under Title VI can be established by direct and intentional

19  discrimination by state actors, their deliberate indifference to a pervasively hostile environment

20  involving peer harassment; or some combination of both.  *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp.

21  2d 577, 594 (S.D.N.Y. 2011).  "[D]eliberate indifference will often be a fact-based question, for

22  which bright line rules are ill-suited." *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 436,

23  447 (D. Conn. 2006).  According to guidance from DOE's Office for Civil Rights (OCR),[5] deliberate

24  indifference to peer harassment can occur when it "harassment is encouraged, tolerated, not

25  adequately addressed, or ignored by school employees."  To avoid Title VI liability, "[w]hen

26  responding to harassment, a school must take *immediate and appropriate action* to investigate or

27  otherwise determine what occurred…. If an investigation reveals that discriminatory harassment has

28  ──────────────────────────
[5] https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.html (last visited June 4, 2018).

PLAINTIFFS' OPPOSITION TO ADMINISTRATION DEFS.' MOT. TO DISMISS SECOND AM. COMPLAINT
Case No. 3:17-CV-03511-WHO

occurred, a school must take *prompt and effective* steps reasonably calculated to *end* the harassment, *eliminate* any hostile environment and its effects, and *prevent* the harassment from recurring."[6] (emphases added). The reasonableness of the steps taken by the school or district to cure the hostile environment is substantively evaluated after the fact-finding stage. *TC*, 777 F. Supp. 2d at 596.

In the Ninth Circuit, a Title VI claim which alleges a pervasively hostile environment will survive a motion to dismiss if the pleading alleges: (1) a hostile environment for the protected class; (2) the educational authorities' notice of the problem; and (3) failure to respond adequately to redress the problem.[7] *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998). The "[h]arassment does not have to include intent to harm, be directed at a specific target, or involve repeated incidents. Harassment creates a hostile environment when the conduct is sufficiently severe, pervasive, or persistent so as to interfere with or limit a student's ability to participate in or benefit from the services, activities, or opportunities offered by a school"[8] or effectively denies equal access to an institution's resources and opportunities, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999). Notice can be actual or constructive, and is satisfied by allegations of reports to administrators of abuse based on the protected characteristic. *Monteiro* at 1034. Alleging that the school was "deliberately indifferent" and failed to take *reasonable steps* (as opposed to *pro forma* measures) to *eliminate* the hostile environment suffices to plead failure to cure. *See id.*

## C.    Claims for Declaratory and Injunctive Relief

To state a claim for declaratory relief, the complaint must merely "state briefly the grounds upon which the subject matter jurisdiction of the district court depends, provide a short and plain statement of the claim on which relief may be granted, and include the demand for that relief." 18A Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 4446 (2d ed. 2017).

## VI.    THE MOTION SHOULD BE DENIED

### A.    The Motion to Dismiss Does Not Carry Its Burden to Demonstrate that the SAC Fails to State a Cognizable Legal Claim for any Cause of Action.

The filing of an amended pleading supersedes its predecessors, rendering each such prior

---

[6] https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010_pg2.html
[7] Whether the allegations in the pleading *also* set forth an **evidentiary** *prima facie* case of discrimination, such as that described in *Rashdan*, 764 F.3d at 1182, does not determine whether a pleading sets out a sufficient "short and plain statement" of a Title VI claim. *Contra* Dkt. 124 at 27.
[8] https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010_pg2.html

pleading a legal nullity.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990) ("an amended pleading supersedes the original"); 6 Charles Wright, Arthur R. Miller & Mary K. Kane, *Fed. Prac. & Proc.* § 1476, at 556-59 (1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies.  Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .").  After amendment, "any subsequent motion made by an opposing party should be directed *at the amended pleading*," because only the sufficiency of *that* pleading is at issue.  *See* 6 Wright, Miller, & Kane, *Fed. Prac. & Proc.* § 1476 (3d ed. 2018) (emphasis added).   Thus, arguments based on defects in superseded prior pleadings cannot demonstrate that the *current* pleading fails to state a claim for relief.  *See id.*

The Motion fails to provide any substantive analysis of the SAC, the presently operative pleading, and largely regurgitates earlier attacks on the superseded FAC by asserting without proof, legal citation, or analysis that the prior deficiencies still apply in equal measure.[9]  Its refusal to engage with and analyze the specific allegations set forth in the SAC is "particularly important when the amendment purports to cure a defective earlier pleading," as is the case here,[10] because those specific deficiencies in the FAC are no longer before the Court.  *See id.*  The Motion thus facially "fails to present sufficient facts and analysis to meet Defendants' burden" here.  *See Avalanche Funding*, 2017 WL 6040293 at *3.  Its failure to cite the proper pleading standards, identify alleged deficiencies in the operative complaint with regard to those standards, and provide such analysis to the court falls woefully short of Defendants' burden and requires denial of their motion.  *See id.*; *Maximo*, 2011 WL 1045292 at *4.

Instead of citing to pertinent legal authority and applying it to the SAC as required, the Motion cites the Order dismissing the FAC (Dkt. 124), and asserts in conclusory fashion that the

---

[9] *See* Mot. at 5-6 (pp. 2-3) (asserting that "there are no new factual allegations . . . that could justify changing the[] conclusions" of the Court's order dismissing the FAC), 6 (p. 3) ("The facts alleged in the SAC remain the same."), 8 (p. 11) ("In sum, Plaintiffs' additions to the SAC do not change the fact that they have not plausibly alleged" the substantive elements of a Title VI claim).

[10] "For example, plaintiff may file a new complaint that does not refer to or adopt any of the deficient allegations in the original pleading; if the first complaint is considered superseded by the amendment, the court is not required to dismiss the suit when a motion points up the weaknesses of the earlier pleading."  *Id.*  Likewise, a court order dismissing a pleading for failure to state a claim logically does not address the sufficiency of the allegations in a subsequent amended pleading.

7

PLAINTIFFS' OPPOSITION TO ADMINISTRATION DEFS.' MOT. TO DISMISS SECOND AM. COMPLAINT
Case No. 3:17-CV-03511-WHO

same deficiencies are contained in and fatal to the SAC. But the FAC is no longer before the Court. Defendants' improper attempt to bootstrap their earlier briefing *sub rosa* without actually discussing the SAC's specific allegations or operative law does not present enough facts and analysis to the Court to meet their burden to prove that the SAC fails to state a claim for *any* cause of action. *See Avalanche Funding* at *3; *see also Maximo* at *4. It is not only erroneous, but particularly galling and disingenuous for Defendants to complain that specific facts are not pleaded in certain instances where only Defendants have access to the information and they have thwarted Plaintiffs' efforts to obtain it through the PRA (SAC ¶¶ 132-37). Plaintiffs can allege based upon knowledge and belief that, for example, Defendants they did not treat any other group as discriminatorily, because Plaintiffs are not aware of any other group that was treated in this manner—but only Defendants have access to the information that would confirm this (*id.* ¶¶ 134-36).[11] Plaintiffs cannot prove a negative in the Pleadings without facts that are known only to Defendants. Under these circumstances, it is appropriately recognized that pleading standards be *relaxed*. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."); *see Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017).

