David L. Mandel (SBN 152271)
c/o Jewish Voice for Peace
1611 Telegraph Ave, Suite 1020,
Oakland, CA 94612
Phone: 916 769-1641
Fax: 510 465-1616
dlmandel@gmail.com

Attorney for Amici Curiae
Jewish Studies Scholars

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JACOB MANDEL, et al.<br>Plaintiffs,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, et al.,<br>Defendants. | **CASE NO. 3:17-cv-03511-WHO**<br><br>**AMICI'S REPLY TO PLAINTIFFS' OPPOSITION TO JEWISH STUDIES SCHOLARS' MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF** |

**ISSUES TO BE DECIDED AND SUMMARY OF RELEVANT FACTS**

On May 22, 2018, Plaintiffs' counsel filed an Opposition (ECF 140) to the Motion for Leave to File Amicus Curiae Brief 9ECF 138) filed in the referenced case on May 18, 2018, by 12 Jewish studies scholars in support of Defendants' Motions to Dismiss (ECF 136) and to Strike (ECF 134 – since withdrawn per stipulation for an amended complaint). Plaintiffs' opposition relies on several assertions, namely 1) that the amicus brief repeats arguments made in the Defendants' motions; 2) that the Court's finding of potential relevance in a contested definition of antisemitism and its denial of prior motions to strike necessitate rejection of the amicus brief; 3) that the amicus brief is not helpful to the Court in determining whether Plaintiffs have failed to state a claim; and 4) that they need not establish a motive of antisemitism in order to state their claim.

Amici hereby rebut those arguments.

**ARGUMENTS IN RESPONSE**

**A. The proposed amicus brief relates to a core issue in pending motions, not a matter that has been decided.**

Amici's participation is useful to the Court because they are experts on a live legal issue that is central to Plaintiffs' allegations of discrimination: whether speech activity critical of Israel is antisemitic. Plaintiffs' allegations of discrimination depend on considering criticism of Israeli policy to be a form of antisemitic harassment. Amici, as expert Jewish studies scholars who are also personally involved with campus life, are useful to the Court in explaining why such a blanket equation is deeply contested, and why Plaintiffs' factual allegations of campus activities hostile toward Israeli policy are not sufficient to allege hostility toward Jewish students.

Citing *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, No. M 02-1486 PJH, 2007 WL 2022026, at *1 (N.D. Cal. Jul. 9, 2007), Plaintiffs' opposition correctly

states that a party seeking leave to file an amicus brief must show that its "participation is useful to or otherwise desirable to the court." But Plaintiffs could not have chosen a less applicable example than *DRAM*, in which the court rejected an attempt by the state of California to "relitigate" in the guise of an amicus brief an issue that had already been decided.

The current case is far from final. A first amended complaint has been dismissed, with leave to amend; a second amended complaint has been filed and its ability to state a claim is being challenged. The proposed amicus brief relates directly to a core issue in the pending complaint and motions.

In their Motion for Leave to File, Amici state precisely why their participation would be useful to the Court: "Amici will draw upon their knowledge of Jewish history and antisemitism to demonstrate the unacceptability of the so-called "State Department Definition of Antisemitism" that Plaintiffs seek to employ in establishing the viability of their complaint." (ECF 138, at 4:12-15)

In the accompanying brief, Amici properly expand on this issue.

**B. Either the amicus brief speaks relevantly to conclusory allegations relied upon in Plaintiffs' claims or those allegations themselves are irrelevant and should be stricken.**

Plaintiffs' central objection to Amici's motion for leave to file can be summed up in their statement:

> "The non-parties' theories – about what is or is not an appropriate definition of anti-Semitism, or what motivation is purportedly behind asserting the claims – are not useful to the determination of *whether Plaintiffs have stated their claims in the SAC*." (Id, at 4:24-26; emphasis in original)

But the Plaintiffs' SAC is rife with conclusory allegations of hostility toward Jews. As they note in opposition to Amici's motion:

> "… the 6th COA alleges that certain individual Defendants, under color of state law, deprived Plaintiffs – as Jews – of their rights to equal protection related to the

"Know Your Rights" Fair. The 7th COA is a Title VI claim regarding SFSU's hostile environment for Jewish students." (Id, at 6:9-12)

Both these legal conclusions depend on a determination that the events described (whether factually or not) were motivated by antisemitism, in which case a determination of what constitutes antisemitism is highly relevant. The Plaintiffs can't have it both ways. Either the amicus brief speaks relevantly to these allegations relied upon in the complaint and incorporated into Plaintiffs' claims – or those allegations fail to state a case and should be stricken.

C. **Plaintiffs' invocation of the "law of the case" is not applicable to Amici's argument**

Plaintiffs counsel quote the Court in its dismissal of their FAC:

"I agree the [State Department] definition [of antisemitism] is not binding on me. But while its primary author may have expressed concerns about its application in a university environment, it is – when viewed in its full context – a potentially relevant definition." (ECF 124 at 14:16)

"They then assert that this conclusion establishes the "law of the case," (ECF 140 at 2:14-16) and later assert that Amici's brief is therefore "directly thwarted and made irrelevant." (Id at 3:11-12)

But counsel err in implying that this statement negates Amici's challenge to the applicability of the so-called definition. The "potential relevance" affirmed in this quotation came in the context of Defendants' earlier motion to strike the definition completely (ECF 57), which was, in fact, denied by the Court.

