Mark Allen Kleiman (SBN 115919)
Law Office of Mark Allen Kleiman
2907 Stanford Ave.
Venice, CA 90292
Telephone: (310) 306-8094
Facsimile: (310) 306-8491
Email: mkleiman@quitam.org

Ben Gharagozli (SBN 272302)
Law Offices of Ben Gharagozli
2907 Stanford Avenue
Marina Del Rey, CA 90292
Telephone: (661) 607-4665
Facsimile: (855) 628-5517
Email: ben.gharagozli@gmail.com

Alan F. Hunter (SBN 99805)
Elizabeth Gong Landess (SBN 138353)
GAVIN, CUNNINGHAM & HUNTER
1530 The Alameda Suite 210
San Jose, CA 95126
Telephone: (408) 294-8500
Facsimile: (408) 294-8596
Email: hunter@gclitigation.com
landess@gclitigation.com

Attorneys for RABAB ABDULHADI

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JACOB MANDEL, CHARLES VOLK, LIAM KERN, SHACHAR BEN-DAVID, MICHAELA GERSHON, MASHA MERKULOVA, and STEPHANIE ROSEKIND.

Plaintiffs,

v.

BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, RABAB ABDULHADI, in her individual capacity, and LESLIE WONG, MARY ANN BEGLEY, LUOLUO HONG, LAWRENCE BIRELLO, REGINALD PARSON, OSVALDO DEL VALLE, KENNETH MONTEIRO, BRIAN STUART, and MARK JARAMILA, in their official and individual capacities,

Defendants.

Case No.: 3:17-CV-03511-WHO

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT DR. RABAB ABDULHADI'S MOTION TO DISMISS (SECOND REQUEST)**

**(Filed concurrently with Reply to Plaintiffs' Opposition to Motion to Dismiss)**

Date: August 8, 2018
Time: 2:00 p.m.
Location: Courtroom 2 (17th floor)
Judge: William H. Orrick
Original Action Filed: June 19, 2017

## REQUEST FOR JUDICIAL NOTICE

Defendant Dr. Rabab Abdulhadi hereby requests that the Court take judicial notice of the following documents attached as Exhibit F.

| Exhibit | Description |
| --- | --- |
| F | Guidelines for Applying the International Academic Boycott of Israel: US Campaign for the Academic and Cultural Boycott of Israel (available at http://usacbi.org/guidelines-for-applying-the-international-academic-boycott-of-israel/) (last accessed June 20, 2018) |

## BASIS FOR REQUESTING JUDICIAL NOTICE

Plaintiffs have acknowledged that this website is an authoritative source by including it in their "Table of Authorities" (Dkt. 147 at iii, 24) and are therefore judicially estopped from disputing its authoritative nature here. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).

On a motion to dismiss a complaint, a court may take judicial notice of matters of public record in accordance with Federal Rule of Evidence 201 without converting the motion to dismiss to a motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688-689 (9th Cir. 2001) (citing Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986). Courts may take judicial notice of documents outside of the complaint that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Federal Rule of Evidence 201(d); Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1117, 1109 (N.D. Cal. 2003). Courts can take judicial notice of such matters when considering a motion to dismiss. Wietschner, 294 F. Supp. 2d at 1109, MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

document forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). In other words, "[a] court may consider a writing referenced in a complaint but not explicitly incorporated there in if the complaint necessarily relies on the document and its authenticity is unquestioned." Parrino v. FHP, Inc. 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds in Abrego v. Dow Chem. Co. 443 F.3d 676 (9th Cir. 2006); Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); Kneivel v. ESPN, 393 F.3d 1068, 1077 (9th Cir. 2005).

As explained further below, the Court may take judicial notice of Exhibit F.

I) Exhibit F

Plaintiffs refer to this website at footnote 6 of their Second Amended Complaint Dkt. 125 at 6 when discussing Dr. Abdulhadi's political views. These political views, Plaintiffs contend in their SAC, "*requires* the disruption and silencing of divergent viewpoints relating to the Israeli-Palestinian conflict, based on the theory that the very process of an open dialogue should be resisted because it would 'normalize' Israel's existence." Dkt. 125 at 6, 4-6. Plaintiffs also allege in paragraph 37 of their SAC that Dr. Abdulhadi is "a co-founder of the US. Campaign for the Academic and Cultural Boycott of Israel." The website print out is a page from the U.S. Campaign for the Academic and Cultural Boycott of Israel. The website also appears in pages iii and 12 of Plaintiffs' Opposition to Dr. Abdulhadi's Motion to Dismiss. As stated in Dr. Abdulhadi's Reply to Plaintiffs' Opposition, Plaintiffs have misquoted the language on this website. Since Plaintiffs rely upon this website in both their SAC and Opposition to Dr. Abdulhadi's Motion to Dismiss the SAC, the Court should take judicial notice of the document to have a full and accurate depiction of what the website actually states.

