Mark Allen Kleiman (SBN 115919)
Law Office of Mark Allen Kleiman
2907 Stanford Avenue
Venice, CA 90292
Telephone: (310) 306-8094
Facsimile:  (310) 306-8491
Email: mkleiman@quitam.org

Ben Gharagozli (SBN 272302)
Law Offices of Ben Gharagozli
2907 Stanford Avenue
Marina Del Rey, CA  90292
Telephone: (661) 607-4665
Facsimile:  (855) 628-5517
Email: ben.gharagozli@gmail.com

Alan F. Hunter (SBN 99805)
Elizabeth Gong Landess (SBN 138353)
GAVIN, CUNNINGHAM & HUNTER
1530 The Alameda Suite 210
San Jose, CA 95126
Telephone: (408) 294-8500
Facsimile:  (408) 294-8596
Email: hunter@gclitigation.com
         landess@gclitigation.com

Attorneys for RABAB ABDULHADI

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MANDEL, CHARLES VOLK, LIAM KERN, SHACHAR BEN-DAVID, MICHAELA GERSHON, MASHA MERKULOVA, and STEPHANIE ROSEKIND,<br><br>Plaintiffs,<br>v.<br><br>BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, RABAB ABDULHADI, in her individual capacity, and LESLIE WONG, MARY ANN BEGLEY, LUOLUO HONG, LAWRENCE BIRELLO, REGINALD PARSON, OSVALDO DEL VALLE, KENNETH MONTEIRO, BRIAN STUART, and MARK JARAMILA, in their official and individual capacities,<br><br>Defendants. | Case No.: 3:17-CV-03511-WHO<br><br>**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:   August 8, 2018<br>Time:  2:00 p.m.<br>Location: Courtroom 2, 17th Floor<br>Judge: William H. Orrick<br>Original Action Filed: June 19, 2017 |

---

REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION TO DIMISS PLAINTIFF'S
SECOND AMENDEDC COMPLAINT
Case No. 3:17-CV-03511-WHO

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

1.    INTRODUCTION ................................................................................................1

2.    PLAINTIFFS MISSTATE OR IGNORE THE LAW OF THE CASE, MISCOMPREHEND CASE LAW THEY RELY ON, AND ARGUE "FACTS" THEY NEVER ALLEGED IN THEIR SAC ..................................................1

    A.    Plaintiffs Cannot Relitigate the Court's Holdings about Invidious Discrimination and Ought Not Ignore the Court's Prior Observations ................1

    B.    Plaintiffs Cannot Make up Facts about Supervision That Are Not in the SAC and Argue These "Alternative Facts" in Their Opposition ....................2

    C.    Adding and Arguing "Alternative Facts Cannot Disguise the Fact That Dr. Abdulhadi Is Not Liable Because the Allegations Do Not Establish That Either She or the Students Acted under Color of State Law ................................3

    D.    Plaintiffs Attempt to Avoid this Court's Ruling That They Must Show Specific Intent to Discriminate by Referring to Prison Cases That the Court Has Ruled Inapposite – and By Then Misquoting the Holdings of Those Cases .......................................................................................................6

    E.    Plaintiffs Cannot Make up Facts about Dr. Abdulhadi's Alleged Anti-Semitism and Argue These "Alternative Facts" in Their Opposition ..........7

    F.    Plaintiffs Need to Falsely Smear Dr. Abdulhadi as an Anti-Semite Because Their Case Collapses Without It ...........................................................10

    G.    Dismissal Is Required Because Plaintiffs Have Failed to Plead Non-Conclusory Factual Allegations That Would Make Dr. Abdulhadi's Culpability Plausible..........................................................................................10

    H.    Plaintiffs' Allegations Made on Information and Belief Fail Because, at the Least, They Are Not Plead with Sufficient Factual Support ....................13

    I.    Plaintiffs Lack Standing to Complain on Hillel's Behalf..................................14

     J.       The Radically Expanded Nature of Supervisory Liability Plaintiffs Seek to Impose Proves Dr. Abdulhadi Is Entitled to Qualified Immunity .........15

3.      DISMISSAL WITH PREJUDICE IS MERITED ..........................................................15

# TABLE OF AUTHORITIES

**Page**

al-Kidd v. Ashcroft, 580 F.3d, 949 (2009) ............................................................................... 12

Ashcroft v. Iqbal, 556 U.S. 662 ................................................................................................ 12

Bell Atl. Corp. v. Twombly 550 U.S. 544 (2007) ..................................................... 10,11,12,13

Collins v. Womancare 878 F.2d 1145, 1148 (9th Cir. 1989) ...................................................... 5

