1   BRADLEY S. PHILLIPS (State Bar No. 085263)
    MUNGER, TOLLES & OLSON LLP
2   355 South Grand Avenue, 35th Floor
    Los Angeles, CA 90071-1560
3   Telephone:    (213) 683-9100
    Facsimile:    (213) 687-3702
4
    ADELE M. EL-KHOURI (Admitted *pro hac vice*)
5   MUNGER, TOLLES & OLSON LLP
    1155 F Street, NW, 7th Floor
6   Washington, D.C. 20004
    Telephone:    (202) 220-1100
7   Facsimile:    (202) 220-2300

8   Attorneys for Defendants
    BOARD OF TRUSTEES OF THE CALIFORNIA
9   STATE UNIVERSITY; LESLIE WONG; MARY
    ANN BEGLEY; LUOLUO HONG; LAWRENCE
10  BIRELLO; REGINALD PARSON; OSVALDO
    DEL VALLE; KENNETH MONTEIRO; BRIAN
11  STUART; AND MARK JARAMILLA

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14  JACOB MANDEL, et al.                    CASE NO. 3:17-cv-03511-WHO

15          Plaintiffs,                     **REPLY IN SUPPORT OF MOTION BY**
                                            **DEFENDANTS BOARD OF TRUSTEES**
16      vs.                                 **OF THE CALIFORNIA STATE**
                                            **UNIVERSITY; LESLIE WONG; MARY**
17  BOARD OF TRUSTEES OF THE                **ANN BEGLEY; LUOLUO HONG;**
    CALIFORNIA STATE UNIVERSITY,            **LAWRENCE BIRELLO; REGINALD**
18  SAN FRANCISCO STATE                     **PARSON; OSVALDO DEL VALLE;**
    UNIVERSITY, et al.,                     **KENNETH MONTEIRO; BRIAN**
19                                          **STUART; AND MARK JARAMILLA TO**
            Defendants.                     **DISMISS SECOND AMENDED**
20                                          **COMPLAINT**

21                                          Judge:    Hon. William Orrick III
                                            Dept:     Courtroom 2, 17th Floor
22                                          Date:     August 8, 2018
                                            Time:     2:00 p.m.
23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**
(continued)

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     ARGUMENT ......................................................................................................................1

        A.      The Law-of-the-Case Doctrine Governs This Motion. .............................................1

        B.      Plaintiffs' First Amendment Claims (1, 3, and 5) Should Be Dismissed. ................5

        C.      Plaintiffs' Equal Protection Claims (2, 4, and 6) Should Be Dismissed..................9

        D.      Plaintiffs' Title VI Claims (7 and 8) Should Be Dismissed....................................11

        E.      Plaintiffs' Claims Should Be Dismissed Without Leave to Amend. ......................15

III.    Conclusion ........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*AL Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*,
   104 F.3d 601 (3d Cir. 1997) ............................................................................................2

*Arizona v. California*,
   460 U.S. 605 (1983) ......................................................................................................1, 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................4, 12, 13

*Avalanche Funding, LLC v. Five Dot Cattle Co.*,
   No. 2:16-cv-02555, 2017 WL 6040293 (E.D. Cal. Dec. 6, 2017) ...................................4

*Batson v. RIM San Antonio Acquisition, LLC*,
   No. 15-cv-07576, 2018 WL 1581675 (S.D.N.Y., Mar. 27, 2018) ................................2, 3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................4, 12, 13

*Bellaza v. Holland*,
   No. 09 Civ. 8434, 2011 WL 2848141 (S.D.N.Y., July 12, 2011) ....................................3

*Benefield v. Bd. of Tr. of the Univ. of Alabama at Birmingham*,
   214 F. Supp. 2d 1212 (N.D. Ala. 2002) .........................................................................15

*Benham v. City of Charlotte*,
   635 F.3d 129 (4th Cir. 2011) ...........................................................................................8

*Brown v. Li*,
   308 F.3d 939 (9th Cir. 2002) .........................................................................................15

*Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047, 1058 (9th Cir. 2011) .............................................................................15

*Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't.*,
   533 F.3d 780 (9th Cir. 2008) ...........................................................................................8

*College Republicans at SFSU v. Reed*,
   523 F. Supp. 2d 1005 (N.D. Cal. 2007) .........................................................................15

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ...........................................................................................4

*Davis Next Friend La Shonda v. Monroe Cty. Bd. of Educ. (Davis)*,
   526 U.S. 629 (1999) ...............................................................................12, 13, 14, 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

*Del Raine v. Williford*,
   32 F.3d 1024 (7th Cir. 1994)......................................................................................6

4

5

*Doe v. Willits Unified Sch. Dist.*,
   473 F. App'x. 775 (9th Cir. 2012) ...........................................................................13

6

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014).....................................................................................13

7

8

*Farley, Piazza & Associates v. Gladstone Sch. Dist.*,
   No. 3:10-cv-01172, 2012 WL 2049173 (D. Or. June 6, 2012)................................15

9

10

*Felber v. Yudof*,
   851 F. Supp. 2d 1182, 1186 (N.D. Cal. 2011) ...........................................................7

11

*Ferdik v. Bonzelet*,
   963 F.2d 1258 (9th Cir. 1992).................................................................................3, 4

12

13

*Forsyth Cty., Ga. v. Nationalist Movement*,
   505 U.S. 123 (1992)....................................................................................................8

14

15

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)................................................................................13, 14

16

*Friends of Roeding Park v. City of Fresno*,
   848 F. Supp. 2d 1152 (E.D. Cal. 2012)....................................................................10

17

18

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*,
   896 F.2d 1542 (9th Cir. 1990).....................................................................................4

19

20

*Hightower v. City and County of San Francisco*,
   77 F. Supp. 3d 867 (N.D. Cal. 2014) ..................................................................10, 11

21

*Hoye v. City of Oakland*,
   653 F.3d 835 (9th Cir. 2011).................................................................................10, 11

22

23

*Johnson v. Holder*,
   564 F.3d 95 (2d Cir. 2009)...........................................................................................2

