Mark Allen Kleiman (SBN 115919)
Law Office of Mark Allen Kleiman
2907 Stanford Avenue
Venice, CA 90292
Telephone: (310) 306-8094
Facsimile: (310) 306-8491
Email: mkleiman@quitam.org

Ben Gharagozli (SBN 272302)
Law Offices of Ben Gharagozli
2907 Stanford Avenue
Marina Del Rey, CA 90292
Telephone: (661) 607-4665
Facsimile: (855) 628-5517
Email: ben.gharagozli@gmail.com

Attorneys for RABAB ABDULHADI

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB MANDEL, CHARLES VOLK, LIAM KERN, SHACHAR BEN-DAVID, MICHAELA GERSHON, MASHA MERKULOVA, and STEPHANIE ROSEKIND, | Case No.: 3:17-CV-03511-WHO |
| Plaintiffs, | **REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS** |
| v. | |
| BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY, SAN FRANCISCO STATE UNIVERSITY, RABAB ABDULHADI, in her individual capacity, and LESLIE WONG, MARY ANN BEGLEY, LUOLUO HONG, LAWRENCE BIRELLO, REGINALD PARSON, OSVALDO DEL VALLE, KENNETH MONTEIRO, BIRAN STUART, and MARK JARAMILA, in their official and individual capacities, | Date: May 29, 2019 Time: 2:00 p.m. Location: Courtroom 2, 17th Floor Judge: William H. Orrick Original Action Filed: June 19, 2017 Judgment Entered: October 29, 2018 Appeal Dismissed: March 29, 2019 Remand to District Court: April 8, 2019 |
| Defendants. | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..............................................................................iii-iv

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.    ARGUMENT ...................................................................................................1

A.  The Lawfare Project's Improper Purposes and Tactics Are Compelling Evidence of
      Bad Faith…………………………………………………………………1

B.  Plaintiff's Counsel Attempt to Escape Liability By Blurring the Legal
      Standard…………………………………………………………………2

C.  Plaintiff's Counsel's Purported "Ground-Breaking" Settlement With CSU In a
      Different Lawsuit Does Not Excuse Misconduct Against Dr. Abdulhadi in the Present
      Lawsuit……………………………………………………………………4

D.  The Excuses for Mr. Weisburst's Misrepresentations in Open Court Lack
      Merit………………………………………………………………………6

E.  The First and Second Amended Complaints Do Not Materially
      Differ………………………………………………………………………8

F.  Plaintiffs' Counsel's Misplaced Effort to Relitigate the Case This Court Has Already
      Decided Exemplifies the Importance of Sanctions in Deterring Future Misconduct
      Capacity……………………………………………………………………11

G.  Dr. Abdulhadi's Motion for Sanctions is Timely
      ……………………………………………………………………………12

H.  Dr. Abdulhadi's Request to use Fees as a Measure of Sanctions Is Reasonable and
      Reasonably Calibrated…………………………………………………...13

V.    CONCLUSION ...............................................................................................14

ii

# <u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

<u>In re Keegan Mgmt. Co. Sec. Litig.</u>, 78 F.3d 431, 436 (9th Cir. 1996) ...........................................3

<u>B.K.B. v. Maui Police Dep't,</u> 276 F.3d 1091, 1107-08 (9th Cir. 2002).................................................................................................................................. 3

<u>Fink v. Gomez</u>, 239 F.3d 989, 993-994 (9th Cir. 2001) ..................................................................3

<u>Fortinet, Inc. v. Sophos, Inc.</u> 2015 WL 12856457 (N.D. Cal. Sept. 12, 2015)................................................................................................................................7

<u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 762 (1980). ........................................................11

<u>Davis v. City & Cnty. of San Francisco</u>, 976 F.2d 1536, 1544 (9th Cir. 1992)................................................................................................................................13

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

## MEMORANDUM OF POINTS AND AUTHORITIES

**I)  ARGUMENT**

### A)  The Lawfare Project's Improper Purposes and Tactics Are Compelling Evidence of Bad Faith.

"There's no such thing as a Palestinian person."