Notably, Defendants do not even discuss any of the eight substantive causes of action[12] individually or with reference to the events from which they arise, but instead lump together each of the three First Amendment-based § 1983 claims, the three Fourteenth Amendment-based § 1983 claims, and both of the Title VI claims by their common legal theory. *Contra OSU*, 699 F.3d at 1367-68 (First and Fourteenth Amendment claims based on viewpoint discrimination "rise and fall" together and have "a common analytical predicate"). Tellingly, the Motion cites to no case law, let alone that addressing pertinent pleading standards, in requesting that the Court dismiss all six of Plaintiffs' § 1983 claims as set forth in the SAC based on its attorney argument of material similarity. *See* Mot. at 5-7 (pp. 2-4). This does not even facially attempt what is required of the Motion, which

---

[11] Although Plaintiffs timely propounded discovery on these (and other) issues, and to which Defendants waived any objection by failing to respond, the Court stayed discovery pending determination of the pleadings. Dkt. 124 at 38 n. 19. Thus, Plaintiffs can do no more at the present stage to provide these "specific facts" that are peculiarly within the hands of Defendants.

[12] Plaintiffs' Ninth Cause of Action, for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, relies upon the substantive violations set forth in the prior eight causes of action. 18A Wright & Miller, *Fed. Prac. & Proc.* § 4446 (2d ed. 2017).

1    is to prove that Rule 8(a)(2) has not been satisfied by explaining how the SAC fails to pleads the

2    necessary elements to plead (not to prove) each cause of action and/or point out the deficiencies in

3    each claim.  *See Avalanche Funding*, 2017 WL 6040293 at *3; *Maximo*, 2011 WL 1045292, at *4.

4    Rather, despite the Motion's constant refrain that it is not "materially different" or "pleads no new

5    facts" that change the outcome, review of the SAC itself reveals it *does* contain such allegations.

        **1.**      The Barkat Removal Claims (First and Second Causes of Action)

7              Defendants claim that the "unwritten, unannounced, never-before-enforced and entirely

8    discretionary, standardless policy of moving 'controversial speakers' away from CCSC" (SAC ¶ 60)

9    cannot properly support these causes of action because "[i]f that were sufficient to allege a 'policy,'

10   every claim against a state official based on a single incident could be supported by the existence of

11   a purported 'policy.'" Mot. at 5 (p.2).  Defendants are wrong.  "[E]ven a single decision by such a

12   body unquestionably constitutes an act of official government policy…. whether that action is to be

13   taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

14             Contrary to Defendants' claim that "Plaintiffs allege no facts that suggest the existence of

15   such a policy—other than the fact that the Barkat event itself was moved," (Mot. at 2) it is alleged

16   that various Defendants emailed each other to complain that the Barkat event, which would "likely

17   feature a controversial speaker," "may draw protest activity," and thus should be "direct[ed]…to

18   Seven Hills or another location…"  SAC ¶ 57.  The SAC further alleges that several Defendants

19   made clear their desire that the event not be scheduled at SFSU at all (*id.* ¶¶ 58-60), , and that

20   although event space was available in a central campus location (*id.* ¶ 142), after such space was

21   already confirmed (*id.* ¶ 54), it was mysteriously rescinded (*id.* ¶¶ 56, 60-61).  Unfortunately for

22   Defendants, the "policy" alleged that survived a Motion to Dismiss in *OSU*—the controlling

23   precedent here, which Defendants failed to cite *even once,* despite the Court's specific inquiry during

24   oral argument about why it was not cited—was similarly amorphous. 699 F.3d at 1060 ("There is no

25   specific written policy that governs the placement of publication bins, and none is required.").

26             Instead of relying on legal authority to attempt to undermine Plaintiffs' actual claims,

27   Defendants instead rely on the Court's Order dismissing the FAC—a failing strategy. In doing so,

28   Defendants miss that the SAC does not allege invidious discrimination in any of the claims relating

                                                        9

to the Barkat event, but instead alleges viewpoint discrimination in violation of the First and Fourteenth Amendments under *OSU*. The assertion that "Plaintiffs had failed to allege [specific intent]…[and] there are no new factual allegations that could justify changing these conclusions" overlooks that these claims require nothing beyond knowledge. *See OSU* at 1053.  For the same reason, Defendants misunderstand that there is no need for Plaintiffs to "allege that there were any other specific events that were materially similar" where defendants acted differently.  Mot. at 6 (p. 3). All Plaintiffs needed to allege was that "the University infringed plaintiffs' speech rights by employing a standardless policy to draw a distinction between [Hillel] and [GUPS or other groups] and by engaging in viewpoint discrimination." *OSU* at 1067.  Plaintiffs have done so (SAC ¶ 50, 154, 171).  "Therefore, the complaint also states equal protection claims for differential treatment that trenched upon a fundamental right." *OSU* at 1067, quoting *ACLU of Nev.,* 466 F.3d at 798.

### 2.   The Barkat Shutdown Claims (Third and Fourth Causes of Action)

The same holds true for the claims arising from the Shutdown of the Barkat event, where Defendants summarily assert that the Third Cause of Action is "based on the same factual allegations" that the Court found deficient in the FAC.  Mot. at 5 (p. 2).  This is the sum total of Defendants' argument that the SAC fails to state a claim for the shutdown of the Barkat event, which detail Defendants' direct role in silencing the speech through the "stand down order" (SAC ¶¶ 66-71, 75-78, 82-85) along with their acknowledgement of the disruption and the failures of Defendants that enabled the shutdown and ratified it (*id.* ¶¶ 72-74, 86-88, 91-95).  Again, Plaintiffs: allege viewpoint discrimination in violation of the First and Fourteenth Amendments under *OSU*; Defendants ignore the material change in the SAC that now pleads viewpoint discrimination as opposed to invidious discrimination for all Barkat-related claims; and allegations that Defendants knew of the constitutional deprivations suffice to state a claim. "Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability, no matter what the required mental state, so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy." *OSU* at 1076.  Here, too, Defendants summarily assert that the purported failure to assert that other similarly-situated events were not so affected is fatal to Plaintiffs' Fourth Cause of Action.  Mot. at 6 (p. 3).  Moreover,

1    Defendants ignore the repeated allegation that the "stand down" order was a violation of protocol

2    (*id.* ¶¶ 76, 83, 159, 170), which further supports the reasonable inference that there were similar

3    situations where such an order was *not* given.  *See Hightower v. City of San Francisco*, 77 F. Supp.