Amici make an entirely different argument: that the so-called State Department definition, the only one cited by Plaintiffs, cannot provide the basis for a claim because it is contested by many scholars of the subject.

Since Plaintiffs allege that antisemitism is what motivated Defendants' alleged acts and omissions, the fact that there are competing definitions of the term is undoubtedly relevant to the

case. And that is precisely the main point of the amicus brief: It provides the Court with expert input, absent from either the complaint or the motion to dismiss, on a key conclusory assertion that is crucial to establishing Plaintiffs' case.

In other words, there is no dispute that the State Department cites a certain definition of antisemitism (though Plaintiffs, in their complaint, initially quoted a definition that no longer appears on the Department's website). It remains disputed, however, whether the definition initially cited – or equally so, the one that Plaintiffs at first failed to notice has replaced it[1] – can possibly be used to state a claim. This information is highly relevant and useful to the Court in determining whether the complaint can survive a motion to dismiss.

As for the Amicus Brief itself, the Court in its dismissal of Plaintiffs' FAC wrote:

> "As I do not reach and do not rely on the State Department's definition of anti-Semitism in this ruling, there is no need to grant the motion and it is DENIED without prejudice to proposed Amici renewing the motion with respect to any future motions." (Id at 11:28)

Indeed, the Court found multiple other justifications for its dismissal of the FAC. To the extent that those faults may have been corrected in the SAC, Plaintiffs' reliance on a single definition of antisemitism could now prove central in demonstrating their failure to state a case. That reliance could therefore make Amici's expertise even more relevant than it was previously.

### D. The Amicus Brief provides the Court information on the central issue of antisemitism and Israel, which the parties did not address.

Plaintiffs further allege that the Amici's discourse on the definition of antisemitism merely "reprises and attempts to amplify arguments the Defendants have already raised."

---

[1] Per a subsequent stipulation with Defendants (EC 143), Plaintiffs have now amended their SAC to reference the current document on the State Department website, and Defendants have withdrawn their Motion to Strike.

Amici, like the Defendants, were troubled by the Plaintiffs' initial reference to a defunct State Department web page and – even with its substitution by reference to a current page – by their proposed use of any single, disputed definition to gauge whether speech or acts on campus are anti-Jewish. Dr. Abdulhadi's motion to dismiss the SAC points out that it is the plaintiffs, and not she, who conflate criticism of Israel and antisemitism. Amici explain – in detail – what the distinction really is, describe its origin and help the Court understand why this all matters.

For example, Amici explain why, contrary to either State Department definition, it is not necessarily anti-Jewish to "compare" certain actions of the Israeli government with those of Nazis, noting that other governments are regularly compared with the Nazis and especially since to "compare" two things means to analyze both similarities and differences. Amici also point out that senior U.S. administration officials, for example Ambassador to Israel David Friedman, have themselves compared their critics, including their Jewish critics, to Nazis.

Amici also help explain to the Court why the relative newness of Israel as a state and its claim to represent worldwide Jewry makes it challenging to develop and evaluate a vocabulary for criticizing the Israeli government that does not at least touch on the question of criticism of Jews. This serious issue highlights *why* there is debate within the community of Jewish studies scholars over appropriate ways to define antisemitism.

Finally, Amici assist the Court by explaining that conflating criticism of Israel and opposition to Zionism with antisemitism is part of a consistent and pervasive strategy long employed by the organizations behind the current lawsuit and others to discredit and if possible, suppress such critical views.

Amici are academics, not litigators, but it appears to them that the Plaintiffs cannot simultaneously insist that the scholars are chasing irrelevant, chimerical aspects of the debate

over the definition of antisemitism – yet rely on a disputed definition as the basis for conclusory accusations that Defendants fostered or turned a blind eye toward antisemitism.

**E. Contrary to Plaintiffs' assertion, discriminatory intent is a necessary element to their First Amendment causes of action.**

In their opposition to Amici's motion, Plaintiffs' counsel write:

> "Plaintiffs' allegations in support of the SAC's First Amendment claims (Causes of Action 1, 3, and 5) do not require alleging a motivation (of anti-Semitism or any other). (Id at 5:3-5)

But this contradicts the Court's ruling in its dismissal of the FAC:

> "The First Amendment claims, therefore, are invidious discrimination claims. Plaintiffs have to allege defendants' *specific intent* to discriminate to state an official capacity claim; knowledge and mere supervisory responsibility will not suffice. (Id at 17:4-6)

The only such "specific intent" to discriminate alleged in the SAC – in spades – is based on the Defendants' alleged antisemitism or tolerance of it. Thus Plaintiffs' COAs 1, 3 and 5 also fail if the "facts" they put forth attempting to show specific intent rely on a single, disputed definition of antisemitism.

\* \* \*

For these reasons, the Amici Jewish Studies Scholars respectfully request that the Court use its discretion to grant leave to file the amicus brief.

Dated: June 8, 2018

                                                   Respectfully submitted,

                                                   /s/ David L. Mandel_____
                                                 DAVID L. MANDEL,
                                                 Attorney for Amici Curiae