The highlighted portions of the document readily demonstrate that the Guidelines for Applying the International Academic Boycott of Israel from the US Campaign for the Academic and Cultural Boycott of Israel do not call for the disruption

of events with divergent viewpoints, and do not condone, much less require, harassing silencing, or even boycotting anyone based on their religion, ethnicity, or national origin. Indeed, the Guidelines are very narrowly tailored to achieve political objectives that are fully protected under the First Amendment. A thorough and objective review of the document reveals that there is nothing that necessarily requires the violation of Plaintiffs' or anyone's rights.

DATED: June 21, 2018

RESPECTFULLY SUBMITTED

**LAW OFFICE OF MARK ALLEN KLEIMAN**

By: /s/ Mark Allen Kleiman
Mark Allen Kleiman, Esq.

**LAW OFFICES OF BEN GHARAGOZLI**
Ben Gharagozli, Esq.

**GAVIN, CUNNINGHAM & HUNTER**
Alan F. Hunter, Esq.
Elizabeth Gong Landess, Esq.

Attorneys for Dr. Abdulhadi

# DECLARATION OF MARK KLEIMAN

I, Mark Kleiman, hereby declare as follows:

1. I am an attorney duly licensed to practice law before all courts in the State of California and am admitted to practice before this Court as well. I represent Dr. Rabab Abdulhadi. If called upon to do so, I could and would testify competently to the following based upon firsthand knowledge.

2. Attached hereto as Exhibit F is a true and correct copy of the Guidelines for Applying the International Academic Boycott of Israel from the US Campaign for the Academic and Cultural Boycott of Israel. Portions of the document are highlighted.

3. The Court's attention is respectfully directed to the following highlighted portions of the document:

a. The Academic Freedom portion of the page 1 that specifically indicates that:

i. "academic freedom carries with it *obligations*, such as the duty to respect the academic freedom of others, to ensure the fair discussion of contrary views, and to treat all without discrimination on any of the prohibited grounds." (emph. in original).

ii. "the BDS movement, including PACBI, rejects on principle boycotts of individuals based on their identity (such as citizenship, race, gender, or religion) or opinion. If, however, an individual is *representing* the state of Israel or a complicit Israeli institution (such as a dean, rector, or president), or is commissioned/recruited to participate in Israel's efforts to 'rebrand' itself, then her/his activities are subject to the institutional boycott the BDS movement is calling for. [¶] *Mere affiliation of Israeli scholars to an Israeli academic institution is*

*therefore not grounds for applying the boycott*." (emph. in original).

b. The Academic Boycott Guidelines on pages 2-4 that specifically indicates that:

i. "Accordingly, these institutions, all their activities, and all the activities they sponsor or support must be boycotted. Projects with all Israeli academic institutions should come to an end, as was the case with all South African academic institutions under apartheid."

ii. The PACBI urges "to boycott and/or work towards the cancellation or annulment of events, activities, agreements, or projects involving Israeli academic institutions or that otherwise promote the normalization of Israel in the global academy, whitewash Israel's violations of international law and Palestinian rights, or violate the BDS guidelines."

iii. "Note: An Israeli academic is entitled, as a taxpayer, to receive funding from his/her government or institution in support of academic activities, such as attendance of international conferences and other academic events, so long as this is not conditioned upon serving Israel's policy interests in any way, such as public acknowledgment of this support by the organizers of the conference or activity/event. Mere affiliation of the academic to an Israeli institution does not subject the conference or activity to boycott."

iv. "Joint projects that meet the following two conditions are *not* considered forms of normalization and are therefore exempt from boycott:

(a) the Israeli party in the project recognizes the comprehensive Palestinian rights under international law (corresponding to the 3 rights in the BDS call); and

(b) the project/activity is one of ‘co-resistance’ rather than co-existence.”

v. “Debates between Palestinian/Arabs and Israelis are also excluded from the boycott if organized without any cooperation with Israel, its lobby groups, or its complicit institutions.”