FlatWorld Interactives LLC v. Apple Inc., 2013 U.S. Dist. LEXIS 172453,
  *11-12, 2013 WL 6406437 (N.D. Cal 2013) .................................................................... 13,14

Folex Golf Indus. v. O-TA Precision Indus. Co., 700 Fed. Appx. 738 (9th Cir. 2017) ............... 1

Jeffers v. Gomez, 267 F.3d 895, 915 [9th Cir. 2000] ................................................................. 6

Johnson v. Knowles 113 F.3d 1118 (9th Cir. 1997) .............................................................. 4,5,6

Joshua David Mellberg LLC v. Will, 96 F. Supp. 3d 953 ........................................................ 13

Klohs v. Wells Fargo Bank, N.A., 901 F. Supp. 2d 1253 (D. HI  2012) ................................... 13

Laxalt v. McClatchy, 622 F. Supp. 737 (D. Nev. 1985) ....................................................... 4,5,6

Menzel v. Scholastic, Inc., 2018 U.S. Dist. LEXIS 44833 ND. Cal. ........................................ 14

Merritt v. Countrywide Fin. Corp., 2014 U.S. Dist. LEXIS 142842, *4-5 (N.D. Cal.) ............. 14

Moss v. United States Secret Service 572 F.3d 969 (2009) ..................................................... 12

OSU v. Ray, 699 F.3d 1053 [9th Cir. 20112] ............................................................................ 10

Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1994) ........................................................ 6,7

Talk Radio Network Enters. v. Cumulus Media, 271 F. Supp. 3d 1195 ................................... 13

West v. Atkins, 487 U.S. 42, 49 (1988) ....................................................................................... 4

**OTHER AUTHORITIES**

http://usacbi.org/guidelines-for-applying-the-international-academic-boycott-of-israel/ ........ 8,9

9th Cir. Model Jury Instruction 9.3 ............................................................................................. 5

---

REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION TO DIMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

Case No. 3:17-CV-03511-WHO

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

In its prior order granting Dr. Abdulhadi's motion to dismiss the first amended complaint the Court noted that it was granting plaintiffs leave to amend their complaint against her "out of an abundance of caution". That caution, however justified, has not been rewarded with a pleading "alleging facts showing that Abdulhadi *herself*" acted to cause plaintiffs' alleged constitutional injuries". Instead we confront a pleading which argues "facts" nowhere alleged in the Second Amended Complaint, ("SAC") cites caselaw for authority it does not support, and attempts to relitigate matters the Court has already reviewed and ruled upon.

Through careful fact-checking plaintiffs' opposition this brief shall identify each of these misstatements or refusal to accept this Court's prior rulings. This Reply shall place Plaintiffs' claims in their proper legal context, and will demonstrate why this failed and seemingly disingenuous third strike should be their last.

## 2. PLAINTIFFS MISSTATE OR IGNORE THE LAW OF THE CASE, MISCOMPREHEND CASE LAW THEY RELY ON, AND ARGUE "FACTS" THEY NEVER ALLEGED IN THEIR SAC.

### A. Plaintiffs Cannot Relitigate the Court's Holdings About Invidious Discrimination and Ought Not Ignore the Court's Prior Observations.

This Court has repeatedly stressed that plaintiffs' alleged First Amendment claims are invidious discrimination claims, whether the target of these allegations is the CSU, the administrators, or Dr. Abdulhadi. Dkt. 124 at 25, at 20; 36, 8, etc. Plaintiffs appear to argue as though this decision never existed, claiming that their claims "do not rest on intentional invidious discrimination." Dkt. 147 at 3, 16. Unable to avoid the black letter "law of the case" doctrine Folex Golf Indus. v. O-TA Precision Indus. Co., 700 Fed. Appx. 738, 739, (9th Cir. 2017), plaintiffs do not even admit that there is a prior ruling and extensive discussion on this point.

Plaintiffs likewise ignore the Court's observation that the presence of a Jewish-identified group participating in the KYR Fair creates a potentially insurmountable burden to an invidious discrimination claim. It is telling that confronted with the Court's observation in its dismissal

order, plaintiffs avoided alleging <u>any</u> facts in their SAC about the presence of Jewish Voice for Peace ("JVP") only to advance fact-based arguments in their opposition.  Dkt. 147 at 17, 1-7.  Plaintiffs retreat to this brief to question whether JVP is a Jewish group but Plaintiffs never having the courage to (falsely) allege this in their SAC.  Plaintiffs also complain that JVP is not an "on-campus" organization, and doubt whether its representatives were as capable as Hillel's of providing informational training.  Of course, these latter two complaints have nothing to do with the question of invidious discrimination, an issue plaintiffs seek to gloss over.