24

25

*King v. Wang*,
   No. 2:14-cv-1817, 2017 WL 3188949 (E.D.Ca., July 27, 2017)...........................2, 3

26

*Kyriacou v. Peralta Community College Dist.*,
   No. C 08-4630, 2009 WL 890887 (N.D. Cal. Mar. 31, 2009).................................15

27

28

*Magnotti v. Crossroads Healthcare Mgmt. LLC*,
   No. 14-CV-6679, 2016 WL 3080801 (E.D.N.Y. May 27, 2016) ...............................3

# TABLE OF AUTHORITIES

**Page(s)**

*McCready v. Mich. State Bar Standing Committee on Character and Fitness,*
 926 F. Supp. 618 (W.D. Mich. 1995) ....................................................................................3

*McDonnell Douglas Corp. v. Green,*
 411 U.S. 792 (1973) ..............................................................................................................13

*McLeary-Evans v. Maryland Dept. of Transp. State Highway Admin.,*
 780 F.3d 582 (4th Cir. 2015) ................................................................................................13

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young,*
 No. 91 Civ. 2923, 1996 WL 383135 (S.D.N.Y. July 9, 1996) .................................................2

*Mitchell v. Skyline Homes,*
 No. CIV S-09-2241, 2010 WL 3784654 (E.D. Cal., Sept. 24, 2010) .......................................2

*Monteiro v. Tempe Union High School Dist.,*
 158 F.3d 1022 (9th Cir. 1998) ..............................................................................13, 14, 15

*Moss v. U.S. Secret Service,*
 572 F.3d 962 (9th Cir. 2009) ................................................................................................10

*Neravetla v. Virginia Mason Med. Ctr.,*
 No. C 13-1501, 2014 WL 4094140 (W.D. Wash., August 18, 2014) ......................................2

*Oden v. Northern Marianas College,*
 440 F.3d 1085 (9th Cir. 2006) ........................................................................................13, 14

*OSU Student Alliance v. Ray,*
 699 F.3d 1053 (9th Cir. 2012) ...................................................................................5, passim

*Pembaur v. City of Cincinnati,*
 475 U.S. 469 (1986) .............................................................................................................6, 7

*Robins v. Meecham,*
 60 F.3d 1436 (9th Cir. 1995) ..................................................................................................6

*Ruston v. Town Bd. for Town of Skaneateles,*
 610 F.3d 55 (2d Cir. 2010) ...................................................................................................10

*Selah v. N.Y.S.Docs Comm'r,*
 No. 04 Civ. 3273, 2006 WL 2051402 (S.D.N.Y. July 25, 2006) .............................................3

*Soo Park v. Thompson,*
 851 F.3d 910 (9th Cir. 2017) ..................................................................................................4

*Swierkiewicz v. Soreman, N.A.,*
 534 U.S. 506 (2002) ..................................................................................................12, 13, 14

# TABLE OF AUTHORITIES

**Page(s)**

*T.E. v. Pine Bush Cent. Sch. Dist.*,
   58 F. Supp. 3d 332 (S.D.N.Y. 2014)..................................................................15

*Thomas v. Bible*,
   983 F.2d 152 (9th Cir.), cert. denied, 508 U.S. 951 (1993) ....................................1, 2

*Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*,
   371 F.3d 1046 (9th Cir. 2004)........................................................................10

*Weslowski v. Zugibe*,
   96 F. Supp. 3d 308 (S.D.N.Y. 2015).............................................................2, 3, 10

*White v. Wireman*,
   No. 1:16-CV-675, 2018 WL 1278588 (M.D.Pa., Feb. 8, 2018) ................................2

**CONSTITUTIONAL PROVISIONS**

First Amendment............................................................................ 5, passim

1    **I.    INTRODUCTION**

2            As Plaintiffs would have it, when a district court dismisses a complaint for failure to state

3    a claim and the plaintiffs file an amended complaint, the defendants and the court, in considering

4    that amended complaint, must start from scratch regardless of whether and to what extent it

5    differs from the original.  That is not the law.  To the contrary, the law-of-the-case doctrine

6    applies, and the amended complaint must be dismissed unless the plaintiffs show that it is

7    materially different from the original in ways that cure the defects identified by the court.  That is

8    precisely the question addressed by Defendants' motion, but Plaintiffs do not even purport to

9    address it.  On that basis alone, Defendants' current motion should be granted.

10           In any event, the Second Amended Complaint ("SAC") does not cure any of the defects in

11   the First Amended Complaint ("FAC").  As explained below, there are no new allegations that

12   could justify this Court's departing from its prior rulings.  Plaintiffs' having already amended

13   their complaint twice in light of Defendants' arguments and this Court's rulings, the SAC should

14   be dismissed without leave to amend.

15   **II.    ARGUMENT**

16           **A.    The Law-of-the-Case Doctrine Governs This Motion.**

17           Plaintiffs criticize Defendants for "blithely assert[ing] that the SAC is not materially

18   different from the superseded FAC," and they contend that "arguments based on defects in

19   superseded prior pleadings cannot demonstrate that the *current* pleading fails to state a claim for

20   relief."  Opp. at 1, 7.  In fact, under black-letter law, the issue on this motion is *precisely* whether

21   the SAC is materially different from the FAC such that it cures the defects in the FAC previously

22   identified by the Court.

23           Under the law-of-the-case doctrine, "a court is generally precluded from reconsidering an

24   issue that has already been decided by the same court, or a higher court in the identical case."