Brooke Goldstein, June 2, 2016[1]

The Opposition's complaint that Brooke Goldstein and her organization, The Lawfare Project are civil rights champions comparable to the ACLU or the Southern Poverty Law Center is undermined by Ms. Goldstein's own statements.  And the argument that those statements were made a year before the present suit was filed may likewise be measured against her statements and her acts.  Barely two weeks after denying the existence of the Palestinian people Goldstein proclaimed "I want to quickly just talk about SFSU and UCI because I am sure you all heard what happened to the Mayor of Jerusalem Nir Barkat.  It is absolutely essential that we empower the students to assert their civil rights.  Lawyers groups are helpless.  If we don't have a plaintiff, I can't do anything."[2]   https://www.youtube.com/watch?v=iSm22DhzC6k  43:16  -- 43:34.  This was the same week Goldstein filed a four-page Public Records Act request about the Barkat event, one of the two incidents which formed the basis of the charging allegations in this suit.

---

[1]   https://www.youtube.com/watch?time_continue=7&v=IDqeS157ZJQ Last visited May 10, 2019.

[2] This comment strongly suggests that the Plaintiffs in this matter were recruited by some of the members of Plaintiffs' Counsel.  This is important because Dr. Abdulhadi, as the prevailing party in the present section 1983 lawsuit, could have moved for costs and fees against the plaintiffs under 42 USC §1988.  However, given Plaintiffs' Counsel's likely recruitment of Plaintiffs, imposing a fee award on the plaintiffs would have been unjust.

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

[Exhibit A][3]  This strongly suggests that contrary to the inference Plaintiffs' Counsel now seeks to draw, SFSU, Dr. Abdulhadi, and their potential as a targets was very much on Ms. Goldstein's mind at the time she made these remarks.

Although Plaintiffs' Counsel also claim (without substantiation) that the decision to proceed was made in consultation with a team of litigators at Winston & Strawn and the Advisory Board of the Lawfare Project, their opposition neglects to mention that Winston & Strawn partner Lawrence Hill, who is among the defense counsel in this case, also serves as the Chairman of Lawfare's Board of Directors (Dkt. 176-1, p. 31).

What is more, that the complaint was filed after consulting with a team of litigators at Winston & Strawn (at least some of whom must have known about Goldstein's comments) furthers the argument for sanctions.[4]

**B) Plaintiffs' Counsel Attempt to Escape Liability By Blurring the Legal Standard.**

Although Plaintiffs try to make a relatively straightforward area of the law appear daunting and mysterious, it is not.  Dr. Abdulhadi has moved to sanction Plaintiffs' Counsel under two theories: 28 U.S.C. §1927, for vexatious multiplication of litigation, and under the Court's inherent power.

---

[3] Indeed, one may wonder why the Lawfare Project, with a reputation as sterling as the NAACP or the ACLU would strive to keep a jury from learning of their participation in the Superior Court Lawsuit.  Exhibits B and C, Plaintiffs' Motion in Limine #4 to Exclude Any Reference to Plaintiffs' Counsel or the Lawfare Project, and CSU's opposition thereto.

[4] Mr. Hill almost certainly knew about Ms. Goldstein's comments given his position as Chairman of the Lawfare Project's Board of Directors.

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

28 U.S.C. §1927 liability requires a showing of bad faith.  (1) Knowingly or recklessly raising a frivolous argument can be bad faith.  (2) Making a meritorious claim for an improper purpose (such as harassment) can be bad faith.

Although §1927 liability requires a finding of subjective bad faith, that finding may be made by scrutinizing a lawyer's actual litigation conduct.  Thus, the §1927 inquiry begins with the following question: was the argument raised frivolous? If so, the next question is whether the lawyer in question raised the frivolous argument knowingly or recklessly?  In re Keegan Mgmt. Co. Sec. Litig, 78 F.3d 431, 436 (9th Cir. 1996).  If yes, then there is a finding of bad faith.  If no, (and the argument was thus meritorious), the next question was whether it was raised for an improper purpose, to harass the opponent?  If so, then there is a finding of bad faith.