4    3d 867, 884 (N.D. Cal. 2014) (alleged deviation from protocol in denying permit applications

5    sufficed to state a claim for viewpoint discrimination under the First and Fourteenth Amendments).

6                **3.**    The "Know Your Rights" Fair Claims (Fifth and Sixth Causes of Action)

7             With regard to Plaintiffs' claims arising out of the Know Your Rights Fair, Defendants again

8    assert that "there are no new factual allegations supporting Claim 5 of the SAC that could justify

9    changing these conclusions."  Mot. at 5-6 (pp. 2-3).  Defendants contend that only a conclusory

10   assertion of knowledge for two defendants was added since the FAC.  *Id.* at 6 (p. 3) (citing SAC ¶

11   119).  Once again, Defendants are not only incorrect, but misread the SAC.  Because the Fifth Cause

12   of Action is based on *admitted* viewpoint discrimination in violation of the First Amendment (*e.g.*,

13   SAC ¶¶ 120-21), not merely invidious discrimination, the argument that specific intent is required is

14   both erroneous and inapposite: mere knowledge suffices.  *See OSU*, 699 F.3d at 1066-67.  Thus, the

15   allegations that Hong and Begley (¶ 122), Montiero (¶ 123), and Birello and Jaramilla (¶ 127) knew

16   of the discrimination, had power to stop it, and refused to do so suffice to state a First Amendment

17   claim.  Defendants' claims that the Fourteenth Amendment violation at the "Know Your Rights" Fair

18   was somehow limited to invidious discrimination are likewise incorrect.

19            The allegations of viewpoint discrimination also suffice to state a Fourteenth Amendment

20   claim that trenches upon a fundamental right because it states that other groups were not subject to

21   the same improper viewpoint test.  *See* SAC ¶ 118.  The SAC *further* supports an "invidious

22   discrimination claim" at least for Defendants Begley, Hong, and Monteiro (SAC ¶¶ 122-23)

23   stemming from the "Know Your Rights" fair because of their alleged knowledge of an imminent

24   violation of the deliberate exclusion of Hillel, with the power to prevent it, supports an inference of

25   the requisite specific intent.  *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1994) (citing *Del*

26   *Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994) for the proposition that when officials have

27   "actual knowledge of impending harm easily preventable," their failure to act in such circumstances

28   suggests that they actually want the harm to occur).

1      Defendants' Motion also seeks to attack causation for this claim in the SAC by advancing the

2   implausible proposition that the head of the department sponsoring the "Know Your Rights" Fair

3   (Monteiro) and two of the most powerful administrators on campus (Hong and Begley) were

4   somehow powerless to even attempt to stop it from proceeding as planned after knowing that Hillel

5   was discriminatorily excluded.   But this assertion is nothing but unsupported attorney argument

6   regarding their purported *lack* of ability—which is at most a factual dispute that only underscores

7   that dismissal is unwarranted.   It does not suffice to defeat the well-pleaded allegations in the SAC,

8   where the allegations and all reasonable inferences therefrom must be drawn in Plaintiffs' favor.

9                    **4.**      The Title VI Claims (Seventh and Eighth Causes of Action)

10      In the SAC, Plaintiffs bring one claim on behalf of Title VI Jewish Plaintiffs (COA 7) and

11   another on behalf of Title VI Israeli Plaintiffs (COA 8). To support each claim, Plaintiffs allege a

12   combination of direct discrimination by state actors and deliberate indifference by state actors to the

13   pervasively hostile educational environment from anti-Semitic and anti-Israeli peer harassment.

14   Each theory, on its own, sufficiently alleges a pervasively hostile environment exists in violation of

15   Title VI.   Plaintiffs' Title VI claims are supported by factual detail that, the hostile environment at

16   SFSU for both groups is cultivated and perpetuated both from the top-down and the bottom-up.

17      Defendants begin their Title VI analysis by claiming that "for the same reasons that Plaintiffs

18   have failed to allege equal protection violations, they have failed to allege direct discrimination in

19   violation of Title VI."   This is wrong.   The SAC alleges that "SFSU and CSU have directly and

20   intentionally discriminated against Title VI Jewish [and Israeli] Plaintiffs, ¶¶ 206 & 222, and its

21   allegations describe numerous direct actions by faculty, staff, administrators, and academic

22   departments, revealing that *SFSU itself* cultivated and fostered the hostile campus environment for

23   Jews and Israelis.   *E.g.*, SAC ¶¶ *id.* ¶¶ 36-40, 88, 93, 100-02, 108, 110-11.   These include (but are

24   hardly limited to) including President Wong's intimation that Jews who want to be Jews are not

25   welcome on campus, Defendant Abdulhadi's statement that Zionists being welcome on campus was

26   "a declaration of war," and the statements offered in support by other faculty and academic

27   departments.   But these allegations "shown to have emanated from affirmative acts by the

28   Administration Defendants" (Dkt. 124 at 28-29), are not necessary to plead Title VI claim, *see*

12

1   *supra*; they remain but a part of the hostile environment alleged to exist at SFSU for Jewish and

2   Israeli students.  In such cases "an alleged harasser need not be an agent or employee of the recipient

3   because" the "theory of liability under Title VI is premised on a . . . general duty to provide a

4   nondiscriminatory educational environment."  *Monteiro* at 1033 (citing 59 Fed. Reg. 11449).

5          Even beyond direct discrimination, the SAC clearly alleges, at ¶¶ 207 & 223, that "SFSU and

6   CSU have also failed to prevent harassment and intimidation of, and discrimination against Title VI

7   Jewish [and Israeli] Plaintiffs by other SFSU students, faculty, and administrators."  Defendants'

8   deliberate indifference to this hostile environment, alleged throughout the SAC, sufficiently alleges

9   the discrimination required at the pleading stage.  *Monteiro* at 133; *Pine Bush*, 58 F. Supp. 3d at 356.

10         Despite Defendants' misplaced reliance on the Order dismissing the FAC over authority

11  governing the allegations in the SAC, the factual allegations alleging the hostile environment for

12  Jewish and Israeli students at SFSU are *not* limited to the Barkat event and the KYR Fair.  Mot. at 7,

13  8 (pp. 4, 5).  Far beyond the § 1983 events themselves, the SAC describes the longstanding

14  environment of hostility to Jews and Israelis before the Barkat event (SAC ¶¶ 35-51), between the

15  Barkat event and the KYRF (¶¶ 85, 88-111), and after the KYR Fair (¶¶ 128-31, 135-36). To survive

16  a 12(b)(6) motion, Plaintiffs are not required to plead "specific facts" detailing their discrimination

17  nor how their educational privileges and benefits were interfered with.  *Swierkiewicz v. Sorema*, 534

18  U.S. 506, 510-11 (2002).  Nonetheless, Plaintiffs set forth their experiences in detail, describing how,

19  among other things, they have been afraid to attend certain classes (¶¶ 88, 96-97), physically

20  threatened (¶¶ 3, 43, 47-49, 51, 76-77, 81, 87, 89-90, 103, 105, 110, 130), unable to participate in

21  campus events (¶¶ 5, 117, 130) unable to host their own events without disruption (¶¶ 66-85), denied

22  access to free and central campus venues to host events (¶¶ 60-61), denied the opportunity to "table,"

23  (¶ 108), took circuitous routes to on-campus locations to avoid attention (¶ 97), and removed signs

24  of "Jewishness" that they believed would put targets on their backs (¶¶ 97-98).