vi. “International academics who choose to review the academic work of faculty or students at Israeli universities on a *personal basis* are not conflicting with the boycott guidelines, so long as their names are not used by those universities in any way (to gain legitimacy).”

vii. “If conducting research at Israeli facilities such as archives does not entail official affiliation with those facilities (e.g. in the form of a visiting position), then the activity is not subject to boycott.”

viii. “The institutional boycott of Israeli academic institutions should continue until these institutions fulfill two basic conditions:

1. Recognize the inalienable rights of the Palestinian people as enshrined in international law (including the three basic rights outlined in the 2005 BDS Call) and
2. End all forms of complicity in violating Palestinian rights as stipulated in international law. This complicity includes discriminatory policies and practices as well as diverse roles in planning, implementing and/or justifying Israel’s human rights abuses and violations of international law.”

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 21st day of June, 2018 at Los Angeles, California.

/s/ Mark Allen Kleiman

Mark Allen Kleiman

EXHIBIT "F"




US Campaign for the Academic and Cultural Boycott of Israel



# Guidelines for Applying the International Academic Boycott of Israel

PACBI Guidelines for the International Academic Boycott of Israel (Revised July 2014)

Being the part of the Palestinian BDS National Committee (BNC) tasked with overseeing the academic and cultural boycott aspects of BDS, the Palestinian Campaign for the Academic and Cultural Boycott of Israel (PACBI) has advocated, since 2004, for a boycott of Israeli academic and cultural institutions. This is based on the fact that these institutions are deeply complicit in the Israeli system of oppression that has denied Palestinians their basic rights guaranteed by international law, or has hampered their exercise of these rights, including academic freedom and the right to education.

Academic institutions are a key part of the ideological and institutional scaffolding of Israel"s regime of occupation, colonialism and apartheid against the Palestinian people.[1] Since its founding, the Israeli academy has cast its lot with the hegemonic political-military establishment in Israel, and notwithstanding the efforts of a handful of principled academics, the Israeli academy is profoundly implicated in supporting and perpetuating Israel"s systematic denial of Palestinian rights.

The institutional academic boycott that PACBI is calling for is in line with the authoritative call by the Palestinian Council for Higher Education (CHE) for "non-cooperation in the scientific and technical fields between Palestinian and Israeli universities".[2]

**Academic Freedom**

The BNC, through the PACBI guidelines presented below, upholds the universal right to academic freedom. The institutional boycott called for by Palestinian civil society does not conflict with such freedom. PACBI subscribes to the internationally-accepted definition of academic freedom as adopted by the United Nations Committee on Economic, Social, and Cultural Rights (UNESCR):

Academic freedom includes the liberty of individuals to express freely opinions about the institution or system in which they work, to fulfill their functions without discrimination or fear of repression by the state or any other actor, to participate in professional or representative academic bodies, and to enjoy all the internationally recognized human rights applicable to other individuals in the same jurisdiction. The enjoyment of academic freedom carries with it *obligations*, such as the duty to respect the academic freedom of others, to ensure the fair discussion of contrary views, and to treat all without discrimination on any of the prohibited grounds. [3]

Anchored in precepts of international law and universal human rights, the BDS movement, including PACBI, rejects on principle boycotts of individuals based on their identity (such as citizenship, race, gender, or religion) or opinion. If, however, an individual is *representing* the state of Israel or a complicit Israeli institution (such as a dean, rector, or president), or is commissioned/recruited to participate in Israel"s efforts to "rebrand"□ itself, then her/his activities are subject to the institutional boycott the BDS movement is calling for.

*Mere affiliation of Israeli scholars to an Israeli academic institution is therefore not grounds for applying the boycott.*

While an individual"s academic freedom should be fully and consistently respected in the context of academic boycotts, an individual academic, Israeli or otherwise, cannot be exempt from being subject to "common sense"□ boycotts (beyond the scope of the PACBI institutional boycott criteria) that conscientious citizens around the world may call for in response to what they widely perceive as egregious

Case 3:17-cv-03511-WHO Document 154 Filed 06/21/18 Page 11 of 15

individual complicity in, responsibility for, or advocacy of violations of international law (such as direct or indirect involvement in the commission of war crimes or other grave human rights violations; incitement to violence; racial slurs; etc.). At this level, Israeli academics should not be automatically exempted from due criticism or any lawful form of protest, including boycott; they should be treated like all other offenders in the same category, not better or worse. This is in accordance with the Universal Declaration of Human Rights, in which the BDS movement"s principles are based, and which states:

In the exercise of his rights and freedoms, everyone shall be subject only to such limitations as are determined by law solely for the purpose of securing due recognition and respect for the rights and freedoms of others and of meeting the just requirements of morality, public order, and the general welfare in a democratic society. [4]

**Academic Boycott Guidelines**

Since 2004, PACBI has carefully examined many academic projects and activities, assessing the applicability of the boycott criteria to them and, accordingly, has issued open letters, statements or advisory opinions on them. Based on this experience and in response to the burgeoning demand for PACBI"s specific guidelines on applying the academic boycott to diverse projects, from conferences to exchange programs and research efforts, the Campaign lays out below unambiguous, consistent and coherent criteria and guidelines that specifically address the nuances and particularities of the academy.

These guidelines are mainly intended to assist conscientious academics and academic bodies around the world to be in harmony with the Palestinian call for boycott, as a contribution towards upholding international law and furthering the struggle for freedom, justice and equality. Similar guidelines for the cultural boycott have been issued by PACBI [5].

As a general overriding rule, all Israeli academic institutions, unless proven otherwise, are subject to boycott because of their decades-old, deep and conscious complicity in maintaining the Israeli occupation and denial of basic Palestinian rights, whether through their silence, actual involvement in justifying, whitewashing or otherwise deliberately diverting attention from Israel"s violations of international law and human rights, or indeed through their direct collaboration with state agencies in the planning and implementation of projects that contravene international law and Palestinian rights. Accordingly, these institutions, all their activities, and all the activities they sponsor or support must be boycotted. Projects with all Israeli academic institutions should come to an end, as was the case with all South African academic institutions under apartheid.

**Based on the above, PACBI urges academics, academic associations/unions, and academic — as well as other — institutions around the world, where possible and as relevant, to boycott and/or work towards the cancellation or annulment of events, activities, agreements, or projects involving Israeli academic institutions or that otherwise promote the normalization of Israel in the global academy, whitewash Israel"s violations of international law and Palestinian rights, or violate the BDS guidelines.**

Specifically, the following events, activities, or situations are in violation of the Palestinian academic boycott:

1. **Academic events (such as conferences, symposia, workshops, book and museum exhibits) convened or co-sponsored by Israel, complicit Israeli institutions or their support and lobby groups in various countries.** All such academic events, whether held in Israel or abroad, deserve to be boycotted on institutional grounds. These boycottable activities include panels and other activities sponsored or organized by Israeli academic bodies or associations at international conferences outside Israel. Importantly, they also include the convening in Israel of meetings of international bodies and associations.

   The general principle is that an event or project carried out under the sponsorship/aegis of or in affiliation with or funding by an official Israeli body or a complicit institution (including lobby groups) constitutes complicity and therefore is deserving of boycott. The same may apply to support or sponsorship from non-Israeli institutions that serve Israeli propaganda purposes.

2. **Research and development activities that fall into these broad categories:**

   (a) **Among academic institutions – Institutional cooperation agreements with Israeli universities or research institutes.** These agreements, concluded between international and Israeli academic institutions, typically involve the exchange of faculty and students and, more importantly, the conduct of joint research. Many of these schemes are sponsored and funded by the European Union (in the case of Europe), and independent and government foundations elsewhere.

(b) **Among the Israeli government and other governments or foundations/institutions.** Researchers in such projects could be based at U.S., European or other universities.

(c) **Among corporations and academic institutions –** Research and development activities on behalf of international corporations involving contracts or other institutional agreements with departments or centers at Israeli universities.

The clearest example of academic complicity with Israel that is supported by governments is Horizon 2020 [6]. Including Israel in this massive academic research project despite Israel's persistent violations of the human rights clause of the EU-Israel Association Agreement [7], the legal framework for Horizon and other EU-Israel schemes, is tantamount to whitewashing the long list of violations of human rights that Israel and its complicit universities have committed over the last decades.

Other examples include the United States-Israel Binational Science Foundation (BSF) [8], an institution established by the US and Israeli governments in 1972 to sponsor research by Israelis and Americans, and the "Eureka Initiative," [9] a European inter-governmental initiative set up in 1985 that includes Israel as the only non-European member. The Britain-Israel Research and Academic Exchange Partnership (BIRAX), a politically motivated project that aims to counter the growing support of the academic boycott of Israel among British academics and their unions [10] is another example.