B. **Plaintiffs Cannot Make Up Facts About Supervision That Are Not in the SAC and Argue These "Alternative Facts" in Their Opposition**.

Plaintiffs have curiously used allegations appear nowhere in their SAC to argue for their SAC's survival.  Specifically, Plaintiffs are acutely aware that a college advisor is not a supervisor and that influence is not control.   Plaintiffs advance the bald conclusion that Dr. Abdulhadi controlled the students and is therefore responsible for their actions.  To conceal the dearth of factual allegations supporting this conclusion, plaintiffs' opposition invokes "alternative facts" which are nowhere to be found in their actual allegations.

| **What Plaintiffs' Opposition *Claims* to Have Alleged** | *What the SAC Actually Alleges* |
|---|---|
| Dr. Abdulhadi is a supervisor. Dkt. 147 at 1, 12; 3, 20; 6, 8; and 12:12. | Plaintiffs do not even scruple to refer to the SAC for the claims they make at Dkt. 147 at 1, 12; 3, 20; and 12, 12.    The claim is repeated Dkt. 147 at 6, 8 citing to Dkt. 125 at ¶ 70, describing Dr. Abdulhadi as a faculty advisor and mentor, and <u>never alleges supervision</u>.  (In fact, the <u>only</u> supervisor |

| | |
|---|---|
| | identified in the SAC is Mary Ann Begley, Dkt. 125 at ¶84.[1] |
| One of the KYR Fair organizers who Dr. Abdulhadi allegedly "directed" to exclude Hillel "was a paid employee of SFSU." Dkt. 147 at 12, 1-2. | The opposition cites Dkt. 125 at ¶119 for this "fact". Not one word of this paragraph describes the Fair organizer as an employee. |
| "Dr. Abdulhadi leads and mentors (GUPS) ..." Dkt. 147 at 5, 10. | The opposition cited Dkt. 125 at ¶40, which says nothing about Dr. Abdulhadi. Neither this paragraph, nor any other explains how being a faculty advisor transforms into "leading" the group. |
| "Dr. Abdulhadi ... flexed her influence with COES to conscript them to stage a hunger strike which successfully extracted a commitment from President Wong not to investigate GUPS students or faculty for disruption of the Barkat event. Dkt. 147 at 6, 9-11. | Plaintiffs do not even scruple to refer to the SAC for these conclusory claims. The next sentence in this jeremiad refers to Dkt. 125, ¶¶ 118-120, which say nothing at all about these alleged events |

C. **Adding and Arguing "Alternative Facts Cannot Disguise the Fact That Dr. Abdulhadi is Not Liable Because the Allegations Do Not Establish That Either She or the Students Acted Under Color of State Law.**

Stripped of rhetoric and irrelevant matter, Plaintiffs' opposition reflects a simple outline of their unsupported §1983 claims against Dr. Abdulhadi. Since Plaintiffs sue her in her individual capacity they seek to advance supervisory liability claims but fail to plead facts

---

[1] This is the third time that Plaintiffs have failed to allege facts showing that Dr. Abdulhadi was a supervisor, rather than advancing non-conclusory factual allegations, and there is no reason to afford them a fourth chance.

strictly tying Dr. Abdulhadi's acts *as a supervisor* to the alleged constitutional injury inflicted on plaintiffs by students. Dkt. 147 at 6, 7-15 and 24, 4-15 (*See also* Dkt. 125 at ¶119). She cannot be liable unless, while acting under color of law, she so controlled the students that both she and they became state actors. The argument fails. First, even setting aside the dire First Amendment implications, the claim that she influenced students to violate Plaintiffs' rights does not make it a claim that she acted under color of law. Indeed, a university professor exercises mere influence over her students, rather than the control a prison watch commander exercises over prison guards. Second, even if Dr. Abdulhadi *were* a supervisor (which Plaintiffs have not alleged), supervisors are not responsible for the acts of subordinates who are not themselves state actors.

The threshold question is whether Dr. Abdulhadi was even acting in her individual capacity under color of law. "All actions of a government official are not, simply by virtue of the official's governmental employ, accomplished under the color of federal law." Johnson v. Knowles 113 F.3d 1118 (9th Cir. 1997) citing Laxalt v. McClatchy, 622 F. Supp. 737, 746 (D. Nev. 1985)[2]. "A person acts under color of state law if he 'exercises power possessed by virtue of state law and made possible **only** because the wrongdoer is clothed with the authority of state law." Johnson, id. citing West v. Atkins, 487 U.S. 42, 49 (1988). (Emphasis added). Even where the ostensible state actor is an elected official, influence is not control. In Johnson, plaintiffs sued Knowles, a California Assemblyman, alleging he had used his position to expel them from a Republican party committee because they were gay. The Johnson plaintiffs argued, just as the Mandel plaintiffs do here, that Knowles's official status enabled him to exercise greater influence over the Committee which had expelled the plaintiffs. Johnson rejected this argument, holding that "the mere fact that the prestige of Knowles's office may have enhanced his influence over the Committee is not enough to convert his actions into state action" Id. at 1117.