25   *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied*, 508 U.S. 951 (1993).  The doctrine

26   "posits that[,] when a court decides upon a rule of law, that decision should continue to govern

27   the same issues in the subsequent stages in the same case" unless the decision "is clearly

28   erroneous and would work a manifest injustice."  *Arizona v. California*, 460 U.S. 605, 618 & n.8

1   (1983).  A court has limited discretion to depart from the law of the case where:  "(1) the first

2   decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the

3   evidence on remand [or subsequent motion] is substantially different; (4) other changed

4   circumstances exist; or (5) a manifest injustice would otherwise result."  *Thomas*, 983 F.2d at

5   155; *see also Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (holding that "[court] may

6   depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening

7   change in law, availability of new evidence, or 'the need to correct a clear error or prevent

8   manifest injustice'"); *Neravetla v. Virginia Mason Med. Ctr.*, No. C 13-1501, 2014 WL 4094140,

9   at *2 (W.D. Wash., August 18, 2014) (same) (quoting *AL Tech Specialty Steel Corp. v. Allegheny

10  Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997)).  Where "none of the requisite conditions

11  exists … failure to apply the doctrine of law of the case constitutes an abuse of discretion."

12  *Thomas*, 983 F.2d at 155; *King v. Wang*, No. 2:14-cv-1817, 2017 WL 3188949, at *3 (E.D.Ca.,

13  July 27, 2017)

14          The law-of-the-case doctrine applies specifically where, as here, the plaintiffs file an

15  amended complaint following a district court's granting of a motion to dismiss a prior complaint

16  for failure to state a claim.  *E.g.*, *Batson v. RIM San Antonio Acquisition, LLC*, No. 15-cv-07576,

17  2018 WL 1581675, at *5 (S.D.N.Y., Mar. 27, 2018); *White v. Wireman*, No. 1:16-CV-675, 2018

18  WL 1278588, at *7-8 (M.D.Pa., Feb. 8, 2018); *King*, 2017 WL 3188949, at *3; *Weslowski v.

19  Zugibe*, 96 F. Supp. 3d 308, 316-17 (S.D.N.Y. 2015); *Neravetla*, 2014 WL 4094140,  at *2-3;

20  *Mitchell v. Skyline Homes*, No. CIV S-09-2241, 2010 WL 3784654, at *1 (E.D. Cal., Sept. 24,

21  2010).  Under the doctrine, "*[c]ourts 'examine the Amended Complaint to determine whether

22  plaintiffs have cured the former deficiencies*.'"  *Batson*, 2018 WL 1581675, at *5 (quoting

23  *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923, 1996 WL 383135, at *1

24  (S.D.N.Y. July 9, 1996) (emphasis added)); *see also White*, 2018 WL 1278588, at *8 (holding

25  that the court would "assess the legal sufficiency of [the claims in the amended complaint],

26  judging their sufficiency against the benchmarks previously prescribed by the district court").

27          Thus, the question before the Court here is, as Defendants argue in their motion, whether

28  the allegations in the SAC are *materially different* from those in the FAC such that they cure the

1  defects identified by the Court in dismissing the FAC.  *See Batson*, 2018 WL 1581675 at *5

2  (addressing whether an amended complaint alleged "materially different" claims than the initial

3  complaint); *King*, 2017 WL 3188949, at *3 (addressing whether allegations of amended

4  complaint were "sufficiently different"); *Weslowski*, 96 F.Supp.3d at 316-17 (addressing whether

5  allegations of amended complaint were "materially different") (quoting *Bellaza v. Holland*, No.

6  09 Civ. 8434, 2011 WL 2848141, at *3 (S.D.N.Y., July 12, 2011)); *McCready v. Mich. State Bar*

7  *Standing Committee on Character and Fitness*, 926 F. Supp. 618, 621 (W.D. Mich. 1995)

8  (applying law of the case where "[t]he amended claim does not … undermine the rationale of the

9  earlier dismissal").

10      Plaintiffs do not even purport to address that question.  Nowhere do they explain how any

11  new allegations in the SAC cure the defects in the FAC identified by the Court.[1]  Indeed, they do

12  not even distinguish in their opposition brief between allegations that appeared in the FAC and

13  those that are new in the SAC, combining those as if the distinction were of no consequence.

14  Defendants, by contrast, have explained why the new allegations do not cure the defects

15  identified by the Court.  Where, as here, Plaintiffs have failed to make (or even purport to make) a

16  showing demonstrating that the Court should depart from the law of the case, that doctrine

17  mandates dismissal of the SAC.  *See Selah v. N.Y.S.Docs Comm'r*, No. 04 Civ. 3273, 2006 WL

18  2051402, at *2 (S.D.N.Y. July 25, 2006) (dismissing amended complaint because the plaintiff

19  failed to make a showing why the court should depart from law of the case); *see also Magnotti v.*

20  *Crossroads Healthcare Mgmt. LLC*, No. 14-CV-6679, 2016 WL 3080801 at *2 (E.D.N.Y. May

21  27, 2016) (applying law of the case to amended complaint where "Defendants [whose prior

22  motion had been denied] have not offered any reason for the Court to revisit its prior ruling");

23  *McCready*, 926 F. Supp. at 621 (applying law of the case to amended complaint where "Plaintiff

24  has failed to persuade the Court that its earlier dismissal … was clearly erroneous").

25      The authorities relied upon by Plaintiffs to contest this well-established principle are

26  inapposite.  In *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992), the court merely held that

27

28  _____

[1] Nor do Plaintiffs assert, as they could not, that any of this Court's legal rulings were clearly erroneous.

1   where, following dismissal of a first amended complaint, the plaintiff filed a second amended

2   complaint in which all but one defendant was identified under the rubric, "et al.," the plaintiff

3   could not rely on the dismissed complaint as sufficient identification of the defendants in the new

4   complaint. *Id*. at 1260, 1262.  In *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896

5   F.2d 1542 (9th Cir. 1990), the court similarly held that, with respect to whether a party was bound

6   by a judgment, "[t]he fact that a party was named in the original complaint is irrelevant; an

7   amended pleading supersedes the original." *Id*. at 1546.  Neither case has anything whatsoever to

8   do with application of the law-of-the-case doctrine to an amended complaint; nor do Plaintiffs'

9   citations to the Wright & Miller treatise.