Conduct may be sanctionable under the Court's inherent authority without any evidence of bad faith.  B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107-08 (9th Cir. 2002).  An argument or tactic is sanctionable if there is "recklessness plus" another qualifying factor.  In other words, if the argument was raised recklessly and it was (a) raised frivolously or (b) made for an improper purpose; or (c) made to harass an opponent, then the conduct qualifies for sanctions under the Court's inherent authority.  Fink v. Gomez, 239 F.3d 989, 993-994 (9th Cir. 2001).

To determine liability under the Court's inherent authority, the inquiry begins with the following question: was the argument reckless?  If **yes,** was there at least **one** additional qualifying factor, such as: Vindictiveness; a desire to harass; an improper purpose; bad faith; obduracy; or frivolousness?   It should be noted that any single one of these aggravating factors may suffice if there is also a finding of recklessness.

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

1    For practical purposes, as Plaintiffs' Counsel have correctly pointed out, §1927 liability

2    may only be imposed after an initial complaint has been filed and tested.  Thus, a court cannot

3    properly use the defendant's cost and expense in opposing **an initial** complaint as an element of

4    damages.  However, Plaintiffs' Counsel cites to no legal authority indicating that this limitation

5    applies to the Court's inherent authority.  Plaintiffs are further mistaken when they claim that

6    Fed. R. Civ. Pro. 15 bars liability for a First Amended Complaint because an amendment is

7    allowed as a matter of course.  Plaintiffs cite no authority, nor has defense counsel found any to

8    suggest that Rule 15 relieves Plaintiffs' Counsel of their obligation to proceed in good faith.  In

9    other words, Rule 15 does not provide immunity to sanctions under §1927 or under the Court's

10   inherent authority.

11   **C) Plaintiffs' Counsel's Purported "Ground-Breaking" Settlement With CSU In A
       Different Lawsuit Does Not Excuse Misconduct Against Dr. Abdulhadi in the
       Present Lawsuit.**

12   To divert attention from their misconduct in the present matter, Plaintiffs' Counsel insists

13   that the Court consider the purported "ground-breaking[5] public settlement" from their their

14   Superior Court lawsuit against CSU (Dkt. 177, pp. 6, 11-12).  (hereinafter "Superior Court

15   Lawsuit").  This argument lacks merit for three (3) principal reasons: (1) Dr. Abdulhadi was not

16   a defendant in the Superior Court Lawsuit or a party to the settlement; (2) Plaintiffs' Counsel did

17   not even depose Dr. Abdulhadi or subpoena her for trial in the Superior Court Lawsuit; (3) Dr.

18   Abdulhadi and CSU are wholly different entities with entirely different (and frequently

19   conflicting) positions.

---

[5] It deserves mention that after this Court dismissed Plaintiffs' SAC without leave to amend, Plaintiffs' Counsel called the present lawsuit "groundbreaking" in an effort to raise $70,000 for the case.  [See Exhibit B]

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

On January 30, 2018, in an apparent attempt to circumvent this Court's rulings, Plaintiffs' Counsel filed a lawsuit against CSU under the Unruh Civil Rights Act (California Civil code sections 51 and 52) in San Francisco Superior Court representing some of the same Plaintiffs as in the present case.  As in the present matter, the Superior Court Lawsuit complained of Hillel's exclusion from the Know Your Rights Fair.  This was approximately three (3) months after the Court identified the severe flaws of Plaintiffs' lawsuit in the present case at the November 8, 2017.

Plaintiffs' Counsel did not sue Dr. Abdulhadi in the Superior Court Lawsuit.  What is more, Plaintiffs' Counsel did not mention Dr. Abdulhadi in the settlement agreement, [Dkt. 177-1, pp. 4-6 (Exhibit "A"], or even attempt to depose her.  [Kleiman Dec., ¶3].  The only reasonable conclusion to draw is that Plaintiffs' Counsel knew they had no actual case against Dr. Abdulhadi.[6]  Had they sued Dr. Abdulhadi in the Superior Court Lawsuit, she could have (and would have) filed a fee-shifting anti-SLAPP motion that would have also forced Plaintiffs' Counsel to concede they lacked evidence against her beyond the wild accusations they flung about using this Court as a platform.

Although Plaintiffs' Counsel deposed at least three students, one faculty member, and other SFSU employees, their reluctance to depose Dr. Abdulhadi speaks volumes about their lack of confidence that she had engaged in any type of wrongdoing.