25         Defendants also argue paradoxically that the findings of the KYR Fair investigation—"'that

26  SFSU Hillel was improperly excluded from the Know Your Rights Fair based on assumed status as

27  Zionists and in retaliation for their decision to invite Mayor Barkat to campus' (SAC ¶ 135)"—

28  "hardly constitutes deliberate indifference."  Mot. at 8:19-23 (p. 5).  This assertion ignores that, to

this day, more than fifteen months after the KYR Fair, there has not been *a single statement* of condemnation by the University or any of its administrators or representatives, nor by Chancellor White, opposing Hillel's intentional exclusion.  SAC ¶ 129.  Although the school's findings of wrongdoing were released to a number of people in *August 2017*, SFSU and CSU have done *nothing* to address the report's conclusions,[13] impose any consequences whatsoever on the KYRF Defendants involved, nor taken any responsibility for the fact that the only Jewish group at SFSU representing all Jews, as Jews, was wrongfully excluded from this University-sponsored event.  SAC ¶¶ 129-30.  *This is the definition of deliberate indifference.*

With regard to the allegations surrounding the traumatic events experienced by Plaintiff Ben-David, the SAC does not suggest anywhere that the incidents with Hammad, divorced from all other context, are determinative in satisfying the pleading standards for a Title VI claim.  But if an anti-Jewish environment exists that is so hostile as to effectively deny equal access to an institution's resources and opportunities, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999), such as by "forcing the student to change his or her study habits," "causing anxiety sufficient to require alternative study arrangements," or "physical violence," *see* Dkt. 124 at 32 (citing cases from other circuits), a Title VI violation has been alleged.  That is precisely what happened here.[14]  Moreover, "in analyzing a hostile environment claim, 'courts have adopted a 'totality of the circumstances' approach that rejects disaggregation of the allegations and requires only that the alleged incidents cumulatively have resulted in the creation of a hostile environment.'" *Brooks v. Skinner*, 139 F. Supp. 3d 869, 884 (S.D. Ohio 2015)).  The threats and intimidation faced by Ms. Ben-David, therefore, are just one part of a much larger illustration of the campus climate at SFSU.

---

[13] Furthermore, the findings CSU released only reflect what had already become public before the report's limited release in op-ed articles written by Defendant Abdulhadi and non-party Saliem Shehadeh; they do not amount to an official University statement on what happened at the Fair (indeed, the University has refused to make the findings public at all, or even to respond to Public Records Act and discovery requests from Plaintiffs' counsel for the investigation report).

[14] Further, Defendants assert that the SAC's allegations "do[] not support an inference that Defendants made 'an official decision not to remedy the violation'" without anything supporting such a claim. Mot. at 6:23-25. When reports were made to professors and administrators that a student was posting photos with weapons, saying he wanted to murder Israelis, and declaring his commitment to designated terrorist organization dedicated to the annihilation of Israel, and state actor Defendants chose to take no action to protect Israelis on campus, the inference is more than plausible that "an official decision" was made "not to remedy the violation." *See* SAC ¶¶ 46-49.

Defendants' citation of a single case—*Felber v. Yudof*, where a Title VI claim was lost on substantially different facts other than Jewish students were suing a California educational institution does not defeat Plaintiffs' well-pleaded Title VI claims.  Contrary to Defendants' assertion (Mot. at 8-9 (pp. 5-6)), the SAC *does not* complain about others merely having anti-normalization viewpoints or the BDS movement's existence,[15] nor does it seek to shut down even those abhorrent views. Rather, the Constitutional issues arise when others who are part of that movement seek to unlawfully shut down the speech of Jewish and Israeli students and Israeli speakers, exclude Hillel from official campus events, and festoon the campus with constant verbal and visual reminders that Plaintiffs and others similarly situated are unwelcome and should fear for their physical safety.  Although it recognized that "Title VI…provides at least a theoretical basis on which the University could be required to regulate the conduct of other students…"  *Felber* at 1187; unlike here, the *Felber* court found that its plaintiffs could not allege "'deliberate indifference' in ignoring wrongful conduct otherwise not amounting to protected speech.[16] To the contrary, plaintiffs have alleged facts that campus police have made arrests of disruptive protestors, and that the administration has engaged in an ongoing dialogue with the opposing parties in an attempt to ensure that the rights of all persons are respected…" *Felber* at 1188.  Plaintiffs in this case have alleged the exact opposite—University administrators ordered the campus police to "stand down" and facilitated the admittedly illegal disruption to violate Plaintiffs' rights without consequence, and the administration has taken *no effective measures whatsoever* to cure the hostile environment for Jewish and Israeli students.  Thus the Court should deny the Motion because it fails to carry its burden to demonstrate that factual

---

[15] Defendants' assertion that "Plaintiffs now rely extensively on allegations about the 'BDS movement' and a 'policy of anti-normalization' at SFSU are likewise incorrect, and cite only 4 paragraphs out of the entire SAC to support their characterization. Mot. at 8 (p. 5).  As is clear from review of the SAC itself, this is not some standalone offense about which Plaintiffs complain, but is offered as explanation of motivation, to support why certain actions have occurred consistent with that movement and policy and their stated goals of excluding from campus *anybody* who does not share their actual hostility towards Israelis, Jews, and Zionists.

[16] See *https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/race-origin.html* OCR has recognized that "[t]he fact that discriminatory harassment involves speech, however, does not relieve the school of its obligation to respond if the speech contributes to a hostile environment. Schools can protect students from such harassment without running afoul of students' and staff First Amendment rights. For instance, in a situation where the First Amendment prohibits a public university from restricting the right of students to express persistent and pervasive derogatory opinions about a particular ethnic group, the university can instead meet its obligation by, among other steps, communicating a rejection of stereotypical, derogatory opinions and ensuring that competing views are heard."

PLAINTIFFS' OPPOSITION TO ADMINISTRATION DEFS.' MOT. TO DISMISS SECOND AM. COMPLAINT
Case No. 3:17-CV-03511-WHO

1  allegations and inferences in the SAC cannot support Plaintiffs' Title VI claims as a matter of law.