3. **Funding from Israel or its lobby groups to academic activities/projects.** All academic projects and activities funded, partially or fully, by Israel or any of its lobby groups are boycottable. Any international academic forum/project that accepts funding from Israel, its lobby groups or complicit institutions is conflicting with the Palestinian academic boycott of Israel.

**Note:** An Israeli academic is entitled, as a taxpayer, to receive funding from his/her government or institution in support of academic activities, such as attendance of international conferences and other academic events, so long as this is not conditioned upon serving Israel"s policy interests in any way, such as public acknowledgement of this support by the organizers of the conference or activity/event. Mere affiliation of the academic to an Israeli institution does not subject the conference or activity to boycott.

4. **Addresses and talks at international venues by Israeli state officials or official representatives of Israeli academic institutions** such as presidents, rectors or deans.
5. **Study abroad schemes in Israel for international students.** These programs are usually housed at Israeli universities and are part of the Israeli propaganda effort, designed to give international students a "positive experience" of Israel, whitewashing its occupation and denial of Palestinian rights. Publicity and recruitment for these schemes through students" affairs offices or academic departments (such as Middle East and international studies centers) at universities abroad should come to an end.
6. **Special academic honors or recognition granted to Israeli officials, representatives of Israeli academic institutions (such as the bestowal of honorary degrees and other awards) or to Israeli academic or research institutions.** Such institutions and their official representatives are complicit and as such should be denied this recognition.
7. **Normalization Projects.** Academic activities and projects involving Palestinians and/or other Arabs on one side and Israelis on the other (whether bi- or multi- lateral) that are based on the false premise of symmetry/parity between the oppressors and the oppressed or that claim that both colonizers and colonized are equally responsible for the "conflict" are intellectually dishonest and morally reprehensible forms of normalization that ought to be boycotted [11]. Far from challenging the unjust status quo, such projects contribute to its endurance. Examples include events, projects, or publications that are designed explicitly to bring together Palestinians/Arabs and Israelis so they can present their respective narratives or perspectives, or to work toward reconciliation without addressing the root causes of injustice and the requirements of justice. Other factors that PACBI takes into consideration in evaluating such activities and projects are the sources of funding, the design of the project or event, the objectives of the sponsoring organization(s), the participants, and similar relevant factors.

Joint projects that meet the following two conditions are *not* considered forms of normalization and are therefore exempt from boycott:

(a) the Israeli party in the project recognizes the comprehensive Palestinian rights under international law (corresponding to the 3 rights in the BDS call); and

(b) the project/activity is one of "co-resistance" rather than co-existence.[12]

Debates between Palestinians/Arabs and Israelis are also excluded from the boycott if organized without any cooperation with Israel, its lobby groups, or its complicit institutions.

Conditioning support for Palestinian academic institutions on their "partnership" with Israeli institutions is also a coercive form of normalization that is rejected by the BNC, including PACBI and the Palestinian Federation of Unions of University Professors and Employees (PFUUPE). It contributes to covering up the Israeli institutions" complicity and to enhancing their legitimacy as centers of excellence, instead of directly and independently strengthening the research capacity of Palestinian institutions.

International academics who insist on crossing the BDS "picket line" by pursuing activities with boycottable Israeli institutions and then visiting Palestinian institutions or groups for "balance," violate the boycott guidelines and contribute to the false perception of symmetry between the colonial oppressor and the colonized. The BNC (including PACBI) rejects this attempt at "fig-leafing"[13] and does not welcome such visits to Palestinian institutions.