---

[2] Laxalt, discussed *infra*, involved a *Bivens* claim that was dismissed because the acts Laxalt allegedly committed were not performed under color of law. As Johnson illustrates, the "color of law" analysis remains the same for all §1983 actions.

In affirming the district court's dismissal of the complaint for failure to state a claim, Johnson approvingly cited Laxalt v. McClatchy, holding that a United States Senator did not act under color of law when he wrote a letter on Senate stationery demanding that a newspaper turn its evidence for an article over to law enforcement, and that it retract the article. Johnson and Laxalt hold that influence is not the same as state control for supervisory liability purposes .

Dr. Abdulhadi cannot be held liable unless she was exercising power (as opposed to mere influence) given to her by state law and made possible only because of that authority. Under Johnson, "influence" is not enough whether the allegations are cloaked as "advising and mentoring", "close academic relationships" or "string pulling" (Dkt. 125 ¶¶ 70, 119, and 120).

This brings us directly to the problem of supervisory liability, which runs against the individual acting under color of law and is based on the supervisor's personal responsibility for a subordinate's constitutional violation. See 9th Cir. Model Jury Instruction 9.3. A subordinate cannot effect a constitutional violation unless the subordinate is a state actor. 42 USC §1983. As Laxalt shows, even a public official making emphatic demands on U.S. Senate stationery is not necessarily acting under color of state law. Laxalt, 622 F.Supp.2d at 747. Where alleged private wrongdoers are not exercising a "traditional state function" they remain just that – private actors. Collins v. Womancare 878 F.2d 1145, 1148 (9th Cir. 1989).

The students that Plaintiffs allege are Dr. Abdulhadi's supposed subordinate wrongdoers are alleged to have disrupted a speech through loud chanting, and to have retracted Hillel's invitation to the KYR Fair, an event sponsored by a combination of university and private organizations. Dkt. 125 ¶52 & ¶113. Neither act falls within the exclusive prerogative of the state. Accordingly, even if the students in question are subordinate wrongdoers they are not state actors over whom Dr. Abdulhadi exercised control and thus supervisory liability cannot attach to Dr Abdulhadi.

Supervisory officials sued under section 1983, "are not liable for the actions of subordinates on any theory of vicarious liability… [and thus a] supervisor may be liable… only if there exists… (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

violation." Jeffers v. Gomez, 267 F.3d 895, 915 [9th Cir. 2000]. In this case, Plaintiffs do not – and truthfully cannot – allege facts that demonstrate that Dr. Abdulhadi directly engaged in acts that disrupted the Barkat event or retracted Hillel's invitation to the KYRF, or that she controlled the decision to do either of these things. The SAC is rife with conclusions such as "mandated" or "controlled" without ever describing what Dr. Abdulhadi actually said or did. This is simply not enough for a supervisory liability claim.

Indeed, plaintiffs ask this Court to conflate influence with power, a mistake abjured by Johnson and Laxalt. Such an error would radically expand §1983's understanding of state actors and supervisory liability and invite an unending cascade of litigation every time a professor spoke up and someone drew a faint line from that speech to some student's action. The absence of factual allegations situating Dr. Abdulhadi as anything more than a private actor who is also a state employee, and the absence of factual allegations turning the students she advises into order-following employees cannot support so drastic a transformation.

D. **Plaintiffs Attempt to Avoid This Court's Ruling That They Must Show Specific Intent to Discriminate by Referring to Prison Cases That the Court Has Ruled Inapposite – and by Then Misquoting the Holdings of Those Cases.**

This Court made a clear ruling that Plaintiffs must plead facts showing a deliberate intent to discriminate, and that Eighth Amendment prison condition cases cannot be used in this setting as a basis for supervisory liability. Dkt. 124 at 36, 12-22. In just a few breathtaking sentences plaintiffs ignored the ruling and repeat the same argument, citing the very kind of Eighth Amendment prison condition case this Court warned was inapposite. Plaintiffs then stated as a rule of law a proposition totally absent from the prison case they cited. Dkt. 147 at 12, 4-8.)