10          Nor do Plaintiffs' other cases about pleading standards assist them.  In *Avalanche*

11  *Funding, LLC v. Five Dot Cattle Co.*, No. 2:16-cv-02555, 2017 WL 6040293 (E.D. Cal. Dec. 6,

12  2017), there had been no prior dismissal of a complaint; the plaintiff voluntarily filed a first

13  amended complaint, and the court correctly held that, in that context, "the burden is on the

14  defendant to prove that the plaintiff failed to state a claim." *Id*. at *3.  In *Concha v. London*, 62

15  F.3d 1493 (9th Cir. 1995), which predates the Supreme Court's pleading decisions in *Bell Atlantic*

16  *Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), there was

17  again no law-of-the-case issue; the Ninth Circuit merely held that, in the particular context of a

18  breach-of-fiduciary-duty claim*,* circumstances "may frequently defy particularized identification

19  at the pleading stage," because "a fiduciary exercises discretionary control over a plan, and

20  assumes the responsibilities that this control entails."  62 F.3d at 1503.  And in *Soo Park v.*

21  *Thompson*, 851 F.3d 910 (9th Cir. 2017), the court, citing *Concha*, applied a "relax[ed]" pleading

22  standard to the plaintiff's claim that a police detective had surreptitiously intimidated and

23  attempted to dissuade a witness from testifying on behalf of the plaintiff in an earlier criminal

24  prosecution. *Id*. at 915, 928-29.  Even assuming that *Concha* properly survives *Twombly* and

25  *Iqbal,* no similar circumstances exist here and certainly none that would justify the extraordinary

26  step of departing from the law of the case.

27

28

1    **B.    Plaintiffs' First Amendment Claims (1, 3, and 5) Should Be Dismissed.**

2    **1.**    This Court previously held that, "[f]or all of the First Amendment claims (which

3    are expressly tied to the Barkat and KYR Fair events), the underlying allegations are that

4    defendants took specific actions or refused to take specific actions that harmed plaintiffs *because*

5    *of* plaintiffs' Jewish religion, ethnicity, or perceived pro-Israeli beliefs."  Dkt. 124 at 17.  The

6    Court further held:  "The First Amendment claims, therefore, are invidious discrimination claims.

7    Plaintiffs have to allege defendants' *specific intent* to discriminate to state an official capacity

8    claim; knowledge and mere supervisory responsibility will not suffice."  *Id.*  The Court cited *OSU*

9    *Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012), in support of its holdings.  *Id.*  And the

10   Court expressly rejected Plaintiffs' current argument based on the *OSU* court's statement that

11   "free speech violations do not require specific intent,"  699 F.3d at 1074-75, holding "that

12   discussion was tethered to the discussion of Free Speech Clause cases addressing express

13   government regulations," not claims "that turn on invidious discrimination like the claims alleged

14   here."  Dkt. 124 at 23 n.10.

15        The Court then held that Plaintiffs had failed to allege such specific intent to discriminate

16   on the part of Defendants with respect to either the Barkat event or the KYR Fair.  Dkt. 124 at 19

17   ("What is lacking from the FAC are plausible allegations that the Administrative Defendants took

18   those intentional acts or intentionally failed to act *because* of the content of the event's speech,

19   the preferential content for the protectors' speech, or the views or religious beliefs of the

20   attendees or organizers of the [Barkat] event."; *id.* at 23 ("Plaintiffs have failed to allege facts

21   plausibly showing that any of the Administration Defendants took acts *because* of the content of

22   plaintiffs' speech or views (or in preference for others') ….") (emphases in original).[2]

23        Plaintiffs fail even to argue, as they could not, that the Court's legal ruling—that the First

24   Amendment claims are invidious discrimination claims and therefore require specific intent—was

25

26   _____

27   [2] To the extent that Plaintiffs contend they have adequately alleged specific intent because they allege, conclusorily, that they were treated differently from others, *see, e.g.*, SAC ¶ 153, that contention fails for the reasons set forth in Section C.1 below, with respect to Plaintiffs equal

28   protection claims.

1   clearly erroneous.  That ruling remains law of the case.[3]  Nor do Plaintiffs point to any new facts

2   that would justify departure from the Court's ruling that they failed to allege specific intent to

3   discriminate on the part of Defendants.  They repeatedly emphasize their allegations about the

4   "knowledge" by Defendants of alleged discrimination by others, *see, e.g.,* Opp. at 10 ("allegations

5   that Defendants knew of the constitutional deprivations suffice"); *id*. at 11 ("mere knowledge

6   suffices"); but, under the Court's prior rulings based on *OSU Student Alliance*, such knowledge is

7   insufficient and specific intent is required.[4]  *See* Dkt. 124 at 21 ("The allegations against Begley

8   concern not her own affirmative decisions but her failure to force Hillel's participation or failure

9   to cancel the event."); *id*. at 22 ("[S]imply having knowledge and failing to act will not suffice to

10  impose personal liability on defendants in either an official capacity … or in a personal

11  capacity."); *id*. at 22-23 ("[S]upervisors cannot be held liable simply because they knew of and

12  failed to stop the invidious discrimination alleged.").

13          **2.**       This Court also previously held, with respect to the Barkat event, that,

14  "[s]ignificantly, plaintiffs are *not* alleging that the denial of a centrally located space for the

15  Barkat event was pursuant to a policy or practice of SFSU to deny Jewish students and

16  community members access to centrally-located space for events."  Dkt. 124 at 18.  Plaintiffs now

17  allege an "unwritten, unannounced, never-before-enforced and entirely discretionary, standardless

18  policy of moving 'controversial speakers' away from CCSC."  SAC ¶ 60.  They allege no facts

19  whatsoever to support the existence of such a "policy" other than the fact that the Barkat event

20  itself was not given a centrally located space.