Finally, Plaintiffs' Counsel's attempt to transmute a settlement with CSU into a victory over someone they were afraid to sue in state court is self-aggrandizing. to the point of delusion.  CSU's willingness to settle tells this Court nothing about Dr. Abdulhadi's purported liability.

---

[6] Individuals can be sued under the Unruh Civil Rights Act.  See California Civil Code §52(a). 52(a).

5

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

That her interests diverge from CSU's is apparent from the fact that she had independent

counsel.

Plaintiffs' Counsel should not be permitted to evade responsibility for their misconduct in

this matter as to Dr. Abdulhadi by relying on a Superior Court lawsuit against another entity.

**D) The Excuses for Mr. Weisburst's Misrepresentations in Open Court Lack Merit.**

Plaintiffs' Counsel does not (and cannot) dispute Mr. Weisburst told this Court that the

SAC alleged that Dr. Abdulhadi "was supervising" students when in fact the SAC alleged no

such thing.  Nevertheless, they attempt to excuse this discrepancy with an argument over context.

Plaintiffs' Counsel assert that Mr. Weisburst made this misstatement in response to the Court's

observation that "[a] faculty advisor to a student group is not like a supervisor at work."  [Dkt.

166, p. 6:4].   Plaintiffs' Counsel cannot in good faith argue that Mr. Weisburst's utterance was

either innocent or inadvertent.  Foremost, the imperative distinction between a faculty  advisor

and a supervisor was made clear to Mr. Weisburst by the Court's tentative ruling on August 8,

2018.  [Dkt. 166, P. 6:1-9].  Further, the Reply Brief reminded Plaintiffs' Counsel that they could

not claim Dr. Abdulahadi was a supervisor in their Opposition when they had failed to allege it

in the SAC.[7]  [Dkt. 155, Pp. 6:8-9:19.  Finally, and most tellingly,  Plaintiffs' Counsel's own

research must have revealed the difference between advising and supervising whey they drafted

their SAC, as Plaintiffs avoided using the term supervisor in their SAC lest they run afoul of

their Rule 11 obligations.

Plaintiffs' Counsel's argument regarding a "magic-words standard" misses the point.  Mr.

Weisburst was well aware of the significance of the inconsistency between an advisor and a

---

[7] That section of Dr. Abdulhadi's Reply Brief appropriately reads "Plaintiffs Cannot Make up Facts About
Supervision That Are Not in the SAC and Argue These "Alternative Facts" in Their Opposition."

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

supervisor (which is precisely why he did not allege it in the SAC) but nevertheless chose to represent to the Court that the SAC alleged that Dr. Abdulhadi "was supervising" students.

The Opposition misreads In re Yagman, 796 F.2d 1165 to conjure up a Rule 11-type "notice" obligation where none exists.  In Yagman the case had been fully litigated by one district court judge only to be handed to another for trial when the first judge became ill.  The second judge heavily sanctioned counsel for "an accumulation of all perceived misconduct from filing through trial."  Id., at 1183.  Noting that the policy of sanctions was to deter subsequent abuses, the Court of Appeals cautioned that "[T]his policy is not well served by tolerating abuses during the course of an action and then punishing an offender after the trial is at an end."  On the other hand, Mr. Weisburst's misrepresentation occurred in the midst of the final hearing in this case. The hoped-for deterrence effect of "notice" would have been meaningless at so late a point. This is especially so because Dr. Abdulhadi's attorneys, in their Reply Brief, had already cautioned Plaintiffs' Counsel that the SAC contained no such allegation after Plaintiffs had attempted to argue the point in their opposition to Dr. Abdulhadi's Motion to Dismiss.  – Further, it is a serious thing to charge another lawyer with deliberately misstating the facts to a Court without first confirming that fact by studying the transcript.

Fortinet, Inc. v. Sophos, Inc. 2015 WL 12856457 (N.D. Cal. Sept. 12, 2015) is also inapplicable.  The seven alleged acts of misconduct in that case do not even approach the clear disparity between Mr. Weisburst's representations of what the SAC alleged and what the SAC actually alleged after Mr. Weisburst was notified of the fact in Dr. Abdulhadi's Reply Brief.