2      **5.**   Conclusion: Defendants are Incorrect; the SAC's allegations do not Suffice

3      Accordingly, it is no surprise that, by citing a mere two cases in their entire motion,

4  Defendants violate the spirit of Local Rule 7-4(a)(5), which requires that a motion provide

5  supporting argument with citation to pertinent authorities.[17]   The only Ninth Circuit case cited

6  anywhere in the Motion simply addresses graduates' standing for declaratory and injunctive relief for

7  actions directed at students for Plaintiffs' Ninth Cause of Action, which rests upon the substance of

8  the preceding eight claims.  This case does not in any way address any of the substance of Plaintiffs'

9  factual allegations, let alone the required pleading standards.

10      In essence, Defendants ask this court to accept their argument, without proof, analysis, or

11  citation, that all the alleged flaws of the FAC are similarly present in and thus fatal to the SAC.

12  While the underlying events giving rise to Plaintiffs' claims have not changed, Defendants have

13  provided nothing but unsupported attorney argument that the contents of the SAC suffer from the

14  same problems as the FAC.  They have utterly failed to demonstrate the alleged deficiencies in the

15  SAC as is required before their Motion could be granted.  The mere six and a half pages of briefing

16  is woefully insufficient to demonstrate that the entire 45 pages of substantive allegations of the SAC

17  fail to state a claim for which relief can be granted under any cognizable legal theory.  All that is

18  necessary to disprove Defendants' unsupported attorney argument is to look to the SAC itself.

19      Even if the foregoing allegations in the SAC are somehow insufficient, Plaintiffs are,

20  however, aware of a large body of information supporting their Title VI claims that are in the

21  possession of third party Hillel, and other supporting may also be in Defendants' possession.

22  Furthermore, Plaintiff Gershon also intends to file a supplemental pleading, pursuant to Rule 15(d),

23  describing additional events relating to the hostile environment that she has experienced on campus

24  since the filing of the SAC.  All such information will provide further specific facts in support of

25  Plaintiffs' claims, even though such facts are not necessary to meet the requirements of Rule 8(a)(2)

26

27  _____
    [17] Defendants have also failed to comply with the Local Rules of this court, which independently
    support denial of their motion.  *Tri-Valley CAREs*, 671 F.3d at 1131.  Local Rule 7-4(a)(4) requires a
28  succinct statement of facts, and Local Rule 7-4(a)(3) requires that the movant provide a statement of
    issues to be decided, but the Motion lacks both.  *See* Mot.

PLAINTIFFS' OPPOSITION TO ADMINISTRATION DEFS.' MOT. TO DISMISS SECOND AM. COMPLAINT
Case No. 3:17-CV-03511-WHO

and for the SAC to survive Defendants' Motion.

### B.  Plaintiffs State a Cognizable Legal Claim for Each of the Nine Causes of Action

The SAC satisfies the pleading standards as set out in *OSU* and other cases addressing the requirements of Rule 8(a)(2).  Although Defendants unhelpfully lump together the various causes of action in the SAC by their common legal theory,[18] Plaintiffs will discuss them and their supporting allegations instead with reference to their common factual bases, which further illustrates that each cause of action states a cognizable claim for relief.  *See OSU*, 699 F.3d at 1067-68 (equal protections claims for differential treatment that trenched upon fundamental free speech rights rise and fall with the First Amendment claims).

### 1.  Plaintiffs' Allegations Support Legally Cognizable Section 1983 Claims (First through Sixth Causes of Action)

The SAC sets forth sufficient allegations to support a legally cognizable Section 1983 claim that satisfies the requirements of Rule 8(a)(2) for each of the first six Causes of Action.  Each of the individual Defendants is alleged to be (or have been, at the relevant times) a SFSU employee (SAC ¶¶ 23-28, 30-32), which sufficiently pleads that each was a state actor within the meaning of § 1983.  *See id.* ¶¶ 141, 176; *United States v. Price*, 383 U.S. 787, 805-06 (1966).  And as discussed below with regard to each of the three specific factual incidents that form the basis for Plaintiffs' Section 1983 claims, the factual allegations in the SAC meet the requirements of Rule 8(a)(2) to state a cognizable claim for relief in each of the six § 1983 Causes of Action.

#### a.  Plaintiffs' Allegations about the Removal of the Barkat Event (First & Second Causes of Action) State Cognizable First and Fourteenth Amendment Claims.

Plaintiffs' First and Second Causes of Action state valid § 1983 claims based on the Barkat Removal Defendants' breach of their Constitutional duties in abridging free speech.  The SAC avers that the Barkat Removal Defendants, acting under color of state law, refused to allow the event to occur in an available no-fee location at the center of campus and instead banished it to a remote, for-fee location based on concerns about "protest activity" drawn by the Barkat event.  SAC ¶¶ 52-60,

---

[18] The Motion purports to address all of Plaintiffs' First Amendment-based Section 1983 claims together—Mot. at 5-6 (pp. 2-3)—and all of Plaintiffs' Fourteenth Amendment-based Section 1983 claims together—Mot. at 6-7 (pp. 3-4)—notwithstanding that three separate incidents, with distinct facts and defendants are alleged to give rise to each of the pairs of First and Fourteenth Amendment claims.  See Dkt. 125 at ¶¶ 52-65 & 138-57 (Barkat Removal claims); 66-95 & 158-74 (Barkat Shutdown claims); 112-27 & 175-99 (KYRF claims).

64-65, 142, 144-46, 150, 155.   That this action and corresponding costs it imposed, and the application of the standardless "controversial speakers" policy, were motivated by concerns of protest activity (*id.* at 56-58, 63, 65) confirms that the SAC sufficiently alleges impermissible content and/or viewpoint discrimination.  *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134-35 1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation. . . . Speech cannot be financially burdened . . . simply because it might offend a hostile mob."); *Center for Bio-Ethical Reform v. Los Angeles*, 533 F.3d 780, 787-89 (9th Cir. 2008).   Nor does mere invocation of potential impact on classes transmute this impermissible restriction on speech into content-neutral reasonable time/place/manner restrictions because the motivation was not the impact from the *logistics* of the event, but from the potential protests of the event's expressive content.  *See Center for Bio-Ethical Reform*, 533 F.3d at 787-89 & n.3; SAC ¶¶ 57-58.  The SAC also sufficiently alleges the required knowledge and proximate causation elements specifically for Defendant Wong (SAC ¶¶ 59-60) and the other Barkat Removal Defendants (*id.* 56-58, 60), as required by *OSU*.  *See* 699 F.3d at 1069 (causation), 1073 (knowledge of individual violations) & 1075 (supervisor's knowledge).

Thus, the pleaded accession to the Heckler's Veto,[19] banishing the Barkat event to the remote and for-fee Seven Hills location based on listeners' reaction, suffices to state a valid claim for a breach of the First Amendment.  *OSU*, 699 F.3d at 1066-67.  And, because the SAC also alleges that others similarly situated were *not* subjected to the same First Amendment violation (SAC ¶¶ 63-64, 153-54), it also states a sufficient § 1983 claim sounding in the Fourteenth Amendment for breach of a Constitutional duty based on differential treatment that trenches upon the fundamental right of free speech.  *See OSU* at 1067-68, 1075 & n.18.