8. **Institutional membership of Israeli associations in world bodies.** Targeted and selective campaigns demanding the suspension of Israeli membership in international forums contribute towards pressuring Israel until it respects international law. Just as South Africa"s membership was suspended in world academic–among other–bodies during apartheid, so must Israel"s.
9. **Publishing in or refereeing articles for academic journals based at Israeli universities or published in collaboration with Israeli institutions, or granting permission to reprint material published elsewhere in such Israel-based journals.** These journals include those published by international associations but housed at Israeli universities. Efforts should be made to re-locate the editorial offices of these journals to universities outside Israel.
10. **Serving as external reviewers for dissertations, writing recommendations or other forms of refereeing such as advising on hiring, promotion, tenure, and grant-making decisions at Israeli universities** [14]. International academics who choose to review the academic work of faculty or students at Israeli universities *on a personal basis* are not conflicting with the boycott guidelines, so long as their names are not used by those universities in any way (to gain legitimacy). Accepting to be on a dissertation, referee or review committee appointed by or serving an Israeli university, however, directly conflicts with the institutional boycott of these universities, as it legitimates Israel"s academic standing around the world. The boycott also applies to writing tenure or promotion recommendations addressed to university administrators. Furthermore, international faculty should not accept to write recommendations for students hoping to pursue studies in Israel, as this facilitates the violation of guideline 11 below.
11. **International students enrolling in or international faculty teaching or conducting research at degree or non-degree programs at an Israeli institution.** If conducting research at Israeli facilities such as archives does not entail official affiliation with those facilities (e.g. in the form of a visiting position), then the activity is not subject to boycott.
12. **All academic visits or fact-finding missions that receive funding from Israel, its complicit institutions or its international lobby groups**. Israeli government funding or funding by Israeli lobby groups should be boycotted. On the other hand, balanced, independent fact-finding missions, even those that include meetings with complicit Israeli academic institutions, are not boycottable, provided that no institutional link (e.g., seminars, workshops, exhibits, etc.) of any sort is established with Israeli institutions.

**The institutional boycott of Israeli academic institutions should continue until these institutions fulfill two basic conditions:**

1. **Recognize the inalienable rights of the Palestinian people as enshrined in international law**(including the three basic rights outlined in the 2005 BDS Call) and
2. **End all forms of complicity in violating Palestinian rights as stipulated in international law.** This complicity includes discriminatory policies and practices as well as diverse roles in planning, implementing and/or justifying Israel"s human rights abuses and violations of international law.

**PACBI**
www.pacbi.org
pacbi@pacbi.org

Notes:

[1] http://bdsmovement.net/files/English-BNC_Position_Paper-Durban_Review.pdf

[2] The Palestinian Council for Higher Education (CHE), composed of heads of Palestinian universities and representatives from the community, has, since the 1990″s, adhered to its principled position of non-cooperation with Israeli universities until Israel ends its occupation; this position was reiterated several times, including in a CHE statement of thanks to the UK academic union NATFHE in 2006 and in a CHE letter addressed to PACBI in 2005: http://www.pacbi.org/etemplate.php?id=2352

Case 3:17-cv-03511-WHO Document 154 Filed 06/21/18 Page 14 of 15

[3] UN Committee on Economic, Social, and Cultural Rights, "Implementation of the International Covenant on Economic, Social, and Cultural Rights," Art. 13, "The Right to Education," December 8, 1999, http://www.unhchr.ch/tbs/doc.nsf/0/ae1a0b126d068e868025683c003c8b3b?Opendocument. Emphasis is added.

[4] United Nations, "Universal Declaration of Human Rights" (1948), Article 29(2).

[5] http://www.pacbi.org/etemplate.php?id=1045

[6] See http://ec.europa.eu/programmes/horizon2020/

[7] http://www.bdsmovement.net/2008/%E2%80%9Cno-new-eu-israel-action-plan-in-april-2009%E2%80%9D-179

[8] http://www.bsf.org.il/BSFPublic/Default.aspx

[9] http://www.mi.government.bg/en/themes/eureka-initiative-23-287.html

[10] http://www.pacbi.org/etemplate.php?id=788

[11] http://www.pacbi.org/etemplate.php?id=1749

[12] http://www.maannews.net/eng/ViewDetails.aspx?ID=405314

[13] http://www.pacbi.org/etemplate.php?id=1645

[14] In 2002, more than 700 European academics signed this declaration: "I can no longer in good conscience continue to cooperate with official Israeli institutions, including universities. I will attend no scientific conferences in Israel, and I will not participate as referee in hiring or promotion decisions by Israeli universities, or in the decisions of Israeli funding agencies. I will continue to collaborate with, and host, Israeli scientific colleagues on an individual basis." (http://www.guardian.co.uk/uk/2002/jul/08/highereducation.israel )

Posted on 31-07-2014

**Share this:**






**USACBI**

Home

Endorsers

USACBI Newsletters

Donate

Contact Us

Case 3:17-cv-03511-WHO Document 154 Filed 06/21/18 Page 15 of 15




SUBSCRIBE TO USACBI UPDATES

Enter your email address to subscribe to the USACBI website. You'll receive an email every time a new post is made.

Email Address

SUBSCRIBE

SEARCH

Search Posts...

All Rights Reserved