Plaintiffs argue that Dr. Abdulhadi's motion does not "cite authority that a state actor can escape liability when acquiescing to conduct of non-state actors under her control, direction, or supervision expected to violate the constitutional rights of others. Contra Robins v. Meecham, 60 F.3d 1436, 1442 (9 th Cir. 1994) (when officials have "actual knowledge of impending harm

easily preventable," their failure to act suggests that they actually want the harm to occur) (citation omitted).

Plaintiffs fail to mention that Robins is the very kind of Eighth Amendment prison conditions case previously held to be inapposite. They likewise fail to mention that the quote about "actual knowledge of impending harm easily preventable" is nowhere to be found in Robins. There is no reason to reward Plaintiffs for misquoting irrelevant cases as a means to radically expand §1983 liability.

### E. **Plaintiffs Cannot Make Up Facts About Dr. Abdulhadi's Alleged Anti-Semitism and Argue These "Alternative Facts" in Their Opposition**.

The outrageous slander that Dr. Abdulhadi is anti-semitic comes in two forms. Its overt form, Dkt. 147 at 25, 5-9 is entirely fact-free. Plaintiffs do not even pretend to find anything in their SAC to support such a charge.

The second slander is more subtly constructed, and as such requires more attention. The opposition makes the fact-free claim that Dr. Abdulhadi's alleged steps "preventing Hillel from hosting a table at the KYR Fair) were motivated by a "specific intent to discriminate against Jews." Dkt. 147 at 3, 17-19. Since no supporting allegations are cited we are left having to guess at the source for this claim.

In sum, Plaintiffs contend that Dr. Abdulhadi subscribes to an alleged BDS "mandate" that requires it's supporters to "disrupt, isolate, and silence all opposing viewpoints. This is the "official policy" of the AMED Program and the College of Ethnic Studies. She is thus required to "engage in and support efforts to disrupt speech and gatherings." She is head of the AMED Program and faculty advisor to GUPS. AMED, GUPS and COES have sponsored numerous events at which "Zionist Jews" were denounced. In 2013 GUPS held a rally and distributed materials lauding violent resistance to colonization.

The Court has already noted that "Plaintiffs, at most, attempt to build a bridge between Abdulhadi's alleged anti-Zionist and anti-Israel stances, her pro-Palestinian resistance support, and her academic pursuits to support an inference that she must have encouraged GUPS or others to engage in the acts of discrimination complained of. That bridge supports no weight" Dkt. 124

at 36, 24 – 37, 3.  Plaintiffs' new allegations remain grounded in rank speculation and are just as flimsy an assumptive structure as before.

Plaintiffs' claims do not match the authority they invoke, (i.e., the dreaded "anti-normalization" mandate which Plaintiffs have sought to demonize.[3])  The most important (and least surprising) aspect of the actual USACBI Academic Boycott guidelines is that Plaintiffs have misquoted it.  Plaintiffs claim that the guidelines require "the disruption and silencing of divergent viewpoints relating to the Israeli-Palestinian conflict".  Dkt. 147 at 12, 22-26.  This appears <u>nowhere</u> in the guidelines.  Plaintiffs also claim that consistent with what they call the "mandate", Dr. Abdulhadi is compelled to "work towards the cancellation or annulment of events, activities, agreements, or projects . . . [that] promote the normalization of Israel in the global academy . . . .".  Dkt. 147 at 12, 66 - 13, 1.  The first ellipse conceals a crucial omitted phrase.  The <u>actual</u> language calls for supporters to "work towards the cancellation or annulment of events, activities, agreements, or projects **involving Israeli academic institutions** or that otherwise promote the normalization of Israel in the global academy, **whitewash Israel's violations of international law and Palestinian rights, or violate the BDS guidelines**."  (Emphasis added to highlight omitted material.)

The boycott does not involve Israelis *per se*, or even Israelis with conflicting views.  Rather, it targets government affiliation.  The guidelines explain "The BDS movement, including PACBI, rejects on principle boycotts of individuals based on their identity (such as citizenship, race, gender, or religion) or opinion" and goes on to state that "[*m*]*ere affiliation of Israeli scholars to an Israeli academic institution is therefore not grounds for applying the boycott.* (emph. in orig.)

---

[3] The summary and quotations are taken directly from http://usacbi.org/guidelines-for-applying-the-international-academic-boycott-of-israel/, last visited June 20, 2018.  This page contains, <u>without</u> deletions, the language misleadingly quoted in Plaintiffs' opposition.  Since Plaintiffs treat the USACBI web site as authoritative (Dkt. 147 at iii, 24) it should be considered without any further controversy.   However, out of an abundance of caution, Dr. Abdulhadi is simultaneously filing a Further Request for Judicial Notice Dkt.154.