21

22  _____

    [3] Plaintiffs do argue, puzzlingly, that the claims are based on "*admitted* viewpoint discrimination
23  … not merely invidious discrimination."  Opp. at 11; *see also id*. at 10 (SAC "now pleads
    viewpoint discrimination as opposed to invidious discrimination").  Putting aside that Defendants
24  have never "admitted" viewpoint discrimination on their part, this Court's ruling, quoted above,
    correctly held that the claim was for invidious discrimination precisely *because* it involved
    alleged viewpoint discrimination.
25  [4] Plaintiffs cite to the entirely inapposite rule that, in the context of an Eighth Amendment claim
    against prison officials for cruel and unusual punishment, where a prisoner is subjected to
26  "impending harm easily preventable," such as inhumane conditions or physical violence from
    others, "a failure of prison officials to act in such circumstances suggests that the officials
27  actually wanted the prisoner to suffer the harm."  *See Robins v. Meecham*, 60 F.3d 1436, 1442
    (9th Cir. 1995); *Del Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994).  Plaintiffs cite no
28  authority for application of that principle to the context of an event on a university campus.

Plaintiffs cite *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), for the proposition that "even a single decision by *such a body* unquestionably constitutes an act of official government policy … whether that action is to be taken only once or to be taken repeatedly."  Opp. at 9 (citing *Pembaur*, 475 U.S. at 479) (emphasis added).  The citation and (purported) quotation are extraordinarily misleading:  what *Pembaur* actually states (on page 480, not 479) is this:

> [I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.  No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision *by its properly constituted legislative body*—whether or not *that body* had taken similar action in the past or intended to do so in the future—because even a single decision *by such a body* unquestionably constitutes an act of official government policy.

*Id*. 475 U.S. at 480 (emphases added).  Here, of course, there is no alleged decision by any legislative body or any other final policymaking body within the University.

Plaintiffs assert that "the 'policy' alleged that survived a Motion to Dismiss in *OSU* … was similarly amorphous."  Opp. at 9.  In support, Plaintiffs quote from page 1060 of the *OSU* opinion to the effect that "[t]here is no specific written policy that governs the placement of publication bins, and none is required."  Opp. at 9 (citing 699 F.3d at 1060).  That quotation does appear on page 1060, but it comes from an email from the Associate General Counsel of OSU to the campus newspaper's editors, explaining that the policy in question was unwritten, not written.  It is *not*, as Plaintiffs clearly imply, part of any holding or even statement by the Ninth Circuit.  In *OSU*, it was undisputed that Oregon State University's Facilities Department had, and was enforcing selectively, "a 2006 University policy [unwritten but not "amorphous"] that prohibited newsbins in all but two designated campus locations, one near the bookstore and another by the student union."  699 F.3d at 1059.

**3.**    This Court further emphasized that "[t]he heart of the allegations against the Administration Defendants related to the Barkat event is that defendants failed to enforce student code violations, stop the protests, or remove the protestors."  Dkt. 124 at 19.  Noting the *Felber v. Yudof* court's holding that "state actors have no constitutional obligation to prevent private actors from interfering with the constitutional rights of others," *id*. (quoting 851 F. Supp. 2d 1182, 1186

1    (N.D. Cal. 2011), this Court held it was "questionable whether a denial of association claim can

2    be made based on the interruption and failure of the Administrator Defendants to handle the

3    protestors in plaintiffs' preferred way (or even in a required way) for *one event*," *id*.

4          In a transparent effort to avoid, through artful pleading, this rule, Plaintiffs have now split

5    apart and given their claims concerning the Barkat event two new names:  the "Barkat Removal"

6    claims and the "Barkat Shutdown" claims.  The latter is obviously intended to imply, falsely, that

7    the Administrator Defendants "shut down" the Barkat event, as opposed to merely failing to

8    prevent others from interfering with the event—which is all that the factual allegations of the

9    SAC support.  They use the "shutdown" characterization continually throughout their opposition

10   brief, apparently hoping that repetition will make it so.  Based on this implicit distortion of the

11   alleged facts, Plaintiffs rely on case law that governs the situation, not present here, where the

12   government itself prohibits ("shuts down") or places restrictions on speech based on the reaction

13   of the audience, frequently referred to as a "heckler's veto."  *See Center for Bio-Ethical Reform,*

14   *Inc. v. Los Angeles Cty. Sheriff Dep't.*, 533 F.3d 780, 787-88 (9th Cir. 2008) ("If the statute …

15   would allow or disallow speech depending on the reaction of the audience, then the ordinance

16   would run afoul of … a First Amendment-based ban on the 'heckler's veto.'"); *see also Forsyth*

17   *Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 134 (1992) (striking down ordinance that

18   assessed varying fees for assembling or parading based on the anticipated reactions by listeners'

19   to the content of the ideas expressed).  Plaintiffs would have this Court erroneously apply the

20   "heckler's veto" prohibition to a situation where the government, through inaction, fails to

21   prevent third parties from interfering with or "shutting down" a plaintiff's speech.  That would be

22   flatly inconsistent with the Court's prior ruling and the extensive case law on which it was based.

23         **4.**      This Court also held, with respect to the Barkat event, that "cases discussing facial

24   or as applied challenges to statutes, permit processes, and other policies that could 'reduce[] the

25   size of a speaker's audience can constitute an invasion of a legally protected interest,' are

26   inapposite."  Dkt. 124 at 18 (citing *Benham v. City of Charlotte*, 635 F.3d 129, 130 (4th Cir.

27   2011)).  Plaintiffs nevertheless argue that "an allegation that a venue change reduces the size of

28   an audience pleads a cognizable First Amendment injury," citing *Benham*.  Opp. at 4.  Yet again,

1    Plaintiffs' citation is extraordinarily misleading.  At issue in *Benham* was an ordinance that

2    allowed "by-right" public assemblies, including certain demonstrations, in public spaces; required

3    a permit for certain other public assemblies in the same locations; and gave a permitted assembly

4    priority over a not-permitted one.  635 F.3d at 131-32.  The plaintiffs, whose request for a permit

5    was denied because their event did not fall within the category for which a permit was authorized,

6    claimed they suffered injury from the ordinance because, lacking a permit, they might be

7    "*displaced by a later-arriving group* that obtained a permit." *Id.* at  138 (emphasis added).  The

8    Fourth Circuit, although ultimately ruling against the plaintiffs, stated that "*such a displacement*

9    might be cognizable constitutional injury" because "organizers must plan a by-right event [as

10   opposed to a permitted event] knowing that it could be forced to *change venues at the last*

11   *moment*," which "*last-minute changes* could decrease an event's turnout …." *Id.* (emphases

12   added).  As this Court has already recognized, the case has nothing to do with Plaintiffs' claims

13   with respect to the Barkat event, and Plaintiffs' renewed reliance on the case certainly does not

14   show the Court's decision was clearly erroneous.