Lastly, Plaintiffs' Counsel attempt to disguise Mr. Weisburst's misrepresentations in the cloak of "zealous advocacy".  (Opp.at p. 14:27).  This is simply not the case.  Zealous advocacy

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

would have been for Mr. Weisburst to argue what was in the SAC, rather than what he knew was not in the SAC. To be zealous and ethical requires integrity.  Without the latter of the three, zealous statements become misleading.  The only honest thing to have done would have been for Mr. Weisburst to argue the point without falsely claiming that the SAC alleges that Dr. Abdulhadi "was supervising" students.

**E) The First and Second Amended Complaints Do Not Materially <u>Differ.</u>**

Plaintiffs' Counsel hopes the Court will forget that it has already determined that the SAC was not materially different from the first.  In a 41-page opinion dismissing the SAC without leave to amend, this Court remarked:  "***As before***, plaintiffs' conjecture does not support 'reasonable inferences'…' Dkt. 167 at 30:23-24  (Emphasis added); "Plaintiffs ***again*** <u>complain that their lack of facts plausibly supporting the claim that Abdulhadi took direct action (or knowing inaction) … is due to those facts being within Abdulhadi's possession.  That **again**,</u> <u>ignores that there have been investigations into these events . . . "</u> Id., at 31:8-11. (Emphasis added)

The phrase "distinction without difference" appropriately characterizes Plaintiffs' Counsel's proffered comparison of the two complaints.  (Dkt. 177, Pp. 30-31).  They make much of the material they deleted from the FAC after the Court criticized it for being "full of barely relevant material" (Dkt. 124, p. 2:8).  Yet they ignore the Court's second warning on that same page, that the FAC was "so conclusory regarding the causes of action asserted that it does not state a plausible claim for relief" (<u>Id.</u>, at p. 2: 8-9).  Indeed, the FAC's primary defect was the "total lack of facts showing that Abdulhadi *herself* acted" supporting the claims against Dr. Abdulhadi.  (Id., at p.37:7).

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

What is further disappointing is that some of Plaintiffs' Counsel's defenses in Appendix B are simply false.  For example, the second row of Appendix B demands credit for newly alleging a policy (anti-normalization).  In fact, that allegation is not new at all: it appeared in the FAC at paragraph 56.  (Dkt. 57 p.18:26).  The Court found this to be inadequate in dismissing the FAC (Dkt. 124, p. 22-24).

Plaintiffs' Counsel again give themselves credit (Appendix B, row three) for having "deleted injunctive relief claims against Abdulhadi in her official capacity."  Although the Court observed this as the SAC's "**one** helpful clarification," (emphasis added) the Court further observed that "[d]espite that acknowledgment, [Plaintiffs] now try to pin on her responsibility for imposing her 'anti-normalization] views as a *policy* that COES and its professors, AMED, GUPS (the student group she advises), and her mentee students are required to adhere to and carry out." (Dkt.. 167, at pp. 29:25-30:2.).  Accordingly, Plaintiffs' Counsel removal of injunctive relief claims against Dr. Abdulhadi was a cosmetic change rather than a substantive one.

Although the Court had previously ruled that "knowledge and mere supervisory responsibility will not suffice" [Dkt 124, P. 17:5-6], Plaintiffs' Counsel flaunted this ruling and insisted that a bare allegation of knowledge and supervisory responsibility would still somehow suffice.  (Appendix B, Row 5.)

To make things worse, Plaintiffs' Counsel did not, and indeed could not, allege any facts in support of their conclusion in the SAC that Dr. Abdulhadi is a supervisor.  That Plaintiffs' Counsel would claim in Appendix B that they actually alleged supervisory responsibility after it had been repeatedly demonstrated that they had not is disappointing.