> b.  Plaintiffs' Allegations about the Shutdown of the Barkat Event (Third & Fourth Causes of Action) State Cognizable First and Fourteenth Amendment Claims.

Similarly, Plaintiffs' Third and Fourth Causes of Action state valid § 1983 claims based on the Barkat Shutdown Defendants' breach of their Constitutional duties in abridging free speech.  The SAC avers that the Barkat Shutdown Defendants, acting under color of state law, permitted the illegal disruption and shutdown of the Barkat event by ordering the campus police to "stand down,"

---

[19] "The term 'heckler's veto' is used to describe restrictions on speech that stem from listeners' negative reactions to a particular message," and is not limited to total prohibitions on speech.  *See Center for Bio-Ethical Reform*, 533 F.3d at 787 n.4.

18

supervising that shutdown, and acquiescing in and/or ratifying that shutdown under color of state law.  SAC ¶¶ 69, 71-73, 75-79, 82-85, 92-95, 159-64.  Plaintiffs' fundamental First Amendment right to hear Mayor Barkat speak and to engage in dialog with him was abridged by Barkat Shutdown Defendants' actions, which facilitated, enabled, and emboldened the complete disruption of the event.  *Id.* ¶¶ 73, 75-77, 160-61.  Purported concern for the non-existent "free speech" "rights" of the disruptors and privileging their disruption over the actual protected speech of Mayor Barkat and the First Amendment rights of attendees who wanted to dialog with him (*id.* ¶¶ 72-73, 82), does not justify the shutdown order.  *See Forsyth Cnty.*, 505 U.S. at 134-35 ("Listeners' reaction to speech is not a content-neutral basis for regulation. . . . Speech cannot be . . .banned[] simply because it might offend a hostile mob.");  *Center for Bio-Ethical Reform*, 533 F.3d 780, 787-89 (9th Cir. 2008).  Accession to the Hecker's Veto, via the stand down order allowing the disruption and refusal to take the actions necessary to allow the Barkat event to continue, constitutes improper content and/or viewpoint discrimination.  *OSU*, 699 F.3d at 1066-67.

Although the actions of the protestors were also necessary to shut down the Barkat event, the SAC sufficiently alleges Barkat Shutdown Defendants' knowledge that it would be shut down as a result of the stand down order and their deliberate refusal to otherwise intervene to stop the illegal disruption of the event.  SAC ¶¶ 75-78.  Likewise, because "'[§ 1983] makes a man responsible for the *natural consequences of his actions*,'" *OSU*, 699 F.3d at 1072 n.12 (alteration and emphasis in *OSU*) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)), the SAC's allegations that the disruption was facilitated, enabled, and emboldened by the inaction of the police (which was caused by the Barkat Shutdown Defendants' issuance and implementation of the stand down order) suffices to allege proximate cause here.  *See* SAC ¶¶ 75-78; *see also Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1994) (citing *Del Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994) for the proposition that when officials have "actual knowledge of impending harm easily preventable," their failure to act in such circumstances suggests that they actually want the harm to occur.).

Thus, the pleaded accession to the Hecker's Veto—ordering the campus police to stand down and allowing the unlawful shut down by of the Barkat event by disrupting attendees in contravention of numerous campus policies, which is not free speech—likewise suffices to state a

1  valid claim for a breach of the First Amendment.  *OSU*, 699 F.3d at 1066-67.  And, because the SAC

2  also at the very least contains sufficient factual allegations to support the reasonable inference that

3  others similarly situated were *not* subjected to the same First Amendment violations—SAC ¶¶ 73

4  (Daniel Ojeda inquiring about deviations from campus conduct procedures), 76 (order contravened

5  established policies), 83 & 159 (stand down order was contrary to campus police protocol), 170

6  (same), 171 (alleging that stand down order were not applied in other situations)—it again states a

7  sufficient § 1983 claim sounding in the Fourteenth Amendment for breach of a Constitutional duty

8  based on differential treatment that trenches upon the fundamental right of free speech.  *See OSU*,

9  599 F.3d at 1067-68, 1075 & n.18.

10          c.   Plaintiffs' Allegations about the "Know Your Rights" Fair (Fifth & Sixth
                 Causes of Action) State Cognizable First and Fourteenth Amendment Claims.

11         Likewise Plaintiffs' Fifth and Sixth Causes of Action state valid § 1983 claims based on the

12  Barkat Shutdown Defendants' breach of their Constitutional duties.  Here, the breach of KYRF

13  Defendants' Constitutional duty regarding the First Amendment relates to withholding the benefits

14  from KYRF Plaintiffs to participate in the "Know Your Rights" Fair, an official campus event

15  sponsored by numerous academic departments, "because of their membership in a disfavored

16  group," Hillel, the only campus organization that represented all Jewish students.  SAC ¶¶ 112-18;

17  *see Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984).  As SFSU's own investigation revealed,

18  this discriminatory exclusion was made at least on the basis of a political viewpoint attributed to

19  Hillel (SAC ¶¶ 120-21, 124-27) on the basis of its Jewish identity and that of its members, which

20  suffices to support a § 1983 claim for viewpoint discrimination under *OSU*.  699 F.3d at 1066-67.

21  This exclusion further prevented Plaintiffs from hearing information directed to them and dialogue

22  about protection of their rights, SAC ¶¶ 115-16, which constitutes an additional abridgement of their

23  First Amendment free speech rights.  *OSU*, 699 F.3d at 1066-67.

24         The SAC also avers that the KYRF Defendants had knowledge of this intentional exclusion

25  (SAC ¶¶ 122-23, 127), and sufficiently pleads proximate causation by alleging that the Defendants

26  had the authority to compel Hillel's inclusion but failed to do so despite their knowledge.  *Id.*; *see*

27  *OSU*, 699 F.3d at 1069, 1073.  These same provisions of the SAC also allege liability for KYRF

28

20

1   Defendants under a ratification theory (SAC ¶¶ 122-23, 127, 193), which coupled with the failure to

2   remedy the situation or punish those involved, sets forth a sufficient claim for liability.  *See Christie*

3   *v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999).

4           Thus, KYR Defendants' pleaded permitted and approved exclusion of Hillel from the "Know

5   Your Rights" Fair, based on a viewpoint (erroneously) attributed to Hillel because of its Jewish

6   Character suffices to state a valid claim for a breach of the First Amendment.  *OSU*, 699 F.3d at

7   1066-67.  And, because the SAC also alleges that others similarly situated were *not* subjected to the

8   same First Amendment violation in the form of a political litmus test (SAC ¶¶ 116, 118, 190-91,

9   193), it also states a sufficient § 1983 claim sounding in the Fourteenth Amendment for breach of a

10  Constitutional duty based on differential treatment that trenches upon fundamental First Amendment

11  rights.  *See OSU*, 699 F.3d at 1067-68, 1075 & n.18.