The Guidelines remind activists that: "An Israeli academic is entitled, as a taxpayer to receive funding from his/her government or institution ... so long as this is not condition upon serving Israel's policy interests in any way ... mere affiliation of the academic to an Israeli institution does not subject the conference or activity to boycott." They go on to state that "Debates between Palestinians/Arabs and Israelis are also excluded from the boycott if organized without any cooperation with Israel, its lobby groups, or its complicit institutions."

Thus, far from targeting Jews, or Israeli Jews, or even pro-Zionist Israeli Jews, the boycott and its anti-normalization campaign aims at government run or controlled institutions and people and programs tied to them. And nothing calls for "disruption and silencing of divergent viewpoints."

Plaintiffs swerve from misquoting USACBI's anti-normalization policy Dkt. 125 at ¶38, to making the baldly unsupported claim that this policy requires disruption of any gatherings "in support of Jewish sovereignty" and bars public expression. Dkt. 125 at ¶39. It is only a quick step from this manifestly fictitious "policy" to the equally false claim that "consistent" with this policy, a College within the university, an academic program within the university, *and* a student group have rallied against "Zionist Jews." Dkt. 125 at ¶40. Of course, the "evidence" for this says nothing at all about disrupting the speech of "Zionist Jews" but instead talks of militant resistance to colonizers voiced via stencils allegedly distributed by GUPS (Dkt. 125 at ¶41) and chalk not attributed to anyone. (Dkt. 125 at ¶42.)

The leaps of logic and cavalier treatment of actual facts in the SAC are dizzying. To begin with, the assertion that "anti-normalization" requires the disruption of gatherings in support of Jewish sovereignty is supported by nothing at all and has now been exposed as contrary to BDS' actual position by the very authority Plaintiffs rely on for this contention. Second, the false charge of numerous events attacking "Zionist Jews" melts away in the two following paragraphs that are supposed to stand for proof.[4] Third, just as with Plaintiffs' two

---

[4] We can be confident that had anyone at *either* rally criticized Jews as a race or religion or ethnic group, Plaintiffs would have shouted it to the heavens.

prior failed attempts to state a claim, nothing in the SAC links Dr. Abdulhadi to these fantasied attacks, and Plaintiffs do not even *try* to claim that either rally was sponsored by COES or AMED, despite the supposedly "official" policies.

F. **Plaintiffs Need to Falsely Smear Dr. Abdulhadi as an Anti-Semite Because Their Case Collapses Without It.**

It is important to remember that Plaintiffs' constitutional claims are invidious discrimination claims – i.e., the unequal treatment of a class of individuals – and are thus viable claims only if they are based on facts that demonstrate Dr. Abdulhadi acted with the specific intent to discriminate against Plaintiffs because of a protected characteristic. OSU v. Ray, 699 F.3d 1053, 1074 (9th Cir. 2012). *See* Dkt. 124 at 17,4; 20, 22; 25, 20; and 36, 1.)  There are no facts that show Dr. Abdulhadi singled Plaintiffs out, knew the plaintiffs, or otherwise had any knowledge that Plaintiffs were individuals with a protected characteristic.   Notwithstanding Plaintiffs' protestations to the contrary, alleged invidious discrimination means that mere knowledge of a constitutional violation is not an absolute basis for liability.  The charge must satisfy the "mental state element and not merely a threshold supervisory test that is divorced from the underlying claim." OSU v. Ray, 699 F.3d at 1073 at fn.15.  For this added reason, Plaintiffs' claims against Dr. Abdulhadi fails.

G. **Dismissal Is Required Because Plaintiffs Have  Failed To Plead Non-Conclusory Factual   Allegations That Would Make Dr. Abdulhadi's Culpability Plausible**.

In Bell Atl. Corp. v. Twombly 550 U.S. 544 (2007) major telecommunications providers were sued for illegal restraint of trade because they engaged in parallel conduct unfavorable to competition.  The Supreme Court held that absent a factual context suggesting they had illegally agreed to restrain trade by engaging in this conduct, as opposed to merely following market incentives to engage in identical, independent action, the complaint should be dismissed for failure to state a claim.  Id. at 548-549.  Twombly thus addressed a problem similar to the one

posed to this Court – can parallel actions by independent parties with common interests support a claim that the defendants conspired to restrain First Amendment rights?