15              **C.     Plaintiffs' Equal Protection Claims (2, 4, and 6) Should Be Dismissed.**

16              **1.**     This Court previously held that Plaintiffs' equal protection claim with respect to

17   the Barkat event was deficient both (i) because "Plaintiffs fail to allege any facts showing that in

18   materially similar circumstances—*i.e.*, events where speakers would likely draw protests and

19   scheduled when classes were ongoing—other groups who are not identified as Jewish … were

20   offered more centrally located or fee-free rooms," Dkt. 124 at 24, and (ii) because "[P]laintiffs

21   fail to allege any facts that in materially similar circumstances—an open event where protestors

22   had access, protestors started to disrupt the event, and protestors used prohibited amplification—

23   the Administration Defendants present at the event acted differently," *id.*

24              Plaintiffs now assert that their equal protection claim concerning the Barkat event survives

25   because they have added a few conclusory allegations to the SAC.  Opp. at 18, citing SAC ¶¶ 63-

26   64, 153-54.  None of these, however, in any way undermines the basis for this Court's prior

27   rulings.  Paragraph 63 merely alleges that "[Defendants] did [not] identify any speaker or events

28   in the past that were deemed 'controversial.'" SAC ¶ 63.  Neither it nor paragraph 64 alleges that

there *was* any materially similar circumstance in which Defendants acted differently.  Paragraphs

153 and 154 merely allege, respectively, that Defendants "appl[ied] differential treatment to

Barkat Removal Plaintiffs" and that "no other events were banished to for-fee locales on the

outskirts of campus based on concerns about controversial speakers drawing protest activities."

SAC ¶¶ 153-54.   Again, there is no factual allegation of any materially similar circumstance in

which Defendants acted differently.  Conclusory allegations of the sort made by Plaintiffs have

repeatedly been held insufficient to support either an equal protection or a First Amendment

viewpoint-discrimination claim.  *See, e.g.*, *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d

55, 59 (2d Cir. 2010) (holding equal protection claim failed, notwithstanding conclusory

allegations, because "the [plaintiffs] do not allege *specific examples* of the Town's proceedings,

let alone applications that were made by persons similarly situated") (emphasis added); *Moss v.*

*U.S. Secret Service*, 572 F.3d 962, 971-72 (9th Cir. 2009) (holding viewpoint-discrimination

claim failed because plaintiffs failed specifically to allege differential treatment of similarly

situated groups); *Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*,

371 F.3d 1046, 1055 (9th Cir. 2004) (affirming dismissal where, "[a]side from conclusory

allegations, [Plaintiff] has not identified other similarly situated property owners or alleged how

they were treated differently"); *Weslowski*, 96 F. Supp. 3d at 319 (holding that "Plaintiff must

plead that individuals with whom he is 'similarly situated in all material respects' … went

undisciplined when engaged in conduct 'comparabl[y] serious [ ]' to his viewing of sexually

explicit material") (citation omitted); *id*. at 320-21 (citing cases); *Friends of Roeding Park v. City*

*of Fresno*, 848 F. Supp. 2d 1152, 1163 (E.D. Cal. 2012) (holding that "conclusory allegations that

Defendants treated Plaintiffs differently from other similarly-situated individuals are

insufficient").

The Ninth Circuit's opinion in *OSU* and Judge Chen's opinion in *Hightower v. City and*

*County of San Francisco*, 77 F. Supp. 3d 867 (N.D. Cal. 2014), upon which Plaintiffs rely (*see*

Opp. at 10-11) both support *Defendants'* position.  In *OSU*, the plaintiffs specifically alleged that

"[o]nly the newsbins of the *Liberty* were removed, not the newsbins of other papers the

University did not control, such as the *Corvallis Gazette-Times*, *Eugene Weekly*, and *USA*

1    *Today*." 699 F.3d at 1065. In *Hightower*, Judge Chen held that, "[g]enerally, a plaintiff

2    demonstrates an intentionally discriminatory action by reference to a 'control-group,' against

3    which the plaintiff may contrast enforcement practices." 77 F. Supp. 3d at 883 (citing *Hoye v.*

4    *City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011)); *see also* 77 F. Supp. 3d at 885 ("A

5    discriminatory effect is typically established by showing the plaintiff was treated unfavorably

6    compared to others who are similarly situated."). In *Hightower*, "Plaintiffs' complaint provide[d]

7    *three different control groups*" who had, like the plaintiffs, engaged in publicly nude conduct at

8    San Francisco events but who did not express the same viewpoint as the plaintiffs, and against

9    whom the defendant did not enforce an ordinance as it had against the plaintiffs. *Id*. at 883-84

10   (emphasis added); *see also id*. at 885 ("Plaintiffs have alleged three different groups that engaged

11   in publicly nude conduct, that were treated favorably by the SFPD—*e.g.*, the SFPD did not issue

12   citations to members of those groups."). No remotely comparable specific facts about materially

13   similar circumstances are alleged in the SAC here.

14          **2.**      This Court dismissed Plaintiffs' equal protection claim with respect to the KYR

15   Fair in part because, as with their First Amendment claim, they failed to allege specific intent to

16   discriminate on the part of the Administrator Defendants. Dkt. 124 at 25-26 ("there are no facts

17   alleged … that [the Administrator Defendants] acted with the specific intent to deprive the

18   Student Plaintiffs of their equal protection rights because of their Jewish identity"). For the same

19   reasons set forth in Sections B.1 and C.1 above, Plaintiffs have still failed to allege specific intent

20   to discriminate on the part of Defendants.