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

1

2

3

4

5          Finally, when faced with what this Court called a "total lack of facts" showing Dr.

6  Abdulhadi's personal involvement (Id., at p. 37:7), Plaintiffs' Counsel double down on a chain of

7  unreasonable inferences featuring shadowy guesses about  "pulling strings" and

8  "encouragement" based not on anything Dr. Abdulhadi personally *did*, but rather based on who

9  she taught and what her political opinions are.  This neither remedied nor materially differed

10 from the FAC.  (See, Appendix B, 6th row).  Paragraphs 70, 95, 119-120 in the SAC reveal that

11 nothing was alleged with any level of specificity that Dr. Abdulhadi undertook affirmative

12 actions against plaintiffs.  The footnote in that section boasting that discovery in the Superior

13 Court Lawsuit indicated that one of Dr. Abdulhadi's students "was the driving force behind

14 Hillel's exclusion from the Know Your Rights Fair" again misses the point: the FAC was

15 defective because there were "no allegations that Abdulhadi ***herself*** took any affirmative actions

16 against plaintiffs."  [Dkt. No. 124, at p. 36.]  (emphasis added)  Plaintiffs' Counsel is again

17 trying to salvage their misconduct by trying to impute the acts of others onto Dr. Abdulhadi.

18 Plaintiffs' Counsel's decision to oppose a sanctions motion with the same line of argument that

19 lead this Court to dismiss their lawsuit without leave to amend is odd at best and frustrating at

20 worst.

21          As the Court pointed out in dismissing the SAC with prejudice, the differences between

22 the FAC and SAC were not material.  Counsel's naked assertion that "Plaintiffs made those

23 changes in response to the Court's stated concerns shows that they did not file the SAC to harass

24 Abdulhadi."  [Dkt. 177, at P.21: 1-3] ignores the elephant in the room: if Plaintiffs' Counsel had

25 indeed made material changes in response to the Court's stated concerns, the Court would not

26 have dismissed the SAC without leave to amend.

27

28

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

**F)  Plaintiffs' Counsel's Misplaced Effort to Relitigate the Case This Court Has Already Decided Exemplifies the Importance of Sanctions in Deterring Future Misconduct.**

It is disheartening that Plaintiffs' Counsel's Opposition goes to great lengths to essentially re-litigate their case is disheartening.  Not only does this demonstrate that they have not taken the Court's detailed orders dismissing the FAC and SAC to heart; they have disregarded the well-established principle that section 1927 "does not distinguish between winners and losers….The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law.  It is concerned only with limited the abuse of court processes." Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980).

Importantly, sanctions are intended to deter other attorneys from engaging in the same type of misconduct. See also The Honorable James F. Holderman, "Section 1927 Sanctions and the Split Among the Circuits", Litigation, Vol. 32, No. 1, Security, (Fall 2005), p. 44.  see also Williams v. Family Dollar Servs., 327 F. Supp. 2d 582, 586 (E.D. Va. 2004); Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 247 (1st Cir. 2010) [observing that "Based on the Conference Committee report, a number of our sister circuits have described the primary purposes of section 1927 to be deterrence and punishment of dilatory litigation tactics." See In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 101(3d Cir. 2008); Red Carpet Studios Div. of Source Advantage, Ltd v. Sater, 465 F.3d 642, 646 (6th Cir. 2006); United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991); Beatrice Foods Co. v. New England Printing & Lithographing Cor., 899 F.2d 1171, 1177 (Fed. Cir. 1990)].

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

### G) Dr. Abdulhadi's Motion for Sanctions is Timely

Plaintiffs' Counsel' argue that Dr. Abdulhadi's "motion is time-barred", claiming the remand did not occur on April 8, 2019.[8]  However, the Court's November 7, 2018 order indicates in pertinent part that the deadline for Dr. Abdulhadi to file a motion for sanctions shall be "14 days after remand to the District Court ***following*** the conclusion of any appellate proceedings." (emphasis added).  Here, the appellate proceedings concluded on March 29, 2019 as per the Ninth Circuit's dismissal that day.  After March 29, 2019, the only applicable entry was April 8, 2019.

Further, the Ninth Circuit's order granting voluntary dismissal provided that "[a] copy of this order sent to the district court ***shall*** act as and for the mandate of this court." Said order was sent to the district court on April 8, 2019, which makes April 8, 2019 the date of the remand.