12          Moreover, because that viewpoint was attributed to Hillel on the basis of its Jewish identity

13  (SAC ¶¶ 127, 189-91, 193), it also supports KYRF Plaintiffs' § 1983 claim sounding in the

14  Fourteenth Amendment's Equal Protection Clause on the basis of invidious discrimination against at

15  least some of the KYRF Defendants.  This requires not merely knowledge but specific intent on the

16  part of the state actors.  *OSU*, 699 F.3d at 1070, 1073 n.14, 1074.  This, too, is supported in the SAC,

17  which expressly alleges that Defendants Begley, Hong, and Monteiro were aware of the intention to

18  exclude Hillel days in advance, allowed it to happen despite being aware that it would be a problem,

19  and had authority to reverse the discriminatory exclusion of Hillel and/or remove the official

20  imprimatur and sponsorship of SFSU and its subdivisions if that did not occur.  SAC ¶¶ 122-23; *see*

21  *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1994) (when officials have "actual knowledge of

22  impending harm easily preventable," their failure to act in such circumstances suggests that they

23  actually want the harm to occur).

24          In sum, even though the Motion neither addresses the actual allegations in the SAC nor

25  attempts to argue that those allegations failed to plead what was required under the pertinent legal

26  authorities, it is clear that under those legal authorities the SAC states valid Section 1983 claims

27  based on violations of the First and Fourteenth Amendments.  *See OSU*, 699 F.3d at 1067-68.

28  Because the SAC provides fair notice of the grounds on which its § 1983 claims rest, as Rule 8(a)(2)

1   requires; thus the Motion should be denied as to the First through Sixth Causes of Action.

2           **2.   The SAC States Legally Cognizable Claims for Violations of Title VI of the
3                  1964 Civil Rights Act (Seventh and Eighth Causes of Action)**

4           Throughout their Motion, the Defendants' base their arguments on standards for *proving* a

5   violation of Title VI—as opposed to adequately *alleging* a violation of Title VI, which is all that is

6   required at this stage.  Under the pleading requirements set forth in *Monteiro v. Tempe Union High

7   School Dist.*, 158 F.3d 1022, 1026 & 1033 (9th Cir. 1998), the SAC sufficiently alleges that

8   Defendants CSU and SFSU discriminated against Title VI Jewish Plaintiffs based on their Jewish

9   race, ancestry, and religion (Seventh COA, ¶¶ 205-06, 211-13) and against Title VI Israeli Plaintiffs

10  based on their Israeli ancestry and/or national origin (Eighth COA, SAC ¶¶ 221-22, 227-29).  *See*

11  158 F.3d at 1026.  Specifically, the SAC alleges (1) a hostile environment, (2) notice by state actors,

12  and (3) a failure to cure.  158 F.3d at 1033 (cited by the Court in ECF No. 124 at 27-28).

13          The SAC sufficiently pleads that a "hostile environment" interfered with and/or limited the

14  ability of the Title VI Jewish and Title VI Israeli plaintiffs "to participate in or benefit from the

15  services, activities or privileges provided" by CSU and SFSU.  In *Monteiro*, allegations that

16  teenaged students attended a school where they were called racial epithets by other children and such

17  terms were written on the walls of academic buildings sufficed to plead a hostile environment.  158

18  F.3d at 1034.  The SAC's allegations of repeated statements by students, faculty and administrators

19  and graffiti that "Zionists are not welcome," SAC ¶¶ 130-31, easily meets this low bar.

20          Nevertheless, as listed in Section V.A.4 above, the SAC provides more detailed allegations

21  supporting both Title VI claims even though "specific facts are not required" to plead discrimination

22  at the pleading stage.  *Swierkiewicz*, 534 U.S. at 510-11.  The separate but overlapping allegations of

23  hostile environments for Jews and Israelis also includes threats of violence (¶¶ 45-48, 81, 89-90, 97)

24  against Plaintiffs Ben-David, Mandel, and Volk, which caused Plaintiffs and others to have to change

25  their study habits and had sufficient anxiety to require "alternative study arrangements (*id.* ¶¶ 47-48)

26  and caused them leave and/or miss classes (*id.* ¶¶ 90, 96-97).  *See* Dkt. 124 at 32 (citing cases from

27  other districts regarding deprivation of equal access to education).  The SAC also alleges that actions

28  by faculty and administrators (*e.g.*, *id.* ¶¶ 36-40, 88, 93, 100-02, 108, 110-11)—including President

1   Wong's intimation that Jews who want to be Jews are not welcome on campus, Defendant

2   Abdulhadi's statement that Zionists being welcome on campus was "a declaration of war," and the

3   actions of the Barkat Removal Defendants and Barkat Shutdown Defendants—contributed to the

4   hostile environment.  *See Brooks v. Skinner*, 139 F. Supp. 3d 869, 884 (S.D. Ohio 2015) (jury could

5   reasonably conclude that harassment was magnified because it came from teachers and

6   administrators).  These allegations sufficiently plead the "hostile environment" prong of a Title VI

7   claim.  *Monteiro*, 158 F.3d at 1033-34.

8         The SAC sufficiently pleads the "notice" requirement—that Defendants CSU and SFSU had

9   notice of the hostile environment for Jewish and Israeli students—throughout, by receiving reports,

10   complaints, and administrators' actual knowledge of the hostile environment.  *E.g.*, SAC ¶¶ 43, 46,

11   48, 55-58, 89, 91, 98, 104-06, 110-11, 122-23.  President Wong has publicly "acknowledged the

12   existence of a pervasively hostile environment for Jewish and Israeli students on numerous

13   occasions over the last several years."  SAC ¶ 4; *see also id.* ¶¶ 104, 110-111, 128-30.  And the SAC

14   alleges clearly that "[t]he harassment occurs in plain sight and is widespread, well-known to

15   students, staff, and administrators, and occurs all over campus—including in the most widely

16   trafficked areas of SFSU, such as the CCSC and Malcolm X Plaza."  SAC ¶ 106; *see also* ¶ 130.

17   This more than satisfies the very basic pleading requirement of *Monteiro*, 158 F.3d at 1033-34, as

18   well as the OCR guidance that notice is satisfied if "harassment [is] in plain sight, widespread, or

19   well-known to students and staff, such as harassment occurring in hallways, during academic . . .

20   classes, during extracurricular activities . . . or through graffiti in public areas."  *See supra* note 5.