Reviewing the economic structure of the telecommunications market, the Supreme Court observed that "[T]he economic incentive to resist was powerful, but resisting competition is routine market conduct." Id. at 566. Twombly held that "parallel conduct does not suggest conspiracy", and the plaintiffs must advance allegations "plausibly suggesting (not merely consistent with)" illegal conduct. Id. at 557. Without some "further factual enhancement it stops short of the line between possibility and plausibility…", without which there is no entitlement to relief. Id. Concluding that pleadings must contain more than a "statement of facts that merely creates a suspicion", Id. at 555 the Supreme Court ordered the lower court to dismiss the case. Twombly's lesson is that where motives matter, if the same alleged act might have either a benign explanation (a natural resistance to competition) or a malevolent one (illegal conspiracy or combination), plaintiffs must advance factual allegations of illegal conduct, and cannot rest their claims on suspicions and mere legal conclusions. Id. at 564.

Plaintiffs here fail this test twice. Since their claims against Dr. Abdulhadi are invidious discrimination claims, if, as plaintiffs allege, Dr. Abdulhadi acted to cause disruption of the Barkat event or to block Hillel from the KYR Fair, Plaintiffs must also show that she specifically intended to discriminate against Plaintiffs based on a protected characteristic. In Twombly Bell Atlantic and its codefendants had a natural, legal reason (resistance to competition) to engage in certain conduct. The Twombly plaintiffs alleged factual conclusions that the defendants actually engaged in this conduct for illegal, conspiratorial reasons. But their case was dismissed because they could not allege facts showing that illegal conspiracy, rather than innocent resistance, likely caused the parallel conduct. The Plaintiffs here have not shown and cannot show that the acts they allege Dr. Abdulhadi undertook were intended to harm them because they were Jews or Israelis. Plaintiffs have pleaded nothing that makes this scandalous claim more plausible than the obvious explanation that Dr. Abdulhadi, like students of all races and religions, longs to see justice done in Palestine and opposes the continued oppression of Palestinian people. Plaintiffs have failed to make factual allegations plausibly suggesting that Dr. Abdulhadi engaged in

invidious discrimination. In fact, they have detailed many reasons to believe the opposite – that she has acted from motives of social justice that are fully protected by the First Amendment.

Twombly also teaches what must be alleged to show illegal "concerted action", which may violate the Sherman Act, as opposed to "parallel action," which does not. Plaintiffs alleged that telecommunications carriers had agreed to restrain competition and acted in concert in service of this conspiracy. Since innocent resistance to competition would explain the same behavior, Twombly held that "a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts to show illegality." Id. at 556, 557. Just as it was natural for each Twombly defendant to resist competition, it is natural for students concerned about justice in Palestine to resist efforts to whitewash what they see as an illegal occupation. That students protested the Barkat event or opposed Hillel's presence at a KYR Fair does not suggest that Dr. Abdulhadi directed them, and the "conclusory allegation" of direction does not supply facts to show it. Instead of alleging actual facts showing Dr. Abdulhadi's direction, Plaintiffs make mere conclusory allegations that she pulled strings and encouraged the students,

"[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Service 572 F.3d 969, 969 (2009). *Also see* al-Kidd v. Ashcroft, 580 F.3d, 949, 956 (2009). A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678,

Plaintiffs here, instead of following Iqbal's lessons, appear to model their SAC after Iqbal's complaint. Iqbal holds that "bare assertions" that a defendant was the "architect" of a policy or was "instrumental" in executing it are nothing more than a "formulaic recitation" of the elements of a claim and are not to be treated as factual allegations. Id. at 680, 681. Yet Plaintiffs here insist that Dr. Abdulhadi subscribes to and enforces an anti-normalization policy without factually describing what she allegedly *did* to enforce it in a way that harmed Plaintiffs' constitutional interests. Dkt. 125 at ¶¶ 37-40.

A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See* id. at 678-79. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotation marks and citation omitted).

### H. **Plaintiffs' Allegations Made On Information And Belief Fail Because, At The Least, They Are Not Plead With Sufficient Factual Support**.

The SAC is riddled with "facts" alleged only on information and belief. Dkt. 125 at ¶¶ 70, 94, 104, 108, 116, 117, 118, 124, 130, 154, and 171. Plaintiffs' opposition has insisted that it is appropriate for them to ground one of their most critical claims against Dr. Abdulhadi, that she "mandated that [GUPS] and all its members implement anti-normalization at every opportunity on campus, including, explicitly, [the Barkat] event…" on guesswork. Although there is no governing law or even guidance from the Ninth Circuit, post-Iqbal district courts in this Circuit have generally coalesced around a toleration of allegations made on information and belief only where there is enough factual content surrounding it to plausibly suggest behavior that meets threshold pleading requirements. Talk Radio Network Enters. v. Cumulus Media, 271 F. Supp. 3d 1195, 1207 (D-OR Medford Div. 2017), *accord*, Klohs v. Wells Fargo Bank, N.A., 901 F. Supp. 2d 1253, 1259 (D. HI 2012); Joshua David Mellberg LLC v. Will, 96 F. Supp. 3d 953, 989 (D. AZ 2015).