21          **D.      Plaintiffs' Title VI Claims (7 and 8) Should Be Dismissed.**

22          **1.**      This Court held that Plaintiffs' Title VI claim based on direct discrimination

23   suffered from "the same defects" the Court identified with respect to Plaintiffs' First Amendment

24   and Equal Protection claims. The only new allegations Plaintiffs identify with respect to

25   purported "direct discrimination" (*see* Opp. at 12) are two wholly conclusory allegations (SAC

26   ¶¶ 206, 222) about the "anti-normalization mandate of the [boycott, divestment, and sanctions]

27   movement (*id*. ¶¶ 36-40), an alleged comparison of Mayor Barkat to "a member of the KKK or

28   Nazi party" (*id*. ¶ 88), Defendant Birello's alleged admission that he had forgotten to click

1   "approve" in the SFSU system to grant permits to Hillel (*id*. ¶ 108), and President Wong's alleged

2   ambiguous but later clarified comment about whether Zionists were welcome at SFSU (*id*. ¶ 111;

3   *see also id*. ¶ 130).  None of these allegations—many of which relate to speech protected by the

4   First Amendment that CSU could neither punish nor prohibit—supports a claim of direct

5   discrimination under Title VI.

6       **2.**     This Court further held that Plaintiffs had failed "to allege facts showing they were

7   denied educational benefits."  Dkt. 124 at 32.  The Court held that the Barkat event and the KYR

8   Fair event did not "equate to an actionable deprivation of educational opportunities."  *Id*.  And the

9   Court held that none of the individual plaintiff students had provided "sufficient details to

10  plausibly show a concrete, negative effect on his education."  *Id*. at 33.  In their opposition,

11  Plaintiffs wrongly assert they are not required to plead "specific facts" concerning interference

12  with their education, again citing the superseded pleading standard of *Swierkiewicz*.  This Court

13  has already held, consistent with *Twombly* and *Iqbal*, that plaintiffs must plead sufficient details

14  to make a plausible showing and that the FAC failed to do so.

15      Plaintiffs point to various paragraphs of the SAC as purportedly showing interference with

16  their educations, without differentiating between allegations that appeared in the FAC and that

17  this Court has already held insufficient and allegations that are new to the SAC.  Those that are

18  even arguably both new and related to purported deprivation of educational benefits include

19  allegations: about unspecified "threats" against unidentified Jewish and Israeli students (SAC

20  ¶ 3); that Ms. Ben-David was provided a separate room in which to take her final exam in order to

21  avoid Mr. Hammad (¶ 47); that Mr. Hammad was seen on campus by unidentified (but allegedly

22  "terrified") Jewish and Israeli students (¶ 49); that plaintiff Mandel was subjected to a "hateful

23  stare down" from a GUPS member in class (¶ 90); that three Jewish groups lost days of tabling

24  and recruiting at the New Student Recruitment Fair (Plaintiffs do not allege how this interfered

25  with any student's education) (¶ 108); and that unidentified Jewish and Israeli students have been

26  "excluded from, discriminated against, or proactively decided to self-censor" in various *extra-*

27  *curricular* campus events (¶ 130).  None of these allegations, singly or together, warrant

28  departure from this Court's holding that Plaintiffs have failed to allege a "concrete, negative

1    effect on [plaintiffs'] ability to receive an education." *Davis Next Friend La Shonda v. Monroe*

2    *Cty. Bd. of Educ. (Davis)*, 526 U.S. 629, 654 (1999).

3            **3.**     This Court also held that, under controlling Supreme Court and Ninth Circuit

4    authorities, in order to plead "deliberate indifference" under Title VI, a plaintiff must show that

5    "the [University] made an 'official decision … not to remedy the violation," and "this decision

6    must be clearly unreasonable."   Dkt. 124 at 30 (quoting *Davis*, 526 U.S. at 641; *Doe v. Willits*

7    *Unified Sch. Dist.*, 473 F. App'x. 775, 775-76 (9th Cir. 2012); and *Oden v. Northern Marianas*

8    *College*, 440 F.3d 1085, 1089 (9th Cir. 2006)).  In an effort to lessen their pleading burden,

9    Plaintiffs rely on a Ninth Circuit decision—*Monteiro v. Tempe Union High School Dist.*, 158

10   F.3d 1022 (9th Cir. 1998)—that predates the Supreme Court's decision in *Davis*, which was itself

11   a pleading case.  526 U.S, at 633.  To the extent *Monteiro* suggests that a plaintiff need not plead

12   facts sufficient to show "an official decision … not to remedy the violation" that was "clearly

13   unreasonable," it has been superseded by *Davis* and subsequent Ninth Circuit authority.  Because

14   Plaintiffs still have not alleged facts sufficient to show such an official decision—to the contrary,

15   the facts alleged in the SAC, like those in the FAC, "appear to show the Entity Defendants'

16   responses were objectively reasonable," Dkt. 124 at 32—the SAC fails to state a Title VI claim.

17           Plaintiffs also mistakenly rely on *Swierkiewicz v. Soreman, N.A.*, 534 U.S. 506 (2002), for

18   the proposition that " 'specific facts are not required' to plead discrimination at the pleading

19   stage."  Opp. at 22 (citing 534 U.S. at 510-11).  The quoted language does not appear in

20   *Swierkiewicz*; what the Court there held was that, in a Title VII case, a plaintiff need not plead

21   facts establishing a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

22   (1973).  Moreover, *Swierkiewicz* predated *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),

23   and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which created a "more demanding" pleading standard

24   for all federal court complaints compared to the "more lenient" rule that had been applied in

25   *Swierkiewicz*.  *See Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996

26   (9th Cir. 2014) (noting this "shift in the Supreme Court's analysis of Rule 8 pleading standards");

27   *see also McLeary-Evans v. Maryland Dept. of Transp. State Highway Admin.*, 780 F.3d 582, 586-

28   87 (4th Cir. 2015) (holding that "*Swierkiewicz* … applied a more lenient pleading standard than

1   the plausible-claim standard now required by *Twombly* and *Iqbal*); *Fowler v. UPMC Shadyside*,

2   578 F.3d 203, 211 (3d Cir. 2009) (holding that *Swierkiewicz* has been "specifically repudiated" by

3   *Twombly* and *Iqbal* "insofar as it concerns pleading requirements").