Plaintiffs' Counsel then go on to take the position that there was no remand in this case at all.  They cite to no applicable legal authority to support the position that it is even possible to have no remand after the conclusion of appellate proceedings.  Further, even if the Court were to accept Plaintiffs' Counsel's argument that there was no remand in the present case, their proposed alternative approach under the Local Rules does not support the contention that Dr. Abdulhadi's motion for sanctions is time barred.  Indeed, Plaintiffs' Counsel provides no support for their argument that filing the motion on April 19th instead of April 12th violates the "as soon as practical" standard in Local Rule 7-8.

---

[8] Curiously, Plaintiffs' Counsel does not take a position on what the April 8, 2019 entry is if it is not a remand.

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

1
2

**H)  Dr. Abdulhadi's Request to Use Fees as a Measure of Sanctions Is Reasonable and Reasonably Calibrated.**

3
4
5
6

After filing three complaints which each contained over 230 paragraphs of allegations Plaintiffs' Counsel now objects that the time and effort Dr. Abdulhadi's lawyers put into this case was unreasonable and unnecessary.  In support of this argument they advance the following propositions:

7

*(1) No time should have been claimed for anyone other than Kleiman and Gharagozli.*

8
9
10

None was.  As is plainly apparent from Dkt. 176-1: pp. 7 & 8, Dr. Abdulhadi only seeks time for Mr. Kleiman and Mr. Gharagozli.  (See also the Notice of Errata [Dkt. No. 178] filed concurrently herewith.

11

*(2) No time should have been claimed for 2019.*

12
13
14

This is incorrect.  Time spent researching and drafting this motion and the reply brief is itself compensable.  This Court may award fees incurred in litigating a fee dispute.  Davis v. City & Cnty. of San Francisco, 976 F.2d 1536, 1544 (9th Cir. 1992).

15

(3)  *No time should have been claimed for moving to dismiss the original complaint.*

16
17
18
19

Although this is true under §1927, it is not true under the inherent authority of the Court. If the Court is proceeding exclusively under §1927 and declines to grant sanctions under its inherent authority, Dr. Abdulhadi concedes that approximately two-thirds of the time spent in 2017 was spent investigating, researching, and preparing opposition to the original complaint.

20

(4) *Defense counsel's time was unreasonable and unnecessary.*

21
22
23
24
25
26
27

Plaintiffs' Counsel advance this argument without offering any information about the time and effort they expended in drafting over three complaints, totaling over two hundred pages, how much time they spent interviewing witnesses, reviewing documents, or conducting legal research.  Because of the uncertainty of recovery for defense counsel, and because neither Kleiman nor Gharagozli draw a salary from a Big Law Firm while providing pro bono services to Dr. Abdulhadi, Mr. Kleiman and Mr. Gharagozli would be happy to compare their time with that of Plaintiffs' Counsel.

28

**REPLY IN SUPPORT OF DR. ABDULHADI'S MOTION FOR SANCTIONS**
Case No. 3:17-CV-03511-WHO

If Plaintiffs' Counsel seriously wishes to pursue this line of argument Dr. Abdulhadi respectfully suggests that counsel for the parties be ordered to confer and report to the Court on an agreed-upon method for exchanging time information without revealing privileged or work-product protected information, and to exchange information to shed further light on Plaintiffs' Counsel's allegations in this regard.

**II) CONCLUSION**

This case presents a situation where a group of highly experienced attorneys with access to significant resources disregarded this Court's detailed order and file multiple complaints that do not significantly differ from one another and misrepresented the an important aspect of their last complaint to get passed the pleading stage.  Some of these attorneys belong to an organization that announced an intention to inflict "massive punishments" against individuals whose political positions they disagree with like Dr. Abdulhadi.  Such misuse of the legal process should not be condoned and such behavior should be sanctioned.  Accordingly, Dr. Abdulhadi respectfully requests that the Court grant her Motion for Sanctions in the amount of $428,890.76.


DATED:  May 10, 2019                     RESPECTFULLY SUBMITTED

                                         **LAW OFFICE OF MARK ALLEN KLEIMAN**

                                         By: _____

                                         Mark Allen Kleiman, Esq.

                                         **LAW OFFICES OF BEN GHARAGOZLI**
                                         Ben Gharagozli, Esq.
                                         Attorneys for Dr. Abdulhadi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28