21         The SAC sufficiently pleads that CSU and SFSU were deliberately indifferent to the hostile

22   environment on campus for Jewish and Israeli students, which has been cultivated and perpetuated

23   for many years not only by students but by faculty, administrators and academic programs.  In an

24   entire section of the SAC dedicated to a "Fail[ure] to Cure these Systemic Problems," the SAC

25   alleges that "[o]n more than a dozen occasions over the last approximately two years, Defendants,

26   including SFSU and Board of Trustees of CSU, and especially including President Wong, have

27   publicly acknowledged an anti-Semitism problem that pervades SFSU," yet, "despite these repeated

28   acknowledgements of this longstanding issue, zero effective steps have been taken to cure the

1   problem or to effectuate any of the promises made in the aforementioned empty statements about

2   addressing the pervasively hostile environment for Jewish and Israeli students on campus at SFSU."

3   SAC ¶ 128.   The SAC continues with a list of eleven promised "actions" to cure the hostile

4   environment that were either never undertaken at all, or clearly failed to achieve their ostensible

5   goals.  *Id.* ¶ 129.  It follows this point with a list of twelve examples of how "the pervasively hostile

6   environment for Jewish and Israeli students at SFSU has only metastasized."  *Id.* ¶ 130.

7          In *Pine Bush*, the school was held liable for a hostile environment where the defendants knew

8   that disciplining the students who were harassing the plaintiff failed to deter future harassment from

9   other students. 58 F. Supp. at 363.   Here, it is similarly alleged that Defendants have not taken

10  "*effective* steps reasonably calculated to *end* the harassment, *eliminate* any hostile environment and

11  its effects, and *prevent* the harassment from recurring" as required for there to be *no* deliberate

12  indifference as a matter of law.  *See supra* note 5.  Accepted as true for the purposes of assessing the

13  adequacy of the SAC, such window dressing does not constitute the required "adequate response" or

14  "reasonable measures" and further supports the deliberate indifference of CSU and SFSU.  *See Doe*

15  *ex rel. Farley, Piazza & Assocs. v. Gladstone Sch. Dist.*, No. 3:10-CV-01172, 2012 WL 2049173, at

16  *9 (notwithstanding the fact that some action was taken, defendant was deliberately indifferent

17  because that action was "mild discipline" "inconsistent with the District's written policy and with the

18  severity of the alleged offenses" because defendant "was aware that its responses were ineffective").

19         Thus, it is clear that the SAC states valid Title VI claims that satisfy Rule 8(a)(2).  *See*

20  *Montiero*, 158 F.3d at 1026, 1033; Dkt. 124 at 27-28 & n.14.  Accordingly, the Motion should be

21  denied as to the Seventh and Eighth Causes of Action.

22         **3.   The SAC States a Valid Claim for Declaratory and Injunctive Relief.**

23         By alleging that Defendants violated Plaintiffs' rights under the First Amendment, Fourteenth

24  Amendment, and Title VI and including a demand for relief, the SAC has sufficiently pleaded a

25  claim for declaratory relief.   Wright & Miller, *Fed. Prac. & Proc.* § 4446 (2d ed. 2017).

26  Furthermore, as shown above, Plaintiffs sufficiently stated claims for violations of the First and

27  Fourteenth Amendments and Title VI.  At least, plaintiffs Kern and Gershon, who remain students,

28  retain "a live case or controversy justifying declaratory and injunctive relief against a school's action

24

1    or policy" that has affected and continues to affect them, which SFSU's actions and/or policies

2    directed against its Jewish and Israeli students do.  *See Cole v. Oroville Union High Sch. Dist.*, 228 F.

3    3d 1092, 1098 (9th Cir. 2000).

4               With respect to Plaintiffs Mandel, Volk, and Ben-David (each of whom has graduated), they

5    only lack standing to request declaratory and injunctive relief against a school's action or policy *as*

6    *students*.  But as set forth in the SAC, the wrongdoing by Defendants did not only violate the rights

7    of SFSU students.  Cases concerning application of school policies directed towards students alone

8    are inapposite when the impact of the government action at issue is not confined to students.  *See*

9    *Washegesic v. Bloomingdale Pub. Schs.*, 33 F.3d 679, 681-82 (6th Cir. 1994) (the named plaintiff's

10   "graduation does not end the case" because the alleged First Amendment violation "does not affect

11   students only – it *potentially* affects any member of the public who attends an event at the school"

12   (emphasis added)); *see also Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 826 n.1 (11th Cir. 1989)

13   (graduated student and his father individually challenging prayer at high school football games

14   permitted to "continue this suit . . . as people who attend the football games"), *cert. denied*, 490 U.S.

15   1090.  Just as in *Washegesic*, Defendants' First Amendment violations potentially affect any member

16   of the public who attends a future event at SFSU—which are likely to be open to the public as the

17   Barkat event and the "Know Your Rights" fair were.  Thus, even the claims of Plaintiffs Mandel,

18   Volk, and Kern for declaratory and injunctive relief are *not* moot, and the Motion to dismiss the

19   Ninth Cause of Action should be denied as to them as well.

20   **VII.   SHOULD ANY PORTION OF DEFENDANTS' MOTION BE GRANTED, THE
             COURT SHOULD ALSO GRANT LEAVE TO AMEND**

21            Defendants' request for dismissal without leave to amend is unsupported even by mere

22   attorney argument.  Mot. at 5 & 11 (pp. 2 & 8).  It is no more elaborated upon than it is appropriate.

23   In *Lacey v. Maricopa County*, the Ninth Circuit instructed that:

24           Leave to amend "shall be freely given where 'justice so requires,'" *Theme
              Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) (quoting
25            Fed. R. Civ. P. 15), and *it should be granted "unless . . . the pleading could not
              possibly be cured by the allegation of other facts*," *Watison v. Carter*, 668 F.3d 1108,
26            1117 (9th Cir. 2012) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

27   693 F.3d at 939 (emphasis added).  Having failed to even address whether any deficiencies alleged to

28   be in the SAC are incurable—and they are not—Defendants' summary request should be denied.

## VIII.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied in its entirety.   But, should the Court nonetheless grant some or all of it, the Court should also grant Plaintiffs leave to amend because Defendants have not shown (and cannot show) prejudice or a reason to do otherwise.

Dated:  June 6, 2018                                WINSTON & STRAWN LLP

                                                    By:   */s/ Seth Weisburst*

                                                          Robb C. Adkins
                                                          Lawrence M. Hill (*pro hac vice*)
                                                          Krista M. Enns
                                                          Steffen N. Johnson (*pro hac vice*)
                                                          Lowell Jacobson (*pro hac vice*)
                                                          Seth Weisburst
                                                          Alexa Perlman (*pro hac vice*)
                                                          Adrianne Rosenbluth (*pro hac vice*)
                                                          WINSTON & STRAWN LLP

                                                          Brooke Goldstein (*pro hac vice*)
                                                          Amanda Berman (*pro hac vice*)
                                                          THE LAWFARE PROJECT

                                                          Attorneys for Plaintiffs
                                                          JACOB MANDEL, CHARLES VOLK, LIAM
                                                          KERN, MASHA MERKULOVA, AARON
                                                          PARKER, and STEPHANIE ROSEKIND