This Court has enunciated a similar position, holding "[t]hat an allegation is pled on information and belief is neither dispositive nor particularly germane. Per Iqbal and Twombly, the proper inquiry remains whether the plaintiff has presented a non-conclusory factual allegation." FlatWorld Interactives LLC v. Apple Inc., 2013 U.S. Dist. LEXIS 172453, *11-12, 2013 WL 6406437 (N.D. Cal 2013). Flatworld provided an example of how to conduct this inquiry that illustrates why the Plaintiffs here fail. In Flatworld the Court had to determine whether Apple's allegations, pleaded on information and belief, were buttressed "with sufficient

factual support and did not merely provide conclusory assertions." Id.  The Court found that it had, because after pleading a fact on information and belief, it went on to cite facts supporting its conclusion, such as discussions Flatworld had with litigation counsel, what it told potential patent purchasers, as well as emails and other communications.

But the Plaintiffs here have none of that.  Nothing supports their claim that Dr. Abdulhadi required ("mandated") GUPS members to implement anti-normalization practices at every opportunity.  Nothing supports their claim that she specifically required this with reference to the Barkat event.[5]  Nor have Plaintiffs even attempted to meet Judge Chen's standard of establishing "at least a prima facie showing of a plausible claim and practical barriers to obtaining supporting evidence absent discovery." Menzel v. Scholastic, Inc., 2018 U.S. Dist. LEXIS 44833 ND. Cal.

I. **Plaintiffs Lack Standing To Complain On Hillel's Behalf**

Only one of the plaintiffs (Mandel) was even alleged to be a member of Hillel Dkt. 125 at ¶10, although they fail to explain how a student who has already graduated can still be a member of a registered campus organization.  Plaintiffs reason that if Hillel had not been excluded this former student would have attended the KYR Fair. Dkt. 147 at 22, 13-21.  None of the allegations in the SAC support this wild claim.  The SAC merely claims that Hillel was not permitted to have a table at the Fair.  It does not allege that Mandel was barred from attending.  It does not explain how Mandel, as a *former* student and *former* member of a campus group was harmed by Hillel's exclusion.  He has not alleged that he was excluded from the Fair because of his religious or ethnic identity. Mandel was free to attend the event and learn whatever he wished.

---

[5] Plaintiffs should heed the warning of Merritt v. Countrywide Fin. Corp., 2014 U.S. Dist. LEXIS 142842, *4-5 (N.D. Cal.) that "plaintiffs should accordingly refrain from making "hypothetical" allegations unsupported by either personal knowledge or a good faith belief in their truth. Fed. R. Civ. P. 11(b). . . [and] that Rule 11 sanctions may be available, if, at the summary judgment stage, it turns out that any of the plaintiffs' surviving 'hypothetical' allegations are baseless."

J.  **The Radically Expanded Nature Of Supervisory Liability Plaintiffs Seek To Impose Proves Dr. Abdulhadi Is Entitled To Qualified Immunity.**

Plaintiffs argue that Dr. Abdulhadi should inherently know what conduct violates free speech and equal protection rights. Dkt. 147 at 23, 27- 24,1.  This argument ignores Plaintiffs' own admission that the SAC presents strictly supervisory liability claims against her.  Dkt. 147 at 6, 7-15 and at 24, 14-15.   A reasonable person who is a professor or faculty advisor cannot be fairly expected to have a sufficiently clear understanding that she could be liable for a student's political advocacy or conduct towards those who hold competing political views. This, without more, requires that Dr. Abdulhadi be given qualified immunity.

3. **DISMISSAL WITH PREJUDICE IS MERITED**

In its prior dismissal order the Court gave Plaintiffs a handful of straightforward rules. Plaintiffs ignored some (invidious discrimination and no supervisory liability) and utterly failed to follow the others.  Plaintiffs have not set forth what new facts they might plead to correct these defects because they cannot in good faith make the required allegations.  The campaign to inflict "massive punishments" on a professor because of her First Amendment protected activities must end.

DATED:  June 25, 2018            RESPECTFULLY SUBMITTED

**LAW OFFICE OF MARK ALLEN KLEIMAN**

By:   /s/ Mark AllenKleiman

Mark Allen Kleiman, Esq.

**LAW OFFICES OF BEN GHARAGOZLI**
Ben Gharagozli, Esq.

**GAVIN, CUNNINGHAM & HUNTER**
Alan F. Hunter, Esq.
Elizabeth Gong Landess, Esq.

Attorneys for Dr. Abdulhadi