4        Plaintiffs point to new paragraphs 129 and 130 of the SAC in support of their deliberate

5   indifference argument.  In those paragraphs, however, Plaintiffs acknowledge that "the

6   University's own commissioned investigation of the KYRF incident [found] that Hillel was

7   intentionally excluded"; that in September 2017 CSU created both a Working Group on Campus

8   Climate and a Task Force on Anti-Semitism; that President Wong "revers[ed] his [alleged]

9   previous position that Zionists were not necessarily welcome on campus"; and that the President

10  asked that Professor Abdulhadi's offensive post be removed and stated that her opinion could not

11  be expressed "in a way that implies university endorsement or association."  SAC ¶¶ 129-30.

12  While Plaintiffs may have wanted more or different responses, these allegations further

13  demonstrate that Defendants did not make an official decision not to remedy the alleged hostile

14  environment.  *See* Dkt. 124 at 31 ("An aggrieved party is not entitled to the precise remedy that

15  he or she would prefer." (quoting *Oden*, 440 F.3d at 1089)); *id.* (crediting Defendants' "broader

16  steps to address the shutdown of Barkat event and anti-Semitism at SFSU in general,"

17  notwithstanding Plaintiffs' characterization of them as "disingenuous").

18        The core of Plaintiffs' argument that they have sufficiently pleaded a Title VI claim is

19  their assertion that "[t]he SAC's allegations of repeated statements by students, faculty, and

20  administrators and graffiti 'Zionists are not welcome,' SAC ¶¶ 130-31, easily meets this low

21  bar [under *Swierkiewicz*]."  Opp. at 22.  Of course, the bar is higher than *Swierkiewicz* suggests.

22  Moreover, as this Court previously held, "Defendants … did not have the authority to prevent or

23  stop the protestors' free speech rights to protest."  Dkt. 124 at 31.  Plaintiffs cite no authority, new

24  or otherwise, for the proposition that a university has authority consistent with the First

25  Amendment to either prohibit students, faculty, or administrators from making statements such as

26  "Zionists are not welcome" or to discipline them for doing so.

27        Plaintiffs' reliance on *Monteiro* with respect to deliberate indifference is misplaced for at

28  least two reasons.  First, *Monteiro* involved an allegedly hostile environment at a public high

1  school, not a university.  The *Davis* Court expressly stated that "[a] university might not … be

2  expected to exercise the same degree of control over its students that a grade school would

3  enjoy." *Davis*, 526 U.S. at 649; *see Benefield v. Bd. of Tr. of the Univ. of Alabama at*

4  *Birmingham*, 214 F. Supp. 2d 1212 (N.D. Ala. 2002) (distinguishing Title IX obligations of

5  universities and high schools).  Moreover, under the First Amendment, universities have

6  considerably less leeway than K-12 schools to regulate the extracurricular speech of their

7  students.  *See Brown v. Li*, 308 F.3d 939, 949 (9th Cir. 2002); *Kyriacou v. Peralta Community*

8  *College Dist.*, No. C 08-4630, 2009 WL 890887, at *4 n.4 (N.D. Cal. Mar. 31, 2009); *College*

9  *Republicans at SFSU v. Reed*, 523 F. Supp. 2d 1005, 1014-16 (N.D. Cal. 2007).  Two district

10  court cases upon which Plaintiffs rely—*T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332

11  (S.D.N.Y. 2014), and *Farley, Piazza & Associates v. Gladstone Sch. Dist.*, No. 3:10-cv-01172,

12  2012 WL 2049173 (D. Or. June 6, 2012)—are inapposite because they, like *Monteiro*, involved

13  K-12 schools.  Second, the *Monteiro* court held that the school district had "'a legal duty to take

14  reasonable steps to eliminate' a racially hostile environment." 158 F.3d at 1034.  The *Davis*

15  Court expressly held that the test for deliberate indifference "is *not* a mere 'reasonableness'

16  standard." 526 U.S. at 649.

17       **E.      Plaintiffs' Claims Should Be Dismissed Without Leave to Amend.**

18       This is Plaintiffs' *third* attempt to plead adequate claims:  after Defendants filed a motion

19  to dismiss the original Complaint, identifying the very deficiencies subsequently found by the

20  Court in the FAC, Plaintiffs voluntarily amended; after this Court dismissed the FAC, Plaintiffs

21  again attempted in the SAC to cure the defects identified by the Court.  Plaintiffs have had more

22  than sufficient time in which to address those defects.  *See Cafasso, United States ex rel. v. Gen.*

23  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("The district court's discretion to

24  deny leave to amend is particularly broad where plaintiff has previously amended the

25  complaint.")

26  **III.   Conclusion**

27       Defendants respectfully submit that the Court should dismiss all of Plaintiffs' claims

28  without leave to amend.

1    DATED: June 27, 2018                    Respectfully submitted,

2                                            MUNGER, TOLLES & OLSON LLP
                                                BRADLEY S. PHILLIPS
3                                               ADELE M. EL-KHOURI

4

5                                            By:    /s/ Bradley S. Phillips
                                                      BRADLEY S. PHILLIPS
6

7                                            Attorneys for Defendants
                                             BOARD OF TRUSTEES OF THE
8                                            CALIFORNIA STATE UNIVERSITY;
                                             LESLIE WONG; MARY ANN BEGLEY;
9                                            LUOLUO HONG; LAWRENCE BIRELLO;
                                             REGINALD PARSON; OSVALDO DEL
10                                           VALLE; KENNETH MONTEIRO; BRIAN
                                             STUART; and MARK JARAMILLA
11   39